# CI - TABLE of CONTENTS

## CDT Isiah Doolen, H2/14

| TAB | DOCUMENT | ACTION BY: | (Initial when present) |
|---|---|---|---|
| A | **CI PACKET :** | | |
| | Transmittal of CI Proceedings | IO | KS |
| | Summary of Proceedings | IO | KS |
| | Convening CI Memo | IO | KS |
| | Other CI documents | IO | KS |
| | IO Processing Checklist | IO | |
| | Investigating Officer Appointment Orders | R&D | KS |
| | | | |
| B | **CONDUCT REVIEW** | | |
| | Deficiency in Conduct memo/ | R&D | KS |
| | Cadet Acknowledgment to R&D | CADET | KS |
| C | Cadet Referral to CI Memo | R&D | KS |
| D | Privacy Act Statement | R&D | KS |
| E | BTO Memo | R&D | |
| | RTO Memo | TAC | KS |
| | TAC Memo | TAC | KS |
| | Cadet COC Memos | TAC | |
| | ID Memo | TAC | KS |
| | Cadet CRB | TAC | KS |
| | Demerits Review | R&D | KS |
| | Military Summary | R&D | KS |
| F | 2nd Article | R&D | KS |
| | 1st Article | R&D | KS |
| G | Evaluations: DMI, DPE, O/Dean | R&D | KS |

000421

14 A



DEPARTMENT OF MILITARY INSTRUCTION
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

REPLY TO
ATTENTION OF

MACC-Q                                          30 August 2014

MEMORANDUM FOR RECORD

SUBJECT:  Transmittal of Conduct Investigation (CI) Proceedings, Cadet Isiah Doolen, Class of 2014, Company H, 2nd Regiment

1.  Transmitted herewith is the record of proceedings of the CI which convened on 11 August 2014 to hear matters pertaining to the conduct deficiency of Cadet Isiah Doolen, class of 2014, Company H, 2nd Regiment.  Cadet Doolen was declared deficient due to two alcohol policy violations in accordance with the United States Corps of Cadets Regulation.

2.  I provided CDT Doolen all rights under USCC Regulation 351-1, para. 105.

3.  The CI investigated Cadet Doolen's pattern of behavior and finds him deficient in conduct.

My finding is based on reviewing two documented Field Grade Article 10 alcohol policy violations, character statements, evaluations and cadet file.  CDT Doolen's behavior is a substantial departure from the standards of conduct expected of members of the Corps of Cadets and of a future commissioned officer.  Cadet Doolen has completed the Army Substance Abuse Program in December 2010, and fully benefited from the program to further prevent the downward spiral of behavior from alcohol consumption.  However, Cadet Doolen continued to violate USCC regulation, to include an additional alcohol related incident after the completion of the course.  Cadet Doolen has questionable maturity and leadership characteristics that need to be developed and improved.  Finally, his overall attitude towards being a Soldier, Scholar, Athlete is substantially below what is expected of a First Class Cadet with more than 40 months at the United States Military Academy.

Cadet Doolen's first violation was the possession of alcohol in the barracks on 17 April 2010.  Cadet Doolen admitted to the purchase of alcohol in Newburgh, transporting it to West Point and bringing it into the barracks by way of a Nalgene bottle and a plastic Taco Bell cup.  He was subsequently reported by Yearlings to his chain of command after they became aware of the violation.

The second violation occurred on or about 8 May 2013, after Cadet Doolen had consumed alcohol at the First Class Club. Cadet Doolen thereafter entered a female cadet's room without authorization and became engaged in a verbal and physical

SUBJECT:  Transmittal of Conduct Investigation (CI) Proceedings, Cadet Isiah Doolen, Class of 2014, Company H, 2nd Regiment

altercation. CDT Doolen challenged the board.

My review indicated that there was sufficient evidence to show that Cadet Doolen committed the misconduct after consumption of alcohol. Cadet Doolen did not challenge the punishment received for article 10 board, instead he challenged the characterization of the board, that is whether or not it was an "alcohol board" (Exhibit A). Prior to the CI hearing, Cadet Doolen modified the original list of individual names (Exhibit B) that he had submitted to challenge the board. COL Mauldin, former Brigade Tactical Officer was the only witness Cadet Doolen called to challenge the characterization of the board (Exhibit C).  After hearing COL Mauldin's testimony and reviewing the files and records, I concluded that Cadet Doolen's second brigade board was an alcohol board, and was conducted in accordance with applicable regulations.

Cadet Doolen has not demonstrated that he possesses the attributes essential to lead as an officer in the United States Army. Cadet Doolen admitted to being a "loose cannon" at times which has led to a lack in self-control. CDT Doolen stated that when he consumes alcohol "interactions with others should be extremely limited." Cadet Doolen agrees that living honorably and embodying the Army Values is essential to fulfilling any leadership role within the Army.

Cadet Doolen's discipline record shows multiple instances of violations throughout his time at the Academy, including multiple adjudicated instances of substandard behavior including damage to government property, unexcused absence, violating restriction, failing to meet suspense on more than one occasion, delinquent in accountability, disrespect, missing class, improper use of the USMA network, late to recall formation and two alcohol violations (Enclosure 2).

Academically, Cadet Doolen has been cited as "below average," whose performance was "underwhelming." Additionally, instructors have expressed their reservations of Cadet Doolen, stating their "doubts about potential service," and that he "may not follow instructions that well."  His class participation was generally minimal and as a First Class Cadet assigned as a Cadet in Charge for two class trips, he "failed to meet expectation of basic cadet leadership." (Exhibit D)

Except for one person, all the character witnesses called by Cadet Doolen have known him for less than three months since his return to West Point. They have all characterized his performance as phenomenal throughout Cadet Field Training 2014. The one witness, who knew Cadet Doolen prior to his time away from the Academy, stated that she did not trust him, nor would she willingly go to combat with him. Although Cadet Doolen's behavior gives the impression that he has returned to USMA a changed individual, I do not believe it is an accurate reflection to his character nor do I believe he possesses the ability or capacity to serve as a leader in the United States Army.

Cadet Doolen's voluntary rehabilitative efforts were minimal over the past year. When asked what he has done to improve himself, his response was that he sought guidance

2

SUBJECT:  Transmittal of Conduct Investigation (CI) Proceedings, Cadet Isiah Doolen, Class of 2014, Company H, 2nd Regiment

and mentorship from his attorney, at times with the Chaplain and most recently a Psychiatrist.

Cadet Doolen is very attentive and shows aptitude in issues that are self-serving. Throughout this process I have come to believe that Cadet Doolen has taken partial ownership of his shortcomings.  For example, he took full responsibility for his wrongdoings of the first alcohol violation, however, has not truly embodied a change in character. His tone and attitude when communicating with others indicate an unwillingness to control his emotions and treat others with dignity and respect (Exhibit E, F). If Cadet Doolen is allowed to remain at the United States Military Academy and be commissioned, his impulsivity and lack of self-control will put Soldiers, mission and the Army at great risk. Cadet Doolen is immature, selfish, and exhibits an attitude that is not compatible with good order and discipline, the basic foundation for service in the United States Army. I believe the conduct and traits as described by most of his witnesses who have known him for a very short period of time are superficial, disingenuous, and do not reflect his true character.  His attorney called me and offered an apology on Cadet Doolen's behalf.

4.  Cadet Doolen's actions are indicators of his real character and his demonstrated conduct indicates that he does not possess nor has he developed to be able to lead soldiers in the United State Army, therefore, I recommend that he is separated from the United States Military Academy immediately.

5.  A Summarized Report of Proceedings is attached, as well as Cadet Doolen's conduct record.  All exhibits offered or considered as evidence in the CI are listed and indexed accordingly.  Cadet Doolen was asked whether he had any additional evidence to provide at the hearing, or requested any other witnesses.  He indicated that he did not.

6.  I authenticate and certify that the attachments to this transmittal of CI proceedings are complete and accurate, and that the findings and recommendations are correct.

Encl
1. Summary of Proceedings
2. Disciplinary Actions
3. Cadet Record Brief
4. Evaluations (4)
5. Exhibits A thru F

NICHOLAS R. FORLENZA
CPT (P), SC
Investigating Officer

3

# Summarized Report of Proceedings

CDT Isiah Doolen, Class of 2014, Co H2, USCC

Conduct Investigation, 11 August 2014

I. SUMMARY OF CONDUCT RECORD REVIEW. I reviewed two field grade article 10 actions for alcohol policy violations. Punishments awarded for the two boards were 35/100/60 RES/90WP/RIR to PFC and 35/80/60 RES/90WP/RIR to PFC/SLDP. All disciplinary actions were awarded in accordance with the Maximum Table of Punishments under USCC Regulation 351-2, dated 15 May 2001.

II. ISSUES/CHALLNGES BY THE CDT. CDT Doolen disputes that there were any findings at his most recent board (June 2014) that would indicate that an Alcohol Policy violation had occurred. With his belief that an alcohol policy violation did not occur, Cadet Doolen contends that there is no basis for a Conduct Investigation.

CDT Doolen stated that he does not dispute the punishments awarded at his June 2014 board.

III. WITNESSES CALLED. CDT Doolen asked that I speak with COL Mauldin, (Brigade Tactical Officer) in support of his challenge to his June 2014 article 10 board. CDT Doolen requested the following individuals to appear and furnish information as to his performance as a Cadet: CDT William Majors, CDT Elliot Chal, CDT Theodore Lipsky, MAJ Knoedler (Chaplain), CDT Veronica Bryant, MAJ Snyder (TAC), CDT Brandon Roy, CDT John Barnes, CDT Edward Jenkins. The following personnel furnished information as to CDT Doolen's performance via memorandum (see enclosures): MAJ Ziegelhofer (CFT TAC), CDT Barnes, CDT Lipsky, CDT Fruillaney, CDT Beck, CDT David, CDT Miller, CDT Chal, CDT Mapes, CDT McQuirter, CDT Fargo, and CDT DeForest.

IV. INVESTIGATING OFFICER'S DIALOG WITH COL Mauldin. CDT Doolen initiated the examination by having COL Mauldin verify the USMA Form 2-3 (exhibit 1) was in fact the findings from his most recent June, 2014 alcohol board. After it was confirmed by COL Mauldin, CDT Doolen asked COL Mauldin to read a printed word document (exhibit 2), which contained CDT Doolen's account of a telephonic conversation that took place on 23 June 14 at the conclusion of the his 2nd alcohol board violation, CDT Doolen claimed that COL Mauldin found that he was not inebriated on the night of 8 May 2013 and that he did not block CDT N███████ D███████ from leaving the room. COL Mauldin confirms that a conversation took place, however this "is not what (he) recollects at all" and states that CDT Doolen admitted to drinking alcohol while in the article 10 board. I asked COL Mauldin if he characterized the board as an "alcohol board," his reply was "yes." COL Mauldin then re-stated three questions that were

**000425**

asked of CDT Doolen at the board hearing: Question 1) Were you drinking that night? CDT Doolen's answer was yes. Question 2) Did you go into N[Redacted PII] D[Redacted PII]'s room uninvited? CDT Doolen's answer was yes. Question 3) Did you leave the room when she asked? CDT Doolen did not leave the room and it was only after other Cadets became involved that he decided to leave.  COL Mauldin stated that alcohol was a contributing factor to all incidences.

V. INVESTIGATING OFFICER'S DIALOG WITH CDT William Majors.  CDT Majors has known for CDT Doolen for less than 3 months through Cadet Summer Training (CFT) at Camp Bucker.  CDT Majors was a Platoon Sergeant subordinate to CDT Doolen's Platoon.  CDT Major's stated that CDT Doolen's character/performance initially stood out during the train up as he witnesses CDT Doolen's late night preparation for ranges and scheduled training events. During their conversations he noted the substance of topics, his professionalism and was impressed with his intention of doing his assigned job right. He also noted that Doolen was very attentive to understanding the mission for preparation regardless of the time. He highlighted that a road march was the first leadership role of the summer where his actions stood out.  CDT Doolen had to change the route due to weather concerns, which lead to cynicism amongst the platoon.  He stated Doolen explained to his platoon circumstances surrounding the change and showed sympathetic towards their feelings. He did not observe any cynicism despite his personal situation nor did he complain. He used his personal situation to relate and tell stories during a SHARP briefing to his platoon.  CDT Majors stated that he is excited for the soldiers that Doolen will lead. I asked CDT Majors about his exposure to CDT Doolen outside of his training interaction.  His contact was minimal outside of a few words in passing. He also stated that he expects leaders to live honorably and to do the right thing. He believes that individuals who are unwilling to make corrections will break permanent trust, even just once. Being treated with disrespect would also lead to broken trust. He stated that  he has never observed Doolen consume alcohol. CDT Doolen asked about a conversation they had regarding alcohol. Major's recalled that with any amount of alcohol that Doolen drinks, his interactions with others should be extremely limited.  Doolen reminded CDT Majors that it is not safe for him to drink alcohol.

VI. INVESTIGATING OFFICER'S DIALOG WITH CDT Elliot Chal. CDT Chal has known Doolen for approximately 3 months through their time together at Camp Buckner. CDT Chal was Doolen's Company Commander.  The two became close during the detail.  He states that Doolen's weakest trait/value was that he had an attitude/aloofness. He also claims that this was not a problem because he would get tasks completed.  He states that Doolen was professional throughout the summer detail and that he never lost his temper, even though faced with short deadlines on occasion. Chal states that Doolen

2

embodies the Army values which not many people do. His definition of honorable living is always doing what is right and that it is expectation for leaders to live honorably. He would lose confidence in a supervisor if he is lied to about accountability/inventory. Those who do not show care, or look out for his subordinates would also results in a loss of confidence which is a "no go."

VII. INVESTIGATING OFFICER'S DIALOG WITH CDT Theodore Lipsky. CDT Lipsky has known Doolen for approximately 3 months. He was assigned as a PSG while Doolen was PL during Cadet Summer Training (CFT). He believes it is possible to live honorably despite past transgressions as long as improvements are made in order to eliminate them in the future. He states that Doolen's strongest value is loyalty. CDT Lipsky had full confidence in him because of his Platoon's performance. He states that he could improve the value of personal courage further explaining that he sometimes lacked confidence. Lipsky has not had interaction with Doolen outside of training. He believes that unethical behavior would give way to a break in trust and highlighted that officers are not above the regulation. He made a point to include that Doolen's additional development since May 13 was teaching himself about law and regulations in order to contest his current situation. During CFT is also noted that a squad member was rendered speechless at the transformation of Doolen. He feels that officers require credibility to stand in front of a formation and effectively lead subordinates. Losing trust in supervisor is the point at which he would lose confidence.

VIII. INVESTIGATING OFFICER'S DIALOG WITH MAJ Knoedler. MAJ Knoedler oversaw CDT Doolen for 2 weeks in June during summer training. Due to their minimal interaction he could not provide a full picture of Doolen's character. CDT Doolen accomplished all assigned tasks that he was given.

IX. INVESTIGATING OFFICER'S DIALOG WITH CDT Veronica Bryant. CDT Bryant has known CDT Doolen since 2012. This witness has known Doolen the longest. She stated that his strongest value is duty, from what she has heard since he has been back at the Academy. She stated a concern of hers' being that he was a loose cannon and stated that she would not want to go to combat with. Doolen "completely agreed to the loose cannon" remark. Doolen asked for specific regarding her loose cannon statement. Her reply was that "when drunk or angry he broke stuff", he "shouted out the window that his ex-girlfriend was a "whore". Her interactions with Doolen have been more negative than positive. She says that he does not embody the Army values. She has spent time off duty with Doolen. She has witnessed people having to break up shoving matches with him, to include an incident with CDT ███ She would not feel comfortable serving as one of his subordinates.

3

X. INVESTIGATING OFFICER'S DIALOG WITH MAJ Snyder.  MAJ Snyder has observed since June 2014 when CDT Doolen was assigned to his Company.  He states that CDT Doolen was focused on assigned missions. His interaction was minimal and did not observe enough to give feedback.

XI. INVESTIGATING OFFICER'S DIALOG WITH CDT Brandon Roy.  CDT Roy has known Doolen for 3 months.  CDT Roy noted Doolen's loyalty and he worked harder than any PL at CFT.  He says that Doolen communicated well.

XII. INVESTIGATING OFFICER'S DIALOG WITH CDT John Barnes.  CDT Barnes has regularly interacted with Doolen for the past 3 months. Prior to knowing Doolen, Barnes, has heard generally all negative and was concerned when he found out that Doolen was his Platoon Leader.  He was surprised when his interactions were not what he expected.  He says that personal courage is his strongest attribute.  He highlighted a story that Doolen had told him about his current situation. He stated that Doolen went home and learned law, the regulation in order to have the Undersecretary of the Army overturn the ruling.  He believes that Doolen now embodies the Army values whereas was questionable before.

XIII. INVESTIGATING OFFICER'S DIALOG WITH CDT Doolen. CDT Doolen provided a statement at the start of the hearing.  During his statement he also submitted the following exhibits: (Exhibit 3) Card 600 (General Alcohol Policy USCC SOP Chapter 6 alcohol, Drug, and Tobacco Use), USMA Form 2-3 (Record of formal proceedings specifically to his most recent article 10 board) and (Exhibit 3) the recollection of a telephone call that he had with COL Mauldin after the board took place.  CDT Doolen stated that no findings on form 2-3 found him guilty of an alcohol policy violation. His second exhibit included examples of what the regulation considers as alcohol policy violations, citing DWI, DUI as examples. CDT Doolen then highlighted points of how he has attempted to improve himself that included; quit consuming alcohol since October 2013, and sought counseling. He spent time on personal reflection, using his attorney as a mentor/guide and his performance at CFT (Exhibit 4,5,6).  He closed his opening statement asking, that given his performance that he not be found deficient if tried as an alcohol board. He believes that he is a much difference person and his performance at CFT has proved that.

I asked CDT Doolen several questions. Which Army value to you identify with least and why? He stated "personal courage" and explained that at times he should have stepped up but did not and times that he should have stepped down and didn't.  He continued by saying that there were "numerous occasions that it occurred," but feels it is imperative to live the Army values to be an officer in the Army.  I asked Doolen if honorable living is

4

necessary to the execution of duties as a commissioned officer. His response was "absolutely". My following question was, "as a Platoon Leader, how would you handle a DUI?" His answer was with a reprimand, an article 15, counseling, and a counseling session to explain why this type of behavior is not good for the Army. In terms of handling a domestic violence incident, he "would apply a lot of pressure, as it is absolutely unacceptable " and  that there "needs to be an established respect." He stated that this type of incident would lead to reprimand, article 15, UCMJ, and counseling. His thoughts on underage drinking were that it is not legal in this country, so it is not something that he would approve of. When asked if he would recommend a chapter for usage of illegal drugs, he stated it is completely unacceptable, and it is to the detriment of the military. When asked what the last class/seminar that he voluntarily attended in order to better himself, his response was the mandatory Mission Command Conference at USMA.  He mentioned that he also attended counseling to better understand how to better maintain his composure and attitude to relate to people. Some ways that he sought to better improve himself was through the mentorship of his attorney and through personal reflection. When asked what the most important trait of a leader was, his reply was that they have to be 100% empathetic with the ability to understand soldiers.

XIV. INVESTIGATING OFFICER'S DIALOG WITH CDT Doolen regarding confirmation of character statement memorandums, exhibits in support of his board challenge and witness list.  Cadet Doolen was asked whether he had any additional evidence to provide at the hearing, or requested any other witnesses.  He indicated that he did not.

XV. FINDINGS
(1) The preponderance of documentary evidence, testimony, statements and behavior incident indicate that CDT Doolen is found to be deficient. The disciplinary actions were properly constituted, reviewed and approved. The actions were not in excess of the guidelines established by the Maximum Table of Punishments in USCC Regulations 351-2.

(2) I recommend that the chain-of-command separate Cadet Doolen from the United States Military Academy immediately.

(3) My rationale is as follows: Cadet Doolen's actions and behavior is prejudicial to good order and discipline. His continual and willful disregard for the rules and regulations set forth by the United States Military Academy is a danger to everyone around him. His rehabilitative efforts were minimal over the past year, signaling he did not truly seek character change to the betterment of himself.  CDT Doolen has not fully taken responsibility for his actions involving the consumption of alcohol.  He does not

000429

show that he realizes or understands that he has put himself in situations where his character is being called into question.  Instead he focuses on irrelevant and meaningless issues to prove his point.  He does not understand that his attitude and demeanor plays a substantial part of his leader development. Cadet Doolen's actions are self-serving and disrespectful. He exploits or mischaracterizes most situations for his advantage. This observation is not a criticism of Cadet Doolen's privilege to exercise his civil rights; instead it is about his lack of maturity and his commitment to selfless service in the profession of arms.  If Cadet Doolen is allowed to remain at the United States Military Academy and be commissioned, his impulsivity and lack of self-control will put Soldiers, mission and the Army at great risk. Cadet Doolen does not possess the character traits that are essential to lead America's sons and daughters.

Enc

NICHOLAS R. FORLENZA
CPT (P), SC
Investigating Officer

1. Exhibit 1 (USMA Form 2-3)
2. Exhibit 2 (Dialogue)
3. Exhibit 3 (Card 600)
4. Exhibit 4 (USMA Chaplain Visit)
5. Exhibit 5 (PDR)
6. Exhibit 6 (PDR)
7. Exhibits 7 (11 Character References)

6

000430



**Edward Williams**

| | |
|---|---|
| **From:** | Forlenza, Nicholas CPT MIL USA USMA <Nicholas.Forlenza@usma.edu> |
| **Sent:** | Wednesday, August 20, 2014 3:26 PM |
| **To:** | Doolen, Isiah M. CADET MIL USA USMA |
| **Cc:** | Edward Williams; Elin Frey; Schneider, Alexander MAJ MIL USA USMA |
| **Subject:** | RE: Col Mauldin's decision regarding my brigade board |
| **Attachments:** | SKMBT_36114082015180.pdf |

CDT Doolen,

Attached is USMA Form 2-3 applicable to your last board proceeding. Additionally, I have a copy of your file if would like to pick it up from my office.

Nicholas R. Forlenza
Captain, Signal Corps
Deputy, Accessions / Branch Representative (Operations Support) Department of Military Instruction (WH 4129) United States Military Academy, West Point

Office: (845) 938-4804
Cell: (845) 667-7352

nicholas.forlenza@usma.edu
nicholas.r.forlenza.mil@mail.mil

USMA Signal Corps Information Portal
USMA Military Intelligence Information Portal

-----Original Message-----
From: Doolen, Isiah M. CADET MIL USA USMA
Sent: Wednesday, August 20, 2014 3:08 PM
To: Forlenza, Nicholas CPT MIL USA USMA
Cc: Edward Williams; Elin Frey; Schneider, Alexander MAJ MIL USA USMA
Subject: Col Mauldin's decision regarding my brigade board

CPT Forlenza,

I authorize the release of my Form 2-3/Col Mauldin's decision for my brigade board to both Mr. Edward Williams and Ms. Elin Frey. Thank you.

Very Respectfully,

Cadet Isiah Doolen

000431

USMA FORM 2-3; NOT for use in summarized proceedings

## RECORD OF FORMAL PROCEEDINGS UNDER ARTICLE 10, CADET DISCIPLINARY CODE

Level of Proceeding(check one):   Company ☐   Battalion ☐   Regimental ☐   Brigade ☑

*SEE NOTES ON REVERSE BEFORE COMPLETING FORM*

| a. Cadet Name (Last, First, MI) | b. Class | c. SSN | d. Unit | e. Corps Squad/DCA Club: Yes   No |
|---|---|---|---|---|
| DOOLEN, ISAIAH | 2015 | 7694 | H2 | Notification sent?  YES  NO |

**NOTIFICATION:**

1. I am considering whether you should be punished under Article 10, CDC, for the following misconduct:

On or about 8 May 2013 you were believed to be under the influence of alcoholic beverages and without authorization, entered a barracks room known by you to be occupied by female cadets and thereafter became engaged in a verbal and physical altercation with one of the female cadets and attempted to physically prevent her from exiting her room.

Article 1. Failure to comply with Regulations, Orders, and Instructions *Dme*
Article 6. Unsatisfactory Behavior *R mR*
Article 7. Error in Judgment *2 nR*

2. You have several rights under this Article 10 proceeding. First I want you to understand I have not yet made a decision whether or not you will be punished. I will not impose punishment unless I am convinced by a preponderance of the evidence that you committed the offense(s). You may request a person to speak on your behalf. You may present witnesses or other evidence to show why you shouldn't be punished at all (matters of defense) or why punishment should be very light (matters of extenuation and mitigation). I will consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose. 2//MAX Punishment = 35 Demerits, 100 Hours, 90 days Withdrawal of Privileges, 60 days of Restriction, Reduction in Rank to one or more lower ranks. *R m2*

3. Your hearing will proceed on _____ (date/time/location; at least 48 hours) You have until then to prepare any matters for your defense 3/

| DATE: *16 Jun 14* | NAME, GRADE, AND ORGANIZATION OF COMMANDER (OR DESIGNATED REPRESENTATIVE) | SIGNATURE |
|---|---|---|
| TIME: *0707* | Aaron Haynes, SFC, USA, TAC NCO, CO H2 | |

**HEARING:**

3. Having been afforded the opportunity to prepare for this hearing, my decisions are as follows: (initial appropriate blocks, date, and sign)

a. A person to speak on my behalf *Q rn Dm2* Is requested   *Dm* Is not requested.

b. Matters in defense, mitigation, and/or extenuation:   ☐ Are not presented   *Dm* Will be presented in person ☐   ☐ Are attached.

| DATE | NAME AND GRADE OF CADET | SIGNATURE |
|---|---|---|
| *06 -10-14* | Isaiah Doolen, CDT, CO H2, CL 2015 | *Q m* |

**IMPOSITION OF PUNISHMENT:**

4. In this hearing, all matters presented in defense, mitigation, and/or extenuation, having been considered, the following punishment is imposed: 4/

a. ___ Admonition/Reprimand   b. *80* Extra-Duty(hours)   c. *60* Restriction (Days)   d. Reduction in Rank to: *PFC* (rank)   e. Other *5LDP*

f. Withdrawal of Privileges: (circle one) (ALL) or ___ AS SPECIFIED: _____ for *90* days.

g. Suspension (paragraph(s)): _____ ; to be automatically remitted if not vacated before _____ (date) 5/

5. You are advised of your right to appeal to the Commandant within 3 calendar days. An appeal made after that time may be rejected as untimely. Punishment is effective immediately unless otherwise stated above.

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| *23 Jun 14* | Nick S. Mauldin, COL, FA, Brigade Tactical Officer | |

**APPEAL:**

6. (initial appropriate block, date, and sign)

a. *hm* I do not appeal   b. ☐ I appeal and do not submit additional matters. 6/   c. ☐ I appeal and submit additional matters. 6/

| DATE | NAME, GRADE OF CADET | SIGNATURE |
|---|---|---|
| *23 JUN 14* | Isaiah Doolen, CDT, CO H2, CL 2015 | *Q m* |

7. After consideration of all matters presented in appeal, the appeal is:   ☐ Denied   ☐ Granted as follows: 7/

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| | Richard D. Clarke, BG, USA, Commandant of Cadets | |

8. I have seen the action taken on my appeal. | DATE | SIGNATURE |

9. ALLIED DOCUMENTS AND/OR COMMENTS. 8/ 9/

USMA Form 2-3 (Aug 99)

000432



Per our telephone conversation, please see the following:

1)      My best recollection, of the 23JUN14 Brigade Board, is that the BTO found that I was not inebriated the night of 08 May 2013 and that I did not block CDT N████ D████ from leaving the room. He stated to the effects of "Based on the evidence presented, I do not believe that you were inebriated, but you did admit to consuming alcohol." Secondly, he stated to the effects of "You are not admitting that you prevented CDT N████ D████ from leaving her room. I will inquire more as whether that was the case, but currently the evidence does not support the fact that you did prevent CDT N████ D████ from leaving the room."

E x h i b i t 1

**CARD 600 – General Alcohol Policy USCC SOP Chapter 6 Alcohol, Drug, and Tobacco Use**
4. Condoning.
a. Chain of Command members of a cadet suspected of committing an <u>alcohol-related offense</u> (e.g. DWI, DUI, DWAI, underage drinking, *serious misbehavior while intoxicated*) must take action to investigate the allegation and are required to report the incident up the chain of command to the Company/Regimental Tactical Officer



CARD ????? 1. **General.** This chapter provides guidance, sets forth requirements, and establishes standards consistent for maintenance of a healthy and responsible command climate regarding the use of alcohol, drugs, and tobacco. Cadets must use mature judgment in their decisions to use alcohol, drugs, and tobacco.

3. **Alcoholic Beverages**.
a. Army policy emphasizes responsible behavior concerning alcohol consumption. Soldier who abuse or misuse alcohol degrade their effectiveness as leaders and seriously jeopardize their careers. Alcohol is a drug that can become habit-forming and detrimental to one's health. The decision to consume alcohol requires careful consideration and safety awareness. It is the duty of military leaders to act responsibly and provide for the proper health, welfare, and training of subordinates. Accordingly, at any function at which alcohol is served, non-alcoholic beverages must also be served in adequate quantities. The United States Military Academy does not condone illegal alcohol consumption, possession, or trafficking.
*b. Laws and Social Mores. Society has established specific laws to regulate the use of alcohol and related offenses due to the serious nature of alcohol use. Cadets are subject to New York State law. When in doubt, the best course of action is to refrain from alcohol consumption.*

*(1) Cadets assume full responsibility for all improper behavior and consequences as a result of their decision to consume alcohol.* Cadets cannot blame improper conduct or displays of poor judgment on alcohol impairment. Cadets must understand that the responsibilities of an impending duty demand their total attention and ability to make sound decisions without impairment. A leader's judgment and self-control become subject to question and compromise after any amount of alcohol is consumed.
(2) *Cadets will comply with state and local laws regarding possession, consumption, purchase, and trafficking of alcohol.*
(3) Misconduct associated with any alcohol-related offense is a serious issue. *Alcohol related misconduct, (e.g. DWI, DUI, DWAI, underage drinking , serious misbehavior) may be considered for appropriate action under the Cadet Disciplinary Code. In the most egregious circumstances, action under the Uniform Code of Military Justice may be applicable. A cadet who receives two Article 10s for alcohol-policy violations, as defined in this chapter, will undergo a Conduct Review, which could lead to a Conduct Investigation and potential separation from the Academy (see USCC REG 351-1 and 351-2).*

**CARD 601 – Alcohol Policy Geographic Limits and Definitions USCC SOP Chapter 6 Alcohol, Drug, and Tobacco Use**
1. **General Alcohol Policy Definitions:**
a. West Point Military Reservation: The geographical boundaries of the reservation are printed on the West Point and Vicinity Map, Series V821S, 1:25,000, Constitution Island, Thayer Hotel, Round Pond, Lake Frederick, Camp Buckner, ranges, picnic areas, cadet and post parking lots, etc.
b. Alcohol: a beverage with any percentage of alcohol content.
c. Drinking: consuming alcohol as evidenced by behavior, odor, or other indications.
e. *Under the Influence: having lost some possession of faculties, as evidenced by poor conduct, statements, or any impairment of one's ability to function normally*

**CARD 603 – Prohibited Alcohol Consumption Guidelines USCC SOP Chapter 6 Alcohol, Drug, and Tobacco Use**

l. **Prohibited Circumstances and Locations for Alcohol Possession and Consumption**. Cadets may not possess or store alcoholic beverages in the barracks, any academic building, or privately owned vehicle (POV) parked on West Point grounds. Cadets may not consume alcoholic beverages:

☐ For at least eight hours prior to assuming any duty (formation, class, drill, parade, guard, duty officer, escort, athletic team, CCQ, usher, etc.) through the completion of the tour of duty.

000435

# West Point - The U.S. Milit...

## USMA Command Chaplain Visit

United States Militray Academy at West Point Chap
Sherer presents a coin to Cadet Lt. Isiah Doolen fo
leadership and dedication to his fellow Soldiers foll
exercise, July 22, 2014. Cadet Field Training is con
the summer at West Point in order to learn and hor
and leadership skills of the cadets. (U.S. Army phot
Bratt, 138th PAD)

000436



# UNITED STATES MILITARY ACADEMY
# WEST POINT

## *Periodic Development Review*

| Not Observed (N/O) | | Effective (3) | |
| --- | --- | --- | --- |

| 2014 | H2 | MD300 | CFT Co 6 Plt 4 | CFT PL | | DOOLEN, ISIAH MATTHEW | 2015-0 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Graduating Class | AY Co | Course / Detail | Unit (ie. CD/PLT/SQD ) | Position | | CDT's Last Name, First Name | Acad Year/Term |
| Tac | Final | MADN-BSL | | MAJ | | ZIEGELHOFER, MICHAEL | 20140714 |
| Report Type | Initial / Mid-Term / Final | Evaluator Unit / Department | Evaluator Position | Evaluator Rank | | Evaluator (Last Name,First Name) | Report Date |

*Attributes: Traits that enable the core leader competencies to be performed with greater effect.*  *Competencies: Traits that provide a clear and consistent way of conveying expectations.*

| Character: Factors internal to a leader that constitute an individual's core. | Rating | | | | | | Sustain and Improve comments - Minimum one Sustain and one Improve; Justify with demonstrated action and plan of action |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Army Values (AV): Lives, acts and teaches Loyalty, Duty, Respect, Selfless-Service, Honor, Integrity, Personal Courage | N/O | 1 | 2 | 3 | ☒ | S-AV | Develope the Army Values in other individuals through mentoring, teaching, and leading by example in all aspects of their life and their subordinates lives. |
| Empathy (EM): Able to see something from another person's point of view; identifies with and enters into another person's feelings and emotions | N/O | 1 | 2 | 3 | ☒ | | |
| Warrior Ethos/Service Ethos (ET): Shares attitudes and beliefs that embody the spirit of the Army profession for Soldiers and Army Civilians alike. | N/O | 1 | 2 | 3 | ☒ | I-EM | Shows ability to genuinely relate to others' situations, motives, and feelings and makes an consistent effort to see events and circumstances from another person's point of view. |
| Discipline (DI): Controls own behavior according to Army values; obeys and enforces good orderly practices; does what is morally, legally and ethically right | N/O | 1 | 2 | 3 | ☒ | | |
| Presence: Leader's outward appearance, demeanor and actions | Rating | | | | | | Sustain and Improve comments - (Minimum one Sustain and one Improve; Justify with demonstrated action and plan of action |
| Military and Professional Bearing (MB): Projects a commanding presence and professional image of authority | N/O | 1 | 2 | 3 | ☒ | S-RE | Maintains composure in front of superiors, peers, and subordinates while under stress or adversity. |
| Physical Fitness (PF): Has sound health, strength, and endurance that supports one's emotional health and conceptual abilities under stress | N/O | 1 | 2 | ☒ | 4 | | |
| Confidence (CN): Projects self-confidence and certainty; demonstrates composure and poise; calm and collected; possesses self control of emotions | N/O | 1 | 2 | 3 | ☒ | I-PF | Ensures sufficient sleep on most nights.  Maintains appropriate body composition. Able to apply physical abilities over an extended period of time. |
| Resilience (RE): Shows a tendency to recover quickly from setbacks, shock, adversity, stress or injury while maintaining a mission and organizational focus | N/O | 1 | 2 | 3 | ☒ | | |
| Intellect: Leader's conceptual abilities and effectiveness | Rating | | | | | | Sustain and Improve comments - Minimum one Sustain and one Improve; Justify with demonstrated action and plan of action |
| Mental Agility (MA): Flexible of mind; anticipates or adapts to ever-changing conditions; improvises; able to apply multiple perspectives and approaches | N/O | 1 | 2 | ☒ | 4 | S-SJ | Able to form sound opinions, make sensible decisions, and reliable guesses that are beyond that of their peers. |
| Innovation (IN): Able to introduce new ideas based on opportunity or challenging circumstances; original in thoughts and ideas; creative | N/O | 1 | 2 | 3 | ☒ | | |
| Expertise (EX): Possesses facts, beliefs, and logical assumptions in relevant areas; technical, tactical, cultural and geopolitical knowledge | N/O | 1 | 2 | ☒ | 4 | | |
| Sound Judgment (SJ): Assesses situations and draws feasible conclusions; makes sound and timely decisions | N/O | 1 | 2 | 3 | ☒ | I-MA | Able to identify the second- and third-order effects when current actions do not produce the desired results. |
| Interpersonal Tact (IT): Has capacity to understand interactions with others; aware of how others see you and how to interact with them effectively | N/O | 1 | 2 | 3 | ☒ | | |
| Lead: Application of character, presence, intellect and abilities toward a common goal | Rating | | | | | | Sustain and Improve comments - Minimum one Sustain and one Improve; Justify with demonstrated action and plan of action |
| Leads by Example (LE): Provides the example to others; serves as a role model; maintains high standards in all aspects of behavior and character | N/O | 1 | 2 | ☒ | 4 | S-EI | Possesses a strong sense of when and when not to influence beyond the chain of command. |
| Leads Others (LO): Motivates, inspires, and influences others to take initiative, work toward a common goal, and accomplish critical tasks and missions | N/O | 1 | 2 | ☒ | 4 | | |
| Builds Trust (BT): Empowers subordinates, encourages initiative, reinforce accountability and allows open communication | N/O | 1 | 2 | ☒ | 4 | I-BT | Communicates openly with others but does not always seek out individuals in informal discussion. |
| Extends Influence Beyond CoC (EI): Influences others outside CoC; involves indirect means of influence; diplomacy, negotiation, conflict resolution and coordination | N/O | 1 | 2 | 3 | ☒ | | |
| Communicates (CM): Clearly expresses ideas to ensure understanding, actively listens to others, and employs effective communication techniques | N/O | 1 | 2 | 3 | ☒ | | |
| Develops: Fosters team work, initiative, and accepts personal responsibility | Rating | | | | | | Sustain and Improve comments - Minimum one Sustain and one Improve; Justify with demonstrated action and plan of action |
| Creates a Positive Environment (PE): Establishes and maintains positive expectations/attitudes to support effective work behaviors, relationships and organization | N/O | 1 | 2 | ☒ | 4 | S-PS | Applies logic and reason to make decisions and removes emotions from decision making. |
| Prepares Self (PS): Conducts self-study; aware of their limitations and strengths and seek self-development; continues to improve and prepare for leadership roles | N/O | 1 | 2 | 3 | ☒ | | |
| Develops Others (DO): Encourages and supports others to grow as individuals and teams; prepares others for success; makes the organization versatile and productive | N/O | 1 | 2 | ☒ | 4 | | |
| Stewards the Profession (SP): Acts to improve the organization beyond their own tenure and supports developmental opportunities for subordinates | N/O | 1 | 2 | ☒ | 4 | I-DO | Sustains the relationships among team or group members, but does not always facilitate the development of new relationships to address internal team issues. |
| Achieves: Sets objectives / focuses on mission accomplishment | Rating | | | | | | |
| Gets Results (GR): Consistently produces results; develops and executes plans while providing direction, guidance and clear priorities towards mission accomplishment | N/O | 1 | 2 | 3 | ☒ | | |

Superb effort as a PL at CFT.  Number 2 of 4 cadets in this position.  Resilience and dedication to self-improvement stood out.  High potential.

| Most Qualified | ☒ |
| --- | --- |
| Qualified | ☐ |
| Not Qualified | ☐ |

General Comments (Optional)

Evaluator Signature    Rated Cadet Signature

Reference ADRP 6-22, Army Leadership, August 2012

000457



UNITED STATES MILITARY ACADEMY
# WEST POINT.

## *Periodic Development Review*

| Not Observed (N/O) | | Effective (3) | |
|---|---|---|---|

| 2014 | H2 | MD300 | CFT Co 6 Plt 4 | CFT PL | DOOLEN, ISIAH MATTHEW | 2015-0 |
|---|---|---|---|---|---|---|
| Graduating Class | AY Co | Course / Detail | Unit (ie. CO/PLT/SQD) | Position | CDT's Last Name, First Name | Acad Year/Term |
| CoC | Final | B3 | CFT CO CDR | CDT | CHAL, ELLIOT DRYDEN COLE | 20140724 |
| Report Type | Initial / Mid-Term / Final | Evaluator Unit / Department | Evaluator Position | Evaluator Rank | Evaluator (Last Name,First Name) | Report Date |

Attributes: Traits that enable the core leader competencies to be performed with greater effect.    Competencies: Traits that provide a clear and consistent way of conveying expectations

| **Character:** Factors internal to a leader that constitute an individual's core. | | Rating | | | | | Sustain and Improve comments - Minimum one Sustain and one Improve: Justify with demonstrated action and plan of action |
|---|---|---|---|---|---|---|---|
| Army Values (AV): Lives, acts and teaches Loyalty, Duty, Respect, Selfless-Service, Honor, Integrity, Personal Courage | N/O | 1 | 2 | 3 | X | S-AV | properly conducted himself at all times |
| Empathy (EM): Able to see something from another person's point of view; identifies with and enters into another person's feelings and emotions | N/O | 1 | 2 | 3 | X | | |
| Warrior Ethos/Service Ethos (ET): Shares attitudes and beliefs that embody the spirit of the Army profession for Soldiers and Army Civilians alike. | N/O | 1 | 2 | 3 | X | I-ET | work on developing yourself as a professional warrior. |
| Discipline (DI): Controls own behavior according to Army values; obeys and enforces good orderly practices; does what is morally, legally and ethically right | N/O | 1 | 2 | 3 | X | | |

| **Presence:** Leader's outward appearance, demeanor and actions | | Rating | | | | | Sustain and Improve comments - (Minimum one Sustain and one Improve; Justify with demonstrated action and plan of action |
|---|---|---|---|---|---|---|---|
| Military and Professional Bearing (MB): Projects a commanding presence and professional image of authority | N/O | 1 | 2 | 3 | X | S-RE | he did not let his past set backs effect his performance. |
| Physical Fitness (PF): Has sound health, strength, and endurance that supports one's emotional health and conceptual abilities under stress | N/O | 1 | 2 | 3 | X | | |
| Confidence (CN): Projects self-confidence and certainty; demonstrates composure and poise; calm and collected; possesses self control of emotions | N/O | 1 | 2 | 3 | X | I-CN | trust yourself and understand that other may not comprehend your intent |
| Resilience (RE): Shows a tendency to recover quickly from setbacks, shock, adversity, stress or injury while maintaining a mission and organizational focus | N/O | 1 | 2 | 3 | X | | |

| **Intellect:** Leader's conceptual abilities and effectiveness | | Rating | | | | | Sustain and Improve comments - Minimum one Sustain and one Improve: Justify with demonstrated action and plan of action |
|---|---|---|---|---|---|---|---|
| Mental Agility (MA): Flexible of mind; anticipates or adapts to ever-changing conditions; improvises; able to apply multiple perspectives and approaches | N/O | 1 | 2 | 3 | X | S-EX | was tactically proficient both in and out of the field |
| Innovation (IN): Able to introduce new ideas based on opportunity or challenging circumstances; original in thoughts and ideas; creative | N/O | 1 | 2 | 3 | X | | |
| Expertise (EX): Possesses facts, beliefs, and logical assumptions in relevant areas; technical, tactical, cultural and geopolitical knowledge | N/O | 1 | 2 | 3 | X | | |
| Sound Judgment (SJ): Assesses situations and draws feasible conclusions; makes sound and timely decisions | N/O | 1 | 2 | 3 | X | I-MA | work on not allowing other to perceive a false impression of you |
| Interpersonal Tact (IT): Has capacity to understand interactions with others; aware of how others see you and how to interact with them effectively | N/O | 1 | 2 | 3 | X | | |

| **Lead:** Application of character, presence, intellect and abilities toward a common goal | | Rating | | | | | Sustain and Improve comments - Minimum one Sustain and one Improve: Justify with demonstrated action and plan of action |
|---|---|---|---|---|---|---|---|
| Leads by Example (LE): Provides the example to others; serves as a role model; maintains high standards in all aspects of behavior and character | N/O | 1 | 2 | 3 | X | S-LE | set and maintained a high standard for his platoon |
| Leads Others (LO): Motivates, inspires, and influences others to take initiative, work toward a common goal, and accomplish critical tasks and missions | N/O | 1 | 2 | 3 | X | | |
| Builds Trust (BT): Empowers subordinates, encourages initiative, reinforce accountability and allows open communication | N/O | 1 | 2 | 3 | X | | |
| Extends Influence Beyond CoC (BI): Influences others outside CoC; involves indirect means of influence: diplomacy, negotiation, conflict resolution and coordination | N/O | 1 | 2 | 3 | X | I-CM | always to continue to improve your communication skills |
| Communicates (CM): Clearly expresses ideas to ensure understanding, actively listens to others, and employs effective communication techniques | N/O | 1 | 2 | 3 | X | | |

| **Develops:** Fosters team work, initiative, and accepts personal responsibility | | Rating | | | | | Sustain and Improve comments - Minimum one Sustain and one Improve: Justify with demonstrated action and plan of action |
|---|---|---|---|---|---|---|---|
| Creates a Positive Environment (PE): Establishes and maintains positive expectations/attitudes to support effective work behaviors, relationships and organization | N/O | 1 | 2 | 3 | X | S-PE | he created and maintained an excellent attitude and work ethic with his platoon |
| Prepares Self (PS): Conducts self-study; aware of their limitations and strengths and seek self-development; continues to improve and prepare for leadership roles | N/O | 1 | 2 | 3 | X | | |
| Develops Others (DO): Encourages and supports others to grow as individuals and teams; prepares others for success; makes the organization versatile and productive | N/O | 1 | 2 | 3 | X | | |
| Stewards the Profession (SP): Acts to improve the organization beyond their own tenure and supports developmental opportunities for subordinates | N/O | 1 | 2 | 3 | X | I-SP | take the extra time you have been give to further develop yourself |

| **Achieves:** Sets objectives / focuses on mission accomplishment | | Rating | | | | | |
|---|---|---|---|---|---|---|---|
| Gets Results (GR): Consistently produces results; develops and executes plans while providing direction, guidance and clear priorities towards mission accomplishment | N/O | 1 | 2 | 3 | X | | |

Doolen overcame great diversity before and during this detail. he wasted no time getting back into the swing of things. his performance was phenomenal during this detail. his platoon out performed the other platoons on a daily basis.

| | |
|---|---|
| Most Qualified | X |
| Qualified | |
| Not Qualified | |

General Comments (Optional)                     Evaluator Signature                     Rated Cadet Signature

Reference ADRP 6-22, Army Leadership. August 2012



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10997-1779**

MACC-USCC-F3                                          21 August 2014

MEMORANDUM FOR: Whom it May Concern

SUBJECT: Character Statement for CDT Doolen, Isaiah, M.

1. Purpose: The purpose of this memorandum is to describe my impression of CDT Doolen.

2. Background:  I was CDT Doolen's Cadet Field Training Tactical Officer this past summer.  He served as a platoon leader in the company.

3. Character Impression:

    a.  CDT Doolen was a great platoon leader at Cadet Field Training.  He was very clearly one of the top two best in our company, and stood out amongst the rest of his peers at Camp Buckner.  He earned words like this from me, all while operating under tremendous pressure and angst.  I could tell he was struggling with these feelings (brought on by his questionable standing with West Point) only when we spoke one on one. He selflessly put those emotions and troubles to the side to the benefit of his platoon at all other times.

    b.  CDT Doolen earned the trust of his peers, superiors, and subordinates alike this summer with his willingness to share any burden, thoughtful insights, and above average interpersonal skills.  An assessment based solely on his performance this summer would suggest that CDT Doolen has incredible potential to be a great officer – the kind of officer I would be proud to serve with.

4. The point of contact for this memorandum is the undersigned at x2902 or email: michael.ziegelhofer@usma.edu.

MIKE ZIEGELHOFER
MAJ, AR
USCC, F3

000439



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10997-1779**

MACC-USCC-G-1                                        19 August 2014

MEMORANDUM FOR: Authorities of Witness Hearing and Review Board

SUBJECT: Character Testament for Cadet Isiah Doolen, Company H-2

1. The purpose of this memorandum is to provide a testament for Cadet Isiah Doolen's Character and Performance.

2. I have known Cadet Isiah Doolen since 17 JUN 14. I have interacted with Cadet Doolen in both personal and professional settings, and believe that I can give a fair testament to his character and performance with no bias, or reserve. Cadet Doolen and I worked together as platoon leader and platoon sergeant for the duration the CFT II leadership detail.

3. Throughout the detail CDT Doolen at once demonstrated admirable empathy for his soldiers and a commitment to performance not to, but well above the standard. CDT Doolen consistently represented his subordinates. interests to company leadership. From working with him it was clear to me that he objected to and questioned guidance only when it hurt the platoon, despite the fact that it may have benefited his military grade to simply cooperate. However, he never pushed his point to an inappropriate extent and demonstrated due respect both to the judgment of the TAC Team and Company Leadership. In turn, CDT Doolen put pressure on his unit to win at everything they did. Though these expectations were well above the baseline for CFT, he communicated them in a way that inspired an intense desire to obey, such that the platoon came to respect and like CDT Doolen, which greatly assisted in sustaining high morale during the final exercises (which in turn improved overall unit performance). As his platoon sergeant, he constantly solicited my advice and would adjust his plans to account for my input – though I never doubted who was in charge and recognized he consistently made timely decisions, a quality becoming of a platoon leader. The same respect he applied to me he also extended to our squad leaders, who performed extraordinarily. All of this resulted in our platoon performing the best in the company.

Though I do not know much about CDT Doolen's history at the academy prior to his performance this summer, he communicated that he was still struggling to get past some anger issues and had a deeply flawed disciplinary record. What impressed me throughout the detail was his effort to resolve these issues and his willingness to seek help and counsel. He came to me to discuss how I ought to be the disciplinarian so that he did not have to get upset with the platoon. He routinely would ask how he best should've reacted to a difficulty earlier that day,

**000440**

and I saw that he took my advice and adjusted over the course of our six weeks together, such that by the end of the detail he was a success story of admirable self control. I came to learn he had quit drinking and had been working on this more generally for months and months. Generally speaking, the CDT Doolen I know is sensitive to criticism and extraordinarily pro-active about self improvement. It is the same determination that brought him back to the academy that governs this self-improvement.

4.   As a result of these observations, I must conclude with full confidence that CDT Doolen is worthy of being an officer in the U.S. Army. His humility, empathy, technical expertise, resilience and physical fitness combine such that if given the chance, CDT Doolen will no doubt succeed as an Armor officer. He will not only succeed tactically, but he will succeed as a leader of men and women, deserving of his commander's confidence and his subordinates' trust. He may have an imperfect history, and imperfect self control, but I know of few people more dedicated to improving and redeeming themselves. He is so dedicated not only for his own benefit, but more importantly so that he can in turn seek to improve the lives of those he leads. Having come to know him through six weeks of close-quarters teamwork, this is my honest and full-hearted assessment.

5.   The point of contact for this memorandum is the undersigned at email: theodore.lipsky@usma.edu, Cell: (718)-924-3299. Please feel free to contact me if there are any further questions. Thank you for your time.

Theodore S. Lipsky
CDT Sergeant, 2016
USCC, F-1



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10997-1779**

MACC-USCC-H-1                                                    19 August 2014

MEMORANDUM FOR: Authorities of Witness Hearing and Review Board

SUBJECT: Character Testament for Cadet Isaiah Doolen, Company H-2

   1.  The purpose of this memorandum is to provide a testament for Cadet Isaiah
       Doolen's Character and Performance.

   2.  I have known Cadet Isaiah Doolen since the start of my CFT LTP this past
       summer. I have interacted with Cadet Doolen in both personal and professional
       settings, and believe that I can give a fair testament to his character and
       performance with no bias, or reserve. Cadet Doolen was my Platoon Leader and I
       was one of his squad leaders. We lived in the same bay and I lived in the bunk next
       to him for over a month.

   3.  Cadet Doolen was among the best of leaders I have met at the Academy. He had
       truly shaped my leadership style in a positive way and gave my leadership detail
       even more purpose. In terms of final performance, Cadet Doolen led our platoon to
       be best in 6th Company. His incredible depth of tactical knowledge was part of the
       reason for our success but maybe an even more important factor for our success
       was his SOLDID character and leadership style. When you live with someone for
       over a month you learn a lot about them personally. Isaiah described some of the
       trouble he'd been in at the academy however I could never imagine that based on
       the man he is today. It's obvious he put a lot of effort into recovery; and like a
       broken bone, he healed stronger. CDT Doolen also was incredibly positive. He
       almost always had a smile on and was able to take sucky situations and make them
       work in our favor and to our success. There were times when he got frustrated at
       CFT, as all humans do. The one difference was the way he dealt with any issues
       was he never took it out on anyone. He always caught himself and resolved the
       conflict for himself and, to me, which shows a testament to his maturity and
       character.

   4.  Cadet Doolen has an incredibly bright future in the Army. His leadership style is
       one that I aspire to have. One of a hardworking, respectful, knowledgeable, and
       understanding leader. He is one of my role models and I believe he will be a role
       model for many more once he reaches the "Big Army", something which he has
       fought day in and day out to stay a part of.

5. The point of contact for this memorandum is the undersigned at email:
   joseph.frullaney@usma.edu, Cell: (845)-499-1174. Please feel free to contact me
   if there are any further questions.  Thank you for your time.

*Joseph M. Frullaney*

Joseph M. Frullaney
CDT Sergeant, 2016
USCC, H-1
Company Honor Representative
Company Class Representative



T POINT, NEW YORK 10997-1779

MACC-USCC-G-1                                                            20 August 2014

MEMORANDUM FOR: Authorities of Witness Hearing and Review Board

SUBJECT: Character Testament for Cadet Isaiah Doolen, Company H-2

1. The purpose of this memorandum is to provide a testament for Cadet Isaiah Doolen's Character and Performance.

2. I have known Cadet Isaiah Doolen since 18 June 2014. I have interacted with Cadet Doolen in both personal and professional settings, and believe that I can give a fair testament to his character and performance with no bias, or reserve. Cadet Doolen and I both served as Cadet Field Training Platoon Leaders for 6th Company of Task Force Parten.

3. As a fellow platoon leader Cadet Isaiah Doolen and I constantly talked and worked together for 6 weeks straight this past summer. On the very first day of LTP while other cadre were still filling in, I saw Cadet Doolen talking with the CO, 1SGT and XO trying to pull information if our priorities of work and tasks that needed to get done. He could have keep the information he gather to himself and let the other PL's fend for themselves but instead let us know what he found out. From that day until the last day of Cadet Field Training he continually worked harder and harder than the day before leading his men and making the best plans possible. Cadet Doolen planned out the wet and dry obstacle course days as well as the land navigation trainings which to myself and the rising yearlings seemed to be the most fluid and successful trainings we conducted as a company. Our land navigation training days, which are some of the hardest to plan and execute, were marked by proper and full accountability throughout the day without the need to send out emergency search teams or medical care. Our company was also one of the few who successfully completed the training in the time hacks established by the lane OIC. All of these accomplishments followed from the excellent planning completed by Cadet Isaiah Doolen.

4. After closely working with Cadet Isaiah Doolen over this past summer I am certain that he will be an excellent officer once he graduates from The United States Military Academy. One of the most important jobs that officers have is ensuring that their units are a tight knit, cohesive and well trained. During CFT large groups of Cadet Doolen's platoon would always be seen doing activities and hanging out together during white space time. In comparison cadets form my platoon only consistently hung out together and many times would disperse to hang with their friends in other companies. This shows the level of camaraderie and close knit atmosphere Cadet Doolen was able to instill in his unit. Cadet Doolen's platoon like any other group experienced cohesion pains as they stormed and normed to become a unit but these pains were quickly addressed and the unit's cohesion improved. On top of all of this, his unit was one of the highest performing in the company. When talking to OPFOR, his unit was usually mentioned as one of the units that impressed them or performed well in the lane. It is my belief that all of the previously stated is directly related to Cadet Doolen's presence as leader of the unit and I foresee the same if not better performance once he reaches his unit as a 2nd Lieutenant.

5. The point of contact for this memorandum is the undersigned at email: john.beck@usma.edu, Cell: (302)-312-9768. Please feel free to contact me if there are any further questions. Thank you for your time.

John L. Beck
CDT Lieutenant, 2015
USCC, E-2



DEPARTMENT OF THE ARMY
United States Military Academy
West Point, New York 10996

REPLY TO
ATTENTION OF

MACC–3–USCC                                                                                      19 August 2014

MEMORANDUM FOR RECORD

SUBJECT:  Character Statement for CDT Doolen

1. **Purpose.** The purpose of this memorandum is to describe my impression of CDT Doolen during Cadet
Field Training during the summer of 2014.

2. **Background.** I've known CDT Doolen since June 2014. We both were assigned to the same company
for Cadet Field Training. CDT Doolen was a Platoon Leader and I was the Headquarters Section Leader
in which I interacted with all the Platoon Leaders for various administrative or supply reasons.

3. **Character Impression:**

  a. CDT Doolen was always willing to help me out with my job despite his busy schedule during
CFT. I would go to him specifically when I needed information about his platoon or one of
his cadets. Doolen consistently either already knew the information and I could just copy it or
he would find out and would consistently be the first platoon leader to report back to me.

  b. CDT Doolen's interactions with his platoon were always professional. I constantly saw him
leading his platoon from the front, leading my example, and maintaining professional
relationships with his cadre subordinates as well as his trainee subordinates. The command
team of CDT Doolen and his Platoon Sergeant worked really well together. I would argue
that he was the best Platoon Leader in the company.

  c. It is obvious that CDT Doolen is well liked and nobody had any problem working with him.
He is easy to get along with and an excellent friend to have especially in stressful situations
such as CFT. CDT Doolen knows how to take a deep breath and think before acting. His
interpersonal skills make communication between the chain of command smooth and elegant.

  d. CDT Doolen would make a great officer in the United States Army. His loyalty to his
subordinates and hard work ethic brings credit to him. Graduating from this institution just
proves that West Point still commissions great officers and future officers.

4. **Point of Contact.** The POC for this memorandum is CDT Jason David at jason.david@usma.edu.

       Jason David
       CDT LT, USCC
       Respect Officer, Company D3



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10997-1779**

MACC-USCC-C-1                                              19 August 2014

MEMORANDUM FOR: Authorities of Witness Hearing and Review Board

SUBJECT: Character Testament for Cadet Isaiah Doolen, Company H-2

1. The purpose of this memorandum is to provide a testament for Cadet Isaiah Doolen's Character and Performance.

2. I have known Cadet Isaiah Doolen since 1 July 2014. I have interacted with Cadet Doolen as his subordinate, and believe that I can give a fair testament to his character and performance with no bias, or reserve. Cadet Doolen was a great platoon leader that made my Buckner experience fantastic.

3. Cadet Doolen's Character and Performance came to the forefront with his ability to relate and show the same amount of respect to everyone in his platoon. In return, this way of leadership made us want to perform to the best of our ability. There were many times where most of the platoon was tired and lacking motivation; however, Cadet Doolen used different types of leadership in which he could bring up morale without raising his voice or singling out any of his subordinates. Above all, Cadet Doolen would put his platoon before himself whether it be eating last in Okinawa or waiting until all the hot water was gone when he could finally conduct hygiene. Cadet Doolen is one of the main reasons as I reflect on Buckner that it was a positive experience that I gained knowledge and skills that I will carry with me throughout my Army career. I believe I can speak on behalf of 6th Company 4th Platoon when I say Cadet Doolen exceed any expectations for Cadet Leadership we had.

4.) Cadet Doolen's Leadership and Character Potential for the Army is limitless. I understand I do not have experience in the Army, but knowing how relatable Cadet Doolen is I can't find a situation that soldiers wouldn't want to follow or trust him. I know that if Cadet Doolen receives the opportunity to lead soldiers he will excel, and take full advantage of any opportunity that he is presented as he did everyday throughout Buckner.

5.) The point of contact for this memorandum is the undersigned at email: gunnar.miller@usma.edu, Cell: (585)-764-0212. Please feel free to contact me if there are any further questions. Thank you for your time.

Gunnar W. Miller
CDT Corporal, 2017
USCC, C-1

**000446**



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10997-1779**

MACC-USCC-G-1                                           19 August 2014

MEMORANDUM FOR: Authorities of Witness Hearing and Review Board

SUBJECT: Character Testament for Cadet Isaiah Doolen, Company H-2

1. The purpose of this memorandum is to provide a testament for Cadet Isaiah
   Doolen's Character and Performance.

2. I have known Cadet Isaiah Doolen since June 2014. I have interacted with Cadet
   Doolen in both personal and professional settings, and believe that I can give a fair
   testament to his character and performance with no bias, or reserve. Cadet Doolen
   and I were cadre for Cadet Field Training. He was one of my Platoon Leaders
   during the leadership detail. I had no idea of his past until he told me during a
   personal discussion. CDT Doolen had already completed a leadership detail to
   satisfy his graduation requirement, but this did not impact his attitude during the
   detail. He was a pleasure to work with always volunteering and helping no matter
   the task. He was very humble and worked well with his platoon sergeant.

3. Describe Cadet Doolen's Character and Performance, and support it with a reason
   for your judgment on his character and performance. CDT Doolen performed very
   well during my time with him. He was the best platoon leader in my company. He
   created a pleasant work environment that cultured learning and professionalism.
   He is very approachable and this allowed him to gain the trust of his platoon. Over
   the course of the detail, he was bombarded with multiple different tasks, but he
   never lost his composure. I was very impressed with the way that he conducted
   himself. He was able to effectively balance the tasks of being a platoon leader and
   his personal needs. Multiple times during the detail he was pulled to talk with his
   academic year tactical officer, but he never let the events that took place in those
   meetings affect his performance with his platoon.

4. Describe what Cadet Doolen's Leadership and Character Potential is for the Army.
   CDT Doolen had to overcome a great deal during the time I spent with him. He
   showed that he is resilient and a hard working individual. CDT Doolen has a great
   deal of potential and will be a proficient leader for the Army. His calm demeanor,
   willingness to learn, and hard work ethic will allow him to inspire soldiers.

5. The point of contact for this memorandum is the undersigned at email:
   Elliot.chal@usma.edu, Cell: (210)-683-8195. Please feel free to contact me if there
   are any further questions. Thank you for your time.

Elliot D.C. Chal
CDT Captain, 2015
USCC, B-3

000448



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10997-1779**

MACC-USCC-G-2                                                    19 August 2014

MEMORANDUM FOR: Authorities of Witness Hearing and Review Board

SUBJECT: Character Testament for Cadet Isaiah Doolen, Company H-2

1. The purpose of this memorandum is to provide a testament for Cadet Isaiah Doolen's Character and Performance.

2. I have known Cadet Isaiah Doolen since June 17th, 2014. I have interacted with Cadet Doolen in both personal and professional settings, and believe that I can give a fair testament to his character and performance with no bias, or reserve. Cadet Doolen and I successfully performed the task of being cadre for Cadet Field Training. He was the 4th Platoon leader in 6th Co. while I served as 2nd squad leader of 3rd platoon in 6th Co. We interacted with each other often throughout LTP and the CFT detail.

3. Describe Cadet Doolen's Character and Performance, and support it with a reason for your judgment on his character and performance.

    CDT Doolen genuinely cared about the development of his platoon throughout CFT. He was always concerned about their well-being and he worked hard for them. One instance, a member from my squad performed a task at an exceptional level- but I was unable to observe this being done. CDT Doolen observed this cadet in my squad and informed me of that cadet's excellent performance. This showed me that CDT Doolen didn't only care about his own platoon, rather, he cared about everyone he worked with. Also, anytime an issue arose between myself and a member of CDT Doolen's platoon, I would approach CDT Doolen and discuss the situation with him- he always handled himself in a very cool and calm manner. He listened to my concerns and helped in developing a solution.

4. Describe what Cadet Doolen's Leadership and Character Potential is for the Army
    If the Army misses the opportunity of retaining Cadet Doolen as a cadet and potentially as an officer, then the army will be missing out on a good man. CDT Doolen is a leader that is honorable, caring, approachable, and compassionate. From my experience with CDT Doolen, I have no reason to believe that he will be anything but beneficial to the Army.

5. The point of contact for this memorandum is the undersigned at email: christian.mapes@usma.edu, Cell: (420)-990-9720. Please feel free to contact me if there are any further questions. Thank you for your time.

Christian E. Mapes
CDT Sergeant, 2016
USCC, G-2

**000449**



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10996**

MACC-O-2                                                    19 AUGUST 2014

MEMORANDUM FOR: Whom it May Concern

SUBJECT: Character Statement for CDT ISIAH DOOLEN, 2014, H2

1. The purpose of this memorandum is to provide a character statement on behalf of CDT ISIAH DOOLEN.

2. I have known CDT DOOLEN since June 14, 2014. We spent the next six weeks living and interacting with each other during our CFT Cadre Detail. CDT DOOLEN was my platoon leader and I was one of his squad leaders. We endured and rose to many challenges over the next six weeks while leading the Class of 2017. I have interacted with CDT DOOLEN to the point where I know him more than well enough to judge his character.

3. CDT DOOLEN has one of the best character's I've seen from any cadet. He is always calm and relaxed. He does not panic in hard times or when things do not go as planned. Also he maintains his demeanor even when any other rational person would be highly upset. Additionally he maintains a positive environment and does not respond negatively to any criticisms, or when people treat him unfairly.

4. One event that demonstrates CDT DOOLEN's character is when he went above and beyond what was required of him during individual squad missions. He could have, like other platoon leaders stayed inside of the patrol bases but instead he came along with his squads. While on the missions he acted as a member of squad. CDT DOOLEN shared mutual hardships with his squads which allowed for another bonding experience with them. These events manifested more respect and willingness to follow CDT DOOLEN. Another event during CFT I can site is when CDT DOOLEN took command of handing out dinner. It was not our platoon's duty day nor had he eaten yet. On his volition, CDT DOOLEN decided to do so in order to help out the supply staff and. These events may seem small but these events mean a lot to me and other people who pay attention to the details of how their leadership behaves.

**000450**

5. Personally, CDT DOOLEN has taught me a lot. He had the heart and boldness to return to the academy. His return showed me a prime example of how to not give up on your dream and how the truth will shine through. He also proved to me that although life may be tough if you keep up your attitude and approach a situation in a positive light you can make it through. CDT DOOLEN has been the best leadership example I've had at the academy and I was a member of former CDT First Captain Lindsey Danilack's beast squad. His composure, the way he approaches situations and the way he communicates with others is extremely effective and inspires in me nothing but the desire to follow him. As a future officer, CDT DOOLEN would do the same with his subordinates.

6. The point of contact for this memorandum is the undersigned at (281)660-2553 or email: Alfred.mcquirter@usma.edu. Please feel free to contact me if there are any further questions.  Thank you for your time.

ALFRED L. MCQUIRTER JR.
CDT SGT, 2016
USCC, D1



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10997-1779**

MACC-USCC-G-1                                   19 August 2014

MEMORANDUM FOR: Authorities of Witness Hearing and Review Board

SUBJECT: Character Testament for Cadet Isaiah Doolen, Company H-2

1. The purpose of this memorandum is to provide a testament for Cadet Isaiah
   Doolen's Character and Performance.

2. I have known Cadet Isaiah Doolen since July, 2014. I have interacted with Cadet
   Doolen in both personal and professional settings, and believe that I can give a fair
   testament to his character and performance with no bias, or reserve. I had the
   privilege to be led by Cadet Doolen during my summer training at Camp Buckner
   where he was a very disciplined Platoon leader of mine who stood out as a
   passionate and dedicated leader with a commanding presence. This presence was
   created by his confidence, tactfulness, hard work ethic, and approachability.
   Although I have only known Isaiah Doolen for just a few months now, I feel
   obligated to speak on his behalf and to help you understand from a peer level that
   he is the type of "leader of character" we need in our Army today. In my time at
   Field Training with Cadet Doolen, I obtained a plethora of knowledge on his
   behalf. Through many simulated missions I watched "Lt. Doolen" make sound
   decisions and create ingenious, effective plans to crush the "OPFOR". He stayed
   an avid leader throughout the training and I am extremely lucky to have had him as
   a mentor. From my experience, since meeting Cadet Doolen, I have found that he
   is a man of loyalty, respect, and integrity. His probable contribution to the Army as
   an officer is immeasurable and I whole heartedly believe that I couldn't think of a
   better character to become a Second Lieutenant in the U.S. Army. Cadet Doolen is
   a remarkable leader who's ability to contribute limitlessly to the Corps and the
   Army is only limited by the opportunities provided to him.

3. The point of contact for this memorandum is the undersigned at email:
   Andrew.fargo@usma.edu, Cell: (858)-245-1043. Please feel free to contact me if
   there are any further questions.  Thank you for your time.


                                   Andrew N. Fargo
                                   CDT Corporal, 2017
                                   USCC, B4



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK 10997-1779**

MACC-USCC-D-2                                    19 August 2014

MEMORANDUM FOR: Authorities of Witness Hearing and Review Board

SUBJECT: Character Testament for Cadet Isaiah Doolen, Company H-2

1. The purpose of this memorandum is to provide a testament for Cadet Isaiah Doolen's Character and Performance.

2. I have known Cadet Isaiah Doolen since 16JUN2014. I have interacted with Cadet Doolen in both personal and professional settings, and believe that I can give a fair testament to his character and performance with no bias, or reserve. Cadet Doolen and I were both summer cadre in 6th company for CFT2, where I was a squad leader and he was a platoon leader in a different platoon. I grew to know Cadet Doolen very well during the 2 weeks of LTP and 4 weeks of CFT2.

3. Despite Cadet Doolen's predicament during CFT2 he showed as much, if not more, professionalism than any other cadre member in 6th company. Had Cadet Doolen not explained to me what he was going through and that he could potentially be separated, I would never have known by his everyday actions. Nonetheless, Cadet Doolen spoke poorly of no one that was involved with his board, a character trait that I think few people in his position would have exhibited.

4. Watching Cadet Doolen perform as a platoon leader has, without a doubt, convinced me that he is ready to move out into the operational Army as 2LT`. Cadet Doolen commanded the respect of his entire platoon, but also showed a high level of compassion and caring to each and every Soldier in his platoon that often gets lost in the cynicism of CST. After my experience with Cadet Doolen, I see him as a person who holds the utmost respect for the Army and displays a high level of leadership potential. In regard to his board, Cadet Doolen has handled himself better and stayed more professional than any other cadet I have seen facing disciplinary board during my brief time at USMA.

5. The point of contact for this memorandum is the undersigned at email: bertrand.deforest@usma.edu, Cell: (603)-769-9929. Please feel free to contact me if there are any further questions. Thank you for your time.

Bertrand H. DeForest
CDT Sergeant, 2016
USCC, D-2

ENCLOSURE 2

## REGS & DISCIPLINE

Home | Software Change Request | **Manage Users** | Manage Days | Staff/Fac Portal | Log Off

### Disciplinary Records

Record for: DOOLEN ISIAH (H2 '14)

1. There are 12 disciplinary actions on record. To EDIT or DELETE one of these, click the appropriate button at the end of the row.

| Offense Date | Board Date | Article | Off. Code(s) | Specification | Dem's | Tours (tot/susp/vac - due) | Restrictions (tot/susp/vac - start/end) | Action? |
|---|---|---|---|---|---|---|---|---|
| 17 Apr 10 | 06 May 10 | 1 F | UAL | brought alcohol into the barracks | 35 | Area: 100/0/ - 0 | Restr: 60/0/ - Priv: 90/0/ - | edit delete |
| 19 Oct 11 | 21 Oct 11 | 1 C | JU | arrived 1 hour after 1900 Recall Formation | 20 | Area: 20/15/ - 0 | | edit delete |
| 02 Feb 12 | 08 Feb 12 | 1 S | None | CDT Doolen was found with a WAP or gaming system connected to the USMA network. | 10 | Area: 10/0/ - 0 | | edit delete |
| 30 Apr 12 | 03 May 12 | 3 S | AC/MC | CDT Doolen was not in his required class. | 2 | Area: 2/0/ - 0 | | edit delete |
| 15 Sep 12 | 25 Sep 12 | 1 C | JU | You were Disrespectful to a Senior Cadet Non-Commissioned Officer | 30 | Area: 30/30/ - 0 | Restr: 15/15/ - Priv: 15/0/ - | edit delete |
| 10 Dec 12 | 13 Dec 12 | 1 S | FD | Delinquent in Accountability. | 5 | Area: 5/5/ - 0 | | edit delete |
| 10 Jan 13 | 22 Jan 13 | 1 S | FD | Failed to sign Br ADSO contract by suspense date. | 5 | Area: 5/5/ - 0 | Restr: 7/0/ - Priv: 7/0/ - | edit delete |
| 11 Jan 13 | 16 Jan 13 | 1 C | FR | Failed to meet BN Suspense | 20 | Area: 20/6/ - 0 | Restr: 14/0/ - Priv: 14/0/ - | edit delete |
| 19 Jan 13 | 29 Jan 13 | 1 C | FR | While on Restrictions left room. | 30 | Area: 30/0/ - 0 | Restr: 30/0/ - Priv: 30/0/ - | edit delete |
| 27 Mar 13 | 10 Apr 13 | 1 C | AC/AB | Unexcused absence. | 10 | Area: 10/0/ - 0 | | edit delete |
| 03 Apr 13 | 10 Apr 13 | 1 C | JU | Damaged government property in barracks. | 30 | Area: 30/0/ - 0 | Restr: 30/0/ - Priv: 30/0/ - | edit delete |
| 08 May 13 | 23 Jun 14 | 1 F | AL | You were believed to be under the influence of alcohol beverages and without authorization, entered a barracks known by you to be occupied by female cadets and thereafter became engaged in a verbal and physical altercation with one of the female cadets. | 35 | Area: 80/0/ - 56 | Restr: 60/0/ - 23 Jun 14/16 Oct 14  Priv: 90/0/ - 23 Jun 14/15 Nov 14 | edit delete |

**OR:**

2. If you want to ADD A NEW RECORD, fill in the following form and click "add" at the bottom. (Mandatory fields are in RED)

Offense Date: _____     Offense Code: _____     (pick) ▼

Specification: [                    ]     0 characters (max 255)

000454

Disciplinary Record

Reporter: ................................ Organization: ................................

Board Date: ................................ Level: ⊛ Summary  ⊛ Company  ⊛ Battalion  ⊛ Regiment  ⊛ Brigade
⊛ Commandant

Actions:

|  | Tot Amt | Suspended | Vacate Date |  | Tot Amt | Suspended | Leave Amt | Vacate Date | End Date |
|---|---|---|---|---|---|---|---|---|---|
| Demerits: |  | (n/a) | (n/a) | Restriction: |  |  | 0 |  |  |
| Punishment Tours: |  |  |  | W/D Privileges: |  |  | 0 |  |  |
|  | ⊛ Area | ⊛ Sitting |  | W/D Driving: |  |  | 0 |  |  |
| Reduction in Rank: | ⊛ PVT  ⊛ PFC  ⊛ CPL  ⊛ SGT  ⊛ LT  ⊛ n/a |  |  | Suspended:  ⊛ y  ⊛ n |  |  |  |  |  |
| Refer to ASAP: | ⊛ Yes  ⊛ No |  |  | Formal Apology to Company: | ⊛ Yes  ⊛ No |  |  |  |  |
| Enroll in RMP: | ⊛ Yes  ⊛ No |  |  | Enroll in SLDP: | ⊛ SLDP  ⊛ SLDP-A  ⊛ No |  |  |  |  |

Curr
Conduct:

Status:   proficient
Pending:   none

Remarks:

[add]

---

**Disciplinary Award Record Log**
(Changes to Tours, Demerits, and Record Deletions)
(Data prior to change shown.)
DOOLEN ISIAH (H2 '14)

| Trans Type | Trans Date | Offense date | Board date | Article | Offense | Offense 2 | Offense 3 | Demerits | Tours | User | Narrative |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Deleted | 10 Apr 2013 | 03 Apr 2013 | 09 Apr 2013 | 1 C | JU (Failure in Judgement) | None (N/A) | None (N/A) | 30 | 30 | HANNIGAN, V. | Damaged property in barracks. |

**000455**

**Name:** DOOLEN, ISIAH MATTHEW

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

Date: 0

**Status:** ACTIVE **Class:** 2014 **Co/Regt:** H2 **Prior Co/Regt:** B1 E4 **Current CS:**  **Current HT:** 71" **Current WT:** 170 lbs

**RedCat:** OTHER/UNKNOWN **Gender:** MALE **Prior Service:** US Army Regular **USMAPS:** YES

**ACT-MATH:** 21 **ACT-ENGL:** 25 **ACT-SCI:** 25 **ACT-READ:** 30 **SAT-MATH:** 450 **SAT-VERB:** 540 **SAT-TSWE:** 0

**Rank in Company CQPA:** 32/33 **APSC:** 31/33 **MPSC:** 31/33 **PPSC:** 29/33 **Major/Field of Study:** Political Science Major; Comparative Politics

| CPR Profile (AY03 forward) | ACOM-UH | ACOM-LH | CtrOfMass | BCOM-RTN | BCOM-NORTN |
|---|---|---|---|---|---|
| All written on this cadet | 8 | 12 | 10 | 5 | 2 |
| Chain of Command | 5 | 8 | 7 | 0 | 0 |
| Other | 0 | 0 | 1 | 0 | 0 |
| Peer and Subordinate | 3 | 4 | 2 | 5 | 2 |
| Staff and Faculty | 0 | 0 | 0 | 0 | 0 |

**Major Conduct Violations**

| Date | Description |
|---|---|
| 17-Apr-10 | brought alcohol into the barracks |
| 19-Oct-11 | arrived 1 hour after 1900 Recall Formation |
| 15-Sep-12 | You were Disrespectful to a Senior Cadet Non-Commissioned Officer |
| 11-Jan-13 | Failed to meet BN Suspense |
| 19-Jan-13 | While on Restrictions left room. |
| 3-Apr-13 | Damaged government property in barracks. |
| 8-May-13 | You were believed to be under the influence of alcohol beverages and without authorization, entered a barracks known by you to be occupied by female cadets and thereafter became engaged in a verbal and physical altercation with one of the female cadets. |

| Course Nbr | Position | Rtr | Tac Rtr | Grade | MPS Cum |
|---|---|---|---|---|---|
| MD100 | CBT MOS | | | B+ | 3.33 |
| MD101 | MOS | A | A- | A- | 3.52 |
| MD102 | MOS | D | D | D | 2.82 |
| MS100 | MOS | | | B | 2.82 |
| MD200 | CFT MOS | A | B | B | 2.88 |
| MD201 | TM LDR | B | B+ | B+ | 2.87 |
| MS200 | TM LDR | | | B- | 2.87 |
| MD202 | TM LDR | B | B | B | 2.88 |
| MD400 | | | | P | 2.88 |
| MD301 | SQD LDR | B | B | B | 2.90 |
| MD302 | CO STF N-4 | B | C | B | 2.89 |
| MS300 | CO STF N-4 | | | B- | 2.89 |
| MD410 | SG REG AS3 | | | P | 2.77 |
| MD300 | SG REG AS3 | | | C+ | 2.77 |
| MD401 | TNG OFF | B | D | C | 2.68 |
| MD402 | SEC LDR | C | F | F | 2.43 |
| MD403 | CFT PL | A | A | A | 2.64 |



Solid Line = CQPA
Broken Line = MPSC
Dotted Line = PPSC

| TERM | 100 | 101 | 102 | 110 | 111 | 112 | 113 | 120 | 121 | 122 | 130 | 131 | 132 | 150 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CQPA | 0.00 | 2.49 | 2.40 | 2.40 | 2.28 | 2.36 | 2.36 | 2.36 | 2.31 | 2.29 | 2.29 | 2.27 | 2.20 | 2.20 |
| MPSC | 3.33 | 3.52 | 2.82 | 2.88 | 2.87 | 2.88 | 2.88 | 2.88 | 2.90 | 2.89 | 2.77 | 2.68 | 2.43 | 2.64 |
| PPSC | 0.00 | 2.67 | 2.32 | 2.32 | 2.38 | 2.41 | 2.41 | 2.41 | 2.41 | 2.03 | 2.03 | 2.12 | 2.27 | 2.27 |

**Conduct Record (Demerits/Tours)**

| AY | Jul | | Aug | | Sep | | Oct | | Nov | | Dec | | Jan | | Feb | | Mar | | Apr | | May | | Jun | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 35 | 100 | 0 | 0 | 0 | 0 |
| 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12 | 0 | 0 | 0 | 0 | 0 | 0 | 20 | 20 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 10 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 |
| 13 | 0 | 0 | 0 | 0 | 30 | 30 | 0 | 0 | 0 | 0 | 5 | 5 | 55 | 55 | 0 | 0 | 10 | 10 | 30 | 30 | 35 | 80 | 0 | 0 |
| 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

ENCLOSURE 3

000456

Name: DOOLEN, ISIAH MATTHEW                    FOR OFFICIAL USE ONLY - PRIVACY ACT DATA                                    Date: 05 Sep 14

### APFT Scores

| Test | Date | PU Raw | PU Pts | SU Raw | SU Pts | Run Raw | Run Pts | Total Pts | APFB | Grade |
|------|------|--------|--------|--------|--------|---------|---------|-----------|------|-------|
| CBT Initial | 07/01/2009 | 50 | 71 | 63 | 76 | 14:10 | 83 | 230 | | D |
| PLEBE FALL | 08/06/2009 | 48 | 68 | 75 | 95 | 12:55 | 100 | 263 | | C+ |
| PLEBE SPRING | 04/26/2010 | 71 | 100 | 80 | 100 | 14:04 | 85 | 285 | | B |
| YEARLING FALL | 10/22/2010 | 63 | 86 | 66 | 81 | 13:51 | 90 | 257 | | C |
| YEARLING SPRING | 04/07/2011 | 53 | 75 | 58 | 71 | 13:27 | 94 | 240 | | C- |
| COW FALL | 02/15/2013 | 53 | 75 | 78 | 97 | 12:38 | 100 | 272 | | B- |
| COW SPRING | 02/25/2013 | 61 | 84 | 76 | 95 | 12:13 | 100 | 279 | | B- |
| FIRSTIE FALL | 02/28/2013 | 64 | 87 | 72 | 89 | 12:09 | 100 | 276 | | B- |
| FIRSTIE SPRING | 03/23/2013 | 54 | 76 | 78 | 97 | 12:19 | 100 | 273 | | B- |

### IOCT Scores

| Test | Date | IOCT Time Raw | IOCT Time Pts | Total Pts | Grade |
|------|------|---------------|---------------|-----------|-------|
| IOCT | 9/23/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 10/21/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 11/18/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 1/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 2/24/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 3/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 4/27/2012 | 5:10 | 410 | 410.00 | F |
| IOCT | 8/27/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 9/28/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 10/26/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 11/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 1/28/2013 | 4:17 | 510 | 510.00 | F |
| IOCT | 3/1/2013 | 3:21 | 690 | 690.00 | D |

Tac Comments

### Athletic & Extracurricular Activities

| Start | End | Type | Name | Posn | Sqd | Auth |
|-------|-----|------|------|------|-----|------|
| 08/26/2009 | 09/28/2009 | IM | FOOTBALL (CA) | P | | |
| 09/28/2009 | 12/22/2009 | IM | BIATHALON (CA) | P | | |
| 01/19/2010 | 05/18/2010 | IM | SANDHURST (CA) | P | | |
| 08/15/2010 | 08/16/2010 | IM | TEAM HANDBALL (CA) | P | | |
| 08/16/2010 | 12/21/2010 | IM | WRESTLING (CA) | P | | |
| 01/21/2011 | 04/28/2011 | IM | FLAG FOOTBALL (CA) | P | | |
| 04/28/2011 | 05/17/2011 | IM | FLAG FOOTBALL (CA) | O | | |
| 08/15/2011 | 12/20/2011 | IM | Reconditioning | P | | |
| 01/12/2012 | 01/16/2012 | IM | ORIENTEERING (CA) | P | | |
| 01/16/2012 | 01/18/2012 | IM | ORIENTEERING (CA) | O | | |
| 01/18/2012 | 05/22/2012 | IM | FLAG FOOTBALL (CA) | O | | |
| 09/05/2012 | 12/22/2012 | IM | ULTIMATE FRISBEE (CA) | P | | |
| 01/21/2013 | 01/31/2013 | IM | ORIENTEERING (CA) | P | | |
| 01/31/2013 | 02/15/2013 | IM | SWIMMING (CA) | P | | |
| 02/15/2013 | 05/18/2013 | IM | ORIENTEERING (CA) | P | | |
| 09/04/2014 | | IM | Reconditioning | P | | |

000457

**Name:** DOOLEN, ISIAH MATTHEW

TAC: CPT Eaton-Ferenzi

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

**Date:** 05 Sep 14

17 May 2013

DATE OF COMMENTS: 13 May 2013

REASON FOR SUBMISSION: MD "F" - Company Supply Officer, B1

RECOMMENDATION: Separate

POTENTIAL: Below average. Has shown an inability to learn from his mistakes throughout the term; continues to illustrate bad decision-making skills and judgment through his actions. Does not believe the rules and regulations at West Point apply to him.

PERFORMANCE: Below average; Has had significant issues with meeting suspenses and was given a BN board at the beginning of the semester for missing a suspense given by the BN S-4.

CONDUCT: Below average: Has been subject of a Conduct Investigation this term after exceeded his demerit limit and since the CI, he has received three subsequent boards. Currently he's pending a possible brigade level board for the most recent incident allegedly involving alcohol and a physical altercation (08 May 2013). His conduct is a reflection of his military disposition; decision-making, judgment, and being an example for other Cadets to follow.

LEADERSHIP: Below average: Has failed to provide a good example for his subordinates and peers. Frequently does the minimum to scrape by. Often ill-prepared and does not give his subordinates enough time to respond to suspenses.

TEAMWORK AND SELFLESSNESS: Below Average: A very self-serving individual

INTERPERSONAL SKILLS: Below Average; tends to blame those around him for any professional or personal shortfalls. Often has conflict with others.

SENSE OF DUTY: Below Average: Communicates a desire to serve the US Army as an Officer, but does not follow through with that desire via his actions.

APPEARANCE: Below Average. Often in need of a haircut. Pants (the seat) of ACUs are blown out. Has been directed to fix it to no avail.

MAJ Marschean
Date: 5 Jan 11 NAME: Doolen, I, E4,2013
MAJOR: Comparative Politics
Reason for submission: Failed PH201
Recommendation: Retain, repeat PH201

Potential: CDT Doolen has the potential to do well here at USMA and as an officer in the Army. While his maturity level has improved relative to the beginning of the semester, he could stand to heighten it further. I□m certain that with a bit of focused effort that he□ll be able to achieve a level of maturity that will carry him far. He should be afforded the opportunity to repeat PH201.

Performance: End term 11-1: ACOM-UH (5), ACOM-LH (5), COM (4), BCOM-rtn (2), BCOM-noRtn (0). CDT Doolen□s overall performance has improved considerably since the start of the semester. His subordinate was a true leadership challenge and he worked with him to help him□ bring most of his grades up. According to his squad leader he was one of the best Team Leaders my squad. Additionally, he was failing multiple classes at the beginning of the semester and was able to pull all of them up by the end of the semester except for PH201.

Conduct: Average. CDT Doolen generally conducted himself well this semester. While serving room restriction for an offence from AY 10-2, CDT Doolen ignored the rules of his restriction and had to be corrected by his chain of command to ensure he fully understood the SOP regarding room restriction. Once he was corrected he abided by the rules. Additionally, his ADAPT counselor provided the TAC Tm with positive feedback regarding their counseling sessions and his progress.

Leadership: Average. Despite CDT Doolen□s academic struggles, he always found time to work with his subordinate who was a leadership challenge and help him to bring his own grades up. Without CDT Doolen□s guidance and assistance his Plebe might have chosen to quit or failed out of the Academy.

Teamwork and Selflessness: Average. One of his peers noted that CDT Doolen gets easily frustrated at others and tends to blame them for his problems. He complains and often gets so frustrated that he cannot respond to adversity well. He needs to work on his patience, which will come with time. The time he spent working with his Plebe is indicative of his selflessness during a time when he too was struggling.

Interpersonal Skills: Average to Below Average. CDT Doolen has a tendency to close himself off to those who hold him accountable. An increase in his maturity level, as noted by a peer, would certainly help him to interact and respond to everyone in a more adult-like and professional manner. A peer also noted he needs to understand that

Name: DOOLEN, ISIAH MATTHEW       FOR OFFICIAL USE ONLY - PRIVACY ACT DATA       **Date:** 05 Sep 14

everyone works differently and that no one type of leadership is right.  Although he has experienced many different types of leadership he needs to be more open minded to what might not be the way he would do things.

Sense of Duty: Average.  CDT Doolen⬚s sense of duty with respect to his subordinate is strong.  On occasion however, he failed to notify his chain of command and an instructor of his whereabouts if he was not able to make a scheduled hard time.

Appearance: Average.  CDT Doolen is generally an average Cadet in appearance.  He did receive demerits/punishment for what his PL referred to as  deplorable room standards and for and unsatisfactory uniform during an inspection.  When told to correct the issues, he corrected them in a timely manner.

Major Conduct Violations NONE
Minor - None
FLAGS ⬚ completing SLDP-A program
**RTO Comments**

Concur with TAC...Retain, repeat PH201.       05 Jan 2011

**000459**

**ENCLOSURE 4**



REPLY TO
ATTENTION OF

DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

MADN-SOC                                                                                    14 July 2014

MEMORANDUM FOR RECORD

SUBJECT: Evaluation for Cadet Isiah Doolen, Company B-1, Class of 2013

1. Overall, Cadet Isiah Doolen did not demonstrate an impressive performance in SS486, the capstone course for his major (Comparative Politics). Academically, he ranked last out of the 13 cadets in the class, earning a 70% (C-) for the course, and his performance as the CIC during a class trip was below standard.

2. **Performance:** Throughout the course, Cadet Doolan's class participation was minimal. Over the first 20 lessons, he participated in class discussions on three occasions. He is quiet, which makes it hard to know his grasp of the material. He stays alert during the discussion, but is not a regular contributor to the seminar. On several occasions, I have observed that he just has a pen and a blank piece of paper in class; he neglected to bring the required readings, or any notes that he took previously. This limited his ability to participate, and made me question whether he had done the preparatory work needed to engage in our seminar discussion. His participation improved toward the latter part of the course, but consisted primarily of observations taken from other courses rather than from class readings. His test and research papers reflected an incomplete grasp of the material, a questionable understanding of concepts, and a weak foundation for future work. Based on my discussions with him, I believe that CDT Doolan has the capability for greater academic achievement, but he has not dedicated time or effort to this pursuit.

2. **Conduct:** As mentioned above, Cadet Doolen is quiet in class. There have been no issues with his in-class conduct, although I have spoken with him about his need to participate more in our discussions. As mentioned above, he did make an effort to speak more in class – but did not tie this to reading and preparing the material to make his comments substantively meaningful.

3. **Leadership:** Cadet Doolen was the CIC for two classes during a daylong academic trip to the United Nations that occurred on 13 February 2013. In three separate lessons prior to the trip, I offered him the opportunity to address the class in order to provide administrative information about the trip, but he said he had nothing to discuss. He did email the class the day's itinerary, which he received from Lt Col John Hagan, the SS476 instructor on the trip. In class, I discussed the day's events, including the CGR meeting time. Lt Col Hagan also met with Cadet Doolen the day prior to the trip to go over all of the details. At about 0600 on the morning of the trip, I received a text from Cadet Doolen asking me what time to meet at CGR. Coming from the CIC, this surprised and dismayed me; clearly, he had not remembered or copied down

the information from me or Lt Col Hagan. When asked, Cadet Doolen performed headcounts to provide us with accountability. Cadet Doolen did not have the rations money available to provide his classmates on the day of the trip; he was able to provide the funds about two weeks later. All in all, while there was nothing egregious about his performance as CIC that derailed the trip, there was certainly opportunity for improvement. He did not meet our expectations for basic cadet leadership and responsibility.

4. **Teamwork and Selflessness:** In class, there have been a few opportunities for group work, and Cadet Doolen's performance has been unremarkable. While he has not hindered teamwork, he has not offered contributions either; from my observations, his presence has been neutral.

5. **Interpersonal Skills:** From my observations, Cadet Doolen has no issues interacting with his classmates. His dealings with me have also been professional. I have no issues with his attitude or interactions.

6. **Sense of Duty:** Based on his class performance, CDT Doolen could improve in this area. He has not provided consistent evidence of class preparation, and needs to work on taking initiative when placed in a leadership role. I have seen nothing that indicates his dedication to the class or organizational mission.

7. **Appearance:** Cadet Doolen has always been in the correct uniform, and I have not noticed any negative issues with his appearance.

8. **Potential:** Unfortunately, Cadet Doolen has not shown me evidence of potential for service as an exemplary officer. My observation of his academics, classroom participation, and leadership performance as a trip CIC do not offer grounds for many positive comments. Based on this, I would hesitate to see him as a lieutenant in my battalion. At this point in his education and leader development, it is disappointing that he has not shown us more evidence of behavior expected of an officer. Based on this, I harbor doubts about his potential for future distinguished service.

*Tania M. Chacho*

TANIA M. CHACHO, Ph.D.
LTC, MI/FA47
Academy Professor
Director of the Comparative Politics Program



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

REPLY TO
ATTENTION OF

Department of Physical Education                    July 16, 2014

MEMORANDUM FOR RECORD

SUBJECT:  Evaluation for Cadet Isiah Doolen, Company H2, Class of 2014

1. **Performance:** CDT Doolen was a below average performer in PE 360. He earned an F on the pop quiz, a C+ on his midterm exam and a C- on his final exam. His ability to compete against his peers in hand-to-hand combat was in the bottom 12% of the 636 Cadets who took PE 360 last year.

2. **Conduct:** CDT Doolen was well mannered and respectful in class. However, I did have an issue with him the first time he took this class. He was supposed to drop the course around lesson six as he was diagnosed with Mono. I contacted him several times to complete this task and continued to mark him as absent until lesson 17. At that time I gave him a COR daily for failing to perform his duties. I ended up giving him two as he dropped after the second COR.

3. **Leadership:** I was unable to evaluate Cadet Doolen in this area.

4. **Teamwork and Selflessness:** CDT Doolen worked diligently with his peers and stayed on task when the class was given training time.

5. **Interpersonal Skills:** I was not able to observe much about CDT Doolen in this area other than he asks pertinent questions when appropriate.

6. **Sense of Duty:** CDT Doolen understood that his place of duty was in the classroom.  He reported to class as performed to standard while there.

7. **Appearance:** CDT Doolen's manner of appearance was in accordance with USMA standards.

8. **Potential:** Based on my experience as a former career Army Officer I have reservations about CDT Doolen. These reservations stem from the repeated requests I made to him to drop the class and having to resort to daily COR's to get him to do his duty, his underwhelming performance when he did take the class, his track record of having four C's out of seven Physical Education classes and his 18 month's worth of medical excusals coinciding with his IOCT test dates.  I question his dedication to duty and his ability to accomplish the mission.

Daniel Lorenzen, Instructor/Director of Combatives
Department of Physical Education



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York  10996

REPLY TO
ATTENTION OF

Department of Physical Education                    February 22, 2013

MEMORANDUM FOR RECORD

SUBJECT:  Evaluation for Cadet Isiah Doolen, Company B1, Class of 2013

1. **Performance:** CDT Doolen currently has a C in the course. He earned an F on his pop quiz and a C+ on his midterm exam. in the course.  He is currently 6% points below the course average.

2. **Conduct:** CDT Doolen has been well mannered and respectful in class this round. I also had Cadet Doolen last round. He was supposed to drop the course around lesson 6 for his illness and finally dropped the course on lesson 17 after two consecutive COR's for Failure to perform his duties.

3. **Leadership:** I have not evaluated CDT Doolen in this area.

4. **Teamwork and Selflessness:** CDT Doolen worked diligently with his peers and stayed on task when the class was given training time.

5. **Interpersonal Skills:** I was not able to observe much about CDT Doolen in this area other than he asks pertinent questions when appropriate.

6. **Sense of Duty:** CDT Doolen understood that his place of duty was in the classroom.  He reported to class as performed to standard while there.

7. **Appearance:** CDT Doolen's manner of appearance was in accordance with USMA standards.

8. **Potential:** CDT Doolen is simply another student in my class. He's neither stellar nor a problem. However, based on my experience with him last round and his failure to drop the class despite repeated emails to him and one to his TAC my observations of CDT Doolen lead me to believe that he may not follow instructions all that well.

Daniel Lorenzen, Instructor/Director of Combatives
Department of Physical Education

**000463**



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996
July 16, 2014

REPLY TO
ATTENTION OF

Department of Social Sciences

MEMORANDUM FOR RECORD

SUBJECT: Evaluation for Cadet Isiah Doolen

1. **Performance**: CDT Doolen received a grade of B-/80.70% in my class (ss375, Russia). Despite this relatively adequate grade, his performance was below average in comparison to his peers in the class: his rank was 13th of 16 students. With greater personal motivation and more effective time management, CDT Doolen could have performed at a higher academic level in class. Nevertheless, he did complete assignments on time and with sufficient quality to justify the final grade of B-.

2. **Conduct**: In all respects, CDT Doolen adhered to regulations and policies in the class room.

3. **Leadership**: I would characterize CDT Doolen's performance in the dimension of leadership as sufficient to meet average standards of participation in the classroom.

4. **Teamwork and Selflessness**: CDT Doolen performed adequately in the classroom in terms of teamwork.

5. **Interpersonal Skills**: During my period of observation, CDT Doolen interacted with others (professor and peers) in an appropriate manner.

6. **Sense of Duty**: CDT Doolen gave me no reason to think that his actions were not consistent with his words.

7. **Appearance**: CDT Doolen's personal appearance was appropriate during the graded period in question.

8. **Potential**: My assessment of potential is based entirely on my observation of CDT Doolen in a single course. On this basis, I would restate the obvious: CDT Doolen performed below the middle of the group. On the other hand, the group/class in question comprised for the most part particularly strong students. Although he did not display significant enthusiasm, focus, or leadership in the course, CDT Doolen's performance was sufficient by the metrics discussed above.

Thomas Sherlock, Ph.D.
Professor of Political Science
Department of Social Sciences
United States Military Academy
West Point, New York 10996

**EXHIBIT A**

## _ USA USMA

| | |
|---|---|
| ᴦrom: | Doolen, Isiah M. CADET MIL USA USMA |
| Sent: | Tuesday, August 19, 2014 4:57 PM |
| To: | Forlenza, Nicholas CPT MIL USA USMA |
| Cc: | Edward Williams; Elin Frey; Gail Hollister; doolen3994@yahoo.com |
| Subject: | RE: Hearing content   PRIVILEGED AND CONFIDENTIAL |

CPT Forlenza,

I wanted to advise you that I will not be alleging any predisposition by Col. Mauldin at the upcoming Hearing.  To the extent that was previously perceived to be an issue, I am dropping that. What I intend to establish at the Hearing is that there were no findings made by Col Mauldin as a result of the recent Board that I was guilty of an Alcohol Policy violation, and that therefore, there is no basis for the USMA to proceed with a Conduct Investigation, on the grounds of an alleged second Alcohol Policy violation.

I also intend to call witnesses with respect to my high performance as a platoon leader at Camp Buckner this summer which should establish my fitness to serve as a commissioned officer in the US Army.

Very Respectfully,

Cadet Isiah Doolen

000465

onduct Investigation

d. I request that (the following witnesses) (no witnesses) appear in support of my challenges of brigade boards:*

| NAME | CLASS/ RANK | COMPANY/ DEPARTMENT |
|------|-------------|---------------------|
| Redacted PII , Redacted PII | COT | C3 |
| Elizabeth Entrekin Ferrari | CPT | 1st Reg AXO |
| Nick Mauldin | COL | BTO |
| Keith Well | COL | OTJAG |
| Delroy Patrick | Mr. | R+D |
| Jillian Collins | COT | C3 |
| Patrick Snyder | MAJ | H2 TAC Officer |
| Aaron Hoyer | SFC | H2 TAC NCO |
| Kevin Keller | SFC | I3 TAC NCO |

e. I request that the following individuals be requested to furnish information on my performance as a cadet. All have had direct recent opportunities to observe me.

| NAME | CLASS/ RANK | COMPANY/ DEPARTMENT |
|------|-------------|---------------------|
| Patrick Mercer | SFC | H3 TAC NCO |
| Michael Ziegelhofer | MAJ | F TAC Officer |
| Jonathan Knoeller | MAJ | 3rd Reg Chaplain |
| Elliot Chml | CDT | B3 |
| Patrick Snyder | MAJ | H2 TAC Officer |
| Brandon Ray | CDT | B4 |
| Harrison Morris | CDT | G1 |
| Todd Cherney | MAJ | Reg Chaplain |

2. I have retained a copy of this endorsement and of the basic letter.

Signature: _____ Date: 30 July 14
Isiah M. Doolen
Respondent
Company H-2, Class of 2014
United States Corps of Cadets

*NOTE: Continue on reverse side if more space is needed.

**EXHIBIT C**

. USA USMA

From:           Doolen, Isiah M. CADET MIL USA USMA
Sent:           Tuesday, August 19, 2014 4:57 PM
To:             Forlenza, Nicholas CPT MIL USA USMA
Cc:             Edward Williams; Elin Frey; Gail Hollister; doolen3994@yahoo.com
Subject:        RE: Hearing content   PRIVILEGED AND CONFIDENTIAL

CPT Forlenza,

I wanted to advise you that I will not be alleging any predisposition by Col. Mauldin at the
upcoming Hearing.  To the extent that was previously perceived to be an issue, I am dropping
that. What I intend to establish at the Hearing is that there were no findings made by Col
Mauldin as a result of the recent Board that I was guilty of an Alcohol Policy violation, and
that therefore, there is no basis for the USMA to proceed with a Conduct Investigation, on
the grounds of an alleged second Alcohol Policy violation.

I also intend to call witnesses with respect to my high performance as a platoon leader at
Camp Buckner this summer which should establish my fitness to serve as a commissioned officer
in the US Army.

Very Respectfully,

Cadet Isiah Doolen

**000467**

**EXHIBIT D**



DEPARTMENT OF THE ARMY
### UNITED STATES MILITARY ACADEMY
West Point, New York 10996

REPLY TO
ATTENTION OF

MADN-SOC                                                                           14 July 2014

MEMORANDUM FOR RECORD

SUBJECT:  Evaluation for Cadet Isiah Doolen, Company B-1, Class of 2013

1.  Overall, Cadet Isiah Doolen did not demonstrate an impressive performance in SS486, the capstone course for his major (Comparative Politics).  Academically, he ranked last out of the 13 cadets in the class, earning a 70% (C-) for the course, and his performance as the CIC during a class trip was below standard.

2.  **Performance:**  Throughout the course, Cadet Doolan's class participation was minimal.  Over the first 20 lessons, he participated in class discussions on three occasions.  He is quiet, which makes it hard to know his grasp of the material.  He stays alert during the discussion, but is not a regular contributor to the seminar.  On several occasions, I have observed that he just has a pen and a blank piece of paper in class; he neglected to bring the required readings, or any notes that he took previously.  This limited his ability to participate, and made me question whether he had done the preparatory work needed to engage in our seminar discussion.  His participation improved toward the latter part of the course, but consisted primarily of observations taken from other courses rather than from class readings.  His test and research papers reflected an incomplete grasp of the material, a questionable understanding of concepts, and a weak foundation for future work.  Based on my discussions with him, I believe that CDT Doolan has the capability for greater academic achievement, but he has not dedicated time or effort to this pursuit.

2.  **Conduct:**  As mentioned above, Cadet Doolen is quiet in class.  There have been no issues with his in-class conduct, although I have spoken with him about his need to participate more in our discussions.  As mentioned above, he did make an effort to speak more in class – but did not tie this to reading and preparing the material to make his comments substantively meaningful.

3.  **Leadership:**  Cadet Doolen was the CIC for two classes during a daylong academic trip to the United Nations that occurred on 13 February 2013.  In three separate lessons prior to the trip, I offered him the opportunity to address the class in order to provide administrative information about the trip, but he said he had nothing to discuss.  He did email the class the day's itinerary, which he received from Lt Col John Hagan, the SS476 instructor on the trip.  In class, I discussed the day's events, including the CGR meeting time.  Lt Col Hagan also met with Cadet Doolen the day prior to the trip to go over all of the details.  At about 0600 on the morning of the trip, I received a text from Cadet Doolen asking me what time to meet at CGR.  Coming from the CIC, this surprised and dismayed me; clearly, he had not remembered or copied down

**000468**

the information from me or Lt Col Hagan. When asked, Cadet Doolen performed headcounts to provide us with accountability. Cadet Doolen did not have the rations money available to provide his classmates on the day of the trip; he was able to provide the funds about two weeks later. All in all, while there was nothing egregious about his performance as CIC that derailed the trip, there was certainly opportunity for improvement. He did not meet our expectations for basic cadet leadership and responsibility.

4. **Teamwork and Selflessness:** In class, there have been a few opportunities for group work, and Cadet Doolen's performance has been unremarkable. While he has not hindered teamwork, he has not offered contributions either; from my observations, his presence has been neutral.

5. **Interpersonal Skills:** From my observations, Cadet Doolen has no issues interacting with his classmates. His dealings with me have also been professional. I have no issues with his attitude or interactions.

6. **Sense of Duty:** Based on his class performance, CDT Doolen could improve in this area. He has not provided consistent evidence of class preparation, and needs to work on taking initiative when placed in a leadership role. I have seen nothing that indicates his dedication to the class or organizational mission.

7. **Appearance:** Cadet Doolen has always been in the correct uniform, and I have not noticed any negative issues with his appearance.

8. **Potential:** Unfortunately, Cadet Doolen has not shown me evidence of potential for service as an exemplary officer. My observation of his academics, classroom participation, and leadership performance as a trip CIC do not offer grounds for many positive comments. Based on this, I would hesitate to see him as a lieutenant in my battalion. At this point in his education and leader development, it is disappointing that he has not shown us more evidence of behavior expected of an officer. Based on this, I harbor doubts about his potential for future distinguished service.

*Tania M. Chacho*

TANIA M. CHACHO, Ph.D.
LTC, MI/FA47
Academy Professor
Director of the Comparative Politics Program

**000469**

EXHIBIT E

## USA USMA

| | |
|---|---|
| **From:** | Doolen, Isiah M. CADET MIL USA USMA |
| **Sent:** | Monday, August 18, 2014 8:43 PM |
| **To:** | Forlenza, Nicholas CPT MIL USA USMA |
| **Cc:** | Schneider, Alexander MAJ MIL USA USMA; Edward Williams; Elin Frey; ghollister@law.fordham.edu |
| **Subject:** | RE: Pre-disposition |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

CPT Forlenza,

How are you legally allowed to pick and choose who I am allowed to call as witnesses? What is your expertise in determining who and who will not provide reasonable evidence to my case? I am going to not only challenge you in regards to this decision, but I am going to take this to the OIG as well.

Very Respectfully,

Cadet Isiah Doolen

-----Original Message-----
From: Forlenza, Nicholas CPT MIL USA USMA
Sent: Monday, August 18, 2014 7:32 PM
To: Doolen, Isiah M. CADET MIL USA USMA
Cc: Schneider, Alexander MAJ MIL USA USMA
Subject: RE: Pre-disposition

CDT Doolen,

CC'd is MAJ Schneider, from the OTJAG.

For your clarification from our discussion this afternoon:

"1) The conduct investigation is not taking place yet because you are allowing me the opportunity to prove that my brigade board was predisposed."

Answer:  In my preliminary investigation, I find your objections to the hearing not sufficient for me to end the proceedings; therefore I will proceed with the Conduct Investigation hearing.  However, I will allow you to call witnesses and to present evidence in the hearing on your issues:  That the most recent Article 10 board was not an Alcohol board, and (2) That the USCC specifically COL Mauldin, was predisposed to find you responsible at your Article 10 board.  I will not make a final decision on those issues until you have an opportunity to present all of your evidence, and until the conclusion of the hearing.

"2)  You have already made the determination that the board proceedings, for my brigade board, were fair and the board was indeed an alcohol board."

Answer:  In my preliminary investigation, I find your objections to the hearing not sufficient for me to end the proceedings, I will however, allow you to call witnesses and to present evidence in the hearing on your issues.

1

000470

EXHIBIT F

## JSA USMA

| | |
|---|---|
| From: | Doolen, Isiah M. CADET MIL USA USMA |
| Sent: | Monday, August 18, 2014 7:48 PM |
| To: | Forlenza, Nicholas CPT MIL USA USMA |
| Cc: | Schneider, Alexander MAJ MIL USA USMA; Edward Williams; Elin Frey; ghollister@law.fordham.edu; doolen3994@yahoo.com; idoolen13@icloud.com |
| Subject: | RE: Pre-disposition |

| | |
|---|---|
| Follow Up Flag: | Follow up |
| Flag Status: | Completed |

CPT Forlenza,

I would like a copy of your findings showing that my objections are not sufficient for you to end the proceedings. Number 7 is self-refuting...it was found at my board that I was not inebriated. The fact that you're mentioning intoxication is irrelevant. To initiate a conduct investigation, there has to be a "violation of two alcohol policy violations," which is a distinct difference from what you are saying below. What was my alcohol policy violation?

Also, I would like a copy of the recordings from our meeting. This review of whether or not my board was predisposed is not part of the conduct investigation or the conduct hearing; something you stated yourself. The regulation you cited below, regarding the presence of my attorney, is applicable to conduct investigations and conduct hearings, not to whatever proceedings I am currently undergoing.

Very Respectfully,

Cadet Isiah Doolen

-----Original Message-----
From: Forlenza, Nicholas CPT MIL USA USMA
Sent: Monday, August 18, 2014 7:32 PM
To: Doolen, Isiah M. CADET MIL USA USMA
Cc: Schneider, Alexander MAJ MIL USA USMA
Subject: RE: Pre-disposition

CDT Doolen,

CC'd is MAJ Schneider, from the OTJAG.

For your clarification from our discussion this afternoon:

"1) The conduct investigation is not taking place yet because you are allowing me the opportunity to prove that my brigade board was predisposed."

Answer:  In my preliminary investigation, I find your objections to the hearing not sufficient for me to end the proceedings; therefore I will proceed with the Conduct Investigation hearing.  However, I will allow you to call witnesses and to present evidence in the hearing on your issues:  That the most recent Article 10 board was not an Alcohol board, and (2) That the USCC specifically COL Mauldin, was predisposed to find you responsible at your Article 10 board.  I will not make a final decision on those issues until you have an opportunity to present all of your evidence, and until the conclusion of the hearing.

**000471**



DEPARTMENT OF MILITARY INSTRUCTION
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

REPLY TO
ATTENTION OF

MACC-Q                                                    12 August 2014

MEMORANDUM FOR Cadet Isiah Doolen, Class of 2014, Company H2, USCC, West Point, NY 10996

SUBJECT:  Notification of Convening of Conduct Investigation

1.  You will appear before a Conduct Investigation (CI) starting 12 August 2014.

2.  The CI hearing will convene at 1300 hours on 21 August 2014.

3.  You may bring any witnesses that you deem necessary to testify to your character.

4.  The uniform is the duty uniform for the day.

NICHOLAS R. FORLENZA
CPT (P), SC
Investigating Officer



OFFICE OF THE COMMANDANT
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK 10996-1602

MACC                                                          11 August 2014

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT:  Conduct Investigation Officer Appointment

1.  In accordance with paragraph 114f, Chapter 1, USCC Regulation 351-1, dated 15 May 2001, the following officer is appointed to serve as the Investigating Officer (IO) for a Conduct Investigation (CI).

        CPT (P) Nicholas Forlenza
        Agency:  DMI
        Phone: X4804

2.  The purpose of the CI is to make findings concerning the reported conduct deficiency of Cadet Isiah M. Doolen, Company H, Second Regiment, Class of 2014.

3.  The Conduct Investigation will convene on or about 23 July 2014 and must be completed NLT 04 August 2014.

                JOHN P. DRAGO
                COL, FA
                Deputy Commandant

DISTRIBUTION:
Regs & Discipline Officer
CDT Doolen
CPT(P) Nicholas Forlenza

000473



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

REPLY TO
ATTENTION OF

MACC-O-RD                                                                          17 July 2014

MEMORANDUM FOR

Regimental Tactical Officer, Second Regiment, USCC
Tactical Officer, Company H-2, USCC

FOR Cadet Isiah M. Doolen, Company H, Second Regiment, USCC, West Point, New York 10996

SUBJECT:  Notification of Deficient in Conduct Status

1.  As a result receiving Two Alcohol Boards, the Brigade Tactical Officer has determined that you are Deficient in Conduct.  Furthermore, the Commandant has referred you to a Conduct Investigation.  This action is being taken in accordance with USCC Regulation 351-2, The Cadet Disciplinary System, dated 15 May 2001, and the status is effective immediately.

2.  A copy of all relevant disciplinary actions is enclosed.  A copy of this endorsement will be provided to your Regimental and Company Tactical Officer.  Please inspect these enclosures with your Company Tactical Officer for concerns pertaining to your Conduct Deficiency.

3.  POC is the undersigned at x4702.

FOR THE COMMANDANT:

DELROY A. PATRICK
Regulations and Discipline Officer

**000474**



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

REPLY TO
ATTENTION OF

MACC-O-RD                                                            17 July 2014

MEMORANDUM THRU

Tactical Officer, Company H-2, USCC
Regimental Tactical Officer, Second Regiment, USCC

FOR Regulations and Discipline Officer, USCC

SUBJECT:  Notification of Deficient in Conduct Status

I have been informed of my Deficient in Conduct Status on this date and I have been provided
a copy of this memorandum with enclosures.

Encl.                                      Isiah M. Doolen
                                           Respondent
                                           Company H-2, Class of 2014
                                           United States Corps of Cadets

14c



**REPLY TO
ATTENTION OF**

DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

MACC-O-RD                                                                                    17 July 2014

MEMORANDUM FOR Cadet Isiah M. Doolen, Company H-2, Class of 2014, USCC

SUBJECT: Referral to a Conduct Investigation

1. You are hereby notified that you are being referred to a conduct investigation (CI) which will make findings concerning your reported conduct deficiency for **Receiving Two Alcohol Boards.**

2. You have the right to request that the CI convene, or to waive appearance before the CI. If you waive appearance, the Commandant of Cadets will maintain your deficient in conduct status and take action or make appropriate recommendations with regard to your retention or separation. If you elect to appear before the CI, you have the following rights:

   a. To receive written notice of the reported conduct deficiency and a list of all offenses and awards of demerits that resulted in the deficiency being reported. Your regiment should already have accomplished this; notify this office if you do not have these documents and they will be provided.

   b. To have a reasonable period of time to prepare a defense; that is, about five working days during the academic year and about three working days during periods when there are no academic attendance required. As there are no other major actions concerning you at this time, **the CI will convene on or about 23 July 2014.**

   c. To seek advice and assistance of legal counsel in the preparation of your case. Counsel may be civilian legal counsel at no expense to the government, or a military lawyer assigned to the Defense Section of the Office of the Staff Judge Advocate, USMA, or both. Legal counsel will not be present during the CI hearing.

   d. To be present during the hearing, except during deliberations.

   e. To testify or remain silent. Remaining silent does not preclude introducing evidence, questioning or cross-examining witnesses, but does preclude your having to answer questions.

   f. To challenge the investigating officer (IO) for cause. The IO will rule on challenges.

   g. To examine all records and documents to be considered by the CI, including the TAC File.

   h. To object to evidence. Subject only to certain limitations which you should discuss with legal counsel, anything which in the minds of reasonable persons is relevant and material to an issue may be accepted as evidence. These proceedings are administrative in nature and therefore the CI is not bound by the rules of evidence prescribed for trials by court martial. The IO will make determinations concerning evidence.

**000476**

MACC-O-RD (351-17e)
SUBJECT: Referral to a Conduct Investigation

i. To raise any issues related to your conduct history. You may not challenge any punishments under Article 10 because you have had the opportunity for a hearing on each individual disciplinary case.

j. To call reasonably available witnesses to support the challenges or issues related to your conduct history.

k. To question and cross-examine witnesses.

l. To present relevant written evidence in support of challenges or issues related to your conduct history.

m. To present your own oral and/or written argument in support of challenges of any boards and case for retention.

n. To receive a complete copy of the CI report of proceedings, with the letter of transmittal and all enclosures.

o. To be notified of witnesses who will be called by the CI.

3. Your witnesses may include cadets, officers, or other reasonably available persons with knowledge of the demerits you intend to challenge. Government funds are not authorized for the appearance of civilian witnesses. The CI IO will assist you in notifying your witnesses to be present; however, it is your responsibility to ensure that they are present. The IO will provide you with additional assistance if you request it in this regard.

4. Witnesses will not be called either by you or by the CI with regard to whether you should be retained or separated, nor will witness statements be introduced. This issue will be resolved by the Commandant on the basis of your overall cadet record and on the basis of written evaluations obtained by you and by the CI. See Chapter 5, USCC Regulation 351-1 dated 15 May 2001, for information concerning these evaluations.

5. You may waive any, all, or none of the above rights.

6. If you intend to raise issues or challenges related to your conduct history, indicate so on the attached endorsement form which has been prepared for you. Also indicate that you do or do not waive appearance before the CI; that you will or will not seek legal counsel; and the names of any witnesses you desire to appear in support of challenges of demerits. **Return one copy of the endorsement form to the Regulations and Discipline Officer not later than** 24 July 14. Retain the other copy of this letter and the endorsement for your records.

7. If you desire legal counsel, call extension 4541, Office of Defense Counsel, Office of the Staff Judge Advocate, USMA, to make an appointment.

FOR THE COMMANDANT:

Encl
Endorsement

DELROYA. PATRICK
Regulations and Discipline Officer

Signature of Cadet _____   Date Rec'vd  17 July 14

000477



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK 10996

REPLY TO
ATTENTION OF

MACC-O-RD

MEMORANDUM FOR Commandant of Cadets, ATTN: Regulations and Discipline Officer, USCC

SUBJECT: Referral to a Conduct Investigation

1. I acknowledge receipt of the basic letter. I understand my rights as explained in the basic letter and have made the following decisions:

   a. I (do not waive) (waive) appearance before a conduct investigation.

   b. I (will) (will not) request legal counsel to assist in the preparation of my case.

   c. I (intend to raise the following issue/challenges related to my conduct history) (I will not raise any issues about my conduct history):*

| DATE OF OFFENSE | DESCRIPTION OF OFFENSE | DEMERITS |
|---|---|---|
| 23 JUN 14 | Not disputing the punishments awarded; instead, I'm disputing the board proceedings and statement submitted | 35 |

*NOTE: Continue on reverse if more space is needed.

**000478**

MACC-O-RD  (351-17e)
SUBJECT:  Referral to a Conduct Investigation

d.  I request that (the following witnesses) (no witnesses) appear in support of my challenges of
brigade boards:*

| NAME | CLASS/ RANK | COMPANY/ DEPARTMENT |
|---|---|---|
| Elizabeth ~~Redacted PII~~ Ferenzi | CPT | 1st Reg RXO |
| Nick Maultin | COL | BTO |
| Keith Well | COL | OTJAG |
| Delroy Patrick | Mr. | R+D |
| Jillian Collins | COT | C3 |
| Patrick Snyder | MAJ | H2 TAC Officer |
| Aaron Hughes | SFC | H2 TAC NCO |
| Keller | SFC | F3 TAC NCO |

e.  I request that the following individuals be requested to furnish information on my performance as a
cadet.  All have had direct recent opportunities to observe me.

| NAME | CLASS/ RANK | COMPANY/ DEPARTMENT |
|---|---|---|
| Ratusa Moorer | SFC | H3 TAC NCO |
| Michael Ziegelhofer | MAJ | F3 TAC Officer |
| Jonathan Knoedler | MAJ | 3rd Reg Chaplain |
| Elliot Chal | CDT | B3 |
| Patrick Snyder | MAJ | H2 TAC officer |
| Brandon Ray | CDT | B4 |
| Harrison Maris | CDT | G1 |
| Todd Cheney | MAJ | Reg Chaplain |

2.  I have retained a copy of this endorsement and of the basic letter.

Signature: _Isiah M. Doolen_   Date: 30 July '14
Isiah M. Doolen
Respondent
Company H-2, Class of 2014
United States Corps of Cadets

*NOTE:  Continue on reverse side if more space is needed.

**000479**

# PRIVACY ACT STATEMENT

**AUTHORITY:** 10 USC section 3013 and Regulations, USMA

**PURPOSE:** The requested information will be used in evaluating your challenge to the disciplinary awards in question, and will form a basis for recommendations concerning disposition of this matter.

**ROUTINE USES:** Used by the Investigating Officer, appointing authority, and reviewing authorities in determining the facts in this matter, and in determining the facts in this matter, and in determining the appropriate action to be taken based on those facts. This information may be disclosed to members of the Department of Defense who need access to the information as part of their official duties. This information may be incorporated into your official personnel files, and may constitute the basis for adverse administrative or punitive action.

Disclosure is voluntary; failure to provide the requested information will result in decisions being made in this matter without the benefit of this information.

I hereby acknowledge being informed of the foregoing information concerning the Privacy Act.


_(Signature)_

Isiah M. Doolen
Respondent
Company H-2, Class of 2014
United States Corps of Cadets


_(Date)_



**DEPARTMENT OF THE ARMY**
UNITED STATES MILITARY ACADEMY
WEST POINT, NY 10996

MACC-O-2H                                                    10 July 2014

MEMORANDUM THRU Regimental Tactical Officer, Second Regiment, United States Corps of Cadets, West Point, New York 10996

FOR Tactical Officer, Company H, Second Regiment, United States Corps of Cadets, West Point, New York 10996

SUBJECT: Conduct Review for Cadet Isiah M. Doolen, Company H, Second Regiment, Class of 2014

1. As of this date, the following cadet is subject to a conduct review for receiving two alcohol policy violations.

| NAME | CO | CLASS YEAR | OFFENSE CODE | DATE OF OFFENSE | AWARD |
|------|-----|-----------|--------------|-----------------|-------|
| Isiah M. Doolen | H2 | 2014 | Articles 1 &7 | 17 Apr 10 | 35/100/60 RES/90WP/RIR PFC |
|  |  |  | Articles 1,6, & 7 | 8 May 13 | 35/80/60 RES/90WP/RIR to PFC/SLDP |

2. A conduct review by the cadet's tactical chain of command addressing this deficiency is due to Regulations and Discipline Office, within three working days. Enclose the recommendations from the cadet's chain of command along with TAC file.

3. The POC is the undersigned at (845) 938-2623.

JOSEPH L. HANDKE
MAJ, FA
Regimental Executive Officer

CF:
REGS & DIS



**DEPARTMENT OF THE ARMY**
UNITED STATES MILITARY ACADEMY
WEST POINT, NY 10996

MACC-O-2H                                                                 9 July 2014

MEMORANDUM FOR Regimental Tactical Officer, Second Regiment, United States Corps of Cadets, West Point, New York 10996

SUBJECT:  Recommend Conduct Review for receiving two alcohol-related Field Grade Article 10 violations, Cadet Isaiah Doolen, 7694, Company H, Class 2014

1.  Recommend that Cadet Isaiah Doolen, 7694, Company H, Second Regiment, Class of 2014, be declared deficient in conduct and be referred to a Conduct Investigation for receiving two alcohol-related Field Grade Article 10 violations.

2.  Cadet Doolen's misconduct offenses include two Brigade Level boards for alcohol consumption.  He clearly has difficulty being responsible and mature while engaging in activities where alcohol may be present.

3. On 9 July 2014, I informed Cadet Doolen of the above recommendation.

4.  Cadet Doolen's TAC file is attached.

AARON M. HAYNES
SFC, USA
H2 TAC NCO

5 Enclosures
1. Cadet CO Recommendation
2. Demerit Review
3. Backside CRB
4. Cadet Military Summary
5. Article 10 Packet

**000482**

Name: DOOLEN, ISIAH MATTHEW

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

Date: 10 Jul 14



Status: ACTIVE Class: 2014 Co/Regt: H2 Prior Co/Regt: B1 E4 Current CS:  Current HT: 70" Current WT: 158 lbs

RedCat: OTHER/UNKNOWN Gender: MALE Prior Service: US Army Regular USMAPS: YES

ACT-MATH: 21 ACT-ENGL: 25 ACT-SCI: 25 ACT-READ: 30 SAT-MATH: 450 SAT-VERB: 540 SAT-TSWE: 0

Rank in Company CQPA: 32/33 APSC: 31/33 MPSC: 31/33 PPSC: 29/33 Major/Field of Study: Political Science Major: Comparative Politics

| CPR Profile (AY03 forward) | ACOM-UH | ACOM-LH | CtrOfMass | BCOM-RTN | BCOM-NORTN |
|---|---|---|---|---|---|
| All written on this cadet | 8 | 12 | 10 | 5 | 2 |
| Chain of Command | 5 | 8 | 7 | 0 | 0 |
| Other | 0 | 0 | 1 | 0 | 0 |
| Peer and Subordinate | 3 | 4 | 2 | 5 | 2 |
| Staff and Faculty | 0 | 0 | 0 | 0 | 0 |

**Major Conduct Violations**

| Date | Description |
|---|---|
| 17-Apr-10 | brought alcohol into the barracks |
| 19-Oct-11 | arrived 1 hour after 1900 Recall Formation |
| 15-Sep-12 | You were Disrepectful to a Senior Cadet Non-Commissioned Officer |
| 11-Jan-13 | Failed to meet BN Suspense |
| 19-Jan-13 | While on Restrictions left room. |
| 3-Apr-13 | Damaged government property in barracks. |
| 8-May-13 | You were believed to be under the influence of alcohol beverages and without authorization, entered a barracks known by you to be occupied by female cadets and thereafter became engaged in a verbal and physical altercation with one of the female cadets. |

| Course Nbr | Position | Rtr | Tac Rtr | Grade | MPS Cum |
|---|---|---|---|---|---|
| MD100 | CBT MOS | | | B+ | 3.33 |
| MD101 | MOS | A | A- | A- | 3.52 |
| MD102 | MOS | D | D | D | 2.82 |
| MS100 | MOS | | | B | 2.82 |
| MD200 | CFT MOS | A | B | B | 2.88 |
| MD201 | TM LDR | B | B+ | B+ | 2.87 |
| MS200 | TM LDR | | | B- | 2.87 |
| MD202 | TM LDR | B | B | B | 2.88 |
| MD400 | | | | P | 2.88 |
| MD301 | SQD LDR | B | B | B | 2.90 |
| MD302 | CO STF N-4 | B | C | B | 2.89 |
| MS300 | CO STF N-4 | | | B- | 2.89 |
| MD410 | SG REG AS3 | | | P | 2.77 |
| MD300 | SG REG AS3 | | | C+ | 2.77 |
| MD401 | TNG OFF | B | D | C | 2.68 |
| MD402 | SEC LDR | C | F | F | 2.43 |



Solid Line = CQPA
Broken Line = MPSC
Dotted Line = PPSC

| TERM | 100 | 101 | 102 | 110 | 111 | 112 | 113 | 120 | 121 | 122 | 130 | 131 | 132 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CQPA | 0.00 | 2.49 | 2.40 | 2.40 | 2.28 | 2.36 | 2.36 | 2.36 | 2.31 | 2.29 | 2.29 | 2.27 | 2.20 |
| MPSC | 3.33 | 3.52 | 2.82 | 2.88 | 2.87 | 2.88 | 2.88 | 2.88 | 2.90 | 2.89 | 2.77 | 2.68 | 2.43 |
| PPSC | 0.00 | 2.67 | 2.32 | 2.32 | 2.38 | 2.41 | 2.41 | 2.41 | 2.41 | 2.03 | 2.03 | 2.12 | 2.27 |

**Conduct Record (Demerits/Tours)**

| AY | Jul | | Aug | | Sep | | Oct | | Nov | | Dec | | Jan | | Feb | | Mar | | Apr | | May | | Jun | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 35 | 100 | 0 | 0 | 0 | 0 |
| 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12 | 0 | 0 | 0 | 0 | 20 | 20 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 10 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 |
| 13 | 0 | 0 | 0 | 0 | 30 | 30 | 0 | 0 | 0 | 0 | 5 | 5 | 55 | 55 | 0 | 0 | 10 | 10 | 30 | 30 | 35 | 80 | 0 | 0 |
| 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

000483

Name: DOOLEN, ISIAH MATTHEW

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

Date: 10 Jul 14

### APFT Scores

| Test | Date | PU Raw | PU Pts | SU Raw | SU Pts | Run Raw | Run Pts | Total Pts | APFB | Grade |
|------|------|--------|--------|--------|--------|---------|---------|-----------|------|-------|
| CBT Initial | 07/01/2009 | 50 | 71 | 63 | 76 | 14:10 | 83 | 230 | | D |
| PLEBE FALL | 08/06/2009 | 48 | 68 | 75 | 95 | 12:55 | 100 | 263 | | C+ |
| PLEBE SPRING | 04/26/2010 | 71 | 100 | 80 | 100 | 14:04 | 85 | 285 | | B |
| YEARLING FALL | 10/22/2010 | 63 | 86 | 66 | 81 | 13:51 | 90 | 257 | | C |
| YEARLING SPRING | 04/07/2011 | 53 | 75 | 58 | 71 | 13:27 | 94 | 240 | | C- |
| COW FALL | 02/15/2013 | 53 | 75 | 78 | 97 | 12:38 | 100 | 272 | | B- |
| COW SPRING | 02/25/2013 | 61 | 84 | 76 | 95 | 12:13 | 100 | 279 | | B- |
| FIRSTIE FALL | 02/28/2013 | 64 | 87 | 72 | 89 | 12:09 | 100 | 276 | | B- |
| FIRSTIE SPRING | 03/23/2013 | 54 | 76 | 78 | 97 | 12:19 | 100 | 273 | | B- |

### IOCT Scores

| Test | Date | IOCT Time Raw | IOCT Time Pts | Total Pts | Grade |
|------|------|---------------|---------------|-----------|-------|
| IOCT | 9/23/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 10/21/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 11/18/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 1/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 2/24/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 3/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 4/27/2012 | 5:10 | 410 | 410.00 | F |
| IOCT | 8/27/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 9/28/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 10/26/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 11/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 1/28/2013 | 4:17 | 510 | 510.00 | F |
| IOCT | 3/1/2013 | 3:21 | 690 | 690.00 | D |

The Comments

### Athletic & Extracurricular Activities

| Start | End | Type | Name | Posn | Sqd | Auth |
|-------|-----|------|------|------|-----|------|
| 08/26/2009 | 09/28/2009 | IM | FOOTBALL (CA) | P | | |
| 09/28/2009 | 12/22/2009 | IM | BIATHALON (CA) | P | | |
| 01/19/2010 | 05/18/2010 | IM | SANDHURST (CA) | P | | |
| 08/15/2010 | 08/16/2010 | IM | TEAM HANDBALL (CA) | P | | |
| 08/16/2010 | 12/21/2010 | IM | WRESTLING (CA) | P | | |
| 01/21/2011 | 04/28/2011 | IM | FLAG FOOTBALL (CA) | P | | |
| 04/28/2011 | 05/17/2011 | IM | FLAG FOOTBALL (CA) | O | | |
| 08/15/2011 | 12/20/2011 | IM | Reconditioning | P | | |
| 01/12/2012 | 01/16/2012 | IM | ORIENTEERING (CA) | P | | |
| 01/16/2012 | 01/18/2012 | IM | ORIENTEERING (CA) | O | | |
| 01/18/2012 | 05/22/2012 | IM | FLAG FOOTBALL (CA) | O | | |
| 09/05/2012 | 12/22/2012 | IM | ULTIMATE FRISBEE (CA) | P | | |
| 01/21/2013 | 01/31/2013 | IM | ORIENTEERING (CA) | P | | |
| 01/31/2013 | 02/15/2013 | IM | SWIMMING (CA) | P | | |
| 02/15/2013 | 05/18/2013 | IM | ORIENTEERING (CA) | P | | |

000484

Name: DOOLEN, ISIAH MATTHEW

TAC: CPT Eaton-Ferenzi

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

Date: 10 Jul 14

17 May 2013

DATE OF COMMENTS: 13 May 2013

REASON FOR SUBMISSION: MD "F" - Company Supply Officer, B1

RECOMMENDATION: Separate

POTENTIAL: Below average. Has shown an inability to learn from his mistakes throughout the term; continues to illustrate bad decision-making skills and judgment through his actions. Does not believe the rules and regulations at West Point apply to him.

PERFORMANCE: Below average; Has had significant issues with meeting suspenses and was given a BN board at the beginning of the semester for missing a suspense given by the BN S-4.

CONDUCT: Below average: Has been subject of a Conduct Investigation this term after exceeded his demerit limit and since the CI, he has received three subsequent boards. Currently he's pending a possible brigade level board for the most recent incident allegedly involving alcohol and a physical altercation (08 May 2013). His conduct is a reflection of his military disposition; decision-making, judgment, and being an example for other Cadets to follow.

LEADERSHIP: Below average: Has failed to provide a good example for his subordinates and peers. Frequently does the minimum to scrape by. Often ill-prepared and does not give his subordinates enough time to respond to suspenses.

TEAMWORK AND SELFLESSNESS: Below Average: A very self-serving individual

INTERPERSONAL SKILLS: Below Average; tends to blame those around him for any professional or personal shortfalls. Often has conflict with others.

SENSE OF DUTY: Below Average: Communicates a desire to serve the US Army as an Officer, but does not follow through with that desire via his actions.

APPEARANCE: Below Average. Often in need of a haircut. Pants (the seat) of ACUs are blown out. Has been directed to fix it to no avail.

MAJ Marschean
Date: 5 Jan 11 NAME: Doolen, I, E4,2013
MAJOR: Comparative Politics
Reason for submission: Failed PH201
Recommendation: Retain, repeat PH201

Potential: CDT Doolen has the potential to do well here at USMA and as an officer in the Army. While his maturity level has improved relative to the beginning of the semester, he could stand to heighten it further. I□m certain that with a bit of focused effort that he□ll be able to achieve a level of maturity that will carry him far. He should be afforded the opportunity to repeat PH201.

Performance: End term 11-1: ACOM-UH (5), ACOM-LH (5), COM (4), BCOM-rin (2), BCOM-noRin (0). CDT Doolen□s overall performance has improved considerably since the start of the semester. His subordinate was a true leadership challenge and he worked with him to help him□ bring most of his grades up. According to his squad leader he was one of the best Team Leaders my squad. Additionally, he was failing multiple classes at the beginning of the semester and was able to pull all of them up by the end of the semester except for PH201.

Conduct: Average. CDT Doolen generally conducted himself well this semester. While serving room restriction for an offence from AY 10-2, CDT Doolen ignored the rules of his restriction and had to be corrected by his chain of command to ensure he fully understood the SOP regarding room restriction. Once he was corrected he abided by the rules. Additionally, his ADAPT counselor provided the TAC Tm with positive feedback regarding their counseling sessions and his progress.

Leadership: Average. Despite CDT Doolen□s academic struggles, he always found time to work with his subordinate who was a leadership challenge and help him to bring his own grades up. Without CDT Doolen□s guidance and assistance his Plebe might have chosen to quit or failed out of the Academy.

Teamwork and Selflessness: Average. One of his peers noted that CDT Doolen gets easily frustrated at others and tends to blame them for his problems. He complains and often gets so frustrated that he cannot respond to adversity well. He needs to work on his patience, which will come with time. The time he spent working with his Plebe is indicative of his selflessness during a time when he was too was struggling.

Interpersonal Skills: Average to Below Average. CDT Doolen has a tendency to close himself off to those who hold him accountable. An increase in his maturity level, as noted by a peer, would certainly help him to interact and respond to everyone in a more adult-like and professional manner. A peer also noted he needs to understand that everyone works differently and that no one type of leadership is right. Although he has experienced many different types of leadership he needs to be more open minded to

000485

**Name:** DOOLEN, ISIAH MATTHEW                    FOR OFFICIAL USE ONLY - PRIVACY ACT DATA                    **Date:** 10 Jul 14

what might not be the way he would do things.

Sense of Duty: Average.  CDT Doolen□s sense of duty with respect to his subordinate is strong.  On occasion however, he failed to notify his chain of command and an instructor of his whereabouts if he was not able to make a scheduled hard time.

Appearance: Average.  CDT Doolen is generally an average Cadet in appearance.  He did receive demerits/punishment for what his PL referred to as  deplorable room standards and for and unsatisfactory uniform during an inspection.  When told to correct the issues, he corrected them in a timely manner.

Major Conduct Violations NONE
Minor - None
FLAGS □ completing SLDP-A program
**RTO Comments**
Concur with TAC...Retain, repeat PH201.                                                                                       05 Jan 2011

**000486**

# REGS & DISCIPLINE

## Demerit Review

### Record for: DOOLEN ISIAH (H2 '14, USMA ID: C39038851)
### As of: 25 Jun 14

| DATE | OFFENSE | ORIGINATOR | LTR | DEM | Award | | RED | | RMKS |
|------|---------|-----------|-----|-----|-------|-------|-----|--------------|------|
| | | | | | TOURS (A/R/F) | RSTR (R/P) | | SUSP (HRS/R/P/RIR) | |
| 17 APR 10 | 1 BDE<br><br>Failure to Comply<br>I.E., brought alcohol into the barracks | CPT ALLISON MARSCHEAN USCC | 35 | | 100 / 0 / 0 | 60 / 90 | PFC | 0 / 0 / 0 / N | |
| 19 OCT 11 | 1 BN<br><br>Failure to Comply<br>I.E., arrived 1 hour after 1900 Recall Formation | | 20 | | 20 / 0 / 0 | 0 / 0 | | 15 / 0 / 0 / - | Miscommunication with friend who went to JFK instead of NEWARK Airport to pick him up. |
| 2 FEB 12 | 1 SUM<br><br>Failure to Comply<br>I.E., CDT Doolen was found with a WAP or gaming system connected to the USMA network. | | 10 | | 10 / 0 / 0 | 0 / 0 | | 0 / 0 / 0 / - | |
| 30 APR 12 | 3 SUM<br><br>Delinq. Accountability<br>I.E., CDT Doolen was not in his required class. | | 2 | | 2 / 0 / 0 | 0 / 0 | | 0 / 0 / 0 / - | |
| 15 SEP 12 | 1 BN<br><br>Failure to Comply<br>I.E., You were Disrepectful to a Senior Cadet Non-Commissioned Officer | | 30 | | 30 / 0 / 0 | 15 / 15 | | 30 / 15 / 0 / - | |
| 10 DEC 12 | 1 SUM<br><br>Failure to Comply<br>I.E., Delinquent in Accountability. | | 5 | | 5 / 0 / 0 | 0 / 0 | | 5 / 0 / 0 / - | |
| 10 JAN 13 | 1 SUM<br><br>Failure to Comply<br>I.E., Failed to sign Br ADSO contract by suspense date. | | 5 | | 5 / 0 / 0 | 7 / 7 | | 5 / 0 / 0 / - | |
| 11 JAN 13 | 1 CO<br><br>Failure to Comply<br>I.E., Failed to meet BN Suspense | | 20 | | 20 / 0 / 0 | 14 / 14 | | 6 / 0 / 0 / - | |
| 19 JAN 13 | 1 BN<br><br>Failure to Comply<br>I.E., While on Restrictions left room. | | 30 | | 30 / 0 / 0 | 30 / 30 | | 0 / 0 / 0 / - | |

000487

| 27 MAR 13 | 1 CO | EATON USCC | 10 | 10 / 0 / 0 | 0 / 0 | | 0 / 0 / 0 / - | |
|---|---|---|---|---|---|---|---|---|
| | Failure to Comply<br>I.E., Unexcused absence. | | | | | | | |
| 3 APR 13 | 1 BN | Eaton USCC | 30 | 30 / 0 / 0 | 30 / 30 | | 0 / 0 / 0 / - | |
| | Failure to Comply<br>I.E., Damaged government property in barracks. | | | | | | | |
| 8 MAY 13 | 1 BDE | | 35 | 80 / 0 / 0 | 60 / 90 | PFC | 0 / 0 / 0 / N | Code 5: 2nd offense SLDP |
| | Failure to Comply<br>I.E., You were believed to be under the influence of alcohol beverages and without authorization, entered a barracks known by you to be occupied by female cadets and thereafter became engaged in a verbal and physical altercation with one of the female cadets. | | | | | | | |

000488

# REGS & DISCIPLINE

Home | Software Change Request | Manage Users | Manage Days | Staff/Fac Portal | Log Off

## MILSUM Report

### as of 25 Jun 14

| | | | | |
|---|---|---|---|---|
| Name: DOOLEN ISIAH M | Class: 2014 | | Co/Regt: H2 | Prior Co/Regt: E4, B1 | Current CS: |
| USMA ID: C39038851 | RedCat: OTHER/UNKNOWN | | Gender: MALE | Status: ACTIVE | |

## SUMMER TRAINING

| Acad Yr | Activity | Completed |
|---|---|---|
| 10 | CBTNC | |
| 11 | AA | |
| | CFTYR | |
| | AA | |
| 12 | CTLT | |
| 13 | CLDTF | |
| | AFCS | |
| | SGR | |
| 15 | CFT | |

## MILITARY PROGRAM RECORD

| Term Period | Military Activity | Position | Rtr | Int Rtr | Sr Rtr | Tac Rtr | Ltr Grd | Activity Weight | MPS Term | MPS Cum |
|---|---|---|---|---|---|---|---|---|---|---|
| 10-0 | MD100 | CBT MOS | | | | | B+ | 2.0 | 3.33 | 3.33 |
| 10-1 | MD101 | MOS | A | A | | A- | A- | 2.5 | 3.67 | 3.52 |
| 10-2 | MD102 | MOS | D | D | | D | D | 2.5 | 2.50 | 2.82 |
| 10-2 | MS100 | | | | | | B | 7.5 | 2.50 | 2.82 |
| 11-0 | MD200 | CFT MOS | A | C | | B | B | 7.0 | 3.00 | 2.88 |
| 11-1 | MD201 | TM LDR | B | B | B | B+ | B+ | 3.0 | 2.86 | 2.87 |
| 11-1 | MS200 | | | | | | B- | 7.5 | 2.86 | 2.87 |
| 11-2 | MD202 | TM LDR | B | B | B- | B | B | 3.0 | 3.00 | 2.88 |
| 12-0 | MD400 | | | | | | P | 0.0 | 0.00 | 2.88 |
| 12-1 | MD301 | SQD LDR | B | B | B- | B | B | 7.5 | 3.00 | 2.90 |
| 12-2 | MD302 | CO STF N-4 | B | A | A+ | C | B | 7.5 | 2.84 | 2.89 |
| 12-2 | MS300 | | | | | | B- | 7.5 | 2.84 | 2.89 |
| 13-0 | MD410 | SG REG AS3 | | | | | P | 0.0 | 2.33 | 2.77 |
| 13-0 | MD300 | SG REG AS3 | | | | | C+ | 15.0 | 2.33 | 2.77 |
| 13-1 | MD401 | TNG OFF | B | B | A- | D | C | 10.0 | 2.00 | 2.68 |
| 13-2 | MD402 | SEC LDR | C | D | B+ | F | F | 10.0 | 1.29 | 2.43 |
| 13-2 | MX400 | | | | | | B | 7.5 | 1.29 | 2.43 |

## MAJOR AWARDS

| Offense Code | Offense Date | Demerits/ Tours |
|---|---|---|
| 1 | 17 Apr 10 | 35 / 100 |
| 1 | 19 Oct 11 | 20 / 20 |
| 1 | 15 Sep 12 | 30 / 30 |
| 1 | 11 Jan 13 | 20 / 20 |
| 1 | 19 Jan 13 | 30 / 30 |
| 1 | 3 Apr 13 | 30 / 30 |
| 1 | 8 May 13 | 35 / 80 |

## CONDUCT RECORD (Demerits / Tours)

| AcadYr | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | | | | | | | | | | 35/100 | | |
| 11 | | | | | | | | | | | | |
| 12 | | | 20/20 | | | | 10/10 | | | 2/2 | | |
| 13 | | 30/30 | | | 5/5 | 55/55 | | | 10/10 | 30/30 | 35/80 | |
| 14 | | | | | | | | | | | | |

## CONDUCT STATUS

| Hearing Type | Date | Action Taken | Ending Date |
|---|---|---|---|
| | | | |

**CPR PROFILE**      ACOM-UH   ACOM-LH   CtrOfMass   BCOM-Rtn   BCOM-NoRtn

| | | | | | |
|---|---|---|---|---|---|
| All CPRs (written ON this cadet:) | 8 | 16 | 12 | 5 | 2 |
| Chain of Command CPRs: | 5 | 8 | 7 | 0 | 0 |
| Peer & Subordinate CPRs: | 3 | 4 | 2 | 5 | 2 |
| Staff & Faculty CPRs: | 0 | 0 | 1 | 0 | 0 |
| Other CPRs: | 0 | 0 | 0 | 0 | 0 |

000490

14ᴱ



**REPLY TO
ATTENTION OF**

DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK 10996

MACC-O-RD                                                                23 June 2014

MEMORANDUM FOR SEE DISTRIBUTION

**SUBJECT: Disciplinary Award No. 186**
**Doolen, Isaiah, Company H, Second Regiment, CDT PFC, Class of 2014**

1. **LEVEL OF PROCEEDING:** Brigade

2. DELINQUENCY: (Article 1) Failure to Comply with Regulations, Orders, Instructions. You
were believed to be under the influence of alcoholic beverages and without authorization, entered
a barracks room known by you to be occupied by female cadets and thereafter engaged in a
verbal and physical altercation with one of the female cadets and attempted to physically prevent
her from exiting her room. *On or about 08 May 2013.*

3. **AWARDED:** 35 Demerits. 80 hours of extra duty, 60 days of restriction and 90 days
withdrawal of privileges and reduction in rank to PFC. Enroll into SLDP, no ASAP evaluation
per BTO. You have 24 hours to remove all rank from your uniforms. Punishment does not take
effect until 18 August 2014.

4. **SPECIAL INSTRUCTIONS:** Cadets on restriction have no privileges and must read and
comply with the terms of restriction IAW para 104; USCC Regulation 351-2, dated 15 May 01.

Restriction and Withdrawal of Privileges begins on 23 June 2014.
Restriction ends at 2400 hours on 14 October 2014**
Withdrawal of Privileges ends at 2400 hours on 13 November 2014**

***\*\*IAW USCC SOP and Privilege Memos, dates are approximate and may be adjusted. Please
check with your TAC before scheduling any leaves/passes.***

Acknowledgment:
**CADET SIGNATURE and DATE:** _Isiah M. Doolen_    09 July 14

FOR THE COMMANDANT OF CADETS:

DELROY A. PATRICK
R & D Officer, USCC

DISTRIBUTION:
1 TAC
1 CDT Doolen
1 REGT

USMA FORM 2-3; NOT for use in summarized proceedings

## RECORD OF FORMAL PROCEEDINGS UNDER ARTICLE 10, CADET DISCIPLINARY CODE

Level of Proceeding(check one):  Company ☐  Battalion ☐  Regimental ☐  Brigade ■

*SEE NOTES ON REVERSE BEFORE COMPLETING FORM*

| a. Cadet Name (Last, First, MI) | b. Class | c. SSN | d. Unit | e. Corps Squad/DCA Club:  Yes   No |
|---|---|---|---|---|
| DOOLEN, ISAIAH | 2015 | 7694 | H2 | Notification sent?  YES   NO |

**NOTIFICATION:**

1. I am considering whether you should be punished under Article 10, CDC, for the following misconduct:

On or about 8 May 2013 you were believed to be under the influence of alcoholic beverages and without authorization, entered a barracks room known by you to be occupied by female cadets and thereafter became engaged in a verbal and physical altercation with one of the female cadets and attempted to physically prevent her from exiting her room.

Article 1.  Failure to comply with Regulations, Orders, and Instructions *Dme*
Article 6.  Unsatisfactory Behavior *R mR*
Article 7.  Error in Judgment *2 nn*

2. You have several rights under this Article 10 proceeding.  First I want you to understand I have not yet made a decision whether or not you will be punished.  I will not impose punishment unless I am convinced by a preponderance of the evidence that you committed the offense(s).  You may request a person to speak on your behalf.  You may present witnesses or other evidence to show why you shouldn't be punished at all (matters of defense) or why punishment should be very light (matters of extenuation and mitigation).  I will consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose. 2/ **MAX Punishment = 35 Demerits, 100 Hours, 90 days Withdrawal of Privileges, 60 days of Restriction, Reduction in Rank to one or more lower ranks.** *R mR*

3. Your hearing will proceed on _____ (date/time/location; at least 48 hours)  You have until then to prepare any matters for your defense.3/

| DATE: *03-n 14* | NAME, GRADE, AND ORGANIZATION OF COMMANDER (OR DESIGNATED REPRESENTATIVE) | SIGNATURE |
|---|---|---|
| TIME: *0707* | Aaron Haynes, SFC, USA, TAC NCO, CO H2 | |

**HEARING:**

3. Having been afforded the opportunity to prepare for this hearing, my decisions are as follows: (initial appropriate blocks, date, and sign)

a.  A person to speak on my behalf *Qm Qm* is requested     *Qm* is not requested.

b.  Matters in defense, mitigation, and/or extenuation:  ☐ Are not presented   *Qm* ☒ Will be presented in person   ☐ Are attached.

| DATE | NAME AND GRADE OF CADET | SIGNATURE |
|---|---|---|
| *06-10-14* | Isaiah Doolen, CDT, CO H2, CL 2015 | *Q m* |

**IMPOSITION OF PUNISHMENT:**

4. In this hearing, all matters presented in defense, mitigation, or extenuation, having been considered, the following punishment is imposed: 4/

a. ___ Admonition/Reprimand  b. *80* Extra-Duty(hours)  c. *60* Restriction (Days)  d. Reduction in Rank to *PFC* (rank)  e. Other *SLDP*

f. Withdrawal of Privileges: (circle one) *ALL* or  AS SPECIFIED: _____ for *90* days.

g. Suspension (paragraph(s)): _____ ; to be automatically remitted if not vacated before _____ (date) 5/

5. You are advised of your right to appeal to the Commandant within 3 calendar days.  An appeal made after that time may be rejected as untimely. Punishment is effective immediately unless otherwise stated above.

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| *23 Jan 14* | Nick S. Mauldin, COL, FA, Brigade Tactical Officer | |

**APPEAL:**

6. (initial appropriate block, date, and sign)

a. *jm* I do not appeal.   b. ☐ I appeal and do not submit additional matters. 6/   c. ☐ I appeal and submit additional matters. 6/

| DATE | NAME AND GRADE OF CADET | SIGNATURE |
|---|---|---|
| *23 JvN 14* | Isaiah Doolen, CDT, CO H2, CL 2015 | |

7. After consideration of all matters presented in appeal, the appeal is:  ☐ Denied  ☐ Granted as follows: 7/

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| | Richard D. Clarke, BG, USA, Commandant of Cadets | |

| 8. I have seen the action taken on my appeal. | DATE | SIGNATURE |
|---|---|---|

9. ALLIED DOCUMENTS AND/OR COMMENTS. 8/ 9/

USMA Form 2-3 (Aug 99)

000492



**DEPARTMENT OF THE ARMY**
UNITED STATES MILITARY ACADEMY
WEST POINT, NY 10996

MACC-O-1-B                                                            13 May 2013

MEMORANDUM THRU: Regimental Tactical Officer, First Regiment, United States Corps of Cadets, West
Point, New York 10996

Brigade Tactical Officer, Brigade Tactical Department, United States Corps of Cadets, West Point, NY 10996

FOR: Commandant of Cadets, United States Corps of Cadets, West Point, NY 10996

SUBJECT: PRELIMINARY INQUIRY: CADET ISIAH M. DOOLEN, COMPANY B1, CLASS OF 2013.

1. Findings: Cadet Doolen should be subject to a Brigade-level board. The incident on 08 May 2013 involved
alcohol, a possible physical assault, and verbal abuse and harassment. When these aforementioned issues are
coupled with the misconduct of Cadet Doolen's past and his known anger management issues, I believe the
situation may become even more dangerous (escalating to higher levels of violence) and warrants immediate
attention.

2. Recommendations: Brigade board. No contact order. Loss of all privileges. Room restriction. Order to
refrain from consuming alcohol. Additional appointments with behavioral and mental health to address his
anger and relationship issues.

3. Discussion/ Sequence of Events: Cadet Isiah Doolen, Company B1, class of 2013, went to his ex-girlfriend's
room (Cadet N████ D████ Company C3, class of 2015) on 08 May 2013 on or about 2240 hours on his way
back to his barracks room from the Firstie Club. He knocked on their closed door and with no response, he let
himself in, slamming the door behind him. Both female cadets were in their beds about to go to sleep. Cadet
Doolen did not leave the door cracked open either, a violation of USCC SOP.
       Upon entering the room (Eisenhower Barracks, room 419), Cadet Doolen went over to Cadet D████s
bed and hovered over her. She asked him to leave as she assumed he was drinking and was drunk based off of
the smell of his breath and physical cues. She followed up her request for him to leave by asking him if he was
drunk. He stated he was not drunk and started insulting her repeatedly; calling her a "fucking whore" and
telling her she could "whore around during TEE week." Cadet D████ asked Cadet Doolen to leave again. He
refused to exit as requested and the situation escalated.
       Cadet D████'s roommate, Cadet Jillian Collins witnessed numerous arguments as the couple has been
on again, off again for the past six months and therefore was not alarmed by the arguing at first. She did notice
that Cadet Doolen was inebriated based off of his slurred words, physical stumbling, and "strong stench of
alcohol" that filled the room when he entered it. She validates Cadet D████'s story via her sworn statement.
       Cadet D████ got out of bed after asking Cadet Doolen to leave multiple times. She tried to go out into
the hallway for help, but Cadet Doolen blocked her and grabbed her shoulders to try to keep her from getting
to the door. She pushed past him in her attempt to get to her barracks room door and also called to her
roommate for assistance. As she made her way to her door and opened it, two males (Third Class Cadets)
were walking down the hallway and one responded to her request for help. Cadet Austin Hunt engaged Cadet
Doolen and asked him what was going on. While this was happening Cadet D████ stepped into her room and
quickly locked the door. Cadet Hunt urged Cadet Doolen to leave and let the situation cool down. Cadet Hunt
also noticed that Cadet Doolen exhibited signs of inebriation. Cadet Doolen remained silent and stood in the
hallway. Cadet Hunt went into a barracks room two doors down from Cadet D████'s room. He stepped out a
moment or two later and Cadet Doolen was gone.
       Upon making his way back to Lee Barracks, Cadet Doolen was allegedly in Legion Square screaming
"N████ D████ is a whore" and then again screamed the same line inside Lee Barracks.

MACC-O-I-B
SUBJECT: PRELIMINARY INQUIRY: CADET ISIAH M. DOOLEN, COMPANY B1, CLASS OF 2013.

       Cadet Doolen claims he was not drunk and has attempted to request several Cadets to vouch for him. No facts, other than a singular email stating what he had to drink between 2000-2030, have been substantiated by any witnesses. Cadet Alexander Alpert wrote a statement describing what Cadet Doolen had to drink from 2000-2030.

       Cadet Doolen, self-admittedly, was at the Firstie Club from at least 1900 to 2240, possibly longer. He consumed a minimum of 3 to 4 drinks, possibly more. He had mononucleosis last semester which has made his tolerance for alcohol lower than normal. He is also on medications for ADHD, which may amplify the effects of alcohol as well. It is unknown if he is on additional medications that amplify the effects of alcohol.

       Originally Cadet Doolen signed a DA3881 rights waiver and was going to turn in a sworn statement. He has since changed his mind about writing a sworn statement and remained relatively quiet. The only time he has engaged me to talk about this incident is to slander Cadet D▇▇▇ by sharing snippets of their text message and email exchanges during their volatile six-month relationship. He claims Cadet D▇▇▇ has threatened him in the past and that several emails and texts he has saved prove it, but gives no specific details as to what those "threats" have been or if they are relevant to the most recent incident. Additionally, most of the information he has shared is ancillary to the actions of that night. The context of the evening is that they were broken up and Cadet Doolen was unsettled about it. He stated (after signing the rights waiver) that he wanted closure and that is the reason he went over to her room.

       I believe anger and emotion drove Cadet Doolen's decision to go over to Cadet D▇▇▇'s room that night. He allegedly entered Cadet D▇▇▇'s room without permission to enter, slammed the door behind him, refused to leave as requested, and became verbally and physically abusive.

       Cadet Doolen describes the physical encounter as "bumping" into each other, even though Cadet D▇▇▇'s roommate, Cadet Collins, witnessed the physical altercation and wrote a sworn statement that Cadet Doolen physically grabbed Cadet D▇▇▇. The roommate also said that based on his actions, words, and cues that she believed him to be inebriated.

       This relationship has been on again, off again since November 2012, and that night (to current day), the couple is broken up.

4.  POC is the undersigned at x2905 or elizabeth.eaton@usma.edu.

                             *Elizabeth A. Eaton-Ferenzi*
                             ELIZABETH S. EATON-FERENZI
                             CPT, AV
                             Tactical Officer, B1, USCC

000494

CDT Isaiah Doolei
23 Jun 14



186

* Was on restriction — Regimental 28 MAR
overturned 16 April

* SFC Rowley — Did they loft the flag

* Maj Richardson — BN Board — 10 April 14 - 30/30/30

* CDT Doolen admitted:
    1) He was Drinking
    2) CDT D ██████ asked him to leave
       and he did not
    3) He was in the Room

← CDT Doolen did not admit
to preventing her from leaving
the Room

23 Jun 14

TO

## SWORN STATEMENT
For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION West Point, New York | 2. DATE (YYYYMMDD) 2013/10/05 | 3. TIME 22:31 | 4. FILE NUMBER |
|---|---|---|---|
| 5. LAST NAME, FIRST NAME, MIDDLE NAME Collins, Jillian Marie | | 6. SSN | 7. GRADE/STATUS Cadet CPL |

8. ORGANIZATION OR ADDRESS
United States Military Academy USCC Company C3

9.

I, Jillian Collins _____, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

As my roommate and I were laying in bed about to go to sleep, a clearly intoxicated CDT Isiah Doolen stumbled into the room, slamming the door and approaching my roommate (CDT N[redacted]D[redacted] in her bed. He then covered my head in hopes it was just one of the typical "arguments" that they are known for throughout this school year and that they would go away quickly. It then proceeded by him questioning her why she stopped talking to him and returned his things. Then she just shrugged her shoulders and tried to get rid of him by telling him to "F@#$ing Leave", and he then proceed to start telling her "I hope you whore around during TEE week because your nothing but a F$%#ing Whore" and was beginning to raise his voice. CDT N[redacted]D[redacted] knew that I was trying to sleep so tried to take the argument outside. As she got up to approach the door he proceeded to grab her and become physical to keep her from leaving the room to get him. CDT N[redacted]D[redacted] was then able to push him off of her and he hit the rifle rack and she was able to escape the room to try and talk to him outside. He then began to raise his voice and block the door so she could not get back into the room. She then proceeded to raise her voice to yell at him to "get the F#@% out of the room" and then asked bystanders in the hallway for help. At first they turned around and walked away, then after she called one by name he came to help which caused CDT Isiah Doolen to storm off in an angry rage down the hall while becoming physical with inanimate objects.

- What led you to believe Cadet Doolen was intoxicated? Physical Signs of any kind? Please describe and explain.
  - Cadet Doolen was stumbling and slurring his words when speaking and also had a strong stench of alcohol that filled the room.

- Did you or your roommate allow (give permission) for Cadet Doolen to enter your Barracks Room?
  No, CDT Doolen did not knock and just directly walked in the room slamming the door behind him.

- Were you awake, alert and aware of Cadet Doolen the entire time he was in your room?
  Yes, when he came into the room I was on my phone (texting) and still fully awake.

- How did he grab Cadet D[Redacted PII] Location on body?
  He grabbed her shoulders from behind to keep her from exiting the room then shoved her after he hit the rifle rack from her shoving him off.

- Who was in the hallway (2 males)? Which one helped?
  Eddie Jenkins, Austin Hunt. Austin Hunt was the one who helped.
  NOTHING FOLLOWS JC

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT JC | PAGE 1 OF 2 PAGES |
|---|---|---|

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

**DA FORM 2823, NOV 2006**        PREVIOUS EDITIONS ARE OBSOLETE        APD PE v1.01ES

000496

STATEMENT OF _Jillian Collins_   TAKEN AT _22:31_   DATED _2013-10-05_

9. STATEMENT *(Continued)*

JC

JC

JC

JC

**AFFIDAVIT**

I, _Jillian Collins_ , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE _2_ . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

*(Signature of Person Making Statement)*

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this _10_ day of _May_ , _2013_ at _West Point, NY 10996_

_____

ORGANIZATION OR ADDRESS

*(Signature of Person Administering Oath)*

_EATON-FERENZI  ELIZABETH S._
*(Typed Name of Person Administering Oath)*

_____

ORGANIZATION OR ADDRESS

_CPT, AV        31 TAC   USCC_
*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT
_JC_

PAGE _2_ OF _2_ PAGES

DA FORM 2823, NOV 2006

APD V1.00

## SWORN STATEMENT
For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

| | |
|---|---|
| **AUTHORITY:** | Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN). |
| **PRINCIPAL PURPOSE:** | To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents. |
| **ROUTINE USES:** | Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions. |
| **DISCLOSURE:** | Disclosure of your SSN and other information is voluntary. |

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| West Point NY | 2013 05 10 | 2255 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| Redacted PII  Redacted PII | | CDT /2015 |

8. ORGANIZATION OR ADDRESS

9. I, Redacted PII  Redacted PII , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

at 2242 on 8 May 2013, my roommate and I lay in bed about to go to sleep, I heard a knock on the door, and someone entered. The door closed behind him and I immediatly felt uneasy, because the trash can was easily accesible, and he just walked right past it without putting it in the door. It was Cadet Isiah Owden. He walked slowly to my bed, hovered over it, and I kindly asked him to leave, because I had assumed he had been drinking (I saw him walking to the Firstie Club that evening at around 1900)-I asked if he was drunk and he said no. I asked if he had been drinking and he said "I'm not drunk" a few more times. He then said began to insult me repeadly, calling me inappropriate names. He then said something to the effect of, "You just want to to whore around during TEE leave. You're a whore." I asked him to leave again. I got out of bed and he stood in the path of the door preventing me from opening and going through the door using physical force. He repeatedly said my name and frantically grabbed my shoulders and arms preventing me from walking forward. I pushed him out of the way, almost made it to the

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 3 PAGES |
|---|---|---|

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

| **DA FORM 2823, NOV 2006** | DA FORM 2823, DEC 1998, IS OBSOLETE | APD V1.00 |
|---|---|---|

USE THIS PAGE IF NEEDED. IF THIS PAGE IS NOT NEEDED, PLEASE PROCEED TO FINAL PAGE OF THIS FORM.

STATEMENT OF N[Redacted PII] D[Redacted PII]    TAKEN AT 2255    DATED 10 MAY 2013

9. STATEMENT *(Continued)*

door, and called for my roommate to get up. My roommate, Jillian Collins, was awake the entire time. He continued to stand in the doorway. I was at this point, verbally urging him to leave my room and raising my voice. I managed to push past him, I saw cadets Austin Hunt and Eddie Jenkins in the hallway and called Austin Hunt to come to me and hopefully intervene. At that moment, I stepped back into my room and immediately locked my door, while he was still in my face trying to stay near me. The next day, numerous witnesses came up to me and told me about cadet Doolen being in Legion Square that night (8 MAY 13) screaming "N[Redacted PII] D[Redacted PII] is a whore" at the top of his lungs over and over again. He did the same in his company area once he had made it there.

Did you have any bruises on your arms or shoulders?

NO.

Are you frightened of Cadet Doolen?

Yes. I am afraid to go anywhere alone.

What physical signs of enebriation did you observe?

He slurred his words, talked slowly, walked carefully, and his eyes drooped. I also smelled alcohol on his breath.    NOTHING FOLLOWS NB

INITIALS OF PERSON MAKING STATEMENT
NB

PAGE 2 OF 3 PAGES

DA FORM 2823, NOV 2006    APD V1.00

STATEMENT OF N̲ Redacted PII D̲ Redacted PII TAKEN AT 2255 DATED 10 MAY 2013

9. STATEMENT *(Continued)*

CNRO

CNRO

CNRO

CNRO

**AFFIDAVIT**

I, N̲ Redacted PII D̲ Redacted PII , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE 3 . I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

N̲ Redacted PII D̲ Redacted PII
*(Signature of Person Making Statement)*

WITNESSES:

_____

_____

ORGANIZATION OR ADDRESS

_____

_____

ORGANIZATION OR ADDRESS

Subscribed and sworn to before me, a person authorized by law to administer oaths, this 10th day of May , 2013 at West Point, NY

*(Signature of Person Administering Oath)*

EATON-FERENZI ~ ELIZABETH S.
*(Typed Name of Person Administering Oath)*

CPT, AV B1 TAC, USCC
*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT

PAGE 3 OF 3 PAGES

DA FORM 2823, NOV 2006

APD V1.00

000500

I was walking down the hallway with CDT Jenkins. We noticed that CDT D█████was standing in her doorway telling someone very sternly to get out of her room. CDT Jenkins and I turned the other way for a second. CDT D████called me over. I went over and a male firstie cadet was standing in the doorway of her room and would not leave her room. He was obviously intoxicated and kept refusing to leave. I asked what was going on. The male firstie cadet looked at me and CDT D████ran in her room and locked the door. At this point the male firstie cadet and I were standing in the hallway. I told him that he needed to leave and let CDT D████cool off. He then stood there while I went into the room two doors down. I walked back out of the room a moment later and he was gone.

\- Statement from Cadet Austin Hunt

Eaton, Eliz
From:
Sent:
To:
Cc:
Subject:

CPT Eaton,

Isiah asked m
to offer this
Club where he
He was watchi
he ordered bot
former girlfri
disappointed w
getting back t
former company

I only know abo
knowledge of th

Very Respectfull

CDT LT Alpert

Class of 2013, E-1

Pride and Discipli

"Dulce et decorum e
patria bibere. Ergo, bibamus pro salute patriae."    ... sea duicius pro patria vivere,  et dulcissimum pro



**Brigade Board Proceedings
and Punishment**

Cadet: *Isaiah Dalen*

Company: *H2*

Class: *2014*

Board DTG: *23 JUN 14*

MAX PUNISHMENT: 35 Demerits, 100 Extra-Duty Hours, 60 Days of
Restriction, 90 Days of Withdrawn Privileges and Reduction in Rank to one or
more lower ranks

Punishment Awarded:

|  | Punishment | Suspend |
|---|---|---|
| Hours | ~~100~~ 80 |  |
| Restriction | 60 |  |
| Withdrawal of Privileges | 90 |  |
| Reduction in Rank | PFC |  |
| ROOM & BARRACKS | 407 | *Le* |

Additional Remarks: SLDP ●
_____
_____
_____
_____

nd I would like
the First Class
at about 2000.
my first beer,
g up with his
e was
intent of
lk with his

cts my best

1

000502

Eaton, Elizabeth S CPT MIL USA USMA

| | |
|---|---|
| From: | Alpert, Alexander W CADET MIL USA USMA |
| Sent: | Friday, May 10, 2013 1:08 PM |
| To: | Eaton, Elizabeth S CPT MIL USA USMA |
| Cc: | Doolen, Isiah M CADET MIL USA USMA |
| Subject: | Brief Testimony of my interaction with Isiah Doolen on 8 May 2013 |

CPT Eaton,


Isiah asked me to write you regarding my interaction with him on 8 May 2013, and I would like
to offer this email as a brief account of when I saw him that day.  We met at the First Class
Club where he was drinking at the bar.  I sat down on the barstool next to him at about 2000.
He was watching soccer on the TV with a few of his friends.  After I finished my first beer,
he ordered both of us a drink, and explained that he was unhappy about breaking up with his
former girlfriend.  He was calm and collected, and nursing his drink. He said he was
disappointed with the abruptness of the break-up, and expressed that he had no intent of
getting back together with her.  At about 2030, we split ways and he went to talk with his
former company mates while I joined some of my other friends.


I only know about his actions during the time of 2000-2030, and this email reflects my best
knowledge of that time.


Very Respectfully,


CDT LT Alpert


Class of 2013, E-1


Pride and Discipline-Black Knights Drill Team


"Dulce et decorum est pro patria mori, sed dulcius pro patria vivere,  et dulcissimum pro
patria bibere. Ergo, bibamus pro salute patriae."

1

000503

# RIGHTS WARNING PROCEDURE/WAIVER CERTIFICATE
For use of this form, see AR 190-30; the proponent agency is PMG

## DATA REQUIRED BY THE PRIVACY ACT

**AUTHORITY:** Title 10, United States Code, Section 3012(g)
**PRINCIPAL PURPOSE:** To provide commanders and law enforcement officials with means by which information may be accurately identified.
**ROUTINE USES:** Your Social Security Number is used as an additional/alternate means of identification to facilitate filing and retrieval.
**DISCLOSURE:** Disclosure of your Social Security Number is voluntary.

| 1. LOCATION WEST POINT NY | 2. DATE 09 MAY 2013 | 3. TIME 1755 | 4. FILE NO. |
|---|---|---|---|

| 5. NAME (Last, First, MI) DOOLEN, ISIAH M. | 8. ORGANIZATION OR ADDRESS West Point, NY 10996 |
|---|---|

| 6. SSN N/A | 7. GRADE/STATUS CDT / 2013 | |

## PART I – RIGHTS WAIVER/NON-WAIVER CERTIFICATE

### Section A. Rights

The investigator whose name appears below told me that he/she is with the United States Army **BTD, United States Corps of Cadets, West Point, NY 10996** and wanted to question me about the following offense(s) of which I am suspected/accused: entering the barracks, rm 419 while possibly enebriated, refusing to depart room, getting in a **a physical altercation.** physical altercation. Possible verbal harrasment.

Before he/she asked me any questions about the offense(s), however, he/she made it clear to me that I have the following rights:

1. I do not have to answer any question or say anything.
2. Anything I say or do can be used as evidence against me in a criminal trial.
3. *(For personnel subject to the UCMJ)* I have the right to talk privately to a lawyer before, during, and after questioning and to have a lawyer present with me during questioning. This lawyer can be a civilian lawyer I arrange for at no expense to the Government or a military lawyer detailed for me at no expense to me, or both.

   - or -

   *(For civilians not subject to the UCMJ)* I have the right to talk privately to a lawyer before, during, and after questioning and to have a lawyer present with me during questioning. I understand that this lawyer can be one that I arrange for at my own expense, or if I cannot afford a lawyer and want one, a lawyer will be appointed for me before any questioning begins.
4. If I am now willing to discuss the offense(s) under investigation, with or without a lawyer present, I have a right to stop answering questions at any time, or speak privately with a lawyer before answering further, even if I sign the waiver below.

5. COMMENTS   *(Continue on reverse side)*

### Section B. Waiver

I understand my rights as stated above. I am now willing to discuss the offense(s) under investigation and make a statement without talking to a lawyer first and without having a lawyer present with me.

| WITNESSES (If available) | 3. SIGNATURE OF INTERVIEWEE |
|---|---|
| 1a. NAME (Type or Print) Kellen C. Rowley | |
| b. ORGANIZATION OR ADDRESS AND PHONE USCC, B1 West Point, NY 10996   (845) 938-5004 | 4. SIGNATURE OF INVESTIGATOR |
| 2a. NAME (Type or Print) | 5. TYPED NAME OF INVESTIGATOR ELIZABETH S. EATON-FERENZI |
| b. ORGANIZATION OR ADDRESS AND PHONE | 6. ORGANIZATION OR ADDRESS AND PHONE CPT, AV TACTICAL OFFICER, B1 |

### Section C. Non-waiver

1. I do not want to give up my rights
   ☐ I want a lawyer   ☐ I do not want to be questioned or say anything
2. SIGNATURE OF INTERVIEWEE

ATTACH THIS WAIVER CERTIFICATE TO ANY SWORN STATEMENT *(DA FORM 2823)* SUBSEQUENTLY EXECUTED BY THE SUSPECT/ACCUSED

**DA FORM 3881, NOV 1989**      EDITION OF NOV 84 IS OBSOLETE.      APD LF v2.02ES

**000504**

**Stamp, Katrina CIV US USA USMA**

| | |
|---|---|
| From: | Eaton, Elizabeth S CPT MIL USA USMA |
| Sent: | Thursday, May 09, 2013 4:24 PM |
| To: | Cross, John D LTC MIL USA USMA |
| Cc: | Richardson, William MAJ MIL USA USMA; Rowley, Kellen SFC MIL USA USMA |
| Subject: | CDT Doolen - incident last night |
| Signed By: | elizabeth.eaton@us.army.mil |

Sir,

There was a situation last night with CDT Doolen:

WHO:  Cadet Isiah Doolen, B1, 2013

WHAT:  Went to ex-girlfriend's barracks room o/a 2240, seemingly under the influence of alcohol, wouldn't leave when asked, became physical, was using inappropriate & derogatory language towards his ex-girlfriend.

WHEN:  Last night (08 MAY) on or about 2242; likely on his way back from the Firstie club

WHERE:  Ike Barracks, Rm 419

WHY:  Not sure

Notes:  Cadet Doolen came to talk to SFC Rowley prior to first formation this morning and did not mention a word about this incident. Instead, he told SFC Rowley that he wanted assistance keeping his ex-girlfriend away from him as she exacerbates situations he's found himself in (disciplinary wise) and that he doesn't want the drama or trouble. He claimed he had harassing texts and emails from her. They have dated on and off since NOV of last year. Their typical cycle is fight, break up, make up and so on. Very volatile relationship. Upon calling the C3 TAC, MAJ Rutnarak, and asking for his assistance in addressing the manner Isiah brought up to SFC Rowley, he pulled in Cadet N██████ D██████ and her roommate and they reported Isiah. They are writing sworn statements and MAJ Rutnarak doesn't want Isiah in his barracks anymore. I am going to tell Isiah he has a "no contact order" with N██████ D██████ and that he's not allowed in Ike Barracks for any reason.

Attached are the preliminary statements MAJ Rutnarak took down. I believe that Isiah is a ticking time bomb and we may want to alert the masses. Other than a no contact order, I plan on counseling Isiah, but I'm wondering what level board you'd like this at. I would say BN (at a minimum), but I think a REG board would be more appropriate. Seeking your guidance.

1

V/R,

Liz


Elizabeth S. Eaton-Ferenzi

CPT(P), AV

USCC, Tactical Officer, B1


elizabeth.eaton@usma.edu

Office: 845-938-2905

Cell: 845-489-6717

2

000506

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Lee Barracks, B1 TAC Office, West Point, NY 10996 | 2013/05/13 | 1005 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| HUNT, AUSTIN | | CDT / 2015 |

**8. ORGANIZATION OR ADDRESS**
Company C3, United States Corps of Cadets, West Point, NY 10996

**9.**

I, Austin Hunt                                    , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

I was walking down the hallway with CDT Jenkins. We noticed that CDT D████ was standing in her doorway telling someone very sternly to get out of her room. CDT Jenkins and I turned the other way for a second. CDT D████ called me over. I went over and a male firstie cadet was standing in the doorway of her room and would not leave her room. He was obviously intoxicated and kept refusing to leave. I asked what was going on. The male firstie cadet looked at me and CDT D████ ran in her room and locked the door. At this point the male firstie cadet and I were standing in the hallway. I told him that he needed to leave and let CDT D████ cool off. He then stood there while I went into the room two doors down. I walked back out of the room a moment later and he was gone.

Did you know who the "male firstie cadet" was (name, relationship to Cadet D████)?

I did not know his name but I knew he had a romantic relationship with CDT D████

What time was it when you became involved in this incident?

Approximately ~~About~~ 20 minutes before TAPS. ANH

Did you witness any physical violence of any kind? If so, please describe.

No, there was just stern ~~talking~~.

What room did you go in after telling "the male firstie cadet" to leave?

E417, My friends room

Why did you go into that room instead of back to yours? ANH

I had a question for CDT Greene pertaining to one of my classes.

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT A.N.H. | PAGE 1 OF   2 ANH PAGES |
|---|---|---|

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

**DA FORM 2823, NOV 2006**          PREVIOUS EDITIONS ARE OBSOLETE          APD PE v1.01ES

STATEMENT OF **HUNT, AUSTIN** ᴛᴀKEN AT **West Point, NY** DATED **2013/05/13**

9. STATEMENT   *(Continued)*

What "stern talking" did you hear?

CDT D[Redacted PII] kept telling him to get out of her room and to leave. He kept refusing to leave. However, he was not talking sternly.

## NOTHING FOLLOWS

ANH

ANH    ANH

ANH

AFFIDAVIT

I, **Austin    Hunt** , HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE **2ANH**. FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

*(Signature of Person Making Statement)*

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this **13ᵗ** day of **May** , **2013**

at **West Point, NY 10996**

*(Signature of Person Administering Oath)*

ORGANIZATION OR ADDRESS

**ELIZABETH S. EATON-FERENZI**
*(Typed Name of Person Administering Oath)*
**CPT, AV**
**TACTICAL OFFICER, B1**
*(Authority To Administer Oaths)*

ORGANIZATION OR ADDRESS

INITIALS OF PERSON MAKING STATEMENT
ANH

A

| | | |
|---|---|---|
| PAGE **2** | OF | **2**   PAGES |

**DA FORM 2823, NOV 2006**

APD PE v1.01ES

**Messages (257)    Doolen          Edit**

got my texts. Seems like a
yes, thank you and
goodbye
You were right. I do hate
you.
Jesus Christ please let this
be a telephone
conversation
No a text breakup
Not
Can you talk for fifteen
goddam seconds
Yes I know you can
because engen just called
you
Jesus fucking Christ.
Whatever.
One last thing. Fuck you
and I hope you go back to

 iMessage          Send

AT&T 3G   6:58 PM   81%

Messages (257)  **Doolen**   Edit

you.
Jesus Christ please let this
be a telephone
conversation
No a text breakup
Not
Can you talk for fifteen
goddam seconds
Yes I know you can
because engen just called
you
Jesus fucking Christ.
Whatever.
One last thing. Fuck you
and I hope you go back to
your old ways of drinking
fucking trashy and
disgusting girls. I'm glad
your disgustingness is out

  iMessage  Send 

000510

**Messages (257)     Doolen     Edit**

of my life for good. You
were a nasty pest in my
life and fuck you.
Fuck you you disgusting
freak
You're awful and a waste
of my life
Sorry about verbally
bashing you. I hope you
have a good life.
All you had to do is
answer your phone. One
phone call not answered
and a perfectly good
relationship is gone.
Guess it wasn't a perfectly
good relationship. I
shouldnt have texted you
those things. But what's


iMessage


000511

those things. But what's
done is done. Good luck
with your board
Wednesday. Wish we
could have ended this
differently.
But I'm done texting you
now with no response. Or
calling you. I tried. I tried
this time. Oh well.
That's a lie. Expect
another call.
And if you answer it, you'll
hear me beg this time.
Okay. Isiah. Answer your
phone. It won't take long. I
am not going to bother
you again if you just
answer your phone. If you



iMessage     Send

**000512**

AT&T 3G    6:58 PM    81% 🔋

**Messages (257)**    **Doolen**    **Edit**

those things. But what's
done is done. Good luck
with your board
Wednesday. Wish we
could have ended this
differently.
But I'm done texting you
now with no response. Or
calling you. I tried. I tried
this time. Oh well.
That's a lie. Expect
another call.
And if you answer it, you'll
hear me beg this time.
Okay. Isiah. Answer your
phone. It won't take long. I
am not going to bother
you again if you just
answer your phone. If you

 iMessage 

000513

**AT&T  3G**          **6:58 PM**          **81%** 🔋

**◀ Messages (257)**   **Doolen**   **Edit**

I meant every word I said.
In those texts. You disgust
me and you have just
proven how pathetic you
are.
Yes I can find someone a
lot better than you in every
way. And I'm going to.
And you'll be stuck with
the trash that always gave
you attention. That's it.
You'll be lonely. Even with
all that trash. And with
your alcohol. Alone.
Without me. I'd be
surprised if you even
survive.
Whores and alcohol.
Exactly what you love the

  iMessage  

000514

most. Fucking disgusting.
Enjoy your disgusting ugly
whores and alcohol. Fuck
you you freak.
I have hated you for a
while. And not loved you
either.
You were just a mere
speck in my life and I hate
everything about you.
And this is coming from
me. The only person who
cared about you. Imagine
what everyone else thinks
about you. Fucking
pathetic.
Oh and guess what? That
was me texting you from
allies phone. Trying to see

 iMessage 

000515

alles phone. Trying to see
if this could have been
fixed. NOPE. FUCK YOU
ASSHOLE.
over to my room and you
would be done for.
ave to be around for that.
Thank God. Thank God I
dont have to deal with you
anymore. All I have to do
is say you were drinking
that night that you came
All you had to do was
answer your phone. But
you're too pathetic and
stubborn to do that. Your
stubbornness with be the
end of you. And Im glad I
don't h

iMessage          Send

000516

AT&T 3G                6:59 PM                80% 🔋

Messages (257)   **Doolen**          Edit

Still not going to call?

All of N's texts

> What the fuckkkk. Delete her number from your phone and never talk to her again. Gees man

I never responded to any of that dude

And I definitely didn't do anything to deserve that in the first place

> Good. She is CRAZY man.

She called me 9 times

iMessage                 Send





-----Original Message-----

From: Collins, Jillian M CADET MIL USA USMA
Sent: Saturday, April 20, 2013 3:58 PM
To: Doolen, Isiah M CADET MIL USA USMA
Subject: RE:

I feel like deja-vu. This is almost an entire repeat of MLK week/weekend. Ya'll fight, break up, both swear up and down its over, but this time she got drunk before running to pete duff and eric fan about you. Then threatens to turn you in, then gets back together because saying boyfriend while trying to cover her ass sounds better than ex.

I mean im big on the whatever makes her/ you happy works and pretty much fuck whatever everyone elses opinions are.

-----Original Message-----
From: Doolen, Isiah M CADET MIL USA USMA
Sent: Saturday, April 20, 2013 3:54 PM
To: Collins, Jillian M CADET MIL USA USMA
Subject: RE:

I figured. You are a better friend to her than most of her other friends. I'm not sure if that makes sense, but they seriously let her get away with treating people however she wants. At least you call her out on the shit she does. She came by my room and woke up me at like 730 or so and we talked for a while. The worst part is that no matter what has happened between us, I still want to be with her. I think I'm incredibly crazy, but I have seen her when she is a good person and she is great.

-----Original Message-----
From: Collins, Jillian M CADET MIL USA USMA
Sent: Saturday, April 20, 2013 3:48 PM
To: Doolen, Isiah M CADET MIL USA USMA
Subject: RE:

she made it seem like you sent her something horrible out of the blue...She is with her mom, she did willingly give her phone over to joe. Then she "went to the bathroom" and ended up down the hall crying for her phone because she wanted to txt you. Then started screaming she was turning you in first thing in the morning. She wasn't blacked out. Just overly emotional and I had to baby sit half the night

-----Original Message-----
From: Doolen, Isiah M CADET MIL USA USMA
Sent: Saturday, April 20, 2013 3:47 PM
To: Collins, Jillian M CADET MIL USA USMA
Subject: RE:

My friend Morgan sent her a message. I forwarded the screen shots to you. Is she with her mom though? And even if she had of turned me in I wouldn't have done anything. Was she flipping out really bad? She told me she willingly gave her phone over to Joe. She told me she wasn't blacked out which I know isn't true.

000520

-----Original Message-----
From: Collins, Jillian M CADET MIL USA USMA
Sent: Saturday, April 20, 2013 3:42 PM
To: Doolen, Isiah M CADET MIL USA USMA
Subject: RE:

She's gone for the weekend... I know she was bitching that she was gonna turn you
in for something. What did you send to her? I tried to explain to her that she
would be hanging herself by doing it because all you would have to do is say she
was drunk and it would be an alcohol board right there because there were no opp
privileges for yuks last night.

-----Original Message-----
From: Doolen, Isiah M CADET MIL USA USMA
Sent: Saturday, April 20, 2013 3:40 PM
To: Collins, Jillian M CADET MIL USA USMA
Subject: RE:

Is she with her mom right now? Also, yeah she told me last night she was going to
turn me in for honor. Was she flipping out?

-----Original Message-----
From: Collins, Jillian M CADET MIL USA USMA
Sent: Saturday, April 20, 2013 12:41 PM
To: Doolen, Isiah M CADET MIL USA USMA
Subject: RE:

To the point we had to give joy Hayslett her phone and get it out of the room,
and that I couldn't let her leave the room by herself...

-----Original Message-----
From: Doolen, Isiah M CADET MIL USA USMA
Sent: Friday, April 19, 2013 11:23 PM
To: Collins, Jillian M CADET MIL USA USMA
Subject:

How drunk is your roommate?

000521

2242 8MAY2013

As my roommate and I lay in bed about to go to sleep, I heard a knock on the door, and someone entered. It was Cadet Isiah Doolen. He walked slowly to my bed and I kindly asked him to leave, because I had assumed he had been drinking. I asked if he was drunk and he said no. I asked if he was drinking and he said "I'm not drunk" a few more times. He then said began to insult me repeatedly, calling me inappropriate names. I asked him to leave again. I got out of bed and he stood in front of the door preventing me from leaving the room. He was aggressively trying to prevent me from opening and going through the door using physical force. I pushed him out of the way and called for my roommate to wake up. He continued to stand in the doorway. I was at this point verbally urging him to leave my room and raising my voice. I managed to push past him; saw Cadets Hunt and Jenkins in the hallway and called Austin Hunt to come to me and hopefully intervene. At that moment, I stepped back into my room and immediately locked my door.

Cadet N[Redacted PII] D[Redacted PII]

2240 8 MAY 2013

As I was laying in bed about to go to sleep, a clearly intoxicated Isiah Doolen stumbled into the room, slamming the door and approaching my roommate in her bed. I then covered my head hoping it was just one of the typical "arguments" that they are known for throughout this school year. It then proceeded by him questioning her why she stopped talking to him and returned his things. Then she just shrugged her shoulders and tried to get rid of him and he then proceed to start telling her "I hope you whore around during TEE week because your nothing but a F$%#ing Whore" and was beginning to raise his voice. N████ knew that I was trying to sleep so tried to take the argument outside. As she got up to approach the door he proceeded to grab her and become physical to keep her from leaving the room to get him. N████ was then able to push him off of her and he hit the rifle rack and she was able to escape the room to try and talk to him outside. He then began to raise his voice and block the door so she could not get back into the room. She then proceeded to raise her voice to yell at him to get out of her room and then asked bystanders in the hallway for help. At first they turned around and walked away, then after she called one by name he came to help which caused Isiah to storm off in an angry rage down the hall while becoming physical with inanimate objects.

-Jillian Collins



000524

PRIVACY ACT DATA – FOR OFFICIAL USE ONLY

Close

Print File CRB



**DOOLEN, ISIAH MATTHEW**
**USMA ID:** C39038851
**Class: 2014  (R-Day: 29 Jun 09)**
**(GY CHANGE)**
**(AUGUST GRAD)**
**Acad Yr Co:** H2
**Curr Posn:**
**Building:** 740 (Lee Barracks)
**Room:** 407 **Phone:**
**Sex:** M
**Race:** HISPANIC
**Redcat:** OTHER/UNKNOWN
**Relig:** ROMAN CATHOLIC CHURCH
**Birthday:** Redacted PII 88
**Birthplace:** Redacted PII NM
**Dom:** NM

**Entrance Data**
**USMAPS:** Y
**College:**
**HS:** ROSWELL NM (29 / 118)

**Prior Service:** N

| | | |
|---|---|---|
| **CEER:** 457 | **ACT-Math:** 21 |
| **PAE:** 0 | **ACT-Engl:** 24 |
| **LPS:** 467 | **ACT-Sci:** 25 |
| **Whole Cand:** 4643 | **ACT-Read:** 24 |
| **R-Day Ht/Wt:** / | **SAT-Math:** 450 |
| **Ath Code:** | **SAT-Ver:** 540 |
| **Nom Src:** | **SAT-TSWE:** |

**Notification Information**
**Name:** MR. AND MRS. Redaction PII DOOLEN
**Address:** Redaction PII
OZARK, MO 65721
**Phone:** 8063923134
**Send Grades:** Y

| ACAD YR | CUM | CDT PERF | ACADEMIC PROGRAM | | | | MILITARY PROGRAM | | | | | PHYSICAL PROGRAM | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TERM | CPS CQPA | AWD | APST | APSC | DL | DC | UNIT | POSN | MD | MS | MPSC | APFTs | IOCT | PPSY | PPSC |
| 2010 0 | 0.000 | | 0.000 | 0.000 | | | H 14 | CBT MOS | B+ | | 3.330 | 1-Jul: D   6-Aug: C+ | | | |
| 2010 1 | 2.687 2.489 | | 2.488 | 2.488 | | | E4 34 | MOS | A- | | 3.519 | | | | 2.672 |
| 2010 2 | 2.350 2.397 | | 2.285 | 2.385 | | | E4 22 | MOS | D | B | 2.816 | 26-Apr: B | | 2.315 | 2.315 |
| 2011 0 | 2.320 2.397 | | 0.000 | 2.385 | | | 5  23 | CFT MOS | B | | 2.876 | | | | 2.315 |
| 2011 1 | 2.257 2.276 | | 1.981 | 2.244 | | | E4 23 | TM LDR | B+ | B- | 2.870 | 22-Oct: C | | | 2.375 |
| 2011 2 | 2.363 | | 2.162 | 2.345 | | | E4 21 | TM LDR | B | | 2.881 | 7-Apr: C- | | 2.609 | 2.408 |
| 2011 3 | 2.332 2.361 | | 2.330 | 2.344 | | | | | | | 2.881 | | | | 2.408 |
| 2012 0 | 2.286 2.361 | | 0.000 | 2.344 | | | | | P | | 2.881 | | | | 2.408 |
| 2012 1 | 2.279 2.314 | | 2.127 | 2.298 | | | B1 22 | SQD LDR | B | | 2.902 | | 18-Nov: NC | | 2.408 |
| 2012 2 | 2.173 2.294 | | 2.132 | 2.273 | | | B1 31 | CO STF N-4 | B | B- | 2.885 | | 27-Apr: F | 1.179 | 2.033 |
| 2013 0 | 2.124 2.294 | | 0.000 | 2.273 | | | * * | click here | * | | 2.770 | 27-Apr: F | | | 2.033 |
| 2013 1 | 2.059 2.265 | | 2.055 | 2.240 | | | B1 21 | TNG OFF | C | | 2.677 | | 30-Nov: NC | | 2.119 |
| 2013 2 | 1.912 2.201 | | 1.583 | 2.165 | | | B1 41 | SEC LDR | F | | 2.433 | 15-Feb: B- 23-Mar: B- 1-Mar: D | 2.091 | 2.272 |

**MAJOR/FIELD OF STUDY**
PCP1 (Political Science Major: Comparative Politics )

**Academic Advisor**
**Name:** MAJ CUMPSTON, MEGHAN
**Dept:** Department of Social Sciences

**MAJOR DISCIPLINARY RECORD**
Lights: 0 Doors: 0 Late: 0 Absent: 0

| Code | Date | Dem | Punishment A/R/F - R/P/R |
|---|---|---|---|
| 1 F | 17-Apr-10 | 35 | 100/0/0 - 60/90/Y |
| 1 C | 19-Oct-11 | 20 | 20/0/0 - 0/0/n |
| 1 C | 15-Sep-12 | 30 | 30/0/0 - 15/15/n |
| 1 C | 11-Jan-13 | 20 | 20/0/0 - 14/14/n |
| 1 C | 19-Jan-13 | 30 | 30/0/0 - 30/30/n |
| 1 C | 03-Apr-13 | 30 | 30/0/0 - 30/30/n |

Show All Disc Details

**SUMMER DETAIL HISTORY**

| Acad Yr | Details |
|---|---|
| 2010 | CBTNC |
| 2011 | AA (NC)  CFTYR AA (NC) |
| 2012 | CTLT |
| 2013 | CLDTF  AFCS  SGR |
| 2015 | CFT |

**CONDUCT STATUS**
Type Brd Date Brd Action End Date

**ATHLETIC & EXTRACURRICULAR ACTIVITIES**

| Start | End | Type | Name | Posn | Sqd | Authos |
|---|---|---|---|---|---|---|
| 26 Aug 09 | 28 Sep 09 | IM | FOOTBALL (CA) | P | | |
| 28 Sep 09 | 22 Dec 09 | IM | BIATHALON (CA) | P | | |
| 19 Jan 10 | 18 May 10 | IM | SANDHURST (CA) | P | | |

| 15 Aug 10 | 16 Aug 10 | IM | TEAM HANDBALL (CA) | P |
| 16 Aug 10 | 21 Dec 10 | IM | WRESTLING (CA) | P |
| 21 Jan 11 | 28 Apr 11 | IM | FLAG FOOTBALL (CA) | P |
| 28 Apr 11 | 17 May 11 | IM | FLAG FOOTBALL (CA) | O |
| 15 Aug 11 | 20 Dec 11 | IM | Reconditioning | P |
| 12 Jan 12 | 16 Jan 12 | IM | ORIENTEERING (CA) | P |
| 16 Jan 12 | 18 Jan 12 | IM | ORIENTEERING (CA) | O |
| 18 Jan 12 | 22 May 12 | IM | FLAG FOOTBALL (CA) | O |
| 05 Sep 12 | 22 Dec 12 | IM | ULTIMATE FRISBEE (CA) | P |
| 21 Jan 13 | 31 Jan 13 | IM | ORIENTEERING (CA) | P |
| 31 Jan 13 | 15 Feb 13 | IM | SWIMMING (CA) | P |
| 15 Feb 13 | 18 May 13 | IM | ORIENTEERING (CA) | P |

**Tac Comments:**

TAC: CPT Eaton-Ferenzi

DATE OF COMMENTS: 13 May 2013

REASON FOR SUBMISSION: MD "F" - Company Supply Officer, B1

RECOMMENDATION: Separate

POTENTIAL: Below average. Has shown an inability to learn from his mistakes throughout the term; continues to illustrate bad decision-making skills and judgment through his actions. Does not believe the rules and regulations at West Point apply to him.

PERFORMANCE: Below average; Has had significant issues with meeting suspenses and was given a BN board at the beginning of the semester for missing a suspense given by the BN S-4.

CONDUCT: Below average: Has been subject of a Conduct Investigation this term after exceeded his demerit limit and since the CI, he has received three subsequent boards. Currently he's pending a possible brigade level board for the most recent incident allegedly involving alcohol and a physical altercation (08 May 2013). His conduct is a reflection of his military disposition; decision-making, judgment, and being an example for other Cadets to follow.

LEADERSHIP: Below average: Has failed to provide a good example for his subordinates and peers. Frequently does the minimum to scrape by. Often ill-prepared and does not give his subordinates enough time to reespond to suspenses.

TEAMWORK AND SELFLESSNESS: Below Average: A very self-serving individual

INTERPERSONAL SKILLS: Below Average; tends to blame those around him for any professional or personal shortfalls. Often has conflict with others.

SENSE OF DUTY: Below Average: Communicates a desire to serve the US Army as an Officer, but does not follow through with that desire via his actions.

APPEARANCE: Below Average. Often in need of a haircut. Pants (the seat) of ACUs are blown out. Has been directed to fix it to no avail.

MAJ Marschean
Date: 5 Jan 11 NAME: Doolen, I. E4,2013
MAJOR: Comparative Politics
Reason for submission: Failed PH201
Recommendation: Retain, repeat PH201

Potential: CDT Doolen has the potential to do well here at USMA and as an officer in the Army. While his maturity level has improved relative to the beginning of the semester, he could stand to heighten it further. Im certain that with a bit of focused effort that hell be able to achieve a level of maturity that will carry him far. He should be afforded the opportunity to repeat PH201.

Performance: End term 11-1: ACOM-UH (5), ACOM-LH (5), COM (4), BCOM-rtn (2), BCOM-noRtn (0). CDT Doolens overall performance has improved considerably since the start of the semester. His subordinate was a true leadership challenge and he worked with him to help him bring most of his grades up. According to his squad leader he was one of the best Team Leaders my squad. Additionally, he was failing multiple classes

**000526**

at the beginning of the semester and was able to pull all of them up by the end of the semester except for PH201.

Conduct: Average. CDT Doolen generally conducted himself well this semester. While serving room restriction for an offence from AY 10-2, CDT Doolen ignored the rules of his restriction and had to be corrected by his chain of command to ensure he fully understood the SOP regarding room restriction. Once he was corrected he abided by the rules. Additionally, his ADAPT counselor provided the TAC Tm with positive feedback regarding their counseling sessions and his progress.

Leadership: Average. Despite CDT Doolens academic struggles, he always found time to work with his subordinate who was a leadership challenge and help him to bring his own grades up. Without CDT Doolens guidance and assistance his Plebe might have chosen to quit or failed out of the Academy.

Teamwork and Selflessness: Average. One of his peers noted that CDT Doolen gets easily frustrated at others and tends to blame them for his problems. He complains and often gets so frustrated that he cannot respond to adversity well. He needs to work on his patience, which will come with time. The time he spent working with his Plebe is indicative of his selflessness during a time when he too was struggling.

Interpersonal Skills: Average to Below Average. CDT Doolen has a tendency to close himself off to those who hold him accountable. An increase in his maturity level, as noted by a peer, would certainly help him to interact and respond to everyone in a more adult-like and professional manner. A peer also noted he needs to understand that everyone works differently and that no one type of leadership is right. Although he has experienced many different types of leadership he needs to be more open minded to what might not be the way he would do things.

Sense of Duty: Average. CDT Doolens sense of duty with respect to his subordinate is strong. On occasion however, he failed to notify his chain of command and an instructor of his whereabouts if he was not able to make a scheduled hard time.

Appearance: Average. CDT Doolen is generally an average Cadet in appearance. He did receive demerits/punishment for what his PL referred to as deplorable room standards and for and unsatisfactory uniform during an inspection. When told to correct the issues, he corrected them in a timely manner.

Major Conduct Violations NONE
Minor - None
FLAGS  completing SLDP-A program

Comments Entered/Modified: 17 May 13

RTO Comments:

RTO Comments: To add/change/delete your comments, make your changes in the text box and click the "Submit" button.

Concur with TAC...Retain, repeat PH201.

Submit

Comments Entered/Modified: 05 Jan 11

Name: DOOLEN, ISIAH MATTHEW

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

Date: 10 Jun 14



Status: ACTIVE Class: 2014 Co/Regt: H2 Prior Co/Regt: B1 E4 Current CS:  Current HT: 70" Current WT: 158 lbs

RedCat: OTHER/UNKNOWN Gender: MALE Prior Service: US Army Regular USMAPS: YES

ACT-MATH: 21 ACT-ENGL: 25 ACT-SCI: 25 ACT-READ: 30 SAT-MATH: 450 SAT-VERB: 540 SAT-TSWE: 0

Rank in Company CQPA: 32/33 APSC: 31/33 MPSC: 31/33 PPSC: 29/33 Major/Field of Study: Political Science Major: Comparative Politics

| CPR Profile (AY03 forward) | ACOM-UH | ACOM-LH | CtrOfMass | BCOM-RTN | BCOM-NORTN |
|---|---|---|---|---|---|
| All written on this cadet | 8 | 12 | 10 | 5 | 2 |
| Chain of Command | 5 | 8 | 7 | 0 | 0 |
| Other | 0 | 0 | 1 | 0 | 0 |
| Peer and Subordinate | 3 | 4 | 2 | 5 | 2 |
| Staff and Faculty | 0 | 0 | 0 | 0 | 0 |

### Major Conduct Violations

| Date | Description |
|---|---|
| 17-Apr-10 | brought alcohol into the barracks |
| 19-Oct-11 | arrived 1 hour after 1900 Recall Formation |
| 15-Sep-12 | You were Disrepectful to a Senior Cadet Non-Commissioned Officer |
| 11-Jan-13 | Failed to meet BN Suspense |
| 19-Jan-13 | While on Restrictions left room. |
| 3-Apr-13 | Damaged government property in barracks. |

| Course Nbr | Position | Rtr | Tac Rtr | Grade | MPS Cum |
|---|---|---|---|---|---|
| MD100 | CBT MOS | | | B+ | 3.33 |
| MD101 | MOS | A | A- | A- | 3.52 |
| MD102 | MOS | D | D | D | 2.82 |
| MS100 | MOS | | | B | 2.82 |
| MD200 | CFT MOS | A | B | B | 2.88 |
| MD201 | TM LDR | B | B+ | B+ | 2.87 |
| MS200 | TM LDR | | | B- | 2.87 |
| MD202 | TM LDR | B | B | B | 2.88 |
| MD400 | | | | P | 2.88 |
| MD301 | SQD LDR | B | B | B | 2.90 |
| MD302 | CO STF N-4 | B | C | B | 2.89 |
| MS300 | CO STF N-4 | | | B- | 2.89 |
| MD410 | SG REG AS3 | | | P | 2.77 |
| MD300 | SG REG AS3 | | | C+ | 2.77 |
| MD401 | TNG OFF | B | D | C | 2.68 |
| MD402 | SEC LDR | C | F | F | 2.43 |



Solid Line = CQPA
Broken Line = MPSC
Dotted Line = PPSC

| TERM | 100 | 101 | 102 | 110 | 111 | 112 | 113 | 120 | 121 | 122 | 130 | 131 | 132 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CQPA | 0.00 | 2.49 | 2.40 | 2.40 | 2.28 | 2.36 | 2.36 | 2.36 | 2.31 | 2.29 | 2.29 | 2.27 | 2.20 |
| MPSC | 3.33 | 3.52 | 2.82 | 2.88 | 2.87 | 2.88 | 2.88 | 2.88 | 2.90 | 2.89 | 2.77 | 2.68 | 2.43 |
| PPSC | 0.00 | 2.67 | 2.32 | 2.32 | 2.38 | 2.41 | 2.41 | 2.41 | 2.41 | 2.03 | 2.03 | 2.12 | 2.27 |

### Conduct Record (Demerits/Tours)

| AY | Jul | | Aug | | Sep | | Oct | | Nov | | Dec | | Jan | | Feb | | Mar | | Apr | | May | | Jun | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 35 | 100 | 0 | 0 | 0 | 0 |
| 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12 | 0 | 0 | 0 | 0 | 0 | 0 | 20 | 20 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 10 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 |
| 13 | 0 | 0 | 0 | 0 | 30 | 30 | 0 | 0 | 0 | 0 | 5 | 5 | 55 | 55 | 0 | 0 | 10 | 10 | 30 | 30 | 0 | 0 | 0 | 0 |
| 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

000528

Name: DOOLEN, ISIAH MATTHEW                 FOR OFFICIAL USE ONLY - PRIVACY ACT DATA                                              Date: 10 Jun 14

### APFT Scores

| Test | Date | PU Raw | PU Pts | SU Raw | SU Pts | Run Raw | Run Pts | Total Pts | APFB | Grade |
|------|------|--------|--------|--------|--------|---------|---------|-----------|------|-------|
| CBT Initial | 07/01/2009 | 50 | 71 | 63 | 76 | 14:10 | 83 | 230 | | D |
| PLEBE FALL | 08/06/2009 | 48 | 68 | 75 | 95 | 12:55 | 100 | 263 | | C+ |
| PLEBE SPRING | 04/26/2010 | 71 | 100 | 80 | 100 | 14:04 | 85 | 285 | | B |
| YEARLING FALL | 10/22/2010 | 63 | 86 | 66 | 81 | 13:51 | 90 | 257 | | C |
| YEARLING SPRING | 04/07/2011 | 53 | 75 | 58 | 71 | 13:27 | 94 | 240 | | C- |
| COW FALL | 02/15/2013 | 53 | 75 | 78 | 97 | 12:38 | 100 | 272 | | B- |
| COW SPRING | 02/25/2013 | 61 | 84 | 76 | 95 | 12:13 | 100 | 279 | | B- |
| FIRSTIE FALL | 02/28/2013 | 64 | 87 | 72 | 89 | 12:09 | 100 | 276 | | B- |
| FIRSTIE SPRING | 03/23/2013 | 54 | 76 | 78 | 97 | 12:19 | 100 | 273 | | B- |

### Athletic & Extracurricular Activities

| Start | End | Type | Name | Posn | Sqd | Auth |
|-------|-----|------|------|------|-----|------|
| 08/26/2009 | 09/28/2009 | IM | FOOTBALL (CA) | P | | |
| 09/28/2009 | 12/22/2009 | IM | BIATHALON (CA) | P | | |
| 01/19/2010 | 05/18/2010 | IM | SANDHURST (CA) | P | | |
| 08/15/2010 | 08/16/2010 | IM | TEAM HANDBALL (CA) | P | | |
| 08/16/2010 | 12/21/2010 | IM | WRESTLING (CA) | P | | |
| 01/21/2011 | 04/28/2011 | IM | FLAG FOOTBALL (CA) | P | | |
| 04/28/2011 | 05/17/2011 | IM | FLAG FOOTBALL (CA) | O | | |
| 08/15/2011 | 12/20/2011 | IM | Reconditioning | P | | |
| 01/12/2012 | 01/16/2012 | IM | ORIENTEERING (CA) | P | | |
| 01/16/2012 | 01/18/2012 | IM | ORIENTEERING (CA) | O | | |
| 01/18/2012 | 05/22/2012 | IM | FLAG FOOTBALL (CA) | O | | |
| 09/05/2012 | 12/22/2012 | IM | ULTIMATE FRISBEE (CA) | P | | |
| 01/21/2013 | 01/31/2013 | IM | ORIENTEERING (CA) | P | | |
| 01/31/2013 | 02/15/2013 | IM | SWIMMING (CA) | P | | |
| 02/15/2013 | 05/18/2013 | IM | ORIENTEERING (CA) | P | | |

### IOCT Scores

| Test | Date | IOCT Time Raw | IOCT Time Pts | Total Pts | Grade |
|------|------|---------------|---------------|-----------|-------|
| IOCT | 9/23/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 10/21/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 11/18/2011 | 0:00 | 0 | 0.00 | NC |
| IOCT | 1/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 2/24/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 3/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 4/27/2012 | 5:10 | 410 | 410.00 | F |
| IOCT | 8/27/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 9/28/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 10/26/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 11/30/2012 | 0:00 | 0 | 0.00 | NC |
| IOCT | 1/28/2013 | 4:17 | 510 | 510.00 | F |
| IOCT | 3/1/2013 | 3:21 | 690 | 690.00 | D |

The Comments

000529

Name: DOOLEN, ISIAH MATTHEW

TAC: CPT Eaton-Ferenzi

**FOR OFFICIAL USE ONLY - PRIVACY ACT DATA**

Date: 10 Jun 14

17 May 2013

DATE OF COMMENTS: 13 May 2013

REASON FOR SUBMISSION: MD "F" - Company Supply Officer, B1

RECOMMENDATION: Separate

POTENTIAL: Below average. Has shown an inability to learn from his mistakes throughout the term; continues to illustrate bad decision-making skills and judgment through his actions. Does not believe the rules and regulations at West Point apply to him.

PERFORMANCE: Below average; Has had significant issues with meeting suspenses and was given a BN board at the beginning of the semester for missing a suspense given by the BN S-4.

CONDUCT: Below average: Has been subject of a Conduct Investigation this term after exceeded his demerit limit and since the CI, he has received three subsequent boards. Currently he's pending a possible brigade level board for the most recent incident allegedly involving alcohol and a physical altercation (08 May 2013). His conduct is a reflection of his military disposition; decision-making, judgment, and being an example for other Cadets to follow.

LEADERSHIP: Below average: Has failed to provide a good example for his subordinates and peers. Frequently does the minimum to scrape by. Often ill-prepared and does not give his subordinates enough time to respond to suspenses.

TEAMWORK AND SELFLESSNESS: Below Average: A very self-serving individual

INTERPERSONAL SKILLS: Below Average; tends to blame those around him for any professional or personal shortfalls. Often has conflict with others.

SENSE OF DUTY: Below Average: Communicates a desire to serve the US Army as an Officer, but does not follow through with that desire via his actions.

APPEARANCE: Below Average. Often in need of a haircut. Pants (the seat) of ACUs are blown out. Has been directed to fix it to no avail.


MAJ Marschean

Date: 5 Jan 11 NAME: Doolen, I. E4,2013

MAJOR: Comparative Politics

Reason for submission: Failed PH201

Recommendation: Retain, repeat PH201

Potential: CDT Doolen has the potential to do well here at USMA and as an officer in the Army. While his maturity level has improved relative to the beginning of the semester, he could stand to heighten it further. I☐m certain that with a bit of focused effort that he☐ll be able to achieve a level of maturity that will carry him far. He should be afforded the opportunity to repeat PH201.

Performance: End term 11-1: ACOM-UH (5), ACOM-LH (5), COM (4), BCOM-rtn (2), BCOM-noRtn (0). CDT Doolen☐s overall performance has improved considerably since the start of the semester. His subordinate was a true leadership challenge and he worked with him to help him☐ bring most of his grades up. According to his squad leader he was one of the best Team Leaders my squad. Additionally, he was failing multiple classes at the beginning of the semester and was able to pull all of them up by the end of the semester except for PH201.

Conduct: Average. CDT Doolen generally conducted himself well this semester. While serving room restriction for an offence from AY 10-2, CDT Doolen ignored the rules of his restriction and had to be corrected by his chain of command to ensure he fully understood the SOP regarding room restriction. Once he was corrected he abided by the rules. Additionally, his ADAPT counselor provided the TAC Tm with positive feedback regarding their counseling sessions and his progress.

Leadership: Average. Despite CDT Doolen☐s academic struggles, he always found time to work with his subordinate who was a leadership challenge and help him to bring his own grades up. Without CDT Doolen☐s guidance and assistance his Plebe might have chosen to quit or failed out of the Academy.

Teamwork and Selflessness: Average. One of his peers noted that CDT Doolen gets easily frustrated at others and tends to blame them for his problems. He complains and often gets so frustrated that he cannot respond to adversity well. He needs to work on his patience, which will come with time. The time he spent working with his Plebe is indicative of his selflessness during a time when he too was struggling.

Interpersonal Skills: Average to Below Average. CDT Doolen has a tendency to close himself off to those who hold him accountable. An increase in his maturity level, as noted by a peer, would certainly help him to interact and respond to everyone in a more adult-like and professional manner. A peer also noted he needs to understand that everyone works differently and that no one type of leadership is right. Although he has experienced many different types of leadership he needs to be more open minded to

**Name:** DOOLEN, ISIAH MATTHEW.

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

**Date:** 10 Jun 14

what might not be the way he would do things.

Sense of Duty: Average. CDT Doolen☐s sense of duty with respect to his subordinate is strong. On occasion however, he failed to notify his chain of command and an instructor of his whereabouts if he was not able to make a scheduled hard time.

Appearance: Average. CDT Doolen is generally an average Cadet in appearance. He did receive demerits/punishment for what his PL referred to as deplorable room standards and for and unsatisfactory uniform during an inspection. When told to correct the issues, he corrected them in a timely manner.

Major Conduct Violations NONE
Minor - None
FLAGS ☐ completing SLDP-A program
  **RTO Comments**
Concur with TAC...Retain, repeat PH201.

05 Jan 2011

000531

# SWORN STATEMENT
For use of this form, see AR 190-45; the proponent agency is PMG.

## PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| West Point, New York | 2013/10/05 | 22:31 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| Collins, Jillian Marie | | Cadet CPL |

| 8. ORGANIZATION OR ADDRESS |
|---|
| United States Military Academy USCC Company C3 |

9.

I, _Jillian Collins_ , WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

As my roommate and I were laying in bed about to go to sleep, a clearly intoxicated CDT Isiah Doolen stumbled into the room, slamming the door and approaching my roommate (CDT N███ D████ in her bed. I then covered my head in hopes it was just one of the typical "arguments" that they are known for throughout this school year and that they would go away quickly. It then proceeded by him questioning her why she stopped talking to him and returned his things. Then she just shrugged her shoulders and tried to get rid of him by telling him to "F@#$ing Leave", and he then proceed to start telling her "I hope you whore around during TEE week because your nothing but a F$%#ing Whore" and was beginning to raise his voice. CDT N███ D████ knew that I was trying to sleep so tried to take the argument outside. As she got up to approach the door he proceeded to grab her and become physical to keep her from leaving the room to get him. CDT N███ D████ was then able to push him off of her and he hit the rifle rack and she was able to escape the room to try and talk to him outside. He then began to raise his voice and block the door so she could not get back into the room. She then proceeded to raise her voice to yell at him to "get the F#@K out of the room" and then asked bystanders in the hallway for help. At first they turned around and walked away, then after she called one by name he came to help which caused CDT Isiah Doolen to storm off in an angry rage down the hall while becoming physical with inanimate objects.

- What led you to believe Cadet Doolen was intoxicated? Physical signs of any kind? Please describe and explain.
  - Cadet Doolen was stumbling and slurring his words when speaking and also had a strong stench of alcohol that filled the room.
- Did you or your roommate allow (give permission) for Cadet Doolen to enter your barracks room?
  No, CDT Doolen did not knock and just directly walked in the room slamming the door behind him.
- Were you awake, alert and aware of Cadet Doolen the entire time he was in your room?
  Yes, when he came into the room I was on my phone (texting) and still fully awake.
- How did he grab Cadet D████? Location on body?
  He grabbed her shoulders from behind to keep her from existing the room and then shoved her after he hit the rifle rack from her shoving him off
- Who was in the hallway (2 males)? Which one helped?
  Eddie Jenkins, Austin Hunt. Austin Hunt was the one who helped.
  NOTHING FOLLOWS

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT JC | PAGE 1 OF 2 PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

**DA FORM 2823, NOV 2006**     PREVIOUS EDITIONS ARE OBSOLETE     APD PE v1.01ES

# REGS & DISCIPLINE

Home | Software Change Request | Manage Users | Manage Days | Staff/Fac Portal | Log Off

## Current Balances Record

### Record for: DOOLEN ISIAH (H2 '14)

Shown below are the **current balances** for tours, restrictions, and withdrawal of privileges. Change them as needed to reflect the actual balances you have determined to be correct. Enter (optional) remarks indicating why the changes were necessary:

Tours:    0

Restriction (days):    0

W/D of Privileges (days):    0

W/D of Driving Privileges (days):    0

Remarks (limit: 255 chars):

[ update with these values ]

## Previous Balance Adjustments
### DOOLEN ISIAH (H2 '14)

| Effective date | Tour bal | Restr bal | Priv bal | Drive priv bal | Remarks | User |
|---|---|---|---|---|---|---|
| 16 May 2013 | 0 | 0 | 0 | 0 | | HANNIGAN, V. |
| 15 May 2013 | 7 | 35 | 35 | 0 | | HANNIGAN, V. |
| 16 Apr 2013 | 3 | 0 | 0 | 0 | | HANNIGAN, V. |
| 15 Apr 2013 | 3 | 0 | 0 | 0 | | HANNIGAN, V. |
| 20 Feb 2013 | 0 | 16 | 16 | 0 | | HANNIGAN, V. |
| 11 Feb 2013 | 4 | 25 | 25 | 0 | | HANNIGAN, V. |
| 22 Feb 2012 | 0 | 0 | 0 | 0 | | HANNIGAN, V. |

# REGS & DISCIPLINE

Home | Software Change Request | Manage Users | Manage Days | Staff/Fac Portal | Log Off

## Tour Completion Records

### Record for: DOOLEN ISIAH (H2 '14)

| Date | Tour Type | Credits | No-Credit | N/C Remarks | CDO / Recorder | Action |
|------|-----------|---------|-----------|-------------|----------------|--------|
| Fri 8/13/2010 | Area Tours | 0 | 0 | | STODOLA, ALEXANDER | update |
| Sat 8/14/2010 | Area Tours | 5 | 0 | | STODOLA, ALEXANDER | update |
| Sun 8/15/2010 | Area Tours | 0 | 0 | | HANNIGAN, VIVIAN | update |
| Fri 8/20/2010 | Area Tours | 2 | 0 | | STODOLA, ALEXANDER | update |
| Sat 8/21/2010 | Area Tours | 5 | 0 | | STODOLA, ALEXANDER | update |
| Sun 8/22/2010 | Area Tours | 0 | 0 | | STODOLA, ALEXANDER | update |
| Fri 8/27/2010 | Area Tours | 2 | 0 | | STODOLA, ALEXANDER | update |
| Sat 8/28/2010 | Area Tours | 5 | 0 | | STODOLA, ALEXANDER | update |
| Sun 8/29/2010 | Area Tours | 0 | 0 | | STODOLA, ALEXANDER | update |
| Fri 9/3/2010 | Area Tours | 2 | 0 | | STODOLA, ALEXANDER | update |
| Sat 9/4/2010 | Area Tours | 5 | 0 | | STODOLA, ALEXANDER | update |
| Sun 9/5/2010 | Area Tours | 0 | 0 | | STODOLA, ALEXANDER | update |
| Mon 9/6/2010 | Area Tours | 5 | 0 | | STODOLA, ALEXANDER | update |
| Fri 9/10/2010 | Area Tours | 2 | 0 | | STODOLA, ALEXANDER | update |
| Sat 9/11/2010 | Area Tours | 5 | 0 | | STODOLA, ALEXANDER | update |
| Sun 9/12/2010 | Area Tours | 0 | 0 | | STODOLA, ALEXANDER | update |

000534

| Date | Type | | | Comment | Officer | |
|---|---|---|---|---|---|---|
| Fri 9/17/2010 | Area Tours ▾ | 2 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sat 9/18/2010 | Area Tours ▾ | 5 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sun 9/19/2010 | Area Tours ▾ | 0 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Fri 9/24/2010 | Area Tours ▾ | 2 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sat 9/25/2010 | Area Tours ▾ | 5 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sun 9/26/2010 | Area Tours ▾ | 0 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Fri 10/1/2010 | Area Tours ▾ | 2 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sat 10/2/2010 | Area Tours ▾ | 5 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sun 10/3/2010 | Area Tours ▾ | 0 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Fri 10/8/2010 | Area Tours ▾ | 1 ▾ | 1 ▾ | (Automatically Generated COR) Unsatisfactory Uniform for Inspection | STODOLA, ALEXANDER | update |
| Sat 10/9/2010 | Area Tours ▾ | 5 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sun 10/10/2010 | Area Tours ▾ | 0 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Mon 10/11/2010 | Area Tours ▾ | 5 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Fri 10/15/2010 | Area Tours ▾ | 2 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sat 10/16/2010 | Area Tours ▾ | 5 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sun 10/17/2010 | Area Tours ▾ | 0 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Fri 10/22/2010 | Room Tours ▾ | 0 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sat 10/23/2010 | Room Tours ▾ | 0 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Sun 10/24/2010 | Room Tours ▾ | 3 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |
| Fri 10/29/2010 | Area Tours ▾ | 2 ▾ | 0 ▾ | | STODOLA, ALEXANDER | update |

000535

| Date | Tour Type | | | | Name | |
|---|---|---|---|---|---|---|
| Sat 10/30/2010 | Area Tours | 5 | 0 | | STODOLA, ALEXANDER | update |
| Sun 10/31/2010 | Area Tours | 0 | 0 | | STODOLA, ALEXANDER | update |
| Fri 11/5/2010 | Room Tours | 1 | 0 | | STODOLA, ALEXANDER | update |
| Sat 11/6/2010 | Room Tours | 3 | 0 | | STODOLA, ALEXANDER | update |
| Sun 11/7/2010 | Room Tours | 3 | 0 | | STODOLA, ALEXANDER | update |
| Thu 11/11/2010 | Area Tours | 5 | 0 | | STODOLA, ALEXANDER | update |
| Fri 11/12/2010 | Area Tours | 1 | 0 | | STODOLA, ALEXANDER | update |
| Sat 11/13/2010 | Area Tours | 0 | 0 | | STODOLA, ALEXANDER | update |
| Sun 11/14/2010 | Area Tours | 0 | 0 | | STODOLA, ALEXANDER | update |
| Fri 10/28/2011 | Area Tours | 0 | 2 | Unknown | SIEGLE, ALAN | update |
| Sat 10/29/2011 | Area Tours | 0 | 5 | Unknown | SIEGLE, ALAN | update |
| Sun 10/30/2011 | Area Tours | 0 | 0 | | WILLIAMS, PETER | update |
| Fri 11/4/2011 | Area Tours | 2 | 0 | | WILLIAMS, PETER | update |
| Sat 11/5/2011 | Area Tours | 3 | 0 | | WILLIAMS, PETER | update |
| Sun 11/6/2011 | Area Tours | 0 | 0 | | WILLIAMS, PETER | update |
| Fri 2/10/2012 | Area Tours | 2 | 0 | | HANNIGAN, VIVIAN | update |
| Sat 2/11/2012 | Area Tours | 5 | 0 | | HANNIGAN, VIVIAN | update |
| Sun 2/12/2012 | Area Tours | 0 | 0 | | | update |
| Fri 2/17/2012 | Area Tours | 2 | 0 | | HANNIGAN, VIVIAN | update |
| Sat 2/18/2012 | Area Tours | 1 | 0 | | HANNIGAN, VIVIAN | update |
| Sun 2/19/2012 | Area Tours | 0 | 0 | | | update |
| Fri 5/4/2012 | Room Tours | 0 | 0 | | | update |

| Sat 5/5/2012 | Room Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sun 5/6/2012 | Room Tours ▼ | 0 ▼ | 0 ▼ | | update |
| Fri 10/5/2012 | Area Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sat 10/6/2012 | Area Tours ▼ | 3 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Fri 1/18/2013 | Area Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sat 1/19/2013 | Area Tours ▼ | 5 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sun 1/20/2013 | Area Tours ▼ | 6 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Mon 1/21/2013 | Area Tours ▼ | 8 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Fri 2/1/2013 | Area Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sat 2/2/2013 | Area Tours ▼ | 5 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sun 2/3/2013 | Area Tours ▼ | 0 ▼ | 0 ▼ | | update |
| Fri 2/8/2013 | Area Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sat 2/9/2013 | Area Tours ▼ | 5 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sun 2/10/2013 | Area Tours ▼ | 0 ▼ | 0 ▼ | | update |
| Fri 2/15/2013 | Area Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sat 2/16/2013 | Area Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sun 2/17/2013 | Area Tours ▼ | 0 ▼ | 0 ▼ | | update |
| Mon 2/18/2013 | Area Tours ▼ | 0 ▼ | 0 ▼ | | update |
| Fri 4/12/2013 | Area Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sat 4/13/2013 | Area Tours ▼ | 5 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Fri 4/19/2013 | Area Tours ▼ | 2 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sat 4/20/2013 | Area Tours ▼ | 5 ▼ | 0 ▼ | HANNIGAN, VIVIAN | update |
| Sun 4/21/2013 | | | | | |

000537

| | | Area Tours | 0 | 0 | | update |
| Fri 4/26/2013 | | Area Tours | 2 | 0 | HANNIGAN, VIVIAN | update |
| Sat 4/27/2013 | | Area Tours | 5 | 0 | HANNIGAN, VIVIAN | update |
| add here: | | Area Tours | 0 | 0 | | add |

or:   to adjust this cadet's **current overall tour and/or restriction balances,** click here:   bal.adj.

## REGS & DISCIPLINE

## Disciplinary Records

### Record for: DOOLEN ISIAH (H2 '14)

1. There are 11 disciplinary actions on record. To EDIT or DELETE one of these, click the appropriate button at the end of the row.

| Offense Date | Board Date | Article | Off. Code(s) | Specification | Dem's | Tours (tot/susp/vac - due) | Restrictions (tot/susp/vac - start/end) | Action? |
|---|---|---|---|---|---|---|---|---|
| 17 Apr 10 | 06 May 10 | 1 F | UAL | brought alcohol into the barracks | 35 | Area: 100/0/ - 0 | Restr: 60/0/ - Priv: 90/0/ - | edit delete |
| 19 Oct 11 | 21 Oct 11 | 1 C | JU | arrived 1 hour after 1900 Recall Formation | 20 | Area: 20/15/ - 0 | | edit delete |
| 02 Feb 12 | 08 Feb 12 | 1 S | None | CDT Doolen was found with a WAP or gaming system connected to the USMA network. | 10 | Area: 10/0/ - 0 | | edit delete |
| 30 Apr 12 | 03 May 12 | 3 S | AC/MC | CDT Doolen was not in his required class. | 2 | Area: 2/0/ - 0 | | edit delete |
| 15 Sep 12 | 25 Sep 12 | 1 C | JU | You were Disrepectful to a Senior Cadet Non-Commissioned Officer | 30 | Area: 30/30/ - 0 | Restr: 15/15/ - Priv: 15/0/ - | edit delete |
| 10 Dec 12 | 13 Dec 12 | 1 S | FD | Delinquent in Accountability. | 5 | Area: 5/5/ - 0 | | edit delete |
| 10 Jan 13 | 22 Jan 13 | 1 S | FD | Failed to sign Br ADSO contract by suspense date. | 5 | Area: 5/5/ - 0 | Restr: 7/0/ - Priv: 7/0/ - | edit delete |
| 11 Jan 13 | 16 Jan 13 | 1 C | FR | Failed to meet BN Suspense | 20 | Area: 20/6/ - 0 | Restr: 14/0/ - Priv: 14/0/ - | edit delete |
| 19 Jan 13 | 29 Jan 13 | 1 C | FR | While on Restrictions left room. | 30 | Area: 30/0/ - 0 | Restr: 30/0/ - Priv: 30/0/ - | edit delete |
| 27 Mar 13 | 10 Apr 13 | 1 C | AC/AB | Unexcused absence. | 10 | Area: 10/0/ - 0 | | edit delete |
| 03 Apr 13 | 10 Apr 13 | 1 C | JU | Damaged government property in barracks. | 30 | Area: 30/0/ - 0 | Restr: 30/0/ - Priv: 30/0/ - | edit delete |

**OR:**

2. If you want to ADD A NEW RECORD, fill in the following form and click "add" at the bottom. (Mandatory fields are in RED)

Offense Date:                                    Offense Code:          (pick)

Specification:                                                    0 characters (max 255)

Reporter:                          Organization:

Board Date:                        Level:    ◉ Summary ◉ Company ◉ Battalion ◉ Regiment ◉ Brigade
                                             ◉ Commandant

| Actions: | | Tot Amt | Suspended | Vacate Date | | Tot Amt | Suspended | Leave Amt | Vacate Date | End Date |
|---|---|---|---|---|---|---|---|---|---|---|
| | Demerits: | | (n/a) | (n/a) | Restriction: | | | 0 | | |
| | | | | | W/D Privileges: | | | | | |

| Punishment Tours: | | | | | | 0 | | |
|---|---|---|---|---|---|---|---|---|
| | ◉ Area | ◉ Sitting | W/D Driving: | | | 0 | | |
| Reduction in Rank: | ◉ PVT | ◉ PFC | ◉ CPL | ◉ SGT | ◉ LT | ◉ n/a | Suspended: ◉ y ◉ n | |
| Refer to ASAP: | ◉ Yes | ◉ No | | Formal Apology to Company: | | ◉ Yes | ◉ No | |
| Enroll in RMP: | ◉ Yes | ◉ No | | Enroll in SLDP: | | ◉ SLDP | ◉ SLDP-A | ◉ No |

Curr Conduct:  Status:   proficient
Pending:  none

Remarks:

[add]

**Disciplinary Award Record Log**
(Changes to Tours, Demerits, and Record Deletions)
(Data prior to change shown.)
DOOLEN ISIAH (H2 '14)

| Trans Type | Trans Date | Offense date | Board date | Article | Offense | Offense 2 | Offense 3 | Demerits | Tours | User | Narrative |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Deleted | 10 Apr 2013 | 03 Apr 2013 | 09 Apr 2013 | 1 C | JU (Failure in Judgement) | None (N/A) | None (N/A) | 30 | 30 | HANNIGAN, V. | Damaged property in barracks. |

Weidenhof, Catherine M CIV USA USMA

| | |
|---|---|
| **From:** | Eaton, Elizabeth S CPT MIL USA USMA |
| **Sent:** | Monday, May 13, 2013 4:36 PM |
| **To:** | Weidenhof, Catherine M CIV USA USMA |
| **Cc:** | Rowley, Kellen SFC MIL USA USMA |
| **Subject:** | FW: CDT Doolen |
| **Signed By:** | elizabeth.eaton@us.army.mil |

Miss Cathy,

I received the following three emails on Cadet Doolen's behalf - - or so Cadet Doolen thought and requested of his fellow Cadets from the 08 May incident. Please include in PI packet.

V/R,
CPT E-F

-----------------------------------------------------------------------------
-------------------------------
Ma'am,

I was at the Firstie on 8 May from about 1915-2230. Over that time I consumed a pitcher of beer. CDT Doolen and I played a game of pool later in the evening, while I can't be certain of the exact time it was probably around 2145-2200. He was drinking the "Lim-a-rita"s
http://www.huffingtonpost.com/2012/04/27/bud-light-lime-a-rita_n_1460095.htm
l that are available at the firstie. I have had two classes with CDT Doolen, and we have worked closely before.

It was clear that he was intoxicated. I don't know how much he drank in total that night, because he was only in the pool room for the latter part of the evening. He was being pushy and impatient during the game, which is uncharacteristic for him. I was irritated that he was acting like he was. His speech was slurred and had difficulty walking.

I don't know why he is asking for this referral, whether he did something stupid later that evening or what. In my experience, however, CDT Doolen has been responsible, reliable, and an excellent cadet. I would fight with him any day. Based on his demeanor that night, I would not have expected him to do anything dumb. He seemed listless more than obnoxious.

Very Respectfully,

Cadet John Vaughn
Class of 2013
Go Vikings!

-----------------------------------------------------------------------------
---------------------------------------
CPT Eaton,

CDT Doolen asked me to write about his demeanor during his visit to the First Class Club on Wednesday, 08FEB13. My friend and I were watching a game when he approached me to engage in casual conversation. My impression

1

000541

is that he was enjoying a beer while socializing to a few friends and
acquaintances.  He was in complete control of himself and did not appear to
be affected by the alcohol he was drinking.  I would have guessed the beer
he was drinking was his first one of the night.  Overall, he carried himself
casually yet professionally.

Very respectfully,
CDT LT Beekman
USCC Class of 2013
Company I-3

------------------------------------------------------------------------
--------------------------------------

CPT Eaton,

On 8 MAY 2013 at around 0900 I arrived at the firstie club. I met up with
Isiah Doolen to socialize and have fun. I remember him only drinking one
drink, a Strawberry Margarita, from when I got there til when we left at
around 1030. I would  describe his demeanor as playful the entire night,
playing games and joking around with other cadets, and from my perspective
he was not excessively inebriated.

Very Respectfully,
CDT Chiazo Ezekannagha
Company H-4
Class of 2013

2

# REGS & DISCIPLINE

Home | Software Change Request | Staff/Fac Portal | Log Off

## Demerit Review

### Record for: DOOLEN ISIAH (H2 '14, USMA ID: C39038851)
### As of: 10 Jun 14

| DATE | OFFENSE | ORIGINATOR | LTR | DEM | Award TOURS (A/R/F) | RSTR (R/P) | RED | SUSP (HRS/R/P/RIR) | RMKS |
|------|---------|-----------|-----|-----|-------|------|-----|------|------|
| 17 APR 10 | 1 BDE | CPT ALLISON MARSCHEAN USCC | | 35 | 100 / 0 / 0 | 60 / 90 | PFC | 0 / 0 / 0 / N | |
| | Failure to Comply I.E., brought alcohol into the barracks | | | | | | | | |
| 19 OCT 11 | 1 BN | | | 20 | 20 / 0 / 0 | 0 / 0 | | 15 / 0 / 0 / - | Miscommunication with friend who went to JFK instead of NEWARK Airport to pick him up. |
| | Failure to Comply I.E., arrived 1 hour after 1900 Recall Formation | | | | | | | | |
| 2 FEB 12 | 1 SUM | | | 10 | 10 / 0 / 0 | 0 / 0 | | 0 / 0 / 0 / - | |
| | Failure to Comply I.E., CDT Doolen was found with a WAP or gaming system connected to the USMA network. | | | | | | | | |
| 30 APR 12 | 3 SUM | | | 2 | 2 / 0 / 0 | 0 / 0 | | 0 / 0 / 0 / - | |
| | Delinq. Accountability I.E., CDT Doolen was not in his required class. | | | | | | | | |
| 15 SEP 12 | 1 BN | | | 30 | 30 / 0 / 0 | 15 / 15 | | 30 / 15 / 0 / - | |
| | Failure to Comply I.E., You were Disrespectful to a Senior Cadet Non-Commissioned Officer | | | | | | | | |
| 10 DEC 12 | 1 SUM | | | 5 | 5 / 0 / 0 | 0 / 0 | | 5 / 0 / 0 / - | |
| | Failure to Comply I.E., Delinquent in Accountability. | | | | | | | | |
| 10 JAN 13 | 1 SUM | | | 5 | 5 / 0 / 0 | 7 / 7 | | 5 / 0 / 0 / - | |
| | Failure to Comply I.E., Failed to sign Br ADSO contract by suspense date. | | | | | | | | |
| 11 JAN 13 | 1 CO | | | 20 | 20 / 0 / 0 | 14 / 14 | | 6 / 0 / 0 / - | |
| | Failure to Comply I.E., Failed to meet BN Suspense | | | | | | | | |
| 19 JAN 13 | 1 BN | | | 30 | 30 / 0 / 0 | 30 / 30 | | 0 / 0 / 0 / - | |
| | Failure to Comply I.E., While on Restrictions left room. | | | | | | | | |
| 27 MAR 13 | 1 CO | EATON USCC | | 10 | 10 / 0 / 0 | 0 / 0 | | 0 / 0 / 0 / - | |
| | Failure to Comply I.E., Unexcused absence. | | | | | | | | |
| 3 APR 13 | 1 BN | Eaton USCC | | 30 | 30 / 0 / 0 | 30 / 30 | | 0 / 0 / 0 / - | |
| | Failure to Comply I.E., Damaged government property in barracks. | | | | | | | | |

000543

# REGS & DISCIPLINE

Home | Software Change Request | Staff/Fac Portal | Log Off

## MILSUM Report

as of 10 Jun 14

| Name: DOOLEN ISIAH M | Class: 2014 | Co/Regt: H2 | Prior Co/Regt: E4,   Current CS: B1 |
|---|---|---|---|
| USMA ID:   C39038851 | RedCat: OTHER/UNKNOWN | Gender:  MALE | Status: ACTIVE |

### SUMMER TRAINING

| Acad Yr | Activity | Completed |
|---|---|---|
| 10 | CBTNC | |
| 11 | AA | |
| | CFTYR | |
| | AA | |
| 12 | CTLT | |
| 13 | CLDTF | |
| | AFCS | |
| | SGR | |
| 15 | CFT | |

### MILITARY PROGRAM RECORD

| Term Period | Military Activity | Position | Rtr | Int Rtr | Sr Rtr | Tac Rtr | Ltr Grd | Activity Weight | MPS Term | MPS Cum |
|---|---|---|---|---|---|---|---|---|---|---|
| 10-0 | MD100 | CBT MOS | | | | | B+ | 2.0 | 3.33 | 3.33 |
| 10-1 | MD101 | MOS | A | A | | A- | A- | 2.5 | 3.67 | 3.52 |
| 10-2 | MD102 | MOS | D | D | | D | D | 2.5 | 2.50 | 2.82 |
| 10-2 | MS100 | | | | | | B | 7.5 | 2.50 | 2.82 |
| 11-0 | MD200 | CFT MOS | A | C | | B | B | 7.0 | 3.00 | 2.88 |
| 11-1 | MD201 | TM LDR | B | B | B | B+ | B+ | 3.0 | 2.86 | 2.87 |
| 11-1 | MS200 | | | | | | B- | 7.5 | 2.86 | 2.87 |
| 11-2 | MD202 | TM LDR | B | B | B- | B | B | 3.0 | 3.00 | 2.88 |
| 12-0 | MD400 | | | | | | P | 0.0 | 0.00 | 2.88 |
| 12-1 | MD301 | SQD LDR | B | B | B- | B | B | 7.5 | 3.00 | 2.90 |
| 12-2 | MD302 | CO STF N-4 | B | A | A+ | C | B | 7.5 | 2.84 | 2.89 |
| 12-2 | MS300 | | | | | | B- | 7.5 | 2.84 | 2.89 |
| 13-0 | MD410 | SG REG AS3 | | | | | P | 0.0 | 2.33 | 2.77 |
| 13-0 | MD300 | SG REG AS3 | | | | | C+ | 15.0 | 2.33 | 2.77 |
| 13-1 | MD401 | TNG OFF | B | B | A- | D | C | 10.0 | 2.00 | 2.68 |
| 13-2 | MD402 | SEC LDR | C | D | B+ | F | F | 10.0 | 1.29 | 2.43 |
| 13-2 | MX400 | | | | | | B | 7.5 | 1.29 | 2.43 |

### MAJOR AWARDS

| Offense Code | Offense Date | Demerits/ Tours |
|---|---|---|
| 1 | 17 Apr 10 | 35 / 100 |
| 1 | 19 Oct 11 | 20 / 20 |
| 1 | 15 Sep 12 | 30 / 30 |
| 1 | 11 Jan 13 | 20 / 20 |
| 1 | 19 Jan 13 | 30 / 30 |
| 1 | 3 Apr 13 | 30 / 30 |

### CONDUCT RECORD (Demerits / Tours)

| AcadYr | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | | | | | | | | | | 35/100 | | |
| 11 | | | | | | | | | | | | |
| 12 | | | | 20/20 | | | | 10/10 | | 2/2 | | |
| 13 | | | 30/30 | | | 5/5 | 55/55 | | 10/10 | 30/30 | | |
| 14 | | | | | | | | | | | | |

### CONDUCT STATUS

| Hearing Type | Date | Action Taken | Ending Date |
|---|---|---|---|
| | | | |

### CPR PROFILE

| | ACOM-UH | ACOM-LH | CtrOfMass | BCOM-Rtn | BCOM-NoRtn |
|---|---|---|---|---|---|
| ll CPRs (written ON this cadet:) | 8 | 16 | 12 | 5 | 2 |
| Chain of Command CPRs: | 5 | 8 | 7 | 0 | 0 |
| Peer & Subordinate CPRs: | 3 | 4 | 2 | 5 | 2 |
| Staff & Faculty CPRs: | 0 | 0 | 1 | 0 | 0 |
| Other CPRs: | 0 | 0 | 0 | 0 | 0 |

000544



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK  10996

REPLY TO
ATTENTION OF

MACC-O-RD  (351-17e)                                                                                      6 May 2010

MEMORANDUM FOR  SEE DISTRIBUTION

SUBJECT: **Disciplinary Award No. 154**
Doolen, Isiah M., Company E, 4th Regiment, CDT PFC, Class of 2013

1.  **LEVEL OF PROCEEDING:  Brigade (UA Alcohol)**

2.  **DELINQUENCY:**  (Article 1) Failure to comply with Regulations, Orders, Instructions.  You brought
alcohol into the barracks.  **On or about 17 April 2010.**

3.  **AWARDED:**  35 Demerits.  100 hours of extra duty, 60 days of restriction, 90 days withdrawal of
privileges and **reduction in rank to CDT PFC**; *also, referral to ASAP*.

4.  **SPECIAL INSTRUCTIONS:** Cadets on restriction have no privileges and must read and comply
with the terms of restriction IAW para 104; USCC Regulation 351-2, dated 15 May 01.

Restriction and Withdrawal of Privileges begin on 6 May 2010
Restriction and WP are suspended from 0001 hrs on 22 May 2010 thru 1900 hrs on 15 August 2010
Restriction ends at 2400 hours on 28 September 2010
Withdrawal of Privileges ends at 2400 hours on 28 October 2010

Acknowledgment:

**CADET SIGNATURE and DATE:** _____

FOR THE COMMANDANT OF CADETS:

DELROY A. PATRICK
R & D Officer, USCC

DISTRIBUTION:
1 CDT File
1 CDT Doolen
1 TAC

**000545**

USMA FORM 2-3; NOT for use in summarized proceedings

**RECORD OF FORMAL PROCEEDINGS UNDER ARTICLE 10, CADET DISCIPLINARY CODE**

Level of Proceeding(check one): Company ☐  Battalion ☐  Regimental ☐  Brigade ■

*SEE NOTES ON REVERSE BEFORE COMPLETING FORM*

| a. Cadet Name (Last, First, MI) | b. Class | c. SSN | d. Unit | e. Corps Squad/DCA Club: Yes ☐ No ⊗ |
|---|---|---|---|---|
| Doolen, Isiah M. | 2013 | C39038851 | E4 | Notification sent? YES  NO⊗  N/A |

**NOTIFICATION:**

1. I am considering whether you should be punished under Article 10, CDC, for the following misconduct: 1/
Article 1: Failure to comply with regulations, orders, instructions
Article 7: Error in judgment

On or about 17 April 2010, Cadet Doolen brought alcohol into the barracks.

2. You have several rights under this Article 10 proceeding. First I want you to understand I have not yet made a decision whether or not you will be punished. I will impose punishment unless I am convinced by a preponderance of the evidence that you committed the offense(s). You may request a person to speak on your behalf. You may present witnesses or other evidence to show why you shouldn't be punished at all (matters of defense) or why punishment should be very light (matters of extenuation and mitigation). I will consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose. 2/ MAX Punishment=35 demerits, 100 hours, 90 days withdrawal of privileges, 60 days of restriction, reduction in rank to one or more lower ranks.

3. Your hearing will proceed on 6may10/1615/RER (date/time/location; at least 48 hours) You have until then to prepare any matters for your defense 3/

| DATE 26APR10 | NAME, GRADE, AND ORGANIZATION OF COMMANDER (OR DESIGNATED REPRESENTATIVE) | SIGNATURE |
|---|---|---|
| TIME: 1620 | Allison A. Marschean, CPT, MI, Tactical Officer E4 | |

**HEARING:**

3. Having been afforded the opportunity to prepare for this hearing, my decisions are as follows: (initial appropriate blocks, date, and sign)

a. A person to speak on my behalf  ☐ Is requested  *ime*  ⊠ Is not requested.

b. Matters in defense, mitigation, and/or extenuation:  ☐ Are not presented  ☐ Will be presented in person ⊠  ☐ Are attached.

| DATE | NAME AND GRADE OF CADET | SIGNATURE |
|---|---|---|
| 26 Apr 2010 | Isiah M. Doolen, E4, Class of 2013 | |

**IMPOSITION OF PUNISHMENT:**

4. In this hearing, all matters presented in defense, mitigation, and/or extenuation, having been considered, the following punishment is imposed: 4/

a. __ Admonition/Reprimand  b. 100 Extra-Duty(hours)  c. 60 Restriction(Days)  d. Reduction in Rank to: N/A(rank) PFC  e. Other ASAP referral

f. Withdrawal of Privileges: (circle one) ALL  or __ AS SPECIFIED: __ for 90 days

g. Suspension (para): N/A ; to be automatically remitted if not vacated before N/A(date) 5/  h. Demerits Awarded 35    (Discipline Clerk Use)

5. You are advised of your right to appeal to BTO within 3 calendar days. An appeal made after that time may be rejected as untimely. Punishment is effective immediately unless otherwise stated above.

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| 6MAY10 | Mark J. McKearn, COL, AV, Brigade Tactical Officer | |

**APPEAL:**

6. (initial appropriate block, date, and sign)

a. ☐  I do not appeal  b. ☐  I appeal and do not submit additional matters. 6/  c. ☐  I appeal and submit additional matters. 6/

| | NAME AND GRADE OF CADET | SIGNATURE |
|---|---|---|
| 56-2010 | Isiah M., E4, Class of 2013 | |

7. After consideration of all matters presented in appeal, the appeal is:
☐ Denied    ☐ Granted as follows: 7/

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| | William E. Rapp, BG, US Army, Commandant of Cadets | |

8. I have seen the action taken on my appeal.  | DATE | SIGNATURE |

9. ALLIED DOCUMENTS AND/OR COMMENTS. 8/ 9/

USMA Form 2-3 (APR 01)

000546



**NOTES**
(For use with USMA Form 2-3)
**THIS FORM IS TYPE WRITTEN**

**1/ Insert** a concise statement of each offense in terms citing the appropriate Article of the Cadet Disciplinary Code and stating a specific violation of the USCC SOP referencing the para, chapter, section, and annex.

**2/** Inform the cadet of the maximum punishment which may be imposed under Article 10.

**3/** Give the member a copy of this form.

**4/** Offenses determined not to have been committed will be lined out. If the imposing commander decides not to impose punishment, the member will be notified and all copies of this form destroyed.

**5/** If a punishment is suspended, indicate which part(s) by referencing the appropriate paragraph in item 4. Fill in the date that the suspension is over. This date cannot be beyond the date that punishment would have been completed had it not been suspended. If punishment includes a written admonition or reprimand, it will be attached to this form and listed in Item 9 as an allied document.

**6/** If the member appeals, this form and all written evidence considered by the imposing commander will be forwarded to the superior authority.

**7/ The** superior authority will initial the appropriate block. If the appeal is granted, the specific relief granted will be stated according to note 9.

**8/** In this space indicate the number of pages attached as follows: Allied documents on appeal consist of _____ pages. Allied documents include all written matters considered by the imposing commander submitted by the member on appeal and the commander's rebuttal, if applicable. If addition space is needed for completion of any item(s), use plain paper headed "Continuation Sheet 1," etc.

**9/ Applicable** portions of the following format may be used to record action taken on appeal. Appropriate language should be entered in item 9 or, if necessary, on a continuation sheet.

   Suspension, Mitigation, Remission, or Setting Aside
      On (date), the punishment(s) of _____, imposed on
      (Date of punishment) (Was) (Were) (Suspended and will be automatically remitted if not
      vacated before(date)) (mitigated to) (set aside, and all rights, privileges, and property
      affected restored) (by my order) (by order of) (the officer who imposed the punishment)
      (as superior authority.)

      (Typed name, grade, and organization of commander)
   /s/ _____