MACC-O-RD                                                                13 February 2013

MEMORANDUM FOR Brigade Tactical Officer

SUBJECT:  Conduct Review Options for Cadet Isaih M. Doolen, B-1, Class of 2013 (Exceeding six month demerit allowance).

1.  IAW USCC USCC Regulation 351-2, Chapter 5, Conduct Status and Investigation, you have the following options regarding conduct reviews that are required under conditions set forth in paragraphs 502-505.

_____A.  You may approve a CoC recommendation of, or personally determine, **Proficient**.

_____B.  You may approve a CoC recommendation of, or personally determine, **Deficient in Conduct**, and direct formal remediation by the CoC. (Please write in any special terms for the remediation in the "comments" section below.)

_____C.  You may approve a CoC recommendation of, or personally determine, **Deficient in Conduct** and forward recommendation to the Commandant for **Conduct Probation in Lieu of a Conduct Investigation.**

_____D.  You may approve a CoC recommendation of, or personally determine, **Deficient in Conduct and Refer to Conduct Investigation.**  If you feel efforts at remediation are not considered appropriate, you may forward a recommendation to the Commandant to convene a Conduct Investigation to review the deficient conduct and recommend disposition to the CoC.

2.  Comments/Special terms for Remediation:

KATRINA N. STAMP
Regulations & Discipline Assistant, USCC

Encl
Conduct Review Packet

**000827**



**DEPARTMENT OF THE ARMY**
UNITED STATES MILITARY ACADEMY
WEST POINT, NY 10996

MACC-O-1
2013

6 February 2013

MEMORANDUM THRU Regimental Tactical Officer, First Regiment, United States Corps of
Cadets, West Point, New York 10996

FOR Tactical Officer, Company B, First Regiment, United States Corps of Cadets, West Point,
New York 10996

SUBJECT: Conduct Review for Cadet Isiah M. Doolen , Company B, First Regiment, Class of
2013

1. As of this date, the following cadet is subject to a conduct review for exceeding the 6 month
demerit allowance.

| NAME | CO | CLASS YEAR | OFFENSE CODE | DATE OF OFFENSE | AWARD |
|---|---|---|---|---|---|
| Doolen, Isiah M. | B1 | 2013 | ART 1 | 19 Jan 2013 | 30/30/30 WP30 |
| | | | ART 1 | 16 Jan 2013 | 20/20/14 WP14 Suspend 6 HRS |
| | | | ART1 | 10 Jan 2013 | 5/5/7  WP 7 |
| | | | ART 1 | 10 Dec 2012 | 5/5 |
| | | | ART 7 | 17 Sep 2012 | 30/30/15/WP15 Suspend 15 Restriction |

2. A conduct review by the cadet's tactical chain of command addressing this deficiency is due
to Regulations and Discipline Office, within three working days. Enclose the recommendations
from the cadet's chain of command along with TAC file.

TOD W. WILLOUGHBY
MAJ, AD
Regimental Executive Officer

CF:
REGS & DIS



**DEPARTMENT OF THE ARMY**
UNITED STATES MILITARY ACADEMY
WEST POINT, NY 10996

MACC-O-1-B                                                                04 February 2013

MEMORANDUM THRU

*Rec Approved*
*JJC 12 Feb 13*

Regimental Tactical Officer, First Regiment, United States Corps of Cadets, West Point, New York 10996

FOR Brigade Tactical Officer, United States Corps of Cadets, West Point, NY 10996

SUBJECT: Recommend Conduct Review for exceeding the 6 months demerit allowance, Cadet Isiah M. Doolen , SSN, Company B, First Regiment, Class of 2013.

1.  Recommend that Cadet Isiah M. Doolen, Last 4 SSN, Company B, First Regiment, Class of 2013, be declared deficient in Conduct and be referred to Conduct Investigation for receiving 90 demerits which surpasses the allowed amount of 72 for first class from Sep-Jan, in accordance with USCC Regulation 351-1.

2.  Cadet Doolen's behavior demonstrates a continued pattern of misconduct as indicated by his multiple negative CORs, Article 10 boards and instructor emails regarding his inattention to detail or ability to follow instructions.

3. On 04 February 2013, the TAC Team informed Cadet Doolen of the above recommendation.

4.  Cadet Doolen's TAC file is attached.


5 Enclosures                                    ELIZABETH S. EATON-FERENZI
1. Cadet CO Recommendation                      CPT, AV
2. Demerit Review                               Tactical Officer
3. Backside CRB
4. Cadet Military Summary
5. Article 10 Packet



DEPARTMENT OF THE ARMY
UNITED STATES MILITARY ACADEMY
WEST POINT, NEW YORK 10996

REPLY TO
ATTENTION OF

MACC-O-B1                                                           04 February 2013

MEMORANDUM THRU Tactical Team, Company B-1, West Point, NY 10996

FOR Regimental Tactical Officer, 1st Regiment, West Point, NY 10996

SUBJECT: Cadet CO Recommendation for Cadet Doolen

1. The purpose of this memorandum is to outline my recommendation for Cadet Isaiah Doolen due to his misconduct and resulting conduct investigation.

2. The pattern of conduct I have observed of Cadet Doolen is one of general irresponsibility for a first class cadet and a following failure of ownership. While I cannot attest to his conduct in the previous semester, I have observed a pattern of lack of attention to detail and poor decision making. Cadet Doolen has had a multitude of Cadet Observation Reports written on him that include missing an ADSO deadline, failure to complete an assigned MD task, and being out of his room after TAPS. When approached on most situations, there is a general failure to accept ownership of his actions. While he did accept responsibility for the ADSO deadline, he did not on the other situations. After the first few incidents, I spoke with Cadet Doolen about admitting fault for his wrong doings. While he was very receptive, I observed the behavior again when approached about being out of his room after TAPS. He explained that he only wanted to protect his girlfriend from other male cadets. I told him that I understood the situation, but the actions he took were not appropriate. At his Article 10 hearing for the board, I found out much more about the situation regarding a potential physical altercation. This uncovered what I believe was his real motive for leaving the barracks and the most troubling characteristic of his behavior. I believe that Cadet Doolen's actions do not align with the expectations of a first class cadet and future officer.

3. I recommend that Cadet Doolen is retained and allowed to graduate on time with the Class of 2013. I believe that the situations described above do not note permanent egregious behavior, but they need to be corrected before he can step into the realm of being a successful commissioned officer. I believe that he needs to be mentored on the importance of changing his behavior and demonstrate that he has inculcated this change. Thus, retention and graduation should be contingent upon completion of the Special Leadership Development Program (SLDP) and him not receiving a battalion board or higher before graduation. I believe that the mentorship of SLDP will help to correct his behavior and help him understand that his attitude is unacceptable as a future officer.

4. The POC for this memorandum is the undersigned at (717)609-2342 or Clifford.Crofford@usma.edu.

CLIFFORD CROFFORD
CDT CPT, CO. B1
USCC

**000830**

BTD MNGMNT SYSTEM

PRIVACY ACT DATA - FOR OFFICIAL USE ONLY

Close

Print File CRB

**DOOLEN, ISIAH MATTHEW**
**USMA ID:** C39038851
**Class:** 2013 (R-Day: 29 Jun 09)
**Acad Yr Co:** B1
**Curr Posn:** SEC LDR
**Building:** 740 (Lee Barracks)
**Room:** 407 **Phone:**
**Sex:** M
**Race:** HISPANIC
**Redcat:** OTHER/UNKNOWN
**Relig:** ROMAN CATHOLIC CHURCH
**Birthday:** Redacted PII 88
**Birthplace:** Redacted PII NM
**Dom:** NM

**Entrance Data**

**USMAPS:** Y
**College:**
**HS:** ROSWELL NM (29 / 118)

**Prior Service:** N

**CEER:** 457
**PAE:** 0
**LPS:** 467
**Whole Cand:** 4643
**R-Day Ht/Wt:** /
**Ath Code:**
**Nom Src:**

**ACT-Math:** 21
**ACT-Engl:** 24
**ACT-Sci:** 25
**ACT-Read:** 24
**SAT-Math:** 450
**SAT-Ver:** 540
**SAT-TSWE:**

**Notification Information**

**Name:** Mr. and Mrs. Redaction PII and Redaction PII Doolen

**Address:** Redaction PII

**Phone:** 2133M
**Send Grades:** Y

| ACAD YR TERM | CUM CDT PERF | | | | | ACADEMIC PROGRAM | | | MILITARY PROGRAM | | | | | PHYSICAL PROGRAM | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CPS | CQPA | AWD | APST | APSC | DL | DC | UNIT | POSN | MD | MS | MPSC | APFTs | IOCT | PPSY | PPSC |
| 2010 0 | 0.000 | | | 0.000 | 0.000 | H | 14 | CBT | MOS | B+ | | 3.330 | 1-Jul: D | 6-Aug: C+ | | |
| 2010 1 | 2.687 | 2.489 | | 2.488 | 2.488 | | | E4 | 34 MOS | A- | | 3.519 | | | | 2.672 |
| 2010 2 | 2.350 | 2.397 | | 2.285 | 2.385 | | | E4 | 22 MOS | D | B | 2.816 | 26-Apr: B | | 2.315 | 2.315 |
| 2011 0 | 2.320 | 2.397 | | 0.000 | 2.385 | | | 5 | 23 CFT MOS | B | | 2.876 | | | | 2.315 |
| 2011 1 | 2.257 | 2.276 | | 1.981 | 2.244 | | | E4 | 23 TM LDR | B+ | B- | 2.870 | 22-Oct: C | | | 2.375 |
| 2011 2 | | 2.363 | | 2.162 | 2.345 | | | E4 | 21 TM LDR | B | | 2.881 | 7-Apr: C- | | 2.609 | 2.408 |
| 2011 3 | 2.332 | 2.361 | | 2.330 | 2.344 | | | | | | | 2.881 | | | | 2.408 |
| 2012 0 | 2.286 | 2.361 | | 0.000 | 2.344 | | | | | P | | 2.881 | | | | 2.408 |
| 2012 1 | 2.279 | 2.314 | | 2.127 | 2.298 | | | B1 | 22 SQD LDR | B | | 2.902 | 18-Nov: NC | | | 2.408 |
| 2012 2 | 2.173 | 2.294 | | 2.132 | 2.273 | | | B1 | 31 CO STF N-4 B | B- | | 2.885 | 27-Apr: F | | 1.179 | 2.033 |

27-

**000831**

Name: DOOLEN, ISIAH MATTHEW

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

Date: 05 Feb 13



**Status:** ACTIVE **Class:** 2013 **Co/Regt:** B1 **Prior Co/Regt:** E4 **Current CS:**

**RedCat:** OTHER/UNKNOWN **Gender:** MALE **Prior Service:** US Army Regular **USMAPS:** YES

**ACT-MATH:** 21 **ACT-ENGL:** 25 **ACT-SCI:** 25 **ACT-READ:** 30 **SAT-MATH:** 450 **SAT-VERB:** 540 **SAT-TSWE:** 0

**Rank in Company CQPA:** 29/29 **APSC:** 29/29 **MPSC:** 25/29 **PPSC:** 29/29 **Major/Field of Study:** Political Science Major: Comparative Politics

| CPR Profile (AY03 forward) | ACOM-UH | ACOM-LH | CtrOfMass | BCOM-RTN | BCOM-NORTN |
|---|---|---|---|---|---|
| All written on this cadet | 8 | 12 | 8 | 4 | 2 |
| Chain of Command | 5 | 8 | 5 | 0 | 0 |
| Other | 0 | 0 | 1 | 0 | 0 |
| Peer and Subordinate | 3 | 4 | 2 | 4 | 2 |
| Staff and Faculty | 0 | 0 | 0 | 0 | 0 |

**Major Conduct Violations**

| Date | Description |
|---|---|
| 17-Apr-10 | brought alcohol into the barracks |
| 19-Oct-11 | arrived 1 hour after 1900 Recall Formation |
| 15-Sep-12 | You were Disrespectful to a Senior Cadet Non-Commissioned Officer |
| 11-Jan-13 | Failed to meet BN Suspense |
| 19-Jan-13 | While on Restrictions left room. |

| Course Nbr | Position | Rtr | Tac Rtr | Grade | MPS Cum |
|---|---|---|---|---|---|
| MD100 | CBT MOS | | | B+ | 3.33 |
| MD101 | MOS | A | A- | A- | 3.52 |
| MD102 | MOS | D | D | D | 2.82 |
| MS100 | MOS | | | B | 2.82 |
| MD200 | CFT MOS | A | B | B | 2.88 |
| MD201 | TM LDR | B | B+ | B+ | 2.87 |
| MS200 | TM LDR | | | B- | 2.87 |
| MD202 | TM LDR | B | B | B | 2.88 |
| MD400 | | | | P | 2.88 |
| MD301 | SQD LDR | B | B | B | 2.90 |
| MD302 | CO STF N-4 | B | C | B | 2.89 |
| MS300 | CO STF N-4 | | | B- | 2.89 |
| MD410 | SG REG AS3 | | | P | 2.77 |
| MD300 | SG REG AS3 | | | C+ | 2.77 |
| MD401 | TNG OFF | B | D | C | 2.68 |
| MD402 | SEC LDR | | | | |



Solid Line = CQPA
Broken Line = MPSC
Dotted Line = PPSC

| TERM | 100 | 101 | 102 | 110 | 111 | 112 | 113 | 120 | 121 | 122 | 130 | 131 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CQPA | 0.00 | 2.49 | 2.40 | 2.40 | 2.28 | 2.36 | 2.36 | 2.36 | 2.31 | 2.29 | 2.29 | 2.27 |
| MPSC | 3.33 | 3.52 | 2.82 | 2.88 | 2.87 | 2.88 | 2.88 | 2.88 | 2.90 | 2.89 | 2.77 | 2.68 |
| PPSC | 0.00 | 2.67 | 2.32 | 2.32 | 2.38 | 2.41 | 2.41 | 2.41 | 2.41 | 2.03 | 2.03 | 2.12 |

**Conduct Record (Demerits/Tours)**

| AY | Jul | | Aug | | Sep | | Oct | | Nov | | Dec | | Jan | | Feb | | Mar | | Apr | | May | | Jun | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 35 | 100 | 0 | 0 | 0 | 0 |
| 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12 | 0 | 0 | 0 | 0 | 0 | 0 | 20 | 20 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 10 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 |
| 13 | 0 | 0 | 0 | 0 | 30 | 30 | 0 | 0 | 0 | 0 | 5 | 5 | 55 | 55 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

000832

Name: DOOLEN, ISIAH MATTHEW

FOR OFFICIAL USE ONLY - PRIVACY ACT DATA

Date: 05 Feb 13

05 Jan 2011

MAJ Marschean
Date: 5 Jan 11 NAME: Doolen, I. E4,2013
MAJOR: Comparative Politics
Reason for submission: Failed PH201
Recommendation: Retain, repeat PH201

Potential: CDT Doolen has the potential to do well here at USMA and as an officer in the Army. While his maturity level has improved relative to the beginning of the semester, he could stand to heighten it further. I☐m certain that with a bit of focused effort that he☐ll be able to achieve a level of maturity that will carry him far. He should be afforded the opportunity to repeat PH201.

Performance: End term 11-1: ACOM-UH (5), ACOM-LH (5), COM (4), BCOM-rtn (2), BCOM-roRtn (0). CDT Doolen☐s overall performance has improved considerably since the start of the semester. His subordinate was a true leadership challenge and he worked with him to help him☐ bring most of his grades up. According to his squad leader he was one of the best Team Leaders my squad. Additionally, he was failing multiple classes at the beginning of the semester and was able to pull all of them up by the end of the semester except for PH201.

Conduct: Average. CDT Doolen generally conducted himself well this semester. While serving room restriction for an offence from AY 10-2, CDT Doolen ignored the rules of his restriction and had to be corrected by his chain of command to ensure he fully understood the SOP regarding room restriction. Once he was corrected he abided by the rules. Additionally, his ADAPT counselor provided the TAC Tm with positive feedback regarding their counseling sessions and his progress.

Leadership: Average. Despite CDT Doolen☐s academic struggles, he always found time to work with his subordinate who was a leadership challenge and help him to bring his own grades up. Without CDT Doolen☐s guidance and assistance his Plebe might have chosen to quit or failed out of the Academy.

Teamwork and Selflessness: Average. One of his peers noted that CDT Doolen gets easily frustrated at others and tends to blame them for his problems. He complains and often gets so frustrated that he cannot respond to adversity well. He needs to work on his patience, which will come with time. The time he spent working with his Plebe is indicative of his selflessness during a time when he too was struggling.

Interpersonal Skills: Average to Below Average. CDT Doolen has a tendency to close himself off to those who hold him accountable. An increase in his maturity level, as noted by a peer, would certainly help him to interact and respond to everyone in a more adult-like and professional manner. A peer also noted he needs to understand that everyone works differently and that no one type of leadership is right. Although he has experienced many different types of leadership he needs to be more open minded to what might not be the way he would do things.

Sense of Duty: Average. CDT Doolen☐s sense of duty with respect to his subordinate is strong. On occasion however, he failed to notify his chain of command and an instructor of his whereabouts if he was not able to make a scheduled hard time.

Appearance: Average. CDT Doolen is generally an average Cadet in appearance. He did receive demerits/punishment for what his PL referred to as deplorable room standards and for and unsatisfactory uniform during an inspection. When told to correct the issues, he corrected them in a timely manner.

Major Conduct Violations NONE
Minor - None
FLAGS ☐ completing SLDP-A program
RTO Comments
Concur with TAC..Retain, repeat PH201.

05 Jan 2011

000833

# REGS & DISCIPLINE

Home | Software Change Request | Staff/Fac Portal | Log Off

## Demerit Review

### Record for: DOOLEN ISIAH (B1 '13, USMA ID: C39038851)
### As of: 5 Feb 13

| DATE | OFFENSE | ORIGINATOR | LTR | DEM | Award | | RED | SUSP | RMKS |
|------|---------|-----------|-----|-----|-------|---|-----|------|------|
| | | | | | TOURS (A/R/F) | RSTR (R/P) | | (HRS/R/P/RIR) | |
| 17 APR 10 | 1 BDE  Failure to Comply  I.E., brought alcohol into the barracks | CPT ALLISON MARSCHEAN USCC | 35 | | 100 / 0 / 0 | 60 / 90 | PFC | 0 / 0 / 0 / N | |
| 19 OCT 11 | 1 BN  Failure to Comply  I.E., arrived 1 hour after 1900 Recall Formation | | 20 | | 20 / 0 / 0 | 0 / 0 | | 15 / 0 / 0 / - | Miscommunication with friend who went to JFK instead of NEWARK Airport to pick him up. |
| 2 FEB 12 | 1 SUM  Failure to Comply  I.E., CDT Doolen was found with a WAP or gaming system connected to the USMA network. | | 10 | | 10 / 0 / 0 | 0 / 0 | | 0 / 0 / 0 / - | |
| 30 APR 12 | 3 SUM  Delinq. Accountability  I.E., CDT Doolen was not in his required class. | | 2 | | 2 / 0 / 0 | 0 / 0 | | 0 / 0 / 0 / - | |
| 15 SEP 12 | 1 BN  Failure to Comply  I.E., You were Disrespectful to a Senior Cadet Non-Commissioned Officer | | 30 | | 30 / 0 / 0 | 15 / 15 | | 30 / 15 / 0 / - | |
| 10 DEC 12 | 1 SUM  Failure to Comply  I.E., Delinquent in Accountability. | | 5 | | 5 / 0 / 0 | 0 / 0 | | 5 / 0 / 0 / - | |
| 10 JAN 13 | 1 SUM  Failure to Comply  I.E., Failed to sign Br ADSO contract by suspense date. | | 5 | | 5 / 0 / 0 | 7 / 7 | | 5 / 0 / 0 / - | |
| 11 JAN 13 | 1 CO  Failure to Comply  I.E., Failed to meet BN Suspense | | 20 | | 20 / 0 / 0 | 14 / 14 | | 6 / 0 / 0 / - | |
| 19 JAN 13 | 1 BN  Failure to Comply  I.E., While on Restrictions left room. | | 30 | | 30 / 0 / 0 | 30 / 30 | | 0 / 0 / 0 / - | |

# REGS & DISCIPLINE

Home | Software Change Request | Staff/Fac Portal | Log Off

## MILSUM Report

### as of 5 Feb 13

| Name: DOOLEN ISIAH M | Class:  2013 | Co/Regt: B1 | Prior Co/Regt: E4 | Current CS: |
|---|---|---|---|---|
| USMA ID:  C39038851 | RedCat: OTHER/UNKNOWN | Gender:  MALE | Status: ACTIVE | |

### SUMMER TRAINING

| Acad Yr | Activity | Completed |
|---|---|---|
| 10 | CBTNC | |
| 11 | AA | |
| | CFTYR | |
| | AA | |
| 12 | CTLT | |
| 13 | CLDTF | |
| | AFCS | |
| | SGR | |

### MILITARY PROGRAM RECORD

| Term Period | Military Activity | Position | Rtr | Int Rtr | Sr Rtr | Tac Rtr | Ltr Grd | Activity Weight | MPS Term | MPS Cum |
|---|---|---|---|---|---|---|---|---|---|---|
| 10-0 | MD100 | CBT MOS | | | | | B+ | 2.0 | 3.33 | 3.33 |
| 10-1 | MD101 | MOS | A | A | | A- | A- | 2.5 | 3.67 | 3.52 |
| 10-2 | MD102 | MOS | D | D | | D | D | 2.5 | 2.50 | 2.82 |
| 10-2 | MS100 | | | | | | B | 7.5 | 2.50 | 2.82 |
| 11-0 | MD200 | CFT MOS | A | C | | B | B | 7.0 | 3.00 | 2.88 |
| 11-1 | MD201 | TM LDR | B | B | B | B+ | B+ | 3.0 | 2.86 | 2.87 |
| 11-1 | MS200 | | | | | | B- | 7.5 | 2.86 | 2.87 |
| 11-2 | MD202 | TM LDR | B | B | B- | B | B | 3.0 | 3.00 | 2.88 |
| 12-0 | MD400 | | | | | | P | 0.0 | 0.00 | 2.88 |
| 12-1 | MD301 | SQD LDR | B | B | B- | B | B | 7.5 | 3.00 | 2.90 |
| 12-2 | MD302 | CO STF N-4 | B | A | A+ | C | B | 7.5 | 2.84 | 2.89 |
| 12-2 | MS300 | | | | | | B- | 7.5 | 2.84 | 2.89 |
| 13-0 | MD410 | SG REG AS3 | | | | | P | 0.0 | 2.33 | 2.77 |
| 13-0 | MD300 | SG REG AS3 | | | | | C+ | 15.0 | 2.33 | 2.77 |
| 13-1 | MD401 | TNG OFF | B | B | A- | D | C | 10.0 | 2.00 | 2.68 |

### MAJOR AWARDS

| Offense Code | Offense Date | Demerits/ Tours |
|---|---|---|
| 1 | 17 Apr 10 | 35 / 100 |
| 1 | 19 Oct 11 | 20 / 20 |
| 1 | 15 Sep 12 | 30 / 30 |
| 1 | 11 Jan 13 | 20 / 20 |
| 1 | 19 Jan 13 | 30 / 30 |

### CONDUCT STATUS

| Hearing Type | Date | Action Taken | Ending Date |
|---|---|---|---|
| | | | |

### CONDUCT RECORD (Demerits / Tours)

| AcadYr | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | | | | | | | | | | 35/100 | | |
| 11 | | | | | | | | | | | | |
| 12 | | | | 20/20 | | | | 10/10 | | 2/2 | | |
| 13 | | | 30/30 | | | 5/5 | 55/55 | | | | | |

### CPR PROFILE

| | ACOM-UH | ACOM-LH | CtrOfMass | BCOM-Rtn. | BCOM-NoRtn |
|---|---|---|---|---|---|
| All CPRs (written ON this cadet:) | 8 | 16 | 10 | 4 | 2 |
| Chain of Command CPRs: | 5 | 8 | 5 | 0 | 0 |
| Peer & Subordinate CPRs: | 3 | 4 | 2 | 4 | 2 |
| Staff & Faculty CPRs: | 0 | 0 | 1 | 0 | 0 |
| Other CPRs: | 0 | 0 | 0 | 0 | 0 |

https://apps.usma.edu/regs/regs_disc/milsum_2_afr_9/ ... h 0/2018/2RO/CTNO TN1/IT D11/

USMA FORM 2-3; NOT for use in summarized proceedings

**RECORD OF FORMAL PROCEEDINGS UNDER ARTICLE 10, CADET DISCIPLINARY CODE**

Level of Proceeding (check one):  Company ☐  Battalion ■  Regimental ☐  Brigade ☐

*SEE NOTES ON REVERSE BEFORE COMPLETING FORM*

| a. Cadet Name (Last, First, MI) | b. Class | c. SSN | d. Unit | e. Corps Squad/DCA Club: Yes  No |
|---|---|---|---|---|
| DOOLEN, ISIAH M. | 2013 | 7694 | B-1 | Notification sent? YES  NO |

**NOTIFICATION:**
1. I am considering whether you should be punished under Article 10, CDC, for the following misconduct:

On or about 19 January 2013, you did leave your room after Taps while on restriction

Article 1, CDC, Failure to Comply with Regulations, Orders, Instructions
Article 3, CDC, Delinquency in Accountability
Article 7, CDC, Error in Judgment

2. You have several rights under this Article 10 proceeding. First I want you to understand I have not yet made a decision whether or not you will be punished. I will not impose punishment unless I am convinced by a preponderance of the evidence that you committed the offense(s). You may request a person to speak on your behalf. You may present witnesses or other evidence to show why you shouldn't be punished at all (matters of defense) or why punishment should be very light (matters of extenuation and mitigation). I will consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose.    MAX Punishment = 30 Demerits, 30 Extra-Duty Hours, 30 Days of Restriction, 30 Days Withdrawal of Privileges.
3. Your hearing will proceed on 290600JAN2013. (date/time/location; at least 48 hours) You have until then to prepare any matters for your defense.

| DATE: 24 JAN 13 | NAME, GRADE, AND ORGANIZATION OF COMMANDER (OR DESIGNATED REPRESENTATIVE) | SIGNATURE |
|---|---|---|
| TIME: 0730 | Elizabeth S. Eaton-Ferenzi, CPT, AV, TAC B-1 | *Elizabeth Edn-Fz* |

**HEARING:**
3. Having been afforded the opportunity to prepare for this hearing, my decisions are as follows: (initial appropriate blocks, date, and sign)
a. A person to speak on my behalf ☐ Is requested  *Ond* ☐ Is not requested.

b. Matters in defense, mitigation, and/or extenuation: ☐ Are not presented  *Ond* ☐ Will be presented in person ☐ Are attached.

| DATE 24 JAN 13 | NAME AND GRADE OF CADET Isiah M. Doolen, CDT, CO B-1, CL 2013 | SIGNATURE *D.M.D* |
|---|---|---|

**IMPOSITION OF PUNISHMENT:**
4. In this hearing, all matters presented in defense, mitigation, and/or extenuation, having been considered, the following punishment is imposed:
a. ☒ Admonition/Reprimand  b. ☐ 30 Extra-Duty (hours)  c. ☐ 30 Restriction (Days)  d. Reduction in Rank to: 10 (rank)  e. Other ____
f. Withdrawal of Privileges: (circle one) ALL  or  AS SPECIFIED: _____ for 30 days.
g. Suspension (paragraph(s): _____ ; to be automatically remitted if not revoked before _____ (date).
h. Demerits: 30
5. You are advised of your right to appeal to RTO within 3 calendar days. An appeal made after that time may be rejected as untimely. Punishment is effective immediately unless otherwise stated above.

| DATE 24 JAN 13 | NAME, GRADE, AND ORGANIZATION OF COMMANDER William Richardson, MAJ, AR, 1ST BN TAC | SIGNATURE |
|---|---|---|

**APPEAL:**
6. (initial appropriate block, date, and sign)
a. *IMD* ☐ I do not appeal  b. ☐ I appeal and do not submit additional matters.  c. ☐ I appeal and submit additional matters.

| DATE 1-29-13 | NAME AND GRADE OF CADET Isiah M. Doolen CDT, CO B-1, CL 2013 | SIGNATURE *D.M.D* |
|---|---|---|

7. After consideration of all matters presented in appeal, the appeal is: ☐ Denied  ☐ Granted as follows:

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER John D. Cross, LTC, IN, RTO | SIGNATURE |
|---|---|---|

8. I have seen the action taken on my appeal. | DATE | SIGNATURE |

9. ALLIED DOCUMENTS AND/OR COMMENTS.

USMA Form 2-3 (Aug 99)

**000836**

# RIGHTS WARNING PROCEDURE/WAIVER CERTIFICATE
For use of this form, see AR 190-30; the proponent agency is ODCSOPS

## DATA REQUIRED BY THE PRIVACY ACT

**AUTHORITY:** Title 10, United States Code, Section 3012(g)
**PRINCIPAL PURPOSE:** To provide commanders and law enforcement officials with means by which information may be accurately identified.
**ROUTINE USES:** Your Social Security Number is used as an additional/alternate means of identification to facilitate filing and retrieval.
**DISCLOSURE:** Disclosure of your Social Security Number is voluntary.

| 1. LOCATION | 2. DATE | 3. TIME | 4. FILE NO. |
|---|---|---|---|
| Bldg 740, West Point, NY | 24 JAN 13 | 0600 | |

| 5. NAME (Last, First, MI) | 8. ORGANIZATION OR ADDRESS |
|---|---|
| Doolen, Isiah M. | USCC, 1st Reg, Co. B1 |

| 6. SSN | 7. GRADE/STATUS | |
|---|---|---|
| Redacted PII 7694 | CDT / 2013 | West Point, NY 10996 |

## PART I - RIGHTS WAIVER/NON-WAIVER CERTIFICATE

### Section A. Rights

The investigator whose name appears below told me that he/she is with the United States Army ___USCC, B1___

and wanted to question me about the following offense(s) of which I am suspected/accused: ___Articles 1, 3, 7 CDC___

Before he/she asked me any questions about the offense(s), however, he/she made it clear to me that I have the following rights:

1. I do not have to answer any question or say anything.
2. Anything I say or do can be used as evidence against me in a criminal trial.
3. (For personnel subject othe UCMJ) I have the right to talk privately to a lawyer before, during, and after questioning and to have a lawyer present with me during questioning. This lawyer can be a civilian lawyer I arrange for at no expense to the Government or a military lawyer detailed for me at no expense to me, or both.
   - or -
   (For civilians not subject to the UCMJ) I have the right to talk privately to a lawyer before, during, and after questioning and to have a lawyer present with me during questioning. I understand that this lawyer can be one that I arrange for at my own expense, or if I cannot afford a lawyer and want one, a lawyer will be appointed for me before any questioning begins.
4. If I am now willing to discuss the offense(s) under investigation, with or without a lawyer present, I have a right to stop answering questions at any time, or speak privately with a lawyer before answering further, even if I sign the waiver below.

5. COMMENTS (Continue on reverse side)

### Section B. Waiver

I understand my rights as stated above. I am now willing to discuss the offense(s) under investigation and make a statement without talking to a lawyer first and without having a lawyer present with me.

| WITNESSES (If available) | |
|---|---|
| 1a. NAME (Type or Print) | 3. SIGNATURE OF INTERVIEWEE |
| b. ORGANIZATION OR ADDRESS AND PHONE | 4. SIGNATURE OF INVESTIGATOR |
| 2a. NAME (Type or Print) | 5. TYPED NAME OF INVESTIGATOR  SFC Kellen C. Rowley |
| b. ORGANIZATION OR ADDRESS AND PHONE | 6. ORGANIZATION OF INVESTIGATOR  USCC, B1 |

### Section C. Non-waiver

1. I do not want to give up my rights
   ☐ I want a lawyer                ☐ I do not want to be questioned or say anything

2. SIGNATURE OF INTERVIEWEE

ATTACH THIS WAIVER CERTIFICATE TO ANY SWORN STATEMENT (DA FORM 2823) SUBSEQUENTLY EXECUTED BY THE SUSPECT/ACCUSED

**DA FORM 3881, NOV 89**          EDITION OF NOV 84 IS OBSOLETE          USAPA 2.01

000837

## SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

### PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION Bldg 740 West Point, NY | 2. DATE (YYYYMMDD) 20130124 | 3. TIME 0600 | 4. FILE NUMBER |
|---|---|---|---|

| 5. LAST NAME, FIRST NAME, MIDDLE NAME Doolen, Isiah M | 6. SSN Redacted PII 7694 | 7. GRADE/STATUS CDT/2013 |
|---|---|---|

8. ORGANIZATION OR ADDRESS  USCC, 1st Reg, Co B1

9.

I, Isiah Doolen _____, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

On the 19th of January, I had been communicating with my girlfriend in C3, Natalie Dailey, through text messaging. Around 1200 am she messaged me informing me that CDTs Fann and Duff were in her room talking to her. I thought it was weird that they were in her room that late, and automatically thought that they might have been drinking. I then asked CDT Dailey to call me because the service in my room is bad and I am rarely able to call her from my phone. She called me and sounded upset by some of the things that they were saying about us initially breaking up the day before (18th). Although we had done that, the judgement on that was hasty and lasted about an hour. Between the time we initially broke up and the time an hour later, her whole company knew. Going back to the 19th, Fann and Duff were over there talking to her about it. CDT Fann was apparently saying other stuff that I am unsure of. Natalie had mentioned to me on the phone that they had both been out that night, and she mentioned Fann had been drinking. Although she new mentioned that CDT Duff was, I assumed he had been (turns out he is Mormon and doesn't drink). Like I said before, I was concerned that they had been drinking and were in her room because it was a long weekend and her roommate was

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT  DAD | PAGE 1 OF 3 PAGES |
|---|---|---|

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

**DA FORM 2823, NOV 2006**     DA FORM 2823, DEC 1998, IS OBSOLETE     APD V1.00

STATEMENT OF ___Isiah M. Dooley___ TAKEN AT ___Lee Barracks___ DATED ___24 JAN 13___

9. STATEMENT  *(Continued)*

Q: Do you know the Squad Leader's Name?

A: No, I do not know his name. Anna

// end of statement //

𝒟 mD

𝒟 mD

𝒟 mD

𝒟 mD

**AFFIDAVIT**

I, ___Isiah M. Dooley___, HAVE READ OR HAVE HAD READ TO ME THIS STATEMENT WHICH BEGINS ON PAGE 1, AND ENDS ON PAGE __3__. I FULLY UNDERSTAND THE CONTENTS OF THE ENTIRE STATEMENT MADE BY ME. THE STATEMENT IS TRUE. I HAVE INITIALED ALL CORRECTIONS AND HAVE INITIALED THE BOTTOM OF EACH PAGE CONTAINING THE STATEMENT. I HAVE MADE THIS STATEMENT FREELY WITHOUT HOPE OF BENEFIT OR REWARD, WITHOUT THREAT OF PUNISHMENT, AND WITHOUT COERCION, UNLAWFUL INFLUENCE, OR UNLAWFUL INDUCEMENT.

*(Signature of Person Making Statement)*

WITNESSES:

Subscribed and sworn to before me, a person authorized by law to administer oaths, this __24th__ day of __JANUARY__, __2013__ at __West Point, NY 10996__

_____

ORGANIZATION OR ADDRESS

*(Signature of Person Administering Oath)*

_____

SFC Kellen C. Rowley
*(Typed Name of Person Administering Oath)*

_____

ORGANIZATION OR ADDRESS

*(Authority To Administer Oaths)*

INITIALS OF PERSON MAKING STATEMENT
DmD

PAGE 3 OF 3 PAGES

DA FORM 2823, NOV 2006

APD V1.00

# SWORN STATEMENT

For use of this form, see AR 190-45; the proponent agency is PMG.

## PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5, USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE *(YYYYMMDD)* | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Eisenhower Barracks, West Point, NY | 2013/01/24 | 1300 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| Pak, Kevin | | CDT |

| 8. ORGANIZATION OR ADDRESS |
|---|
| Company C, 3rd Regiment, USCC |

9.

I, Kevin Pak _____, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

On Thursday (18Jan13) evening after Spirit Dinner, I—as well as the other company members in the hallway facing the plain side—observed a heated verbal exchange between CDT [redacted] (C-3) and CDT Isiah Doolen (B-1). From this occurrence, I deduced that the relationship between these two individuals was not going too well. As CDT [redacted] squad leader, I spoke to her about the issue and told her that if there were any problems, she could knock on my door (which was letter next door from her room). On Saturday morning (19Jan13), around 0120, I heard a punctual knock on my door. When I opened the door, I saw CDT [redacted]s boyfriend in the hallway directly in front of her room. CDT [redacted] moved against the side of the hallway nearest her room away from him after I came out of my room. I noticed two things that were completely out of place: 1.) CDT Doolen's Dress Grey top was on the floor and 2.) His suspenders were down. I have no idea why this was so; however, using a mental schema, I deduced that whatever must have happened was definitely wrong. I moved towards the side of the hallway closest to the central sally port in order to position myself so that he would leave the Company Area closest to CQR. I checked the time, which at that moment was between 0120-0130—clearly after TAPs. Drawing from the notion that CDT [redacted] needed my help (inferred from the knock), I yelled at CDT Doolen as loud as I could to get him to leave. Profanity was used in order to stimulate his response and to illustrate the urgency of the situation. He then picked up his Dress Grey top but did not leave. I yelled at him again—this time louder to try to get the CCQ and/or the CDO's attention. He then looked at CDT [redacted] and says (approximately): "Is this what you want, [redacted]?" I yelled at him again to leave and threaten to get the CDO. He then turned around and left the Company Area. (NOTHING FOLLOWS)

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|

*ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____*

*THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.*

**DA FORM 2823, NOV 2006**       PREVIOUS EDITIONS ARE OBSOLETE       APD PE v1.01ES

# SWORN STATEMENT
For use of this form, see AR 190-45; the proponent agency is PMG.

PRIVACY ACT STATEMENT

**AUTHORITY:** Title 10, USC Section 301; Title 5; USC Section 2951; E.O. 9397 Social Security Number (SSN).

**PRINCIPAL PURPOSE:** To document potential criminal activity involving the U.S. Army, and to allow Army officials to maintain discipline, law and order through investigation of complaints and incidents.

**ROUTINE USES:** Information provided may be further disclosed to federal, state, local, and foreign government law enforcement agencies, prosecutors, courts, child protective services, victims, witnesses, the Department of Veterans Affairs, and the Office of Personnel Management. Information provided may be used for determinations regarding judicial or non-judicial punishment, other administrative disciplinary actions, security clearances, recruitment, retention, placement, and other personnel actions.

**DISCLOSURE:** Disclosure of your SSN and other information is voluntary.

| 1. LOCATION | 2. DATE (YYYYMMDD) | 3. TIME | 4. FILE NUMBER |
|---|---|---|---|
| Eisenhower Barracks, West Point, NY | 2013/01/24 | 1300 | |

| 5. LAST NAME, FIRST NAME, MIDDLE NAME | 6. SSN | 7. GRADE/STATUS |
|---|---|---|
| ███████ | | CDT |

**8. ORGANIZATION OR ADDRESS**
Company C, 3rd Regiment, USCC

9.
I, ███████, WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

On 19JAN, at 0120, I heard a knock on my door, and I stepped into the hallway. There stood my boyfriend, Cadet Isiah Doolen, in Dress Gray. Knowing that it was roughly 20 minutes after TAPS, I suggested that he leave and return to his company area. He explained to me that he was in my company area because he was distraught with the fact that two of his classmates were in my room earlier that night. He proceeded to walk down the hallway toward his classmate's room to talk to them. At which point, I told Cadet Doolen that he shouldn't go there after TAPS. When Cadet Doolen proceeded, I knocked on the door right next to mine, which happened to be my squad leader's room, to get someone to keep Cadet Doolen from going to his classmate's room. At which point, my squad leader entered the hallway and urged Cadet Doolen to return to his company area, misunderstanding the situation and reacting as though there was some sort of disturbance by acting extremely enraged and using forceful profanity toward Cadet Doolen. (NOTHING FOLLOWS)

| 10. EXHIBIT | 11. INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|---|

ADDITIONAL PAGES MUST CONTAIN THE HEADING "STATEMENT OF _____ TAKEN AT _____ DATED _____

THE BOTTOM OF EACH ADDITIONAL PAGE MUST BEAR THE INITIALS OF THE PERSON MAKING THE STATEMENT, AND PAGE NUMBER MUST BE INDICATED.

**DA FORM 2823, NOV 2006**   PREVIOUS EDITIONS ARE OBSOLETE   APD PE v1.01ES

000841

USMA FORM 2-3; NOT for use in summarized proceedings

*7W*
*18 Jan 13*

## RECORD OF FORMAL PROCEEDINGS UNDER ARTICLE 10, CADET DISCIPLINARY CODE

Level of Proceeding(check one): Company ☒  Battalion ☐  Regimental ☐  Brigade ☐

*SEE NOTES ON REVERSE BEFORE COMPLETING FORM*

| a. Cadet Name (Last, First, MI) | b. Class | c. SSN | d. Unit | e. Corps Squad/DCA Club:  Yes  ☒No |
|---|---|---|---|---|
| DOOLEN, ISIAH M. | 2013 | | B-1 | Notification sent?  YES  ☒No |

**NOTIFICATION:**

1.   I am considering whether you should be punished under Article 10, CDC, for the following misconduct:

On 11 January 2013, you failed to meet a BN suspense

Article 1, CDC, Failure to Comply with Regulations, Orders, Instructions
Article 7, CDC, Error in Judgment

2. You have several rights under this Article 10 proceeding.  First I want you to understand I have not yet made a decision whether or not you will be punished.  I will not impose punishment unless I am convinced by a preponderance of the evidence that you committed the offense(s).  You may request a person to speak on your behalf.  You may present witnesses or other evidence to show why you shouldn't be punished at all (matters of defense) or why punishment should be very light (matters of extenuation and mitigation).  I will consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose.   **MAX Punishment = 20 Demerits, 20 Extra-Duty Hours, 14 Days of Restriction, 30 Days Withdrawal of Privileges and Reduction in Rank to one or more lower ranks.**

3. Your hearing will proceed on _____.(date/time/location, at least 48 hours)  You have until then to prepare any matters for your defense.

| DATE: *16 Jan 203*  TIME: *0630* | NAME, GRADE, AND ORGANIZATION OF COMMANDER (OR DESIGNATED REPRESENTATIVE)  Elizabeth S. Eaton-Ferenzi, CPT, AV, TAC B-1 | SIGNATURE  *Elizabeth Eaton-Fy* |
|---|---|---|

**HEARING:**

3. Having been afforded the opportunity to prepare for this hearing, my decisions are as follows: (initial appropriate blocks, date, and sign)

a.  A person to speak on my behalf _____ Is requested  *QnD*  ☒ Is not requested.

b.  Matters in defense, mitigation, and/or extenuation: *InD* ☒ Are not presented  ☐ Will be presented in person  ☐ Are attached.

| DATE  *1-16-13* | NAME AND GRADE OF CADET  Doolen, Isiah M., CDT, CO B-1, CL 2013 | SIGNATURE  *I md* |
|---|---|---|

**IMPOSITION OF PUNISHMENT:**

4.  In this hearing, all matters presented in defense, mitigation, and/or extenuation, having been considered, the following punishment is imposed:
a. ☒Admonition/Reprimand  b. *20* Extra-Duty(hours)  c. *14* Restriction (Days)  d. Reduction in Rank to: *B* (rank)  e. Other _____
f. Withdrawal of Privileges: (circle one) ALL  or  AS SPECIFIED: _____ for *14* days.
g. Suspension (paragraph(s): *a-f hours* ; to be automatically remitted if not vacated before _____ (date)
h. Demerits: _____

5. You are advised of your right to appeal to Bn Tac Officer within 3 calendar days.  An appeal made after that time may be rejected as untimely.  Punishment is effective immediately unless otherwise stated above.

| DATE  *16 Jan 203* | NAME, GRADE, AND ORGANIZATION OF COMMANDER  Elizabeth S. Eaton-Ferenzi, CPT, AV, TAC B-1 | SIGNATURE  *Elizabeth Eaton-Fy* |
|---|---|---|

**APPEAL:**

6.  (initial appropriate block, date, and sign)
a. ☒ I do not appeal  *IMD*  b. ☐ I appeal and do not submit additional matters.  c. ☐ I appeal and submit additional matters.

| DATE  *1-16-13* | NAME AND GRADE OF CADET  Isiah M. Doolen, CDT, CO B-1, CL 2013 | SIGNATURE  *I md* |
|---|---|---|

7. After consideration of all matters presented in appeal, the appeal is:
☐ Denied  ☐ Granted as follows:

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER  William Richardson, MAJ, AR, Battalion Tactical Officer | SIGNATURE |
|---|---|---|

| 8.  I have seen the action taken on my appeal. | DATE | SIGNATURE |
|---|---|---|

9.  ALLIED DOCUMENTS AND/OR COMMENTS.

USMA  Form 2-3 (Aug 99)

CADET OBSERVATION REPORT

Page 1 of 1

## CADET OBSERVATION REPORT
**For use of this form, see Annex A and D, USCC SOP; Proponent Agencies are LDB and R&D, USCC**

### PART I - ADMINISTRATIVE DATA

| a. Name of Cadet Observed: DOOLEN ISIAH M | b. Grad Yr: 2013 | c. Company/Regt: B1 |
|---|---|---|
| d. Task/Situation/Course: (e.g., "inspection in ranks" or "Classroom Participation EV203")  **Failure to meet BrADSO signing suspense** | | e. Date Observed: 1/10/2013 |

### PART II - OBSERVATION DATA

Cite specific observed behavior in a concise manner (100 characters or less) (e.g., "unshined shoes" or "excellent performance on quiz")

**Failed to sign BrADSO contract by suspense**

Observer Comments: *Details concerning the observed behavior as well as observer's judgment on its impact on the situation or task/mission accomplishment. (Mandatory for marginal or unsatisfactory assessments)*
    CDT Doolen was notified on three occasions to sign his BrADSO contract, initially at the 11 DEC, and twice via email on X and X. 51/55 of his peers were able to meet suspense of 10 1600 JAN 13.

| PRINTED NAME: MAJ CHEATHAM DALLAS Q | DEPT/UNIT: MACC-Q | DATE: 1/14/2013 |
|---|---|---|

### PART III - UNIT ACTION DATA

TAC Officer signature: *Elizabeth Pater-Fry*        Date: 22 Jan 2013

| No further action required | Record of counseling required and attached | Refer to higher authority for disposition/disciplinary action | Refer to lower authority for disposition/disciplinary action |
|---|---|---|---|
| ☑ | ☐ | ☐ | ☐ |

Tactical Officer Comments: (Required when referring to higher level for action)

CO CDR signature: _____        Date: _____

| No further action required | Record of counseling required and attached | Refer to higher authority for disposition/disciplinary action | Refer to lower authority for disposition/disciplinary action |
|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ |

PLT LDR signature: _____        Date: _____

| No further action required | Record of counseling required and attached | Refer to higher authority for disposition/disciplinary action |
|---|---|---|
| ☐ | ☐ | ☐ |

### PART IV - SUMMARIZED PROCEEDINGS (CO CDR or TAC) (if needed)

| INFRACTION ARTICLE # 1 and 7 | ☒ Admonition/Reprimand ☒ Extra-Duty (hours) 7 Restriction (days) | Withdrawal of Privileges: 7 Suspension: 0 Demerits: 5 | Accept SUM ART 10 (Waive 24 hour period) ☐ | Request Formal ART 10 ☐ |
|---|---|---|---|---|

Comments: (Specify offense or required when referring to a higher level for action)
Art 1 - failure to comply with instruction/order from MAJ Cheatham
Art 7 - Error in judgment

| PRINTED NAME Isiah Doolen | SIGNATURE Q m R | DEPT/UNIT B1 | DATE 1-22-13 |
|---|---|---|---|

000843

CADET OBSERVATION REPORT                                    Page 1 of 1

## CADET OBSERVATION REPORT
**For use of this form, see Annex A and D, USCC SOP; Proponent Agencies are LDB and R&D, USCC**

### PART I - ADMINISTRATIVE DATA

| a. Name of Cadet Observed: **DOOLEN ISIAH M** | b. Grad Yr: **2013** | c. Company/Regt: **B1** |
|---|---|---|

d. Task/Situation/Course: *(e.g., "inspection in ranks" or "Classroom Participation EV203")*
   **Lunch Formation**

e. Date Observed: **12/10/2012**

### PART II - OBSERVATION DATA

Cite **specific observed behavior** in a concise manner (100 characters or less) *(e.g., "unshined shoes" or "excellent performance on quiz")*

   **Failing to show up to Lunch formation**

Observer Comments: *Details concerning the observed behavior as well as observer's judgment on its impact on the situation or task/mission accomplishment. (Mandatory for marginal or unsatisfactory assessments)*
   **CDT Doolen failed to report for lunch formation and MSG Long's commemoration ceremony. Formation followed be lunch is every cadets place of duty and it is expected that every cadet be present. After the formation had completed, CDT Ko and I, his PL and PSG, went up to his room to figure out where he was. We found him sitting in his chair saying the reason he was unable to be at formation was because he had a briefing at 1250. This is not the first time CDT Doolen has been talked to about his non excused absence at lunch formation. Furthermore, this is a continue display of lack of discipline and care. I recommend more extreme measures be taken to handle this issue as counseling was unsuccessful.**

| PRINTED NAME: **CDT SHORT ZACHARY D** | DEPT/UNIT: **B1** | DATE: **12/10/2012** |
|---|---|---|

### PART III - UNIT ACTION DATA

TAC Officer signature: *Elizabeth S. Extra-Ferenzi*          Date: *13 Dec 2012*

| No further action required | Record of counseling required and attached | Refer to higher authority for disposition/disciplinary action | Refer to lower authority for disposition/disciplinary action |
|---|---|---|---|
| ☒ | ☒ | ☒ | ☒ |

Tactical Officer Comments: (Required when referring to higher level for action)

CO CDR signature: _____          Date: _____

| No further action required | Record of counseling required and attached | Refer to higher authority for disposition/disciplinary action | Refer to lower authority for disposition/disciplinary action |
|---|---|---|---|
| ☒ | ☒ | ☒ | ☒ |

PLT LDR signature: _____          Date: _____

| No further action required | Record of counseling required and attached | Refer to higher authority for disposition/disciplinary action |
|---|---|---|
| ☒ | ☒ | ☒ |

### PART IV - SUMMARIZED PROCEEDINGS (CO CDR or TAC) (if needed)

| INFRACTION ARTICLE # **1, 3, & 7** | *N/A* Admonition/Reprimand ☒ Extra-Duty (hours) ☒ Restriction (days) | Withdrawal of Privileges: ☒ Suspension: ☒ Demerits: **5** | Accept SUM ART 10 (Waive 24 hour period) ☒ | Request Formal ART 10 ☒ |
|---|---|---|---|---|

Comments: (Specify offense or required when referring to a higher level for action)
*Already Flagged: Loss of all privileges.*

| PRINTED NAME *Isiah Doolen* | SIGNATURE | DEPT/UNIT | DATE |
|---|---|---|---|

**000844**

USMA FORM 2-3; NOT for use in summarized proceedings

| RECORD OF FORMAL PROCEEDINGS UNDER ARTICLE 10, CADET DISCIPLINARY CODE |
|---|

Level of Proceeding(check one):    Company ☐    Battalion ■    Regimental ☐    Brigade ☐

*SEE NOTES ON REVERSE BEFORE COMPLETING FORM*

| a. Cadet Name (Last, First, MI) | b. Class | c. SSN | d. Unit | e. Corps Squad/DCA Club:   Yes   (No) |
|---|---|---|---|---|
| Doolen, Isiah M. | 2013 | NA | B-1 | Notification sent?   YES   NO **NA** |

**NOTIFICATION:**

I am considering whether you should be punished under Article 10, CDC, for the following misconduct: 1/

Article 7, CDC, Error in Judgment

Disrespect of a Senior Cadet Non-Commissioned Officer on the 15th of September (Saturday)

You have several rights under this Article 10 proceeding.  First I want you to understand I have not yet made a decision whether or not you will be punished.  I will not impose punishment unless I am convinced by a preponderance of the evidence that you committed the offense(s).  You may request a person to speak on your behalf.  You may present witnesses or other evidence to show why you shouldn't be punished at all (matters of defense) or why punishment should be very light (matters of extenuation and mitigation).  I will consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose.

2//MAX Punishment = 30 Demerits, 30 Hours Extra-Duty,30 Days Withdrawal of Privileges, 30 Days of Restriction, Reduction in Rank. Your hearing will proceed on _____ (date/time/location; at least 48 hours)  You have until then to prepare any matters for your defense.

| DATE: 17 SEP 12 | NAME, GRADE, AND ORGANIZATION OF COMMANDER (OR DESIGNATED REPRESENTATIVE) | SIGNATURE |
|---|---|---|
| TIME: 1513 | Ronsoni Long, MSG, USA, Tactical NCO, B-1 | *Ronsoni Long (signature)* |

**HEARING:**

3. Having been afforded the opportunity to prepare for this hearing, my decisions are as follows: (initial appropriate blocks, date, and sign)

a. A person to speak on my behalf: [*IMD*] is requested    [   ] is not requested

b. Matters in defense, mitigation, and/or extenuation:    [   ] Are not presented    [*IMD*] Will be presented in person    [   ] Are attached.

| DATE | NAME AND GRADE OF CADET | SIGNATURE |
|---|---|---|
| 17 SEP 12 | Isiah M. Doolen, CDT, 2013, B-1 | X _____ |

**IMPOSITION OF PUNISHMENT:**

4. In this hearing, all matters presented in defense, mitigation, and/or extenuation, having been considered, the following punishment is imposed: 4/
a.   Admonition/Reprimand   b.   30 Extra-Duty(hours)   c.  15  Restriction (Days)   d. Reduction in Rank to:  NA   (rank)   e. Other

f. Withdrawal of Privileges: (circle one) ALL   or   AS SPECIFIED: NA _____  for  15  days.

g.  Suspension (paragraph(s)):    C (15) ; to be automatically remitted if not vacated before  25 OCT  (date) 5/

5.  You are advised of your right to appeal to RTO within 3 calendar days.  An appeal made after that time may be rejected as untimely.  Punishment is effective immediately unless otherwise stated above.

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
| 25 SEP 12 | William Richardson, MAJ, AR, 1st BN TAC OFFICER | *(signature)* |

**APPEAL:**

6. (initial appropriate block, date, and sign)
a. [*Drll*] I do not appeal.   b. [   ] I appeal and do not submit additional matters. 6/   c. [   ] I appeal and submit additional matters. 6/

| DATE | NAME AND GRADE OF CADET | SIGNATURE |
|---|---|---|
| 25 SEP 12 | Isiah M. Doolen, CDT, 2013, B-1 | *(signature)* |

7. After consideration of all matters presented in appeal, the appeal is:
[   ] Denied    [   ] Granted as follows: 7/

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|
|  | John D. Cross, LTC, IN, Commander, 1st Regiment |  |

8. I have seen the action taken on my appeal.

| DATE | | SIGNATURE |
|---|---|---|

9.  ALLIED DOCUMENTS AND/OR COMMENTS. 8/ 9/

USMA Form 2-3 (Aug 99)   *Cadet was granted amnesty on 25 SEP 12 for walking tours only (see attached) (30 HOURS) document*



**DEPARTMENT OF THE ARMY**
**UNITED STATES MILITARY ACADEMY**
West Point, New York  10996

REPLY TO
ATTENTION OF

MADN-HIST                                                          20 February 2013

MEMORANDUM FOR RECORD

SUBJECT: Evaluation for Cadet Isiah Doolen, Company B-1, Class of 2013

1. **Performance:** CDT Doolen's performance in the classroom thus far has been adequate.  His grades place him slightly above the average in his section.

2. **Conduct:** CDT Doolen has conducted himself in accordance with USCC regulation and instructor policies in the classroom.

3. **Leadership:** CDT Doolen has contributed in a positive fashion in the classroom.

4. **Teamwork and Selflessness:** CDT Doolen participates as an active contributor while doing group work.

5. **Interpersonal Skills:** CDT Doolen seems to get along well with his classmates—I have seen nothing to suggest otherwise.

6. **Sense of Duty:** CDT Doolen generally shows up to class having done the work expected of him.

7. **Appearance:** CDT Doolen's appearance and bearing have been in accordance with USCC regulation and my expectations.

8. **Potential:** I have seen nothing to suggest that CDT Doolen would not serve with distinction in the Army and consequently would raise no objection to having him serve in my battalion.

9. The POC for this request is the undersigned at: (845) 938-4820 or josiah.grover@usma.edu.


JOSIAH T. GROVER
MAJ, FA-59
Department of History


**000846**



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

MADN-SOC                                                        20 February 2013

MEMORANDUM THRU

LTC Heidi Urban, Executive Officer, Department of Social Science
LTC Tania Chacho, Director, Comparative Politics Program

FOR Mrs. Katrina Stamp, Regulations and Discipline Assistant

SUBJECT: Evaluation of the Performance of Cadet Isiah Doolen, Company B-1

1. Performance: Cadet Doolen was enrolled last semester in my course, ss475, Democracy and Democratization. He received a "B" in the course and did not have any academic, respect, or disciplinary issues. Cadet Doolen is now enrolled in ss375, my course on Russia and its Neighbors. It is relatively early in the semester, so my assessment is incomplete. Cadet Doolen's major problem thus far in the class was his failure to submit a graded event on time without appropriate notification. He has since submitted the assignment. I have counseled him on this issue.

2. Conduct: Acceptable levels of performance in the classroom

3. Teamwork and Selflessness: Average levels of performance in the classroom

4. Interpersonal Skills: Average levels of performance in the classroom

5. Sense of Duty: Adequate

6. Appearance: Professional

7. Potential: CDT Doolen has significant potential which often remains latent. He must consistently apply himself to reach his full potential. For example, he must engage in substantive classroom discussions more frequently that is now the case.

2. POC for this memorandum is the undersigned, x2864

THOMAS SHERLOCK, PH.D.
Professor of Political Science

**000847**

DEPARTMENT OF THE ARMY
UNITED STATES MILITARY ACADEMY
WEST POINT, NEW YORK 10996

MADN-SOC                                                          22 February 2013

MEMORANDUM FOR RECORD

SUBJECT: Evaluation of Cadet Isiah Doolen, Company B-1, Class of 2013

1. **Performance:** Cadet Doolen is a cadet in the L1 section of my SS476 Conflict Analysis and
Resolution course. This course is structured as a seminar in which cadets are expected to
actively participate in the guided discussion. As of the 6-week grade point, Cadet Doolen's
performance in my class has been satisfactory but not remarkable. He engages in the
conversation when directly addressed and appears to actively follow the discussion, but very
rarely does he initiate ideas or questions. Cadet Doolen received a "D" on the analysis paper
which was assigned for Lesson 8 (section average was C+). The low grade was the result of a
lack of application of course material to the provided case, an indication that Cadet Doolen is not
as familiar with the course readings as he should be. I do not believe the low grade will be
reflective of future performance by Cadet Doolen. My personal assessment is the he will be able
to successfully complete this course.

2. **Conduct and Appearance:** Based upon my observation of Cadet Doolen during classes and
a recent academic trip, I find him to be a professional cadet who appropriately conducts himself
in academic settings and who maintains a professional appearance. I have not noted any
behaviors or indications of unprofessionalism.

3. **Leadership and Interpersonal Skills:** I recently assigned Cadet Doolen as the CIC for an
academic all-day trip to the UN that included two sections of my course plus a class section from
a different course. Prior to the trip, Cadet Doolen and I discussed his responsibilities for
maintaining accountability and handling ration money. His performance as CIC For this trip was
satisfactory but not remarkable. Cadet Doolen used section marchers to assure accountability at
each stop and he submitted required ration forms. However, he took a passive approach to
leading the trip, requiring me to approach him to get status or to initiate actions. Consequently
he came across more as a helpful member of the trip section that as its CIC. I would have been
more impressed had he regularly sought me out to let me know status or how he was handling
the problem with the missing ration slip (an administrative problem that he is still resolving).
Finally is did observe that he interacted with other members of the trip in an appropriate and
professional manner.

4. **Sense of Duty:** I have not observed any behaviors nor seen Cadet Doolen in any situations
that provide me with an assessment of his sense of duty, either positive or negative.
5. **Potential:** Based upon my limited experience in working with Cadet Doolen, I find him to be
an average cadet who has the potential for solid service as an officer in the Army. He has not
stood out in my assessments as being exemplary or as being significantly deficient in the

characteristics of an officer.  I would not have a problem with him serving as a lieutenant in my squadron or group but I would not be actively seeking him out to serve with me.

6.  If you have any further questions concerning Cadet Doolen's performance in my class, please contact me at either john.hagen@usma.edu or 845-938-4001.

//signed//

Lt Col John O. Hagen, PhD., USAF
Asst. Professor of International Relations

FROM TELEPHONE CONVERSATION WITH LT COL HAGEN 8MAR 1100:

IMPROVED PARTICIPATION IN CLASS SINCE 22FEB.

LT COL HAGEN FEELS CDT DOOLEN IS JADED A BIT DUE TO CDT DOOLEN'S EXPECTATIONS NOT BEING MET BY HIS USMA ARMY EXPERIENCE, BUT ~~FEELS HE~~ REITERATED POINTS IN PARA. #5 ABOVE.

MAJ CARIGNAN, TIMOTHY R.



DEPARTMENT OF THE ARMY
UNITED STATES MILITARY ACADEMY
West Point, New York  10996

REPLY TO
ATTENTION OF

Department of Physical Education                                    February 22, 2013

MEMORANDUM FOR RECORD

SUBJECT:  Evaluation for Cadet Isiah Doolen, Company B1, Class of 2013

1. **Performance**: CDT Doolen currently has a C in the course. He earned an F on his pop quiz and a C+ on his midterm exam. in the course.  He is currently 6% points below the course average.

2. **Conduct**: CDT Doolen has been well mannered and respectful in class this round. I also had Cadet Doolen last round. He was supposed to drop the course around lesson 6 for his illness and finally dropped the course on lesson 17 after two consecutive COR's for Failure to perform his duties.

3. **Leadership**: I have not evaluated CDT Doolen in this area.

4. **Teamwork and Selflessness**: CDT Doolen worked diligently with his peers and stayed on task when the class was given training time.

5. **Interpersonal Skills**: I was not able to observe much about CDT Doolen in this area other than he asks pertinent questions when appropriate.

6. **Sense of Duty**: CDT Doolen understood that his place of duty was in the classroom.  He reported to class as performed to standard while there.

7. **Appearance**: CDT Doolen's manner of appearance was in accordance with USMA standards.

8. **Potential**: CDT Doolen is simply another student in my class. He's neither stellar nor a problem. However, based on my experience with him last round and his failure to drop the class despite repeated emails to him and one to his TAC my observations of CDT Doolen lead me to believe that he may not follow instructions all that well.

Daniel Lorenzen, Instructor/Director of Combatives
Department of Physical Education

**000850**



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

REPLY TO
ATTENTION OF

MADN-SOC                                               22 February 2013

MEMORANDUM FOR RECORD

SUBJECT: Evaluation for Cadet Isiah Doolen, Company B-1, Class of 2013

1. Overall, Cadet Isiah Doolen has not demonstrated an impressive performance thus far in
SS486, the capstone course for his major (Comparative Politics). Academically, at the six week
grade point, he ranks last out of the 13 cadets currently in the class, and his performance as the
CIC during a recent class trip left room for improvement.

2. **Performance:** Over the last 15 lessons, Cadet Doolen has participated in class discussions on
three occasions. He is quiet, which makes it hard to know his grasp of the material. He stays
alert during the discussion, but is not a regular contributor to the seminar. On several occasions,
I have observed that he just has a pen and a blank piece of paper in class; he neglected to bring
the required readings, or any notes that he took previously. This limited his ability to participate,
and made me question whether he had done the preparatory work needed to engage in our
seminar discussion. His only graded event thus far in the course is a short (2-page) paper on his
desired country and topic, worth only 5% of his overall course grade. His submission did not
fulfill the requirements laid out in the syllabus and discussed during our class sessions, so he
earned a 33 out of 50 points (66%) on this assignment. He came to see me for AI on 22
February, and after our discussion, said he would resubmit the assignment to ensure that he was
on track for the 7 March paper submission.

2. **Conduct:** As mentioned above, Cadet Doolen is quiet in class. There have been no issues
with his in-class conduct, although I have spoken with him about his need to participate more
during class. He has assured me that he will do so in the future, and I look forward to this.
Consistent, informed seminar participation constitutes 20% of his grade, and thus far, his three
comments have not earned many points.

3. **Leadership:** Cadet Doolen was the CIC for two classes during a daylong academic trip to
the United Nations that occurred on 13 February 2013. In three separate lessons prior to the trip,
I offered him the opportunity to address the class in order to provide administrative information
about the trip, but he said he had nothing to discuss. He did email the class the day's itinerary,
which he received from Lt Col John Hagan, the SS476 instructor on the trip. In class, I
discussed the day's events, including the CGR meeting time. Lt Col Hagan also met with Cadet
Doolen the day prior to the trip, to go over all of the details. At about 0600 on the morning of
the trip, I received a text from Cadet Doolen asking me what time to meet at CGR. Coming
from the CIC, this surprised and dismayed me; clearly, he had not remembered or copied down
the information from me or Lt Col Hagan. When asked, Cadet Doolen performed headcounts to

provide us with accountability. Cadet Doolen did not have the rations money available to hand out on 13 Feb; he said that there was a mix-up at the disbursement point, and he is working to rectify this. As of 19 February, he did not have a rations roster available for cadet signatures, but promised to bring it to our next class on Thursday, 21 February. All in all, while there was nothing egregious about his performance as CIC that affected the trip, there was certainly opportunity for improvement.

4. **Teamwork and Selflessness:** In class, there have been a few opportunities for group work, and Cadet Doolen's performance has been unremarkable.

5. **Interpersonal Skills:** From my observations, Cadet Doolen has no issues interacting with his classmates. His dealings with me have been professional; I have no issues with his attitude or interactions.

6. **Sense of Duty:** Based on his class performance thus far, CDT Doolen could improve in this area. He has not provided consistent evidence of class preparation, and needs to work on taking initiative when placed in a leadership role.

7. **Appearance:** Cadet Doolen has always been in the correct uniform, and I have not noticed any negative issues with his appearance.

8. **Potential:** Unfortunately, at this time, Cadet Doolen has not shown me evidence of potential for service as an exemplary officer. My observations of both his academics and leadership performance as a trip CIC do not offer grounds for many positive comments. Based on this, I would hesitate to see him as a lieutenant in my battalion. To be fair, I have only had the opportunity to observe him for six weeks, and he certainly has the time to develop further as the semester progresses. But, based strictly on what he has shown thus far, I do harbor doubts about his potential for future distinguished service.

TANIA M. CHACHO, Ph.D.
LTC, MI/FA47
Academy Professor
Director of the Comparative Politics Program

**000852**

# REPORT OF PROCEEDINGS BY INVESTIGATING OFFICER/BOARD OF OFFICERS

For use of this form, see AR 15-6; the proponent agency is OTJAG.

*IF MORE SPACE IS REQUIRED IN FILLING OUT ANY PORTION OF THIS FORM, ATTACH ADDITIONAL SHEETS*

## SECTION I - APPOINTMENT

Appointed by  COL Charles A. Stafford

(Appointing authority)

on  24 June 2013  (Attach inclosure 1: Letter of appointment or summary of oral appointment data.) (See para 3-15, AR 15-6.)

(Date)

## SECTION II - SESSIONS

The  (investigation) (board)  commenced at  BLDG 606 West Point, NY          at          1300

(Place)          (Time)

on  27 June 2013  (If a formal board met for more than one session, check here ☐ . Indicate in an inclosure the time each session began and

(Date)

ended, the place, persons present and absent, and explanation of absences, if any.)  The following persons (members, respondents, counsel) were

present:  (After each name, indicate capacity, e.g., President, Recorder, Member, Legal Advisor.)

MAJ Brian Miller (Investigating Officer)
CPT Michael Sandberg (Legal Advisor)

The following persons (members, respondents, counsel) were absent:  (Include brief explanation of each absence.) (See paras 5-2 and 5-8a, AR 15-6.)

The  (investigating officer) (board)  finished gathering/hearing evidence at          1600          on          8 July 2013

(Time)          (Date)

and completed findings and recommendations at          1700          on          8 July 2013

(Time)          (Date)

## SECTION III - CHECKLIST FOR PROCEEDINGS

| A. COMPLETE IN ALL CASES | YES | NO1/ | NA2/ |
|---|---|---|---|
| 1  Inclosures  (para 3-15, AR 15-6) | | | |
| Are the following inclosed and numbered consecutively with Roman numerals:  (Attached in order listed) | | | |
| a.  The letter of appointment or a summary of oral appointment data? | ☑ | ☐ | |
| b.  Copy of notice to respondent, if any? (See item 9, below) | ☑ | ☐ | ☐ |
| c.  Other correspondence with respondent or counsel, if any? | ☐ | ☑ | ☐ |
| d.  All other written communications to or from the appointing authority? | ☐ | ☑ | ☐ |
| e.  Privacy Act Statements (Certificate, if statement provided orally)? | ☐ | ☐ | ☑ |
| f.  Explanation by the investigating officer or board of any unusual delays, difficulties, irregularities, or other problems encountered  (e.g., absence of material witnesses)? | ☐ | ☐ | ☑ |
| g.  Information as to sessions of a formal board not included on page 1 of this report? | ☐ | ☐ | ☑ |
| h.  Any other significant papers (other than evidence)  relating to administrative aspects of the investigation or board? | ☑ | ☐ | ☐ |

FOOTNOTES:  1/  Explain all negative answers on an attached sheet.
2/  Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

| 2 | Exhibits *(para 3-16, AR 15-6)* | YES | NO | NA |
|---|---|---|---|---|
| | a. Are all items offered *(whether or not received)* or considered as evidence individually numbered or lettered as exhibits and attached to this report? | ☑ | ☐ | ☐ |
| | b. Is an index of all exhibits offered to or considered by investigating officer or board attached before the first exhibit? | ☑ | ☐ | ☐ |
| | c. Has the testimony/statement of each witness been recorded verbatim or been reduced to written form and attached as an exhibit? | ☐ | ☐ | ☑ |
| | d. Are copies, descriptions, or depictions *(if substituted for real or documentary evidence)* properly authenticated and is the location of the original evidence indicated? | ☐ | ☐ | ☑ |
| | e. Are descriptions or diagrams included of locations visited by the investigating officer or board *(para 3-6b, AR 15-6)*? | ☐ | ☐ | ☑ |
| | f. Is each written stipulation attached as an exhibit and is each oral stipulation either reduced to writing and made an exhibit or recorded in a verbatim record? | ☐ | ☐ | ☑ |
| | g. If official notice of any matter was taken over the objection of a respondent or counsel, is a statement of the matter of which official notice was taken attached as an exhibit *(para 3-16d, AR 15-6)*? | ☐ | ☐ | ☑ |
| 3 | Was a quorum present when the board voted on findings and recommendations *(paras 4-1 and 5-2b, AR 15-6)*? | ☐ | ☐ | ☑ |
| **B. COMPLETE ONLY FOR FORMAL BOARD PROCEEDINGS** *(Chapter 5, AR 15-6)* | | | | |
| 4 | At the initial session, did the recorder read, or determine that all participants had read, the letter of appointment *(para 5-3b, AR 15-6)*? | ☐ | ☐ | ☐ |
| 5 | Was a quorum present at every session of the board *(para 5-2b, AR 15-6)*? | ☐ | ☐ | ☐ |
| 6 | Was each absence of any member properly excused *(para 5-2a, AR 15-6)*? | ☐ | ☐ | ☐ |
| 7 | Were members, witnesses, reporter, and interpreter sworn, if required *(para 3-1, AR 15-6)*? | ☐ | ☐ | ☐ |
| 8 | If any members who voted on findings or recommendations were not present when the board received some evidence, does the inclosure describe how they familiarized themselves with that evidence *(para 5-2d, AR 15-6)*? | ☐ | ☐ | ☐ |
| **C. COMPLETE ONLY IF RESPONDENT WAS DESIGNATED** *(Section II, Chapter 5, AR 15-6)* | | | | |
| 9 | Notice to respondents *(para 5-5, AR 15-6)*: | | | |
| | a. Is the method and date of delivery to the respondent indicated on each letter of notification? | ☐ | ☐ | ☐ |
| | b. Was the date of delivery at least five working days prior to the first session of the board? | ☐ | ☐ | ☐ |
| | c. Does each letter of notification indicate — | | | |
| | (1) the date, hour, and place of the first session of the board concerning that respondent? | ☐ | ☐ | ☐ |
| | (2) the matter to be investigated, including specific allegations against the respondent, if any? | ☐ | ☐ | ☐ |
| | (3) the respondent's rights with regard to counsel? | ☐ | ☐ | ☐ |
| | (4) the name and address of each witness expected to be called by the recorder? | ☐ | ☐ | ☐ |
| | (5) the respondent's rights to be present, present evidence, and call witnesses? | ☐ | ☐ | ☐ |
| | d. Was the respondent provided a copy of all unclassified documents in the case file? | ☐ | ☐ | ☐ |
| | e. If there were relevant classified materials, were the respondent and his counsel given access and an opportunity to examine them? | ☐ | ☐ | ☐ |
| 10 | If any respondent was designated after the proceedings began *(or otherwise was absent during part of the proceedings)*: | | | |
| | a. Was he properly notified *(para 5-5, AR 15-6)*? | ☐ | ☐ | ☐ |
| | b. Was record of proceedings and evidence received in his absence made available for examination by him and his counsel *(para 5-4c, AR 15-6)*? | ☐ | ☐ | ☐ |
| 11 | Counsel *(para 5-6, AR 15-6)*: | | | |
| | a. Was each respondent represented by counsel? | ☐ | ☐ | |
| | Name and business address of counsel: | | | |
| | *(If counsel is a lawyer, check here ☐ )* | | | |
| | b. Was respondent's counsel present at all open sessions of the board relating to that respondent? | ☐ | ☐ | ☐ |
| | c. If military counsel was requested but not made available, is a copy *(or, if oral, a summary)* of the request and the action taken on it included in the report *(para 5-6b, AR 15-6)*? | ☐ | ☐ | ☐ |
| 12 | If the respondent challenged the legal advisor or any voting member for lack of impartiality *(para 5-7, AR 15-6)*: | | | |
| | a. Was the challenge properly denied and by the appropriate officer? | ☐ | ☐ | ☐ |
| | b. Did each member successfully challenged cease to participate in the proceedings? | ☐ | ☐ | ☐ |
| 13 | Was the respondent given an opportunity to *(para 5-8a, AR 15-6)*: | | | |
| | a. Be present with his counsel at all open sessions of the board which deal with any matter which concerns that respondent? | ☐ | ☐ | |
| | b. Examine and object to the introduction of real and documentary evidence, including written statements? | ☐ | ☐ | |
| | c. Object to the testimony of witnesses and cross-examine witnesses other than his own? | ☐ | ☐ | |
| | d. Call witnesses and otherwise introduce evidence? | ☐ | ☐ | |
| | e. Testify as a witness? | ☐ | ☐ | |
| | f. Make or have his counsel make a final statement or argument *(para 5-9, AR 15-6)*? | ☐ | ☐ | ☐ |
| 14 | If requested, did the recorder assist the respondent in obtaining evidence in possession of the Government and in arranging for the presence of witnesses *(para 5-8b, AR 15-6)*? | ☐ | ☐ | ☐ |
| 15 | Are all of the respondent's requests and objections which were denied indicated in the report of proceedings or in an inclosure or exhibit to it *(para 5-11, AR 15-6)*? | ☐ | ☐ | ☐ |

FOOTNOTES: 1/ Explain all negative answers on an attached sheet.
2/ Use of the N/A column constitutes a positive representation that the circumstances described in the question did not occur in this investigation or board.

APD PE v1.30

**000854**

| SECTION IV - FINDINGS *(para 3-10, AR 15-6)* |
|---|

The *(investigating officer) (board)* , having carefully considered the evidence, finds:

(1)  Cadet Isiah Doolen signed a valid service agreement on 29 June 2009  putting him on notice that if he breached the service agreement, he may be required to reimburse the Government for the total cost of the education provided to him. (Exhibit 1 – Service Agreement).
(2)  Cadet Doolen has failed to fulfill his active duty obligation.
(3)  Cadet Doolen was separated for conduct by exceeding his six-month demerit-with-tour allowance. (Exhibit 2 – separation papers).
This separation action was a result of the cadet's repeat misconduct.
(4)  Cadet Doolen offically disputes the validity of the debt on the basis that his seperation from the academy was unlawful. Despite this claim, he made no apptempt to dispute the total value of the reimbursement or the fact that he was aware of his obligation to repay his debt should he be seperated from the Academy due to misconduct. (Exhibit 3 -- Congressional Inquiry & Memorandum for Article 138 complaint)
(4)  The United States spent $203,160 educating Cadet Doolen.  (Exhibit 4 – DRM memo).  This amount is rationally based as calculated by the Directorate of Resource Management.

| SECTION V - RECOMMENDATIONS *(para 3-11, AR 15-6)* |
|---|

In view of the above findings, the *(investigating officer) (board)*  recommends:

I recommend that recoupment of Cadet Doolen's cost of education while enrolled at the United States Military Academy proceed and that action be taken to collect $203,160 from him.

000855

**SECTION VI - AUTHENTICATION**   *(para 3-17, AR 15-6)*

THIS REPORT OF PROCEEDINGS IS COMPLETE AND ACCURATE. *(If any voting member or the recorder fails to sign here or in Section VII below, indicate the reason in the space where his signature should appear.)*

_____
*(Recorder)*

_____
*(Investigating Officer) (President)*

_____
*(Member)*

_____
*(Member)*

_____
*(Member)*

_____
*(Member)*

**SECTION VII - MINORITY REPORT**   *(para 3-13, AR 15-6)*

To the extent indicated in Inclosure _____ , the undersigned do(es) not concur in the findings and recommendations of the board. *(In the inclosure, identify by number each finding and/or recommendation in which the dissenting member(s) do(es) not concur. State the reasons for disagreement. Additional/substitute findings and/or recommendations may be included in the inclosure.)*

_____
*(Member)*

_____
*(Member)*

**SECTION VIII - ACTION BY APPOINTING AUTHORITY**   *(para 2-3, AR 15-6)*

The findings and recommendations of the (investigating officer) (board) are (approved) (disapproved) (approved with following exceptions/ substitutions). *(If the appointing authority returns the proceedings to the investigating officer or board for further proceedings or corrective action, attach that correspondence (or a summary, if oral) as a numbered inclosure.)*

13 NOV 2013

_____
ROBERT L. CASLEN, JR.
Lieutenant General, US Army
Superintendent

*Page 4 of 4 pages, DA Form 1574, Mar 1983*

APD PE v1.30

000856



646 SWIFT ROAD
WEST POINT, NY 10996-1905

REPLY TO
ATTENTION OF

JUN 2 4 2013

MAJA-MJ

MEMORANDUM FOR MAJ Brian Miller, Department of Social Sciences, USMA,
West Point, New York

SUBJECT: Appointment of Investigating Officer UP AR 15-6 and 10 USC § 2005

1. You are appointed as an Investigating Officer (IO) to conduct an informal investigation to
determine the amount and validity of former Cadet Isiah Doolen's alleged debt to the United
States Government.

2. An attorney from the Administrative Law Division (x8570) will be appointed to provide you
with legal advice. The Military Justice Division will provide you with administrative support.

3. You will conduct the investigation in accordance with the procedures in AR 15-6 and
pursuant to 10 USC § 2005. You will have 30 calendar days to conclude the investigation. Any
request for a delay or extension must be approved by the undersigned.

4. Your investigation will result in appropriate findings on the following questions:

   a. Whether the Cadet was on notice concerning the military service obligation and the
financial recoupment requirement if the Cadet failed to fulfill that military service obligation;

   b. Whether the Cadet, in fact, failed to fulfill the military service obligation;

   c. Whether the Cadet's separation from USMA and subsequent inability to complete the
period of military service specified in the Agreement to Serve was the result of misconduct, a
volitional act or omission, or due to no fault of the Cadet (e.g. medical condition); and

   d. Whether the amount of financial recoupment (the cost of education) is rationally based.

5. Based on your findings, you will recommend whether the Cadet should be required to
reimburse the Government for the cost of his education.

6. This duty has priority over all other duties. POC for this memorandum is CPT Daniel
Sperling (Chief, Military Justice) at x6381.

FOR THE SUPERINTENDENT:

CHARLES A. STAFFORD
COL, IN
Chief of Staff

000857

# UNITED STATES MILITARY ACADEMY
## WEST POINT, NEW YORK

### I. Oath of Allegiance

I, ISIAH MATTHEW DOOLEN, [redacted] 7694 do solemnly swear that I will support the Constitution of the United States, and bear true allegiance to the National Government; that I will maintain and defend the sovereignty of the United States, paramount to any and all allegiance, sovereignty, or fealty I may owe to any State or Country whatsoever; and that I will at all times obey the legal orders of my superior officers, and the Uniform Code of Military Justice.

### II. Agreement to Serve

I, having been appointed a cadet of the United States Military Academy, do hereby agree, with the consent of my parents or guardian if I am a minor:

a. To complete the course of instruction at the United States Military Academy;

b. If tendered an appointment as a commissioned officer in one of the armed services upon graduation from the United States Military Academy, to accept such appointment and to serve under such appointment on active duty for at least five consecutive years immediately after such appointment; if my initial appointment hereunder is in a Reserve Component, to accept a commission in a Regular Component if subsequently tendered during the five consecutive years immediately after my initial appointment, and to serve on active duty for the remainder of such period under such appointment.

c. If I am permitted to resign my commission in a Regular Component of one of the Armed Services prior to the eighth anniversary of my graduation, to accept an appointment as a commissioned officer in a Reserve Component of one of the Armed Services and remain therein until such eighth anniversary.

d. To serve a total of eight (8) years from graduation from the United States Military Academy. Any part of that service not completed on active duty must be served in a Reserve Component (not on active duty), unless I am discharged from the Reserve Component by proper military authority.

e. That if I fail to complete the course of instruction of the United States Military Academy, breach my service agreement as defined in paragraph 1.g.(4), Statement of Policies on the next page, or decline to accept an appointment as a commissioned officer, I will serve on active duty as specified in paragraphs 1.b. through 1.f., which are contained in the Statement of Policies on the next page;

f. That if I voluntarily fail, or because of misconduct fail, to complete the period of active duty specified in paragraphs II.b., c., d. or e. above, I will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided me as the unserved portion of active duty bears to the total period of active duty I have agreed to serve;

g. If I am obligated to reimburse the United States for the cost of my advanced education, any subsequent enlistment in an Armed Service will not relieve me of this debt.

h. Further, that if I am separated from the United States Military Academy for breach of this service agreement, as defined in paragraph 1.g. (4), Statement of Policies on the next page, and the Army decides that I should not be ordered to active duty because such service would not be in the best interest of the Army, I shall be considered to have either voluntarily or because of misconduct failed to complete the period of active duty and may be required to reimburse the United States as described above;

i.   For the purpose of this paragraph:

(1) The term "voluntarily fail" includes, but is not limited to, failure to complete the period of active duty because of conscientious objection, because of resignation from the United States Military Academy while a cadet, or marriage while a cadet.

(2) The term "because of misconduct" includes, but is not limited to, termination by the United States Army of my service because of homosexual conduct, criminal conduct, conduct violating the Cadet Honor Code, conduct deficiency under the Cadet Disciplinary System, and conduct violating regulations for the discipline of the Corps of Cadets;

(3) The term "course of instruction" is synonymous with the term "educational requirements" as the term is used in 10 USC 2005.

### III. Marital Status

I am unmarried, do not presently have custody of a child, do not have a legal obligation of support from a prior marriage, and have no legal obligation to support a child or a former spouse. Furthermore, I understand that a cadet who marries, has custody of a child, incurs a legal obligation of support from a prior marriage, or incurs a legal obligation to support a child or former spouse while a United States Military Academy cadet will be separated from the United States Military Academy. Divorce, annulment, or other dissolution of a cadet's marriage does not affect or preclude separation under this provision.

My signature constitutes the taking of the Oath of Allegiance, execution of the agreement to serve, my affirmation as to my marital status, the absence of child custody or a court-ordered child support obligation and my acknowledgment that I have read, understand, and agree to abide by the statement of policies on the next page. For all male cadets, signing this form also constitutes registration with the Selective Service System in accordance with the Military Selective Service Act. Incident thereto the Department of Defense may transmit my name, permanent address, Social Security Number, and birth date to the Selective Service System for recording as evidence of the registration.

_____ (sign your full name as it appears in paragraph I above)

*Sworn to and subscribed before me at West Point, New York, this 29ᵗʰ day of June, two thousand and nine.*

_____

AGNES JORDAN

CPT, AA

USMA Form 6-50 (Previous editions are obsolete) 12 July 2007

**000858**

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NUMBER |
|---|---|---|
| DOOLEN ISIAH MATTHEW | ARMY-USMA-CADET | Redacted PII |

| 4a. GRADE, RATE OR RANK | 4b. PAY GRADE | 5. DATE OF BIRTH (YYYYMMDD) | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) |
|---|---|---|---|
| CDT | E-1 | Redaction PII | 20121102 |

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| FT MONMOUTH, NJ 07703-5611 | 3237 S SUNDANCE LOOP, ROSWELL, NM 88201-9175 |

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | b. STATION WHERE SEPARATED |
|---|---|
| USMA PREP SCHOOL DET - MA | USMA West Point, NY 10996-1692 |

| 9. COMMAND TO WHICH TRANSFERRED | 10. SGLI COVERAGE | NONE |
|---|---|---|
| USAR CNTLGP (REINF), USAHRC, 1600 Spearhead Division Ave, FT Knox, KY 40122 | AMOUNT: $50000 | |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| NONE/NOTHING FOLLOWS | a. DATE ENTERED AD THIS PERIOD | 2008 | 07 | 14 |
| | b. SEPARATION DATE THIS PERIOD | 2010 | 10 | 19 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0002 | 03 | 06 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0000 | 00 | 00 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0007 | 00 | 00 |
| | f. FOREIGN SERVICE | 0000 | 00 | 00 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 0000 | 00 | 00 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2008 | 07 | 14 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) |
|---|---|
| NATIONAL DEFENSE SERVICE MEDAL//GLOBAL WAR ON TERRORISM SERVICE MEDAL//NOTHING FOLLOWS | NONE/NOTHING FOLLOWS |

| | | YES | NO |
|---|---|---|---|
| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | | X | |
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | | | X |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: _____) | | | X |

| 16. DAYS ACCRUED LEAVE PAID | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO |
|---|---|---|---|
| | | | X |

18. REMARKS

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) | b. NEAREST RELATIVE (Name and address - include ZIP Code) |
|---|---|
| UNITED STATES MILITARY ACADEMY WEST | Redaction PII |
| Redaction PII | |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality) | OFFICE OF VETERANS AFFAIRS | YES | NO |
|---|---|---|---|
| a. MEMBER REQUESTS COPY BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON DC) | | X | |

| 21a. MEMBER SIGNATURE | b. DATE (YYYYMMDD) | 22a. OFFICIAL AUTHORIZED TO SIGN | b. DATE (YYYYMMDD) |
|---|---|---|---|
| (Member not available to sign) | 20101019 | | 20101019 |

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| RELEASE FROM ACTIVE DUTY | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AR 210-26, SECTION II, PARA 6-31, 30 JUL 2009 | JFV | RE-3 |

28. NARRATIVE REASON FOR SEPARATION
SERVICE ACADEMY

29. DATES OF TIME LOST DURING THIS PERIOD
NONE

30. MEMBER REQUESTS COPY 4

DD FORM 214, AUG 2009          PREVIOUS EDITION IS OBSOLETE.          SERVICE - 7

000859

DEPARTMENT OF THE ARMY
Headquarters, United States Military Academy
West Point, New York 10996-1926

ORDERS: 28-13                                          28 January 2010

DOOLEN, ISIAH MATTHEW, ▒Redacted PII▒7694, PV2 USMA Preparatory School Student
Detachment (W1FB5A) Fort Monmouth, NJ 07703-5611

You are relieved from active duty, not by reason of physical disability, and assigned as indicated
on date immediately following relief from active duty. Any temporary appointments held are
terminated on your effective date of relief from active duty.

Effective date of relief from active duty:  **28 June 2009**
Assigned to:  USAR Control Group (REINF), USAHRC, 1 Reserve Way, St. Louis,
MO 63132-5200
Terminal Date of Reserve Obligation: Ends on 02 NOVEMBER 2014
Additional instructions:  **SOLDIER CURRENTLY SERVING AS A CADET,
                           UNITED STATES MILITARY ACADEMY**

FOR ARMY USE
HOR:  ▒Redaction PII▒
Place EAD or OAD:  FORT MONMOUTH, NJ
MDC: NZB10
Comp:  USAR
Format:  523

FOR THE SUPERINTENDENT:

DIANE S. VONASEK
Adjutant, USCC

DISTRIBUTION:
PV2 DOOLEN, ISIAH MATTHEW (5)
IMNE-MIL-HRM(2)
DMPO, USMA (1)
Cadet Personnel Office, S1 USCC (1)
Cadet Health Clinic (Ms McGuinness) (1)
Commander, AHRC, ATTN : AHRC-OPD-C,
   200 Stovall Street, Alexandria VA 22332-0413 (1)
Director, SRDC, ATTN : AHRC-EFS
   8899 East 56th Street, Indianapolis IN 46249-5301 (1)



OFFICE OF THE SUPERINTENDENT
UNITED STATES MILITARY ACADEMY
WEST POINT, NEW YORK  10996-5000

MAJA-MJ

*13 May 2013*

MEMORANDUM FOR Headquarters, Department of the Army, G-1 (ATTN: DAPE-MPO-AP), Washington, DC  20301-0300

SUBJECT:  Separation of Cadet Isiah Doolen, Company B-1, Class of 2013

1.  The record of proceedings of the Conduct Investigation (CI) and allied documents in the case of Cadet Isiah Doolen, Company B-1, Class of 2013, are forwarded pursuant to AR 210-26.

2.  I have carefully reviewed the record of proceedings and allied documents in this case, and I have approved the finding that Cadet Doolen is deficient in conduct for exceeding his six-month demerit-with-tour allowance.

3.  Based upon my review of the entire case file, I recommend that Cadet Doolen be separated from the United States Military Academy and discharged from the United States Army with an Honorable Discharge certificate in accordance with AR 612-205.  A call to active duty would not be appropriate in this case.

4.  In accordance with AR 210-26, I request that you direct an AR 15-6 investigation to determine if Cadet Doolen has breached his service agreement and whether he should be required to reimburse his educational costs.  Depending on the results of that investigation, I will recommend whether recoupment should be initiated.

5.  Cadet Doolen entered the Academy from civilian status.  He was in the Army reserves from 2008 to 2009.  His service documents are at TAB 1.  I have suspended Cadet Doolen from the Academy pending the final decision in his case.  Pursuant to Title 10, Section 702, United States Code, and AR 612-205, Cadet Doolen's pay and allowances will be stopped upon his departure from West Point.  Cadet Doolen's status will then be:  authorized leave of absence without pay and allowances pending separation.

Encls
as

DAVID H. HUNTOON, JR.
Lieutenant General, US Army
Superintendent

## ACTION
### Cadet Isiah Doolen, Company B-1, Class of 2013

The following actions are taken with respect to the findings of the Investigating Officer in the Conduct Investigation of Cadet Isiah Doolen, Company B-1, Class of 2013:

   a.  The finding that Cadet Doolen is deficient in conduct for exceeding his six-month demerit-with-tour allowance, is approved.

   b.  The complete case file will be forwarded to Headquarters, Department of the Army, with a recommendation that Cadet Doolen be separated from the United States Military Academy and discharged from the United States Army with an Honorable Discharge certificate.

   c.  A call to active duty would not be appropriate.  Therefore, I will additionally recommend that Headquarters, Department of the Army, direct that an AR 15-6 investigation be conducted to determine if Cadet Doolen has breached his service agreement and whether he should be required to reimburse his educational costs.

   d.  Cadet Doolen is immediately suspended from the United States Military Academy until final action on his case is taken by Headquarters, Department of the Army.

   e.  In accordance with Title 10, Section 702, United States Code, and AR 612-205, Cadet Doolen's pay and allowances will be stopped upon his departure from West Point.  Cadet Doolen's status will then be:  authorized leave of absence without pay and allowances pending separation.

13 MAY 2013
DATE

DAVID H. HUNTOON, JR.
Lieutenant General, US Army
Superintendent

MEMORANDUM FOR MAJ BRIAN MILLER, 607 Cullum Rd, United States Military
Academy, West Point, NY  10996

SUBJECT: Investigation Pursuant to AR 15-6

1. I, _Isiah Dooler_, hereby acknowledge receipt of the notification of the
investigation pursuant to AR 15-6.  I understand that the purpose of the investigation is to
determine the validity of the debt that the United States Government claims that I owe as a result
of my education at the United States Military Academy.

2. Check one of the following:

(a) _____   I do not dispute the validity of this debt.

(b) _____   I do dispute the validity of this debt, but do not desire to submit statements,
testimony, or evidence, either physical or documentary.

(c) _X___   I do dispute the validity of this debt, and do desire to submit statements, testimony, or
evidence, either physical or documentary, which is enclosed.  I have read the Investigating
Officer's letter, and understand my rights under the Privacy Act.

_____
Signature

_7 – 1 – 13_____
Date

**Please return this completed, signed memorandum within ten days of receipt to the
following address:**

**607 Cullum Rd
Lincoln Hall, Social Science Department
West Point, NY 10996**

CDT Isiah Doolen 1

### Matters for Congressional Inquiry

The value of everything that I learned from day 1 as a New Cadet was diminished by the events that have occurred over the course of the last six months. The words of Worth are disregarded by the people who are supposed to have been my leaders and mentors, and at the same time, so is the Cadet Honor Code: "But an officer on duty knows no one – to be partial is to dishonor both himself and the object of his ill-advised favor. What will be thought of him who exacts of his friends that which disgraces him? Look at him who winks at and overlooks offenses in one, which he causes to be punished in another, and contrast him with the inflexible solider who does his duty faithfully, notwithstanding it occasionally wars with his private feelings. The conduct of one will be venerated and emulated, the other detested as a satire upon soldiership and honor." After reading this, I can only reflect on the actions of my chain of command, those actions that I can only describe as "a satire upon soldiership and honor." I fully recognize my shortcomings, and those shortcomings will be outlined in their entirety. Thus, the goal of this presentation is to outline in its complete and entire nature, the course of events that occurred over the six month period leading to my separation, to outline what I believe to be a continuous pattern of unethical, immoral, and unlawful behavior that requires a course of redress.

Firstly, I will outline the events that occurred on March 8th, 2013. That was the same day that Spring Break had started for the Corps of Cadets. Later on in the evening multiple events transpired that lead to the allegation of me not being in my room. While the significant issue here seems to be that I was not in my room, what I believe to be an even larger element, in regards to this issue, is the fact that my TAC team's unethical and deceptive behavior ignited the TAPs investigation. Please see below, an excerpt from Mr. Eric Mayer's (attorney and graduate of USMA) written appeal to the BTO:

CDT Isiah Doolen 2

On 8 March 2013 I was assigned to keep watch over the 1st Battalion area during Plebe Parent Weekend. I held this post from about 1800 until after Taps at 2300. My duties were to keep an eye on the area, and make sure that Plebes were not doing anything crazy. Prior to my assuming duty myself and CPT Eaton-Ferenzi had discussed the outcome of a meeting with CDT Doolen and the RTO. We further discussed what restrictions we would put on Doolen during Spring Break, as he would be here for the duration. I decided that while I was on duty I would seek out Doolen and explain to him his restrictions, so there was no confusion. I initially sought him out at CGR around 2000 because I knew that he was supposed to be on shift with SFC Ickes. I also would sign for the Lee Barracks master key while I was there so that I could secure upperclass rooms while I was on shift. When I got to CGR I found out that Doolen had swapped shifts with another Cadet, I asked CGR if they knew where his temporary room was in Ike Barracks, and they gave me the number from their master list. I cannot remember the exact number right now- when I went to his temporary room, he was not there. I also attempted calling the phone number that I had for him, that was given to me by CDT Bandoindajoux. After this, I went back to Lee Barracks and began to secure upperclass rooms. I noticed that he was also not in his Lee Barracks room, and that his room was a mess, with his bed wide open, and items left all over. It seemed to me that he had not yet moved. After noticing this I went back about my duties with the Plebes. After completing all of my Taps checks, I returned to CGR around 2330 to turn the master key back into SFC Ickes. I then went to Doolen's room in Ike Barracks, and saw that he was not there. I called his cell number again, as well. There was no answer. I then returned to Lee Barracks and came back to his room again, to see if he had returned to his room yet, he because, as I said, it was a mess, insecure and did not look as though he had moved his things. Following this I went home for the night.

The next morning at about 1000 Doolen called me on my cell and said that he saw the note I left. I asked him where he was last night. He answered I was in my room, I asked which room, he answered his room in Ike Barracks. I told him I went by there twice, once around 2015 or so and once after Taps, at 2330. At this time there was a long pause, and then he told me he would call me back and hung up. He never called me back. ///END OF STATEMENT///

**Figure 1**

**SFC Rowley states that, upon a check of Doolen's room in Ike Barracks, he "saw that [Doolen] was not there." This is inaccurate. He could not have seen anything, as CDT Doolen had locked his barracks room door from the inside as part of his normal Taps SOP.**

Referring to what I had written previously, I stated that the people who are supposed to have been my leaders and mentors completely showed a lack of regard in dealing with this matter. Rather, they directed my accusations in regards to my TAC NCO's lie as a means to divert allegations of me not being in my room. However, my intent was to outline multiple points of contention regarding his lie as they related to the following: USCC regulations, the United States Code of Military Justice, and the Cadet Honor Code. Below you will see how my points of contention align his lie with every one of the aforementioned:

**USCC Regulations:**

**Chapter 3**

**000865**

CDT Isiah Doolen 3

**"Cadets should not be questioned about potential violations of this regulation for which there does not already exist a reasonable cause to indicate that a delinquency was committed. For instance, it would not be proper to ask a cadet whether he or she had been drinking alcohol merely because he or she was reported absent from inspection."**

Chapter 3 of the USCC regulations outlines that, in an attempt to block fishing expeditions and witch hunts, Cadets should not be questioned without there being reasonable cause. Yet, on the morning of March 9th, 2013, my TAC officer approached me and asked me where I was the night before, simply because I had failed to answer the door to my room. My response was, "I am not going to answer that." Clearly, I utilized my rights in regards to Article 32 of the UCMJ. Knowing this, my invocation of rights should not have been used to prove or infer guilt, and my desire to remain silent should have been honored and protected. I had chosen not to answer my TAC's question because I had felt like my TAC team had continuously shown a pattern of deceptive behavior, a pattern that clearly reflected their desire to do all and anything possible to ensure my separation from the Academy.

**UCMJ**

SFC. Kellen Rowley should be investigated on the grounds of violating the following UCMJ articles: 80, 107, 131. I would argue that SFC. Rowley seeing that I was not in my room is a factual impossibility given that the door to my room was locked as per the SOP, and that he did not secure the master key to my room. Additionally, given the fact that he could not open the door to my room, he knowingly made a false statement by saying that he "saw" that I was not present. Any reasonable person, if asked to read the sworn statement written by SFC. Rowley, would deduce from his statement that he physically saw that I was not there. SFC. Rowley wrote this statement knowing it to be false and my TAC Officer, CPT Elizabeth Eaton-Ferenzi, did nothing to investigate the matters after I had told her that his statement was false. She was also very complicit in this. Furthermore, in my meeting with the BTO, I had mentioned to him that my TAC NCO's statement was clearly an equivocation, at the very least.

CDT Isiah Doolen 4

**USCC Honor Code**

Civilian employees, TACs, and other Cadets must abide by the honor code. While Cadets are the only ones punished under the USCC honor system, is it unreasonable to ask that the leaders and mentors of the cadets abide by the same code? Furthermore, it should be especially expected of former graduates, now serving in the Brigade Tactical Department or any other officer position, to abide by the cadet honor code as well. SFC. Rowley, along with the chain of command up to the Brigade Tactical Officer (BTO) allowed a blatant lie/equivocation be reinforced and supported by taking punitive actions against me in order to camouflage the lie as truth. Upon speaking with the Regimental Tactical Officer at my regimental board, he never once referred to my TAC NCO, who was present in the room, to ask whether or not he had actually gone into my room. Instead he chose to humiliate me and give me the maximum punishment (80 hours, 35 demerits). Furthermore, he told me I was not only not fit to lead his soldiers, but I was not even fit to take out his garbage. He had me succumb to his insults, and, as I will emphasize again, gave me full maximum penalties for these trumped up charges. These charges were later dropped but only after I hired an attorney and appealed. The lie, however, was used in the chain of command's recommendation and unanimous concurrence to separate me with recoupment from West Point.

Chapter 1 of the Cadet Honor Code

**108. Regulations and Honor**

**1) Questioning. Individuals asking official questions incur the significant responsibility of ensuring their questions are proper. In determining propriety, a questioner must have evidence indicating that a breach of regulations has occurred and/or a reasonable cause to believe that the cadet being questioned was involved in the breach or has knowledge of the involvement of others in the breach of regulations.**

Where was the evidence, when first questioned by CPT. Eaton-Ferenzi, that I was not in my room? If there was a preponderance of evidence or reasonable suspicion that I was not in my room, then why did SFC. Rowley not

CDT Isiah Doolen 5

secure the master key to Ike Barracks and simply check my room. Instead, as mentioned previously, my

invocation of rights afforded to me under Article 32 of the UCMJ was used against me. Clearly going against

what General Dwight D. Eisenhower stated in 1946: "Under no circumstances should it [the honor code] ever

be used at the expense of the cadets in the detection of violations of regulations." While the case was ultimately

dropped by the BTO, I feel like this TAPs allegation had a detrimental impact on the overall outcome of my

conduct investigation. CPT. Eaton-Ferenzi's statement regarding her recommendation for my separation from

West Point was clearly impacted by this ordeal, which is something that was wrongly initiated in the first place.

(Please see Figure 2.)

SFC. Rowley's indictment of guilt under the Cadet Honor Code, if he were to fall under such a method of

adjudication, would be based on the following pretenses:

a. <u>Lying</u>. Cadets violate the Honor Code by lying if they deliberately deceive another person by stating an

untruth, or *by any direct form of communication*, to include the telling of a partial truth or the vague or

ambiguous use of information or language, with the intent to deceive or mislead.

(1) <u>Philosophy behind the Lying Clause.</u> Lying is given special emphasis at West Point because of its
impact in the Profession of Arms. Truth telling is paramount for basic requirements of accountability,
reporting, and assessment. Trustworthiness is paramount for earning the confidence of one's
subordinates and safeguarding classified information. Officers who lie risk the lives of American soldiers
and jeopardize the defense of our nation. Lying is not ignored in other professions; it is normally
considered to be socially reprehensible. The importance of truthfulness to the military profession justifies
giving lying special condemnation by including it in the Cadet Honor Code.

Based on the Philosophy behind the Lying Clause, "truth telling is paramount for basic requirements of
accountability, reporting, and assessment;" yet, it seems almost an impossibility that I could have been
accurately assessed at all over the course of the semester when acts of vagrancy in the forms of lies, vindication,
and manipulation were the course of redress in multiple instances.

(2) <u>A Cadet's Word.</u> A cadet's word is accepted without challenge until significant evidence exists to
prove otherwise. That a cadet's oral and written words are true, without qualification, is fundamental to
the Honor Code and Honor System and a great source of pride for cadets past and present.

(3) <u>Accuracy of Reports</u>. Whether oral or written, reports are official statements and must always be
complete and accurate. Cadets are individually responsible to ensure the correctness of a report both
before and after it is rendered. For example, cadets reporting at formation will report only "all present"

CDT Isiah Doolen 6

or report the names of cadets who are absent. Additionally, if a report is given and is later found to be incorrect, the cadet rendering the false report must make the error known as soon as possible.

When I spoke with the BTO at the appeal to my regimental board for the Taps allegation, one of the things that he asked me is whether or not I trusted people. I told him the truth and said no. Specifically, I told him that I did not trust my chain of command. It is incredibly hard to follow toxic leaders, and to me, my TAC team was toxic.

(4) Implications of the Signature. An individual's signature or initials affirm the veracity of the written information in a document. In this way, when cadets affix their signature or initials to a document they make an official statement that, to the best of their knowledge, the document is true and accurate; verified by the signer. There will be many instances when cadets will be required to sign certificates and other official documents in this way pursuant to their duties as guards, inspectors, or Cadets in Charge of Quarters. Placing your initials or signing your name on a document, such as a drill roll, when you are unsure that you have met the requirement for signing or initialing constitutes a possible violation. Additionally, cadets are never authorized to sign another person's name. If necessary, a cadet may sign his or her own name and write the word "for" to indicate a response for another person.

SFC Rowley affixed his signature to the statement that I was not in my room, therefore, making an official statement that constituted a violation because he acknowledged the statement was true to the best of his knowledge.

(6) Equivocation. To be equivocal is to use purposely vague, misleading, or ambiguous language. Equivocating usually occurs when a person tells a literal truth which (s)he knows will mislead another person, when a person tells a "half-truth," or when a person attempts to skirt the act of telling an untruth by making vague statements with the intent to mislead another person to believe an untruth. Equivocation is dishonorable and constitutes lying.

At the very least, SFC. Rowley's statement is an equivocation, which is also the same as lying.

d. Toleration. Cadets violate the Honor Code by tolerating if they fail to report an unresolved incident with honor implications to a proper authority within a reasonable length of time. "Proper authority" will usually be the company honor representative; however, unusual circumstances may arise when such an incident should also be reported to the company commander, a professor, or the company tactical officer. A "reasonable length of time" is the time it takes to approach the cadet suspected of the honor violation and clarify whether the incident was a misunderstanding or actually a possible violation of the Honor Code. A reasonable length of time is usually considered not to exceed 24 hours. Here, cadets should keep in mind that speedy resolution of the issue is in the best interest of all concerned.

How can the leadership at USMA, specifically those I have cited, allow any Cadet to continue to be punished under the honor system? Painfully, I look at some of my friends who are still at West Point, having been subjected to adjudication by the honor system. One in particular, CDT Chiazo Ezekannagha, who had to sit in the stands of Michie Stadium while his classmates graduated; he was even afforded the opportunity to get to salute his own classmates. Yet, while his violation of the honor code was not tolerated, lies are tolerated at the upper echelon (sacrosanct to say the least). However, this kind of action does not sway my desire to return back to West Point; in fact, it makes that desire even stronger.

**000869**

CDT Isiah Doolen 7



DEPARTMENT OF THE ARMY
UNITED STATES MILITARY ACADEMY
WEST POINT, NY 10996

MACC-O-1-B

01 April 2013

MEMORANDUM THRU

Regimental Tactical Officer, First Regiment, United States Corps of Cadets, West Point, New York 10996

Brigade Tactical Officer, United States Corps of Cadets, West Point, New York 10996

FOR Commandant of Cadets, United States Corps of Cadets, West Point, NY 10996

SUBJECT: Recommendation for Final Disposition on Conduct Investigation for Cadet Isiah M. Doolen, Company B, First Regiment, Class of 2013.

1. I recommend that Cadet Doolen be immediately separated from the United States Military Academy and discharged from the Army with recoupment. While I concur with many of the findings of Cadet Doolen's Conduct Investigation, I differ on the recommendations. This recommendation is based on my personal observations of his comprehensive performance over the Fall 2012 – Spring 2013 academic year as the B1 Company Tactical Officer.

2. Cadet Doolen's behavior is selfish, impulsive, and devoid of accountability and personal responsibility. He consistently demonstrates a lack of desire to follow basic instructions or take ownership of his actions. His reaction in each disciplinary situation has been one of apathy at a minimum, often blaming his immediate peers and supervisors for holding him accountable to accepted standards. His accusations are often interlaced with deceptive personal agendas and attacks rather than valid claims. This demonstrates an unacceptable level of maturity for the officer corps, especially since he is 24 years old and has already participated in approximately 8 years of officer development training at the New Mexico Military Institute, the United States Military Academy Preparatory School, and the United States Military Academy. He often waits until consequences escalate to a point that he personally intolerable to him before deciding to challenge or appeal. His individual desires often trump his judgment to follow the rules and regulations of the Academy. When coupled with his anger management issues, this equates to poor decision-making skills and impulsive behavior. Cadet Doolen has been given multiple opportunities to rehabilitate himself through developmental counseling, yet he remains unreceptive. The aforementioned issues have stunted Cadet Doolen's ability to learn, grow, and mature as a cadet and future officer. I firmly believe that Cadet Doolen lacks the fundamental makings of a professional and competent officer.

3. Cadet Doolen has committed more than one major error in judgment from November 2012 through February 2013 resulting in a Conduct Investigation. During this time frame his infractions, though seemingly not egregious in nature, have revealed much deeper character and leadership flaws. As a First Class Cadet, his pattern of selfish and immature behavior demonstrates that he is not prepared to be a commissioned officer. Allowing Cadet Doolen to receive a commission and lead Soldiers in combat would be a dereliction of duty that would surely endanger the lives of those he would be responsible for. As a former company commander, I would certainly not accept his behavior as a second lieutenant in my unit. If Cadet Doolen were to serve as a junior enlisted Soldier he would pose the same risks and contribute to a toxic environment within his unit. In an era of fiscal restraint coupled with the Army's desire to enact end-strength reduction while maintaining quality personnel, Cadet Doolen should be separated from the United States Military Academy and discharged from the Army with recoupment.

**Figure 2**

I would like to further point out that prior to this incident, my TAC officer and TAC NCO had stated to me that they would support me in my conduct investigation. However, circumstantial evidence regarding an exception to policy that I had submitted for Spring Break will show that not only did they approve my exception to policy, but that they even acknowledged an improvement. Why would they approve my exception to policy,

CDT Isiah Doolen 8

acknowledge an improvement, state that they would support me in my conduct investigation, and then 2 weeks

later change their minds? Simple answer, the regimental board that had gotten dropped, dramatically changed

their perspective. Please refer to my exception to policy (ETP) for Spring Break (something they approved):



## Investigating Officer and Whistleblower Reprisal

In this category I will address issues regarding my TAC officer's work as an investigating officer and the

reprisal that she showed after I had notified her that I would be submitting issues to the Office of the Inspector

General at West Point.

Firstly, I would like to address the issue of Whistleblowing Reprisal. According to a West Point IG analysis on

FY07 trends, the following information was cited in regards to whistleblowing and protected communication:

CDT Isiah Doolen 9



## UNCLASSIFIED

**A** ___Whistleblower Reprisal Litmus Test___



<u>Was there a protected communication (PC)?</u> Yes

<u>Was there adverse action or withheld favorable
    action after the PC?</u> Yes

<u>Was the chain of command aware of the PC?</u> Yes

<u>Was there an independent basis for the action?</u> No

# REPRISAL



**Figure 3**[1]

-----Original Message-----

From: Doolen, Isiah M CADET MIL USA USMA

Sent: Wednesday, March 20, 2013 11:42 PM

To: Eaton, Elizabeth S CPT MIL USA USMA

Cc: Carlson, Ashli N CADET MIL USA USMA; Steffy, Barton R CADET MIL USA USMA;

Crofford, Clifford D CADET MIL USA USMA;     Redaction PII

Subject: IG


Ma'am,


I wanted to let you know that I'm going to bring all of the conduct matters that you

have brought up against me to IG. I feel like the punishment you gave me in regards

to the supply maintenance tracker was a double dipping of demerits in which you

categorized all of the issues that I had prior to that in to one lump charge, but

then proceeded to punish me for those issues on separate occasions so that the

demerits would be multiplicative. You then had CDT Schubert write me a COR for

missing class because I went to talk to the RXO about Spring Break. I think the issue

with that is that you are wanting to make it seem as though it been a CDT generated

issue and that you were merely acting on a chain of command action and not an issue

---

[1] http://www.westpoint.edu/ig/SiteAssets/SitePages/Leaders%20Resources/Military%20Leader%20Class.ppt slide 26

**000872**

CDT Isiah Doolen 10

that you brought up on your own (what I believe to be a retaliatory measure for me
talking to the RXO about my perceptions of you). Much like my conduct, there is a
clear pattern with what is going on here, and that is that every time I have stubbed
my toe, you have been there watching to make sure that I am getting punished. To me,
this is becoming an issue of harassment; it's like walking on egg shells.


Very Respectfully,


Cadet Isiah Doolen

From my perspective, this protected communication to the IG, along with the TAPs allegation, changed her opinion regarding the recommendation for my conduct investigation. The fact that protected communication had any weight, which Figure 2 would suggest did, is reprisal according to Figure 3. Two weeks following the IG submission, and one week following the regimental board for the TAPs allegation, my company TAC officer and Regimental TAC officer had concurring sentiments in regards to my separation with recoupment.

Please see the below guidelines established by the IG:

1. **Timing and basis for the adverse action are key considering factors in a reprisal case.**

2. **Whether there is an independent basis for the action becomes the main considering factor if an adverse action takes place following a protected communication. The Whistleblower Reprisal Act does not prevent commanders from taking appropriate action for misconduct that has occurred after a Soldier has made a protected communication.**

3. **Another area to guard against is increasing the severity of punishment for misconduct that occurred prior to the protected communication, because of the protected communication. This happens more frequently than one might imagine. Make sure that whatever action you intend to take is consistent with the misconduct and your actions for similar misconduct by other members of the command.**

CDT Isiah Doolen 11

Instances like these would have supported a rehabilitative transfer from Company B1 to another cadet company and would have been in the best interests for both my TAC team and me. Given the number of situations that had occurred in the company, it seems almost a certainty that my TAC team would be unable to remain impartial, an astute observation made also by my attorney, Mr. Eric Mayer. Also, please note the multiple rebuttals submitted by my attorney where he asked for me to be sent to another company, yet those requests were ignored.

**Investigating Officer**

**-COMMANDERS: IF AN ALLEGATION SURFACES IN YOUR UNIT, YOU MUST AT LEAST INQUIRE INTO IT. YOU MUST GATHER THE FACTS AND TAKE APPROPRIATE ACTION BASED ON THE FACTS.**

**-Investigations are based completely on the facts. IO's must avoid personal opinion or speculation during the investigative process. IOs can be empathetic, without being sympathetic. Know the difference and remain objective. THE IO'S FUNCTION IS TO GATHER THE FACTS OBJECTIVELY AND WITHOUT BIAS OF ANY KIND. THE IO PRESENTS THE FACTS TO THE COMMANDER WHO IS RESPONSIBLE FOR DECIDING WHAT IS APPROPRIATE ACTION.[2]**

The Office of the Inspector General at West Point has given clear guidelines regarding the behavior and actions that should be taken by commanders should allegations arise in their unit. Based on the aforementioned allegations, and the fact that I had told my company and regimental TAC officers that my TAC NCO's statement was false, nobody took appropriate action. My investigation in regards to the TAPs allegation was clearly based on a lie. Does this not reflect a deceptive agenda? The only action that was taken in regards to the TAPs allegation was an instance of appeasement in which the regimental board I had received was dropped by the BTO. However, to me, that is not sufficient. My chain of command's willingness to support a lie in one

---

[2]

http://www.westpoint.edu/ig/SiteAssets/SitePages/Leaders%20Resources/Military%20Leader%20Class.ppthttp://www.westpoint.edu/ig/SiteAssets/SitePages/Leaders%20Resources/Military%20Leader%20Class.ppt slide 45

CDT Isiah Doolen 12

instance should reflect on a willingness to support a lie in multiple instances; it shows a vindictiveness and level of manipulation that had been ongoing throughout the semester, which is the reason I pointed out in my notification to my TAC officer that I would be turning her into the IG. I would like to cite specifically in Figure 2 the following:

**"His [CDT Doolen] reaction in each disciplinary situation has been one of apathy at a minimum, often blaming his immediate peers and supervisors for holding him accountable to accepted standards. His accusations are often interlaced with deceptive personal agendas and attacks rather than valid claims."**

I find it interesting, that my TAC officer would write the statement above when she blatantly allowed my TAC NCO to lie on a sworn statement without investigating it, even though after serving multiple years in the Army she should know the proper protocols for conducting investigations.[3] This lack of regard by the chain of command in questioning her and my TAC NCO in regards to these matters is disturbing, clearly reflecting partiality towards them (my TAC team), while allowing me to receive a harsher punishment than that of the men's Rugby team for their lewd emails.[4]

Furthermore, I argue that the following statement by my TAC officer best shows where she has used the following to attack my complaint to IG about her: **"His accusations are often interlaced with deceptive personal agendas and attacks rather than valid claims."** As you can see in CPT Eaton-Ferenzi's statement (Figure 2), she fails to cite specifically where my accusations have been **"interlaced with deceptive personal agendas and attacks rather than valid claims."** What is even more discerning is that my RTO agreed with her findings. The only negative personal encounter that I had with the RTO the whole semester was at my regimental board (TAPs allegation). Please refer to the following complaint that I had sent to the inspector general after the outcome of my regimental board. I also let CPT. Eaton-Ferenzi know verbally that this would be sent:

---

[3] http://www.linkedin.com/pub/elizabeth-eaton-ferenzi/56/780/3aa

[4] http://jezebel.com/butt-plugs-and-bitches-the-emails-west-point-doesnt-w-511519204

CDT Isiah Doolen 13

| he item is digitally signed and cannot be altered. (Go to do for you?) | | | | | |
| --- | --- | --- | --- | --- | --- |

Misleading intent to deceive on a sworn statement by a TAC NCO (E-7)

INFORMATION PERTAINING TO THIS REQUEST *(Background. Use additional sheets if necessary; list enclosures if applicable.)*

SFC. Rowley's Sworn Statement:

See Enclosure A.

SFC. Rowley's statement is not true in that he never opened my door at 2330 to check and see if I was in my room or not. He has admitted verbally, with witnesses to account for his statements, that the door was locked and that I did not answer the door, which does not account for whether or not I was in my room. USCC SOP requires cadets to lock their door after 2315. Furthermore, in regards to questioning, Chapter 3- Investigations and Disciplinary Hearing Procedures, "Cadets should not be questioned about potential violations of this regulation for, which there does not already exist reasonable cause to indicate that a delinquency was committed. For example, it would not be proper to ask a cadet whether he or she had been drinking alcohol merely because he or she was reported absent from taps inspection". According to the procedures and guidelines for USMA, my rights have been violated in regards to me being questioned about where I was for TAPs given that there was no prior evidence to suggest that I was not in my room. The fact that my door was locked for TAPs is a compliance with USCC SOP. No evidence indicates that I was not in my room, but there is ample evidence that suggests that I was in my room. As a cadet, I still have rights under UCMJ, and those rights indicate that I have the ability to not answer interrogatory questions (Article 31). Furthermore, I feel my UCMJ rights to keep quiet have been used against me to determine a matter of guilt in regards to the TAPs allegation. LTC Cross, 1st regiment RTO, made the following statement, to the effects of: "This is a fucking yes or no question, were you in your room for TAPs". After not saying anything for a while, he said to the effects of "I do not want you to have to lie, you can choose not to answer this, but if you do choose not to answer then I will assume the answer to be no and you will be found guilty". I still chose not to answer. Witnesses in the room will attest to LTC. Cross' assertions. Additionally, SFC. Rowley's statement has been used as "overwhelming" evidence to punish me for not being in my room (his statement is misleading and does not verify anything in regards to me being in my room or not).

I do ✓ I do not ☐ consent to release my personal information outside of IG channels (but within DoD official channels) in order to resolve the matters listed above. I understand that if I do not agree to release my personal information, my request for assistance may go unresolved.

This information is submitted for the basic purpose of requesting assistance, correcting injustices affecting the individual, or eliminating conditions considered detrimental to the efficiency or reputation of the Army. Those who knowingly and intentionally provide false statements on this form are subject to potential punitive and administrative action (UCMJ Art 107, 18 USC 1001).

| SIGNATURE DOOLEN.ISIAH.MATTHEW.Redaction PII | DATE *(YYYYMMDD)* 20130328 |
| --- | --- |

**MILSUM Report and Outline of Events**

Let me outline the events that lead to my conduct investigation and my military performance throughout my duration at West Point starting with my MILSUM Report. Let me also point out that this behavior was aberrational when compared to my prior years.

CDT Isiah Doolen 14

Page 1 of 1

## REGS & DISCIPLINE

Home | Software Change Request | Staff/Fac Portal | Log Off

## MILSUM Report

as of 5 Feb 13

| Name: DOOLIN, ISIAH M. | Class: 2013 | | Co/Regt: B1 | | Prior Co/Regt: B4 | Current: CS: | | |
| USMA ID: C*0038851 | RedCat: OTHER/UNKNOWN | | Gender: MALE | | Status: ACTIVE | | | |

### SUMMER TRAINING

| Acad Yr | Activity | Completed |
|---|---|---|
| 10 | CBTNC | |
| 11 | AA | |
| | CFTYR | |
| | AA | |
| 12 | CTLT | |
| 13 | CLDTF | |
| | AFCS | |
| | SSR | |

### MILITARY PROGRAM RECORD

| Term Period | Military Activity | Position | Rtr | Int Rtr | Sr Rtr | Tac Rtr | Lst Grd | Activity Weight | MPS Term | MPS Cum |
|---|---|---|---|---|---|---|---|---|---|---|
| 10-0 | MD100 | CBT MOS | | | | | B+ | 2.0 | 3.33 | 3.33 |
| 10-1 | MD101 | MOS | A. | A. | | A- | A+ | 2.5 | 3.67 | 3.50 |
| 10-2 | MD102 | MOS | D | D | | D | D | 2.5 | 2.50 | 2.82 |
| 10-2 | MS100 | | | | | | B | 7.5 | 2.50 | 2.82 |
| 11-0 | MD200 | CFT MOS | A | C | | B | B | 7.0 | 3.00 | 2.86 |
| 11-1 | MD201 | TM LDR | B. | B | B | B+ | R+ | 3.0 | 2.86 | 2.87 |
| 11-1 | MS200 | | | | | | R+ | 7.5 | 2.86 | 2.87 |
| 11-2 | MD202 | TM LDR | B | B | B- | B | D | 3.6 | 3.00 | 2.88 |
| 12-0 | MD300 | | | | | | P | 0.0 | 0.00 | 2.88 |
| 12-1 | MD301 | SQD LDR | B | B | B- | B | B | 7.5 | 3.00 | 2.90 |
| 12-2 | MD302 | CO STF N-4 | B | A | A- | C | B | 7.5 | 2.84 | 2.89 |
| 12-2 | MS300 | | | | | | B- | 7.5 | 2.84 | 2.89 |
| 13-0 | MD410 | SG REG AS3 | | | | | P | 0.0 | 2.33 | 2.77 |
| 13-0 | MD400 | SG/REG AS3 | | | | | C+ | 15.0 | 2.33 | 2.77 |
| 13-1 | MD401 | TNG OFF | B | B | A- | D | C | 10.0 | 2.00 | 2.64 |

### MAJOR AWARDS

| Offense Code | Offense Date | Demerits/ Tours |
|---|---|---|
| 1 | 17 Apr 10 | 35 /100 |
| 1 | 19 Oct 13 | 20 /20 |
| 1 | 15 Sep 12 | 50 /30 |
| 1 . | 14 Jan 13 | 20 /20 |
| 1 | 19 Jan 13 | 30 /30 |

### CONDUCT STATUS

| Hearing Type | Date | Action Taken | Ending Date |
|---|---|---|---|
| | | | |

### CONDUCT RECORD (Demerits /*Tours)

| AcadYr | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | | | | | | | | | | 35/100 | | |
| 11 | | | | | | | | | | | | |
| 12 | | | | 20/20 | | | | 10/10 | | 2/2 | | |
| 13 | | | 30/30 | | | 5/5 | 55/55 | | | | | |

### CPR PROFILE

| | ACOM-UH. | ACOM-LH. | CtoOrMass | BCOM-Rtn. | BCOM-NoRtn |
|---|---|---|---|---|---|
| All CPRs (written ON this cadet): | 8 | 16 | 10 | 4 | 2 |
| Chain of Command CPRs: | 5 | 8 | 6 | 0 | 0 |
| Peer & Subordinate CPRs: | 3 | 8 | 2 | 4 | 2 |
| Staff & Faculty CPRs: | 0 | 0 | 1 | 0 | 0 |
| Other CPRs: | 0 | 0 | 0 | 0 | 0 |

https://apps.usma.edu/usce/regs_disc/milsum-3.cfm?igncdt=%6291%63B%62F%63C8%5FC%24PZK%63E%60A...   2/5/2013

Figure 4 – As noted, Military Summary Report – Note my mil grades started declining once the new TAC Team took over.

CDT Isiah Doolen 15



Figure 5 - This is a caption of my PDRs, military performance and demerits while at West Point.

Events as outlined by Mr. Eric Mayer (Attorney) in a rebuttal to the Superintendent, LTG. Huntoon:

1. He engaged in a heated argument with a classmate who happened to occupy a leadership position (Cadet CSM). September 2012. 30 demerits

2. He was not present for a lunch formation. December 2012. 5 demerits

3. He did not sign his BRADSO contract by the posted suspense. 5 demerits.

000878

CDT Isiah Doolen 16

4. He failed to update the battalion maintenance tracker by the suspense. 20 demerits.

5. He was out of his room after Taps while on restriction. 30 demerits.

The allegations of misconduct from September 2012 to January 2013 are minor, non-violent, and two of them indicate, at worst, forgetfulness or a bit of procrastination.

- The verbal altercation that occurred between CDT Doolen and the Battalion CSM was initiated because CDT Doolen believed that the CDT CSM was acting unprofessionally and unreasonably toward another cadet. CDT Doolen intended to correct the situation immediately. Unfortunately, the discussion unreasonably escalated, but never turned physical. However, we should not forget that this was, in essence, a heated discussion between two classmates. For this, he received a heavy punishment that included 30 demerits.

- In December 2012, he failed to be present at lunch formation. However, he was working with a lab group on a project that required his attention and absence from formation. Unfortunately, he did not make the necessary coordination because he forgot to do so. This is not an act of blatant misconduct but a very minor miscommunication

- He accepts his failure to sign the BRADSO contract and makes no excuses for this mistake.

- The matter involving the battalion maintenance tracker is a complicated one. Essentially, CDT Doolen and his supply cadet NCO waited until the last night before the suspense to update the tracker. At the time they attempted to update it with their company information, the system was not available. Yet, every maintenance issue had already been submitted to the TAC NCO for action, making the electronic maintenance tracker a mere formality. While CDT Doolen accepts responsibility for failing to properly manage the time constraints of this project, the punishment is excessive for an act that, in essence, constitutes simple procrastination that did not harm the wellbeing and/or comfort of other cadets.

CDT Isiah Doolen 17

- In his final misconduct of the period, CDT Doolen was away from his room after Taps. However, the circumstances mitigate the severity of the conduct. At the time of the misconduct, CDT Doolen received an emotional and frantic message from his recently-ex-girlfriend. He was still emotionally attached to her, and she indicated that she was presently harassed by other cadets. He immediately responded to the situation to discover that it was not as she had communicated. Upon discovering this, he immediately withdrew back to his room. Again, while he knows he was wrong, the punishment is excessive considering the circumstances surrounding the underlying misconduct.

He further explains:

The investigating officer for the conduct investigation evaluated Isiah's conduct from a neutral, dispassionate perspective. He clearly balanced the needs of the Army and USMA with those of CDT Doolen. After evaluating Isiah's performance as a USMA Cadet, prepster, and NMMI student, he concluded that CDT Doolen should be afforded an opportunity to rehabilitate himself as a December graduate. The fact that this opinion comes from a neutral fact-finder who personally evaluated the alleged misconduct and engaged in face-to-face discussions with CDT Doolen should be given the greatest consideration and weight in this matter.

My investigating officer, for my conduct investigation, is a highly qualified senior ranking officer. He has had multiple years of experience in the Army as an enlisted soldier, and then as an officer, through the commissioning source, Officer Candidate School. My contention, is that with all of his years of experience in the Army, an amount that I would surmise add up to more years than that of my company TAC team combined, should be given more respect. Such a severe departure from the recommendations of the investigating officer were simply unwarranted.

At no time did my actions cause harm or place anyone in a position to be harmed, either mentally, physically or emotionally. For comparison purposes, I am providing a June 19, 2013 excerpt from one of Charles Clymer's

CDT Isiàh Doolen 18

articles written for the *Politics and Social Justice Commentary*. He is referring to a letter read to the West Point Board of Visitors--a group composed only of Members of Congress and persons directly appointed by the President and written by one of the first female West Point Graduates, Class of 1980.

"The letter comes on the tail end of several scandals plaguing the Academy: a report released that shows sexual assaults have increased there, the revelation that a sergeant was filming female cadets in a barracks shower without their knowledge, and most recently, **the atrocious response of the Academy in allowing more than a dozen senior cadets to graduate** after it was revealed they engaged in rampant sexual harassment, including rape jokes and homophobic, racist, and otherwise sexist comments and, most startlingly, taking pictures of women cadets on campus without their permission and doctoring or captioning them to be sexually-suggestive and generally demeaning. This was all done on the government e-mail system for the team. The Academy's response? **Pretty lenient.** Punishments were given that allowed the cadets to complete them in the remaining eight days before graduation while **Academy officials lied in official statements** to the Corps of Cadets and to the press about their response, stating the "full maximum punishment" had been given when, in fact, it had not. Not even close...None of this stays on their record following graduation. These are the kinds of actions that would get an officer easily court-martialed under UCMJ, but they're getting away with it, scot-free." Again, the conundrum – why was I separated with recoupment for far less?

MARM-PMM

MEMORANDUM FOR SGS                                                 14 May 2013

SUBJECT:  Recoupment of Educational Assistance Costs – **CDT Isiah Doolen**, Class of 2013 (SSN: Redaction PII

1.  Public Law 96-357 establishes the requirement that an individual who receives assistance for advanced education from "funds appropriated for an armed force" reimburse all or part of that assistance, if the active duty requirements specified in his/her agreement are not completed because of voluntary separation or misconduct.

2.  As **CDT Doolen's** last day of class was **10 May 2013**, the amount owed is **$203,160**.  Costs included are derived from the obligation report. Public Law excludes pay and allowances cadets are authorized to receive under Title 37, US Code and costs associated with *"military skills."*

3.  Considering established procedures, the date for cessation of a cadet's advanced education program is their last day in class. In addition, the academic year (AY), rather than the fiscal or calendar year is used as the basis for prorating the final year.  Proration by year and calculation follows:

    a. Detail amount to be collected and accounting classification:

| | | | | |
|---|---|---|---|---|
| **2010** | $51,459 | 2102020 | 17-6725 311721 4630 DOO7694PL96357 | RCUPL2S30145 |
| **2011** | $49,072 | 2112020 | 17-6725 311721 4630 DOO7694PL96357 | RCUPL2S30145 |
| **2012** | $50,848 | 2122020 | 17-6725 311721 4630 DOO7694PL96357 | RCUPL2S30145 |
| **2013** | $51,781 | 2132020 | 17-6725 311721 4630 DOO7694PL96357 | RCUPL2S30145 |
| **Total** | $203,160 | | | |

    b. The cost displayed for 2010-2011 are derived from USMA's Cost of Education  reports. The costs for 2012 and 2013 are calculated below.  Inflation index is published by the Assistant Secretary of the Army for Financial Management and Comptroller.

    c.  The 2012 cost calculation:

        Computation of 2012 Time Factor:

            Start of Academic Year 2011 – 2012 – **15 August 2011**
            End of Academic Year (Last day of class) 2011 – 2012 – **11 May 2012**
            Full Academic Year = **270 Calendar Days**
            Last Day of Classes - **11 May 2012** = **270 Calendar Days**
            Time Factor = **270/270 = 1**

MARM-PMMD
SUBJECT: Recoupment of Educational Assistance Costs – **CDT Isiah Doolen**, Class of 2013
(SSN: Redaction PII

Computation of 2012's cost:

| 2011 Cost | | Time Factor | | Inflation Factor | | 2012 Cost |
|-----------|---|-------------|---|------------------|---|-----------|
| $49,072 | X | 1 | X | 1.0362 | = | $50,848 |

d.  The 2013 cost calculation:

Computation of 2013 Time Factor:

Start of Academic Year 2012 – 2013 – **20 August 2012**
End of Academic Year (Last day of class) 2012 – 2013 – **10 May 2013**
Full Academic Year = **263 Calendar Days**
Last Day of Classes – 10 May 2013= **263 Calendar Days**
Time Factor = **263/263 = 1**

Computation of 2013's cost:

| 2011 Cost | | Time Factor | | Inflation Factor | | 2013 Cost |
|-----------|---|-------------|---|------------------|---|-----------|
| $49,072 | X | .1 | X | 1.0552 | = | $51,781 |

4. POC for this action is Sarah Balboni-Murphy, (845) 938-5731 or DSN 688-5731.

melissa.cardona@us   Digitally signed by
melissa.cardona@usma.edu
ma.edu Redaction PII   DN: cn=melissa.cardona@usma.edu
                      Date: 2013.05.14 Redaction PII
MELISSA CARDONA
Deputy G8, Resource Integration Officer

18

# REPORT OF MENTAL STATUS EVALUATION

For use of this form see, AR 40-66; the proponent agency is OTSG.

## SECTION I - REASON FOR EVALUATION

| | |
|---|---|
| ☐ Self-Referral | ☐ Advanced Training Application (Drill Instructor, Recruiter, etc) |
| ☑ Command-Directed Behavioral Health Evaluation | ☐ Clearance for Admin Sep under AR 635-200, Chapter _____ |
| ☐ Hospital Discharge | ☐ MMRB/MEB |
| ☐ Other: | |

## SECTION II - FITNESS FOR DUTY

FROM A BEHAVIORAL HEALTH STANDPOINT, THE ABOVE SERVICE MEMBER IS DEEMED:

☑ Fit for full duty, including deployment.

☐ Possibly non-deployable due to prescribed medications. Command surgeon waiver ☐ is ☐ is not recommended.

☐ Requires temporary duty limitations and will likely require behavioral health treatment to be restored to full duty.

☐ Unfit for duty due to a personality disorder or other mental condition that does not amount to a medical disability.

☐ Unfit for duty due to a serious mental condition that is not likely to resolve within 1 year.

☐ Further assessment is needed to determine fitness for duty.

## SECTION III - PERTINENT FINDINGS ON MENTAL STATUS EXAMINATION

**COGNITION:** ☐ No obvious impairments  ☐ Mildly impaired  ☑ Moderately impaired  ☐ Severely impaired

**BEHAVIOR:** ☑ Cooperative  ☐ Uncooperative  ☐ Manipulative  ☐ Hostile  ☐ Suspicious  ☐ Bizarre

**PERCEPTIONS:** ☑ Normal  ☐ Hallucinations  ☐ Delusions  ☐ Obsessions

**IMPULSIVITY:** ☐ Unlikely to be impulsive  ☐ Occasionally impulsive  ☑ Frequently impulsive

**DANGEROUSNESS:** ☑ None  ☐ Suicidal Thoughts  ☐ Homicidal Thoughts  ☐ Suicidal Intent  ☐ Homicidal Intent

**OTHER:**

## SECTION IV - IMPRESSIONS

IN MY OPINION, THIS SERVICE MEMBER:

☑ Can understand and participate in administrative proceedings

☑ Can appreciate the difference between right and wrong

☑ Meets medical retention requirements (i.e., does not qualify for a Medical Evaluation Board)

☐ Requires further examination or testing to finalize diagnosis and recommendations

☐ Other:

## SECTION V - DIAGNOSES (ONLY THOSE REQUIRED FOR ADMINISTRATIVE PROCESSING)

AXIS I (psychiatric conditions):

ADHD, adjustment disorder with mixed disturbance of emotions & conduct

AXIS II (personality & intelligence disorders):

deferred

AXIS III (medical conditions):

none reported

## PATIENT INFORMATION

| | | | |
|---|---|---|---|
| Patient Name: Doolen, Isiah M | | Rank/Grade: Cadet | Status: Active |
| Prefix: 20    DOB (YYYYMMDD): Redacted PII    Sponsor SSN: Redacted PII    MTF Code: 0086 | | | Date: 20130506 |

PATIENT'S IDENTIFICATION  (For typed or written entries, give: Name - last, first, middle; grade; date; hospital or medical facility)

Doolen, Isiah M. Cadet, 20130506, Behavioral Health Clinic, Keller Army Community Hospital

**DA FORM 3822, MAR 2011**    PREVIOUS EDITIONS ARE OBSOLETE.    Page 1 of 3

APD PE v1.05ES

000884

## SECTION VI - PROPOSED TREATMENTS

☐ None
☑ Follow-up appointments:

| Clinic: | Phone No: | Location: | Date: | Time: |
|---------|-----------|-----------|-------|-------|
| CPD | | West Point, NY | | |
| | | | | |
| | | | | |

☐ Recommend command referral to: ☒ Unit Chaplain ☒ ASAP ☒ FAP ☒ JAG ☒ ACS ☒ OTHER

## SECTION VII - RECOMMENDED PRECAUTIONS
*(To be followed until no longer deemed necessary by a Behavior Health Provider)*

☑ None

☒ Ensure the service member attends all follow-up appointments.

☒ Assigned duties should be relatively low-stress and ☒ should not involve leadership responsibilities.

☒ Work hours should not exceed _____ per day and the service member should have _____ day(s) off per week.

☒ Restrict access to or disarm all weapons and ammunition (including those that are privately owned).

☒ Prohibit the use of alcohol as alcohol is a CNS depressant and may impair inhibitions and judgment.

☒ Inspect the service member's quarters and secure all hazardous items (e.g., pills, knives, razors, weapons, etc.).

☒ Move the service member into the barracks.

☒ Secure all medications and dispense no more than _____ days' worth at a time.

☒ Prohibit contact between the service member and _____ to prevent harm to self or other individual.

☒ Provide increased supervision (i.e., have someone check in with service member at least daily) or ...

☒ Assign someone to monitor the service member every _____ hours from first formation until lights out, and ensure he/she does not sleep in a room alone or ...

☒ Provide continuous 24/7 monitoring (e.g., to prevent self-injurious behavior, harm to others, substance use, etc.).

☒ Other:

## SECTION VIII - ADDITIONAL COMMENTS

☐ A Temporary Profile with an "S" rating of _____ is hereby activated, to expire _____

☑ The service member has been screened for Post Traumatic Stress Disorder and mild Traumatic Brain Injury. All positive screens require a comprehensive evaluation. Results of the screening are as follows:

  ☑ Post Traumatic Stress Disorder Screening: ☑ Score 0/4 ☐ Positive ☑ Negative

    ☒ Service member was referred for: A comprehensive Post Traumatic Stress Disorder evaluation.

  ☑ Mild Traumatic Brain Injury Screening: ☑ Score _____ ☐ Positive ☑ Negative

    ☒ Service member was referred for: A comprehensive mild Traumatic Brain Injury evaluation.

☐ The service member may participate in PT as allowed by physical profile, as exercise often improves mood.

☐ The service member meets psychiatric criteria for expeditious administrative separation IAW ☒ Chapter 5-13 or ... ☒ Chapter 5-17 of AR 635-200 (or equivalent regulation from his/her branch of Service).

*(See Additional Comments on Page 3)*

## PATIENT INFORMATION

| | | | |
|---|---|---|---|
| Patient Name: Doolen, Isiah M | | Rank/Grade: Cadet | Status: Active |

Prefix: 20    DOB (YYYYMMDD): **Redacted PII**    Sponsor SSN: **Redacted PII**    MTF Code: 0086    Date: 20130506

PATIENT'S IDENTIFICATION (*For typed or written entries, give: Name - last, first, middle; grade; date; hospital or medical facility*)

Doolen, Isiah M. Cadet, 20130506, Behavioral Health Clinic, Keller Army Community Hospital

## SECTION VIII - ADDITIONAL COMMENTS *(Continued from previous page)*

☐ Service member does not have a severe mental disorder and is not considered mentally disordered. However, he/she has a long-standing disorder of character, behavior and adaptability (i.e., personality disorder).

☐ The Service-member has a condition that is likely to impair his/her judgment or reliability to protect classified information. (If checked, Commanders will ensure prompt notification to the Army Central Clearance Facility IAW AR 380-67 DA Personnel Security Program, by providing an incident report via the Joint Personnel Adjudication System (JPAS) or its successor.) (Provide detail in the remarks section on page 3.)

☐ It is the professional opinion of the undersigned that this service member will not respond to command efforts at rehabilitation (such as transfer, disciplinary action or reclassification), or to any behavioral health treatment methods currently available in the military.

☐ The service member manifests a long-standing, chronic pattern of difficulty adjusting (i.e., Adjustment Disorder) as characterized by: (Provide detail for the option you choose in the remarks section on Page 3.)

☐ The service member shows no evidence of a disorder that would limit his/her potential to succeed in the military.  He/she is cleared to participate in advanced military training (e.g., recruiting, drill instructor, sniper school, etc).

☑ The service member has been screened for Post Traumatic Stress Disorder and Traumatic Brain Injury. These conditions are either not present or, if present, do not meet AR 40-501 criteria for a medical evaluation board. Command is advised to consider the influence of these conditions, if present, when determining final disposition.

☐ If the service member shows signs of further deterioration, command should call:   *Name:* _____ *and Contact Information:* _____, during duty hours. After hours, they should escort the service member to the nearest Emergency Department.

☑ Service member has been screened for substance use disorders (i.e., alcohol and drugs).
Findings:

> Cadet reported that he drinks alcohol on occasion. AUDIT-C: 1 - Hazardous drinking not reported (5/6/2013)

☑ Other:

> Cadet Isiah M. Doolen was evaluated on 20130506. Evaluation consisted of clinical interview, mental status examination, Behavioral Health Data Portal Assessments, Millon Clinical Multiaxial Inventory-III and a review of electronic medical records. Cadet endorses symptoms of ADHD including inattention, difficulties with concentration, memory and executive functions and is treated with medication to address symptoms. He also endorses anger management issues and is in treatment for this at CPD. He endorses a long history of impulsivity & has had several episodes of acting out his anger in disrespectful and destructive ways. Cadet denies suicidal and homicidal ideation, plan or intent. There are no current safety concerns and from a behavioral health perspective, Cadet is fit for duty and for any administrative action Command deems appropriate.

## REMARKS

Cadet displays negativistic personality traits and engages in blaming others for his mistakes and problems. He appears to have difficulty taking responsibility for his actions and subsequent consequences. This style has made it difficult for him to accept advice and guidance and to affect necessary cognitive & behavioral changes to succeed at USMA. Cognitive behavioral treatment focused on positve psychology, acceptance of personal responsibility and psychological resiliance is strongly recommended before Cadet is commissioned. If retained, it is recommended that Cadet be reevaluated in 180 days. POC is Lucille C. Larney, PhD 845 938 3441.

## BEHAVIORAL HEALTH PROVIDER SIGNATURE(S)

| Behavioral Health Provider's Signature | Date | Behavioral Health Supervisory Co-Signature | Date |
|---|---|---|---|
| *Lucille C. Larney PhD* | 20130506 | | |

## PATIENT INFORMATION

| | | | |
|---|---|---|---|
| *Patient Name:* Doolen, Isiah M | | *Rank/Grade:* Cadet | *Status:* Active |
| *Prefix:* 20   *DOB (YYYYMMDD):* Redacted PII   *Sponsor SSN:* Redacted PII | *MTF Code:* 0086 | | *Date:* 20130506 |

**PATIENT'S IDENTIFICATION**  *(For typed or written entries; give: Name - last, first, middle; grade; date; hospital or medical facility)*

Doolen, Isiah M. Cadet, 20130506, Behavioral Health Clinic, Keller Army Community Hospital

000886

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED AREAS
RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY
This Report Contains Information Subject to the Privacy Act of 1974, As Amended.

| 1. NAME (Last, First, Middle) DOOLEN, ISIAH MATTHEW | 2. DEPARTMENT, COMPONENT AND BRANCH ARMY-USMA-CADET | 3. SOCIAL SECURITY NUMBER Redacted PII |
|---|---|---|

| 4a. GRADE, RATE OR RANK PVT | b. PAY GRADE E-1 | 5. DATE OF BIRTH (YYYYMMDD) Redacted PII | 6. RESERVE OBLIGATION TERMINATION DATE (YYYYMMDD) 20121102 |
|---|---|---|---|

| 7a. PLACE OF ENTRY INTO ACTIVE DUTY FT MONMOUTH, NJ 07703-5611 | b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) Redacted PII |
|---|---|

| 8a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND USMA PREP SCHOOL DET - MA | b. STATION WHERE SEPARATED USMA West Point, NY 10996-1692 |
|---|---|

| 9. COMMAND TO WHICH TRANSFERRED USAR CNTLGP (REINF), USAHRC, 1600 Spearhead Division Ave, FT Knox, KY 40122 | 10. SGLI COVERAGE AMOUNT: $ 50000 | NONE |
|---|---|---|

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) NONE//NOTHING FOLLOWS | 12. RECORD OF SERVICE | YEAR(S) | MONTH(S) | DAY(S) |
|---|---|---|---|---|
| | a. DATE ENTERED AD THIS PERIOD | 2008 | 07 | 18 |
| | b. SEPARATION DATE THIS PERIOD | 2009 | 06 | 28 |
| | c. NET ACTIVE SERVICE THIS PERIOD | 0000 | 11 | 11 |
| | d. TOTAL PRIOR ACTIVE SERVICE | 0000 | 00 | 00 |
| | e. TOTAL PRIOR INACTIVE SERVICE | 0001 | 06 | 25 |
| | f. FOREIGN SERVICE | 0000 | 00 | 00 |
| | g. SEA SERVICE | 0000 | 00 | 00 |
| | h. INITIAL ENTRY TRAINING | 2008 | 07 | 18 |
| | i. EFFECTIVE DATE OF PAY GRADE | 2006 | 11 | 03 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) NATIONAL DEFENSE SERVICE MEDAL//GLOBAL WAR ON TERRORISM SERVICE MEDAL//NOTHING FOLLOWS | 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) NONE//NOTHING FOLLOWS |
|---|---|

| 15a. COMMISSIONED THROUGH SERVICE ACADEMY | YES | X | NO |
|---|---|---|---|
| b. COMMISSIONED THROUGH ROTC SCHOLARSHIP (10 USC Sec. 2107b) | YES | X | NO |
| c. ENLISTED UNDER LOAN REPAYMENT PROGRAM (10 USC Chap. 109) (If Yes, years of commitment: ) | YES | X | NO |

| 16. DAYS ACCRUED LEAVE PAID | 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | YES | NO |
|---|---|---|---|
| | | | X |

18. REMARKS
DATA HEREIN SUBJECT TO COMPUTER MATCHING WITHIN DOD OR WITH OTHER AGENCIES FOR VERIFICATION PURPOSES AND DETERMINING ELIGIBILITY FOR FEDERAL BENEFITS//EXCESS LEAVE (CREDITABLE FOR ALL PURPOSES EXCEPT FOR PAY AND ALLOWANCES)--7.00 DAYS; 20090619--20090625//NOTHING FOLLOWS

The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program.

| 19a. MAILING ADDRESS AFTER SEPARATION (Include ZIP Code) Redacted PII | b. NEAREST RELATIVE (Name and address - include ZIP Code) Redacted PII |
|---|---|

| 20. MEMBER REQUESTS COPY 6 BE SENT TO (Specify state/locality) NM   OFFICE OF VETERANS AFFAIRS | X | YES | NO |
|---|---|---|---|
| a. MEMBER REQUESTS COPY 3 BE SENT TO THE CENTRAL OFFICE OF THE DEPARTMENT OF VETERANS AFFAIRS (WASHINGTON, DC) | X | YES | NO |

| 21.a. MEMBER SIGNATURE Member not available to sign | b. DATE (YYYYMMDD) 20110602 | 22.a. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title, signature) DIANE S. VONASEK, Adjutant, USCC | b. DATE (YYYYMMDD) 20110602 |
|---|---|---|---|

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION RELEASE FROM ACTIVE DUTY | 24. CHARACTER OF SERVICE (Include upgrades) HONORABLE |
|---|---|

| 25. SEPARATION AUTHORITY AR 612-205, SECTION II, PARAGRAPH 5D(2) | 26. SEPARATION CODE 28-13//28 JAN 2010 | 27. REENTRY CODE 1 |
|---|---|---|

28. NARRATIVE REASON FOR SEPARATION
TO ENTER SERVICE ACADEMY

| 29. DATES OF TIME LOST DURING THIS PERIOD (YYYYMMDD) NONE | 30. MEMBER REQUESTS COPY 4 (Initials) |
|---|---|

| DD FORM 214, AUG 2009 | PREVIOUS EDITION IS OBSOLETE. | SERVICE - 8 |
|---|---|---|

000887

Order View                                                            Page 1 of 1

STATE OF NEW MEXICO
Department of Military Affairs
Military Division
Santa Fe, New Mexico 87508-4695

ORDERS  149-010                                              28 May 2008

DOOLEN ISIAH MATTHEW, [Redacted PII] PV1, HHC 717TH BSB CSB (ME) (X8CT0-376), 1 WEST
EARL CUMMINGS LOOP, ROSWELL, NM 88203-8445

You are discharged from the Army National Guard and as a reserve of the Army.

Effective date:  27 May 2008
Type of discharge:  Uncharacterized (Y)
Additional instructions:
    Additional instructions: Records outlined in NGR 600-200 will be forwarded to this
    headquarters within 10 days. (ASG-LOSS-RSN)
    Assignment/Loss Code:    EE
    Current Organization Identification Code:    NONE OR NO MILITARY STATUS (W)
    SRIP: No

FOR ARMY USE
Authority:  Para 8-35b(5), NGR 600-200
HOR: [Redacted PII]
Format:  500


FOR THE ADJUTANT GENERAL:


                        ///////////////////////////////
                        / \\\\\\\\\\\\\//////////// /
                        / \\ HQ, NMARNG        // /
                        / \\ OFFICIAL          // /
                        / \\\\\\\\\\\//////////// /
                        / TIMOTHY S. PAUL          /
                        / COL, GS                  /
                        / Adjutant                 /
                        ///////////////////////////////


DISTRIBUTION:
Special

000888

29

21

## ENLISTMENT/REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 709 and 3101; 10 USC 133, 265, 275, 504, 508, 510, 591, 672(d), 678, 837, 1007, 1071 through 1092, 1160, 1168, 3442 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A. ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. NAME (Last, First, Middle) | 2. SOCIAL SECURITY NUMBER |
|---|---|
| **BOOLEN ISIAH MATTHEW** | Redacted PII |

| 3. HOME OF RECORD (Street, City, State, ZIP Code) | 4. PLACE OF ENLISTMENT/REENLISTMENT (Use Installation, City, State) |
|---|---|
| Redacted PII | ALBUQUERQUE MEPS<br>ALBUQUERQUE, NM 87102-3113 |

| 5. DATE OF ENLISTMENT/<br>REENLISTMENT (YYYYMMDD) | 6. DATE OF BIRTH (YYYYMMDD) | 7. PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 20061103 | Redacted PII | a. TOTAL ACTIVE MILITARY SERVICE | | | |
| | | b. TOTAL INACTIVE MILITARY SERVICE | | | |

### B. AGREEMENTS

**8.** I am enlisting/reenlisting in the ~~United States~~ ARMY NATIONAL GUARD OF THE UNITED STATES (list branch of service)
this date for **6** years and **00** weeks beginning in pay grade **E-1**
The additional details of my enlistment/reenlistment are in Section C and Annex(es)
**A B K**

**a. FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**

I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by (list date (YYYYMMDD)) _____ for enlistment in the Regular component of the United States (list branch of service) _____ for not less than _____ years and _____ weeks. My enlistment in the DEP is in a nonpay status. I understand my period of time in the DEP is **NOT** creditable for pay purposes upon entry into a pay status. However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment. I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

**b. REMARKS:** (If none, so stated) **NONE**

**c.** The agreements in this section and attached annex(es) are all the promises made to me by the Government. **ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**

(Initials of Enlistee/Reenlistee) *IM* (Continued on reverse side)

**DD FORM 4/1, JAN 2001**    PREVIOUS EDITION MAY BE USED.

| NAME OF ENLISTEE/REENLISTEE (Last, First, Middle) | SOCIAL SECURITY NO OF ENLISTEE/REENLISTEE |
|---|---|
| DOOLEN ISIAH MATTHEW | Redacted PII |

## D. CERTIFICATION AND ACCEPTANCE

13a. My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT. ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION. I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED.  ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: (If none, write NONE, and initials)  ☒ NONE (Initials of enlistee/reenlistee)

| b. SIGNATURE OF ENLISTEE/REENLISTEE | c. DATE SIGNED (YYYYMMDD) |
|---|---|
| X _Isiah Matthew Doolen_ | 20061103 |

## 14. SERVICE REPRESENTATIVE CERTIFICATION

a. On behalf of the United States (list branch of service)   ARMY NATIONAL GUARD
I accept this applicant for enlistment.  I have witnessed the signature in item 13b to this document. I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| GARCIA SAMMY MICHAEL | E-7 | ALBUQUERQUE MEPS |
| e. SIGNATURE | f. DATE SIGNED (YYYYMMDD) | g. UNIT/COMMAND ADDRESS (City, State, ZIP Code) |
|  | 20061103 | ALBUQUERQUE NM 87102-3113 |

## E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):
I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

16. IN THE NATIONAL GUARD (ARMY OR AIR):
I, ISIAH MATTHEW DOOLEN _____ do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of  NEW MEXICO  against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of  NEW MEXICO and the orders of the officers appointed over me, according to law and regulations. So help me God.

17. IN THE NATIONAL GUARD (ARMY OR AIR):
I do hereby acknowledge to have voluntarily enlisted/reenlisted this  3RD  day of  NOVEMBER  2006  in the  NEW MEXICO  National Guard and as a Reserve of the United States (list branch of service)  ARMY  with membership in the  ARMY  National Guard of the United States for a period of  6  years,  00  months  00  days, under the conditions prescribed by law, unless sooner discharged by proper authority.a

| 18a. SIGNATURE OF ENLISTEE/REENLISTEE | b. DATE SIGNED (YYYYMMDD) |
|---|---|
| X _Isiah Matthew Doolen_ | 20061103 |

## 19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION

a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| CRUZ MALCUM | O-3 | ALBUQUERQUE MEPS |
| e. SIGNATURE | f. DATE SIGNED (YYYYMMDD) | g. UNIT/COMMAND ADDRESS (City, State, ZIP Code) |
|  | 20061103 | ALBUQUERQUE NM 87102-3113 |

DD Form 4/2, JAN 2001        PREVIOUS EDITION MAY BE USED

3(

22

## ENLISTMENT/REENLISTMENT DOCUMENT
## ARMED FORCES OF THE UNITED STATES

### PRIVACY ACT STATEMENT

**AUTHORITY:** 5 USC 3331; 32 USC 708; 44 USC 708 and 3101; 10 USC 133, 265, 275, 504, 508, 510, 591, 672(d), 678, 837, 1007, 1071 through 1087; 1168, 1169, 1475 through 1480, 1553, 2107, 2122, 3012, 5031, 8012, 8033, 8496, and 9411; 14 USC 351 and 632; and Executive Order 9397, November 1943 (SSN).

**PRINCIPAL PURPOSE(S):** To record enlistment or reenlistment into the U.S. Armed Forces. This information becomes a part of the subject's military personnel records which are used to document promotion, reassignment, training, medical support, and other personnel management actions. The purpose of soliciting the SSN is for positive identification.

**ROUTINE USE(S):** This form becomes a part of the Service's Enlisted Master File and Field Personnel File. All uses of the form are internal to the relevant Service.

**DISCLOSURE:** Voluntary; however, failure to furnish personal identification information may negate the enlistment/reenlistment application.

### A.  ENLISTEE/REENLISTEE IDENTIFICATION DATA

| 1. **NAME** (Last, First, Middle)<br>DOOLEN, ISIAH M. | 2.  SOCIAL SECURITY NUMBER<br>Redacted PII |
|---|---|
| 3. **HOME OF RECORD** (Street, City, State, ZIP Code)<br>Redacted PII | 4.  PLACE OF ENLISTMENT/REENLISTMENT (Mil. Installation, City, State)<br>NEW MEXICO MILITARY INSTITUTE<br>ROSWELL, NM 88201 |

| 5. DATE OF ENLISTMENT/<br>REENLISTMENT (YYYYMMDD)<br>20061017 | 6. DATE OF BIRTH (YYYYMMDD)<br>Redacted PII | 7.  PREV MIL SVC UPON ENL/REENLIST | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| | | a.  TOTAL ACTIVE MILITARY SERVICE | 0 | 0 | 0 |
| | | b.  TOTAL INACTIVE MILITARY SERVICE | 0 | 0 | 0 |

### B.  AGREEMENTS

8.  I am enlisting/reenlisting in the United States (list branch of service) _____ ARMY RESERVE _____
this date for _IMD_ 8 _____ years and _IMD_ 0 _____ weeks beginning in pay grade _____ CADET _____
The additional details of my enlistment/reenlistment are in Section C and Annex(es) _____

**a.  FOR ENLISTMENT IN A DELAYED ENTRY/ENLISTMENT PROGRAM (DEP):**
   I understand that I will be ordered to active duty as a Reservist unless I report to the place shown in item 4 above by (list date (YYYYMMDD)) _____ for enlistment in the Regular component of the United States (list branch of service) _____ for not less than _____ years and _____ weeks.  My enlistment in the DEP is in a nonpay status.  I understand that my period in the DEP is NOT creditable for pay purposes upon entry into a pay status.  However, I also understand that this time is counted toward fulfillment of my military service obligation or commitment.  I must maintain my current qualifications and keep my recruiter informed of any changes in my physical or dependency status, moral qualifications, and mailing address.

**b.  REMARKS:** (If none, so state.)
   AUTHORITY: AR 145-1 USAR Control Group (ROTC); DA Form 597 or DA Form 597-3 Attached as an Annex. _IMD_

**c.**  The agreements in this section and attached annex(es) are all the promises made to me by the Government.
**ANYTHING ELSE ANYONE HAS PROMISED ME IS NOT VALID AND WILL NOT BE HONORED.**

(Initials of Enlistee/Reenlistee) _IMD_                                (Continued on reverse side.)

**DD FORM 4/1, JAN 2001**                 PREVIOUS EDITION MAY BE USED.

| NAME OF ENLISTEE/REENLISTEE (Last, First, Middle) | SOCIAL SECURITY NO. OF ENLISTEE/REENLISTEE |
|---|---|
| DOOLEN, ISIAH M. | Redacted PII |

### D. CERTIFICATION AND ACCEPTANCE

13a.  My acceptance for enlistment is based on the information I have given in my application for enlistment. If any of that information is false or incorrect, this enlistment may be voided or terminated administratively by the Government or I may be tried by a Federal, civilian, or military court and, if found guilty, may be punished.

I CERTIFY THAT I HAVE CAREFULLY READ THIS DOCUMENT.  ANY QUESTIONS I HAD WERE EXPLAINED TO MY SATISFACTION.  I FULLY UNDERSTAND THAT ONLY THOSE AGREEMENTS IN SECTION B OF THIS DOCUMENT OR RECORDED ON THE ATTACHED ANNEX(ES) WILL BE HONORED.  ANY OTHER PROMISES OR GUARANTEES MADE TO ME BY ANYONE ARE WRITTEN BELOW: (If none, X "NONE" and initial.)   ☒ NONE  IMD (Initials of enlistee/reenlistee)

| b. SIGNATURE OF ENLISTEE/REENLISTEE | c. DATE SIGNED (YYYYMMDD) |
|---|---|
| | 20061017 |

### 14. SERVICE REPRESENTATIVE CERTIFICATION

a. On behalf of the United States (list branch of service) _____ ARMY RESERVE
I accept this applicant for enlistment.  I have witnessed the signature in item 13b to this document.  I certify that I have explained that only those agreements in Section B of this form and in the attached Annex(es) will be honored, and any other promises made by any person are not effective and will not be honored.

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| CUNNINGHAM, JEFFRY E | 05 | USA ROTC, Western Region, 12th Bde, NMMI |
| e. SIGNATURE | f. DATE SIGNED (YYYYMMDD) 20061017 | g. UNIT/COMMAND ADDRESS (City, State, ZIP Code) ROSWELL, NM 88201 |

### E. CONFIRMATION OF ENLISTMENT OR REENLISTMENT

**15. IN THE ARMED FORCES EXCEPT THE NATIONAL GUARD (ARMY OR AIR):**
I, ISIAH M. DOOLEN _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; and that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God.

**16. IN THE NATIONAL GUARD (ARMY OR AIR):**
I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the State of _____ against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the Governor of _____ and the orders of the officers appointed over me, according to law and regulations.  So help me God.

**17. IN THE NATIONAL GUARD (ARMY OR AIR):**
I do hereby acknowledge to have voluntarily enlisted/reenlisted this _____ day of _____, in the _____ National Guard and as a Reserve of the United States (list branch of service) _____ National Guard of the United States for a period of _____ years, _____ months, _____ days, under the conditions prescribed by law, unless sooner discharged by proper authority.

| 18.a. SIGNATURE OF ENLISTEE/REENLISTEE | b. DATE SIGNED (YYYYMMDD) |
|---|---|
| | 20061017 |

### 19. ENLISTMENT/REENLISTMENT OFFICER CERTIFICATION

a. The above oath was administered, subscribed, and duly sworn to (or affirmed) before me this date.

| b. NAME (Last, First, Middle) | c. PAY GRADE | d. UNIT/COMMAND NAME |
|---|---|---|
| CUNNINGHAM, JEFFRY E | 05 | USA ROTC, Western Region, 12th BDE, NMMI |
| e. SIGNATURE | f. DATE SIGNED (YYYYMMDD) 20061017 | g. UNIT/COMMAND ADDRESS (City, State, ZIP Code) ROSWELL, NM 88201 |

DD FORM 4/2, JAN 2001          PREVIOUS EDITION MAY BE USED.

000892

Circle the appropriate copy designator

| Copy 1 | Copy 2 | Copy 3 | Copy 4 |

## PERSONNEL ACTION
For use of this form, see AR 600-8-6 and DA PAM 600-8-21; the proponent agency is ODCSPER

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

**AUTHORITY:** Title 5, Section 3012; Title 10, USC, E.O. 9397.

**PRINCIPAL PURPOSE:** Used by soldier in accordance with DA PAM 600-8-21 when requesting a personnel action on his/her own behalf (Section III).

**ROUTINE USES:** To initiate the processing of a personnel action being requested by the soldier.

**DISCLOSURE:** Voluntary. Failure to provide social security number may result in a delay or error in processing of the request for personnel action.

| 1. THRU (Include ZIP Code) | 2. TO (Include ZIP Code) DMPO TREASURER | 3. FROM (Include ZIP Code) CADET PERS BR, USCC,USMA,WEST POINT NY |

### SECTION I - PERSONAL IDENTIFICATION

| 4. NAME (Last, First, MI) DOOLEN, ISIAH MATTHEW | 5. GRADE OR RANK/PMOS/AOC CADET , H2,CLASS OF 2014(AUG) | 6. SOCIAL SECURITY NUMBER Redaction PII |

### SECTION II - DUTY STATUS CHANGE (AR 600-8-6)

7. The above soldier's duty status is changed from LWOP ALW PENDING CONDUCT SUSPENSION SEPEPARATION to

RETURN TO DUTY TO THE CLASS OF 2014(AUG) effective 0800 hours, 02 JUNE 2014

### SECTION III - REQUEST FOR PERSONNEL ACTION

8. I request the following action: (Check as appropriate)

| | | |
|---|---|---|
| Service School (Enl only) | Special Forces Training/Assignment | Identification Card |
| ROTC or Reserve Component Duty | On-the-job Training (Enl only) | Identification Tags |
| Volunteering For Oversee Service | Retesting in Army Personnel Tests | Separate Rations |
| Hanger Training | Reassignment Married Army Couples | Leave - Excess/Advance/Outside CONUS |
| Reassignment Extreme Family Problems | Reclassification | ☒ Change of Name/SSN/DOB |
| Exchange Reassignment (Enl only) | Officer Candidate School | Other (Specify) |
| Airborne Training | Asgmt of Pers with Exceptional Family Members | CLYR.COMPANY |

| 9. SIGNATURE OF SOLDIER (When required) | 10. DATE (YYYYMMDD) |

### SECTION IV - REMARKS (Applies to Sections II, III, V) (Continue on separate sheet)

OLD CLASS YEAR: 2013     NEW CLASS YEAR: 2014 (AUG)

OLD COMPANY: B1     NEW COMPANY: H2

### SECTION V - CERTIFICATION/APPROVAL/DISAPPROVAL

11. I certify that the duty status change (Section II) or that the request for personnel action (Section III) contained herein -

| ☒ HAS BEEN VERIFIED | RECOMMEND APPROVAL | RECOMMEND DISAPPROVAL | IS APPROVED | IS DISAPPROVED |

| 12. COMMANDER/AUTHORIZED REPRESENTATIVE DIANE S. VONASEK,ADJUTANT, USCC | 13. SIGNATURE | 14. DATE (YYYYMMDD) 14/06/02 |

**DA FORM 4187, JAN 2000** PREVIOUS EDITIONS ARE OBSOLETE

000893