# REGULATORY APPENDIX INDEX
## ISIAH DOOLEN, 16 Civ. 8606 (VB) (SDNY)

| Regulation Excerpt | DATE | PAGES (RA#) |
|---|---|---|
| Delegation of Authority from Secretary of the Army to the Assistant Secretary of the Army (Manpower & Reserve Affairs) under 37 U.S.C. § 303a | October 22, 2012 | 01-02 |
| Delegation of Authority from Secretary of the Army to the Assistant Secretary of the Army (Manpower & Reserve Affairs) under 37 U.S.C. § 303a | January 5, 2015 | 03-04 |
| Delegation of Authority from Assistant Secretary of the Army (Manpower & Reserve Affairs) to Deputy Assistant Secretary of the Army (Military Personnel and Quality of Life) | May 19, 2015 | 05-06 |
| United States Corps of Cadets Regulation No. 351-1, *Procedures for Conduct Investigations Under The Cadet Disciplinary System* | May 15, 2001 | 07-57 |
| United States Corps of Cadets Regulation No. 351-2, *The Cadet Disciplinary System* | May 15, 2001 | 58-101 |
| Army Regulation 210-26, *United States Military Academy* (Rapid Action Revision) (excepts) | September 6, 2011 | 102-110 |
| Army Regulation 612-205, *Appointment and Separation of Service Academy Attendees* | May 15, 1985 | 111-113 |
| United States Corps of Cadets Standard Operating Procedure (excerpts) | 2012 ed. | 114-120 |
| Department of Defense Instruction 1332.22, *Service Academies* (excerpts) | September 24, 2015 | 121-127 |
| United States Military Academy, *Cost of Education For Public Law 96-357* | 2011-2014 ed. | 128-177 |
| Manual for Courts-Martial (excerpts) | 2012 ed. | 178-181 |
| United States Military Academy Cadet Recoupment & Reimbursement Standard Operating Procedures (with selected appendices) | May 23, 2016 | 182-191 |
|    -   Appendix C. USMA Form 5-50, *Agreement to Serve* | | 192-193 |



**SECRETARY OF THE ARMY**
**WASHINGTON**

2 2 OCT 2012

MEMORANDUM FOR THE ASSISTANT SECRETARY OF THE ARMY (MANPOWER & RESERVE AFFAIRS)

SUBJECT: Delegation of Authority under Title 37, U.S.C. § 303a, Special Pay: General Provisions

1. References.

    a. Title 10, U.S.C. § 2005, Advanced education assistance: active duty agreement; reimbursement requirements.

    b. Title 37, U.S.C. § 303a, Special Pay, General Provisions.

    c. Department of Defense Instruction (DoDI) 1215.08, subject: Senior Reserve Officers' Training Corps (ROTC) Programs.

    d. Department of Defense Directive (DoDD) 1332.23, subject: Service Academy Disenrollment.

2. Reference 1.a. provides that as a condition to providing advanced education assistance, the person receiving the assistance may be required to enter into a written agreement. If that person does not fulfill the terms or conditions of the agreement, the repayment provisions of reference 1.b. apply. In accordance with reference 1.b., the person subject to the agreement shall repay to the United States the amounts owed unless the Secretary of the Army determines that such repayment would be contrary to a personnel policy or management objective, against equity and good conscience or contrary to the best interests of the United States. Effective the date of this memorandum, I hereby delegate to the Assistant Secretary of the Army (Manpower & Reserve) the authority to make the determinations required by reference 1.b. and grant an exception to the repayment requirement. Any such grant of exception shall be in accordance with all applicable laws, regulations and policies, including Title 37, U.S.C. §303a(e). Determinations made in the exercise of this authority shall be based on the facts of each individual case and documented in an appropriate manner.

3. Unless expressly prohibited or restricted by law, directive, regulation or policy, you may redelegate this authority within the Office of the ASA (M&RA) to a general officer or member of the Senior Executive Service. Should you choose to delegate, you may further restrict or condition your delegation. A redelegation of authority shall not be effective unless it is in writing, signed by you and has been determined to be legally sufficient upon review by the Office of the Army General Counsel. No redelegation shall take effect until a record copy of the redelegation has been provided to the Office of the Administrative Assistant to the Secretary of the Army for archiving. I will hold you

**RA001**

SUBJECT: Delegation of Authority under Title 37, U.S.C. § 303a, Special Pay: General Provisions

responsible for any and all actions taken pursuant to this delegation or any redelegation thereof.

4. Although not a limitation on your authority to act in my behalf, in those cases where a proposed decision represents a change in precedent or policy; is of significant White House, Congressional, Department, or public interest; or has been, or should be, of interest or concern to me, for any reason, you will brief me prior to the decision unless the exigencies of the situation preclude such action.

5. This delegation is effective immediately and expires December 31, 2014.

6. Point of contact for this memorandum is MAJ Scott R. Johnson, 703-695-7283, scott.r.johnson2@us.army.mil.

John M. McHugh

CF:
General Counsel of the Army
Administrative Assistant to the Secretary of the Army
Deputy Chief of Staff, G-1



**SECRETARY OF THE ARMY**
WASHINGTON

0 5 JAN 2015

MEMORANDUM FOR THE ASSISTANT SECRETARY OF THE ARMY (MANPOWER & RESERVE AFFAIRS)

SUBJECT: Delegation of Authority under Title 37, U.S.C. § 303a, Special Pay: General Provisions

1. References.

   a. Title 10, U.S.C. § 2005, Advanced education assistance: active duty agreement; reimbursement requirements.

   b. Title 37, U.S.C. § 303a, Special Pay, General Provisions.

2. Reference 1.a. provides that as a condition to providing advanced education assistance, the person receiving the assistance may be required to enter into a written agreement. If that person does not fulfill the terms or conditions of the agreement, the repayment provisions of reference 1.b. apply. In accordance with reference 1.b., the person subject to the agreement shall repay to the United States the amounts owed unless the Secretary of the Army determines that such repayment would be contrary to a personnel policy or management objective, against equity and good conscience or contrary to the best interests of the United States. Effective the date of this memorandum, I hereby delegate to the Assistant Secretary of the Army (Manpower & Reserve Affairs) (ASA (M&RA)) the authority to make the determinations required by reference 1.b. and grant an exception to the repayment requirement. Any such grant of exception shall be in accordance with all applicable laws, regulations and policies, including Title 37, U.S.C. §303a(e). Determinations made in the exercise of this authority shall be based on the facts of each individual case and documented in an appropriate manner.

3. Unless expressly prohibited or restricted by law, directive, regulation or policy, you may further delegate this authority within the Office of the ASA (M&RA) to a general officer or member of the Senior Executive Service. Should you choose to delegate, you may also further restrict or condition your delegation. A further delegation of authority shall not be effective unless it is in writing, signed by you; has been determined to be legally sufficient upon review by the Office of the Army General Counsel; and a record copy of the re-delegation has been provided to the Office of the Administrative Assistant to the Secretary of the Army for archiving. I will hold you responsible for any and all actions taken pursuant to this delegation or any further delegation thereof.

**RA003**

SUBJECT: Delegation of Authority under Title 37, U.S.C. § 303a, Special Pay: General Provisions

4.  As an exception to paragraph 3 above, you may further delegate waiver authority under Title 37, U.S.C. §303a(e) no lower than the Commanding General, United States Army Cadet Command, or the Superintendent, United States Military Academy, for the purpose of waiving recoupment of scholarship benefits when a cadet fails to fulfill the terms of contract due to medical disqualification.  The basis for and exercise of this authority shall be based on the facts of each individual case and documented in an appropriate manner.

5.  Although not a limitation on your authority to act on my behalf, you will brief me prior to the decision unless the exigencies of the situation preclude such action, in those cases where a proposed decision represents a change in precedent or policy; is of significant White House, Congressional, Department, or public interest; or has been, or should be, of interest or concern to me, for any reason.

6.  This delegation of authority is effective immediately and expires December 31, 2017.

7.  Point of contact for this memorandum is Dr. Naomi Verdugo, (703) 614-8590, naomi.b.verdugo.civ@mail.mil.

John M. McHugh

CF:
General Counsel
Administrative Assistant to the Secretary of the Army
Deputy Chief of Staff, G-1

2



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
111 ARMY PENTAGON
WASHINGTON, DC 20310-0111

1 9 MAY 2015

SAMR

MEMORANDUM FOR Deputy Assistant Secretary of the Army (Military Personnel and Quality of Life)

SUBJECT: Delegation of Authority under Title 37, U.S.C. § 303a, Special Pay: General Provisions

1. Reference Secretary of the Army (SA) Memorandum dated 05 JAN 2015, Subject: Delegation of Authority under Title 37, U.S.C. § 303a, Special Pay: General Provisions.

2. Per paragraph three of the SA delegation of authority listed above, I further delegate to you, the authority to act on my behalf, for personnel actions regarding United States Military Academy (USMA) and Senior Reserve Officers' Training Corps (ROTC) cadet separations, Health Professions Scholarship Program (HPSP) disenrollments, voluntary retirements, and unqualified resignations.

3. For all personnel actions discussed in paragraph 2, above, you may:

   a. Direct recoupment of funds expended on behalf of the Government;

   b. If you determine that the imposition of a repayment requirement is contrary to a personnel policy or management objective, would be against equity and good conscience, or would be contrary to the best interests of the United States waive recoupment of funds expended on behalf of the Government;

   c. Waive an officer's active duty service obligation;

4. If during your review of these actions, you determine that they are sensitive in nature, have a political impact, or may set a precedent, you will forward to me for final determination.

5. This memorandum shall expire 31 December 2017, unless rescinded prior to this date.

**RA005**

SAMR
SUBJECT:  Delegation of Authority under Title 37, U.S.C. § 303a, Special Pay:  General
Provisions

6.  The point of contact for this memorandum is MAJ Scott R. Johnson at 703-697-4581
or scott.r.johnson2.mil@mail.mil.

DEBRA S. WADA
Assistant Secretary of the Army
(Manpower & Reserve Affairs)

CF:
General Counsel of the Army
Administrative Assistant to the Secretary of the Army
Deputy Chief of Staff, G-1

**RA006**



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK  10996

REPLY TO
ATTENTION OF

MACC-O-RD                                                                    15 May 2001

USCC Regulation No. 351-1

PROCEDURES FOR CONDUCT INVESTIGATIONS
UNDER THE CADET DISCIPLINARY SYSTEM

1.  This regulation provides procedural guidance for participants in the conduct review/investigation process and is intended for internal use within the Cadet Disciplinary System for the United States Corps of Cadets. The intent of these procedures is to provide a fair and non-judicial method of investigating, and if needed, disciplining cadets who violate regulations or otherwise fail to maintain good order and discipline IAW the standards expected and required of members of the Corps.

2.  The procedures outlined in this regulation do not confer any rights on individuals other than those rights specifically identified herein as rights of respondents.

3.  All changes to this regulation must be approved by the Superintendent and forwarded to Headquarters, Department of the Army, IAW paragraph 10.11 of Regulations for the United States Military Academy.

4.  This Regulation is effective 15 May 2001.


/ Original Signed/
ERIC T. OLSON
Brigadier General, USA
Commandant of Cadets

DISTRIBUTION:
Special


*This regulation supersedes USCC Regulation No. 351-1 dated 16 August 1993.

USCC REGULATION 351-1
PROCEDURES FOR CONDUCT INVESTIGATIONS
UNDER THE CADET DICIPLINARY SYSTEM

CHAPTER ONE...CONDUCT INVESTIGATIONS
101. General.
102. The Conduct Investigation Charter.
103. Appointment of Investigating Officer (IO)
104. Timely Processing.
106. CI Processing During Leave and Term-End Examinations.
107. Discussion of the Case.
108. Documents.
109. Excusals During Deliberations.
110. Uniform.
111. Witnesses.
112. Types of Documentary Evidence.
113. Responsibilities of Cadets.
114. Responsibilities of Regulations and Discipline Officer, USCC
115. Responsibilities of Investigating Officer (IO).
116. Findings.
117. Recommendation if Deficient in Conduct.
118. Actions Subsequent to the Conduct Investigation.
119. Cadet Disciplinary Code
120. Maximum Punishments Under Article 10
121. Demerit Allowance Table.

CHAPTER TWO...GENERAL PROCEDURES FOR CONDUCT INVESTIGATIONS
201. Preliminary Administration.
202. Requests for Performance Evaluations.
203. Notification of Cadet.
204. Waiver of CI.
205. CI Procedures for Exceeding Six-Month Demerit with Tours Allowance.
206. CI Procedures.
207. CI Procedures for Violations of Conduct Probation Imposed in Lieu of a CI.
208. CI Procedures for Violation of Conduct Probation Imposed as a Result of a CI.
Figure 2-1 TACTICAL OFFICER RECOMMENDATION
Figure 2-1A DEMERIT REVIEW
Figure 2-2 TACTICAL OFFICER RECOMMENDATION
Figure 2-3 REGIMENTAL TACTICAL OFFICER RECOMMENDATION
Figure 2-4 BRIGADE TACTICAL OFFICER RECOMMENDATION
Figure 2-5 NOTIFICATION LETTER
Figure 2-6 REFERRAL MEMORANDUM
Figure 2-7 CADET ACKNOWLEDGEMENT MEMORANDUM
Figure 2-8 CONDUCT INVESTIGATION OFFICER APPOINTMENT MEMORANDUM

CHAPTER THREE...INSTRUCTIONS TO THE CONDUCT INVESTIGATING OFFICER
301. General.
302. Investigating Officer Checklist.
303. Guidelines for Enclosures and Exhibits.
Figure 3-1 PRIVACY ACT STATEMENT
Figure 3-2 REQUIREMENT TO APPEAR AT A CI
Figure 3-3 CERTIFICATE: WRITTEN TESTIMONY
Figure 3-4 CERTIFICATE: TELEPHONIC TESTIMONY
Figure 3-5 NOTIFCATION OF CONVENING OF CONDUCT INVESTIGATION
Figure 3-6 WITNESSES TO BE CALLED BY IO

RA008

Figure 3-7 REQUEST FOR POSTPONEMENT OF CI
Figure 3-8 TRANSMITTAL OF CI PROCEEDINGS
Figure 3-9 SUMMARIZED REPORT OF PROCEEDINGS

CHAPTER FOUR...CONDUCT INVESTIGATION FORMAT
401. General.
402. Investigation and Hearing Format.
403. Investigating Officer Support.

CHAPTER FIVE...RULES OF EVIDENCE AND PROCEDURES
501. Rules for Conduct of Proceedings.
502. Post Conduct Investigation Hearing Actions.
503. Oath for Sworn Testimony.

# CHAPTER ONE

## CONDUCT INVESTIGATIONS

**101. General.** A Conduct Investigation (CI) is convened by the Commandant to provide cadets a hearing, which is informal and nonadversarial in nature. A CI Investigating Officer (IO) makes a finding regarding the deficiency or proficiency of a cadet and recommends to the chain of command a disposition at the conclusion of the CI.

**102. The Conduct Investigation Charter.**

a. This regulations is established under authority of paragraphs 8.14 (Cadet Discipline System) and 10.11 (Separation Under the Cadet Disciplinary System) Regulations for the United States Military Academy (Regs, USMA).

b. The CI will examine the pattern of documented behavior of the deficient cadet. The CI will examine:

(1) A violation of the terms of Conduct Probation.

(2) Those demerits awarded in a six-month demerit with tour period in which a cadet exceeded his or her demerit with tours allowance.

(3) Two alcohol policy violations.

(4) Three Field Grad Article 10 actions of 35 demerits.

c. The IO will examine all documentation and disciplinary actions and determine if:

(1) The awards were consistent with the guidelines established by the Cadet Disciplinary System (in effect at the time of the offense) under USCC Regulation 351-2.

(2) The disciplinary actions did not exceed the authority of the individual who imposed each award as defined in the maximum table of punishments under the Cadet Disciplinary Code.

(3) The Article 10s were properly constituted, reviewed, and approved.

(4) The conduct or pattern of conduct is a departure from the standards expected of Cadets.

d. The IO will examine any issue or challenge raised by the cadet to ensure procedural due process. Under the Cadet Discipline Code, USCC Regulation 351-2, cadets are granted a hearing or are provided the opportunity to waive a hearing, and receive the opportunity to appeal during Article 10 proceedings. Issues raised by the cadet in the process of the investigation must be substantive in nature due to the fact that the cadet has had the opportunity for a hearing and appeal during the Article 10 process.

e. The IO will not terminate the CI until all issues are examined and challenges are resolved.

f. At the conclusion of the investigation, the IO will document their findings. The finding will either confirm the deficiency in conduct and render a recommendation for disposition to the chain of command or will find the cadet proficient in conduct.

g. If the cadet is found by the IO not to be deficient, the IO will forward that finding to the chain of command without a recommended disposition.

h. The provisions of AR 15-6 do not apply to the conduct review process.

**RA010**

**103.  Appointment of Investigating Officer (IO)**

    a.  Composition.  There will be one Investigating Officer.  The Investigating Officer (IO) will be a Lieutenant Colonel, Major, or a promotable Captain assigned to the Office of the Commandant.

    b.  Ineligible Officers.

        (1)  The IO may not be a tactical officer, executive officer or principle staff officer assigned to the same regiment or the same summer training organization as the cadet concerned.

        (2)  In cases where the cadet is reported deficient due to exceeding the six-month demerit with tours allowance or violating the terms of conduct probation, the IO may not be an officer who has reported the cadet for an offense during the period in question or who has been a member of a disciplinary proceeding concerning the cadet during the period in question.

        (3)  In cases where the cadet is reported deficient due to a pattern of misbehavior, the IO may not be an officer who has reported the cadet for an offense or adjudicated an offense under Article 10.

        (4)  The following officers will not be appointed as an IO:  Brigade Tactical Officer, Chief of Staff, XO to the Commandant, Regulations and Discipline Officer, Regimental Tactical Officers, the Special Assistant to the Commandant for Honor, the Special Assistant to the Commandant for Systems and Planning, and the Director of the Cadet Counseling Center.

        (5)  Officers who are eligible for IO duty and wish to be relieved from eligibility for this duty must submit a request with justification.  An officer, once appointed as an IO, who is unable to perform the duty due to conflicts may submit a request to be excused from conducting the conduct investigation within 24 hours of notification of the IO duty.  These requests must be sent through the Regulations and Discipline Officer and Chief of Staff, USCC, to the Commandant of Cadets for approval.

**104.  Timely Processing.**  The timely processing of conduct deficiency cases is important.  The table below provides a guide to the time normally required to accomplish each phase of the review.  While failure to meet any of the established goals does not result in negating a case for undue delay, every possible effort will be made to remain within the timetable.  The minimum time afforded to cadets to ensure their due process rights will be given unless waived in writing by the cadet undergoing the CI.

**RA011**

| Sequence of Actions Timetable | | |
|---|---|---|
| Action/Responsibility | Working Days | Cumulative Working Days |
| Deficiency identified (date of RXO's letter); Cadet, TAC CoC, and R&D Officer notified (RXO). | 0 | 0 |
| Cadet notified; regiment package recommendation received (RXO). | 3 | 3 |
| **BTO reviews regiment package- Conduct Review (BTO).** | 1 | 4 |
| Cadet notified of referral to CI (R&D). | 2 | 6 |
| CI convenes (IO). | 5 | 11 |
| IO delivers completed CI packet to R&D (IO). | 5 | 16 |
| R&D reviews and forwards case to SJA for initial review. **R&D also forwards summary of proceedings to TAC and RTO for preparation of disposition recommendations  (R&D).** | 3 | 19 |
| SJA reviews and returns case to R&D Officer (SJA). | 3 | 22 |
| **R&D forwards CI packet with TAC and RTO recommendations to BTO for disposition recommendation (BTO).** | 2 | 24 |
| **R&D forwards CI packet to COM for review and recommendation to Superintendent on cadet's disposition (COM).** | 5 | 29 |
| R&D forwards Commandant's recommendation to the Superintendent through SJA (R&D). | 1 | 30 |
| Legal review completed; respondent served (SJA). | 3 | 33 |
| Respondent submits response within 72 hours. | 3 | 36 |
| SJA prepares case for Superintendent's action (SJA). | 1 | 37 |
| Superintendent reviews case, takes action, and if appropriate, case is forwarded to HQDA. | 5 | 42 |

**105. Rights of Cadet.  A cadet who is referred to a CI has the following rights:**

a.  To receive written notice of the reported conduct deficiency and a list of all disciplinary actions being investigated.

b.  To have a reasonable period of time to prepare for the CI; five (5) working days during the academic year and three working days during periods when there is no academic attendance requirements.  This period normally begins on the day after the cadet acknowledges receipt of notification of referral to a CI by signing for that notification.

c.  To consult with legal counsel.  Counsel may be civilian legal counsel at no expense to the government, or a lawyer assigned to the Defense Section of the Office of the Staff Judge Advocate, USMA, or both.  Legal counsel may advise and assist in the preparation of the cadet's presentation, but may not represent the cadet at the hearing.

d.  To be present during the hearing, except during deliberations.

e.  To testify or remain silent.  Remaining silent does not preclude introducing evidence and questioning or cross-examining favorable and adverse witnesses, but does preclude testifying and having to answer questions.

f.  To challenge the IO for cause.  Lack of impartiality and/or ineligibility pursuant to paragraph 103 of this regulation, are the only bases for challenge for cause.  All such challenges are ruled on by the Regulations and Discipline Officer.

g.  To examine all records and documents to be considered by the CI, including the TAC file.

RA012

h. To object to evidence and challenge disciplinary actions imposed under the Cadet Disciplinary Code not considered by the previous conduct investigation.

i. To call reasonably available witnesses to support the challenges of demerits.

j. To question and cross-examine witnesses.

k. To present relevant written evidence or documentation.

l. To present his or her own oral and/or written arguments relative to the IO potential findings and recommended disposition.

m. To receive a complete copy of the CI's findings and report of proceedings and recommendations.

n. To be notified of witnesses whom the CI will call.

o. To not appear before a Conduct Investigation.

**106.  CI Processing During Leave and Term-End Examinations.**

a. Cadets who have been referred to a CI are required to remain at the Military Academy during periods of training or periods of leave to complete CIs unless otherwise determined by the Brigade Tactical Officer (BTO). Generally, however, CIs will not be held during term-end examinations, Corps leave periods, federal holidays, and weekends.  These periods of time will not be considered working days for conduct review process purposes.

b. Cadets or other military personnel due to depart on leave or training who are identified as having knowledge of the offense, should be called by either the cadet or the IO will be contacted as soon as possible. Whenever circumstances permit, statements from these departing individuals will be obtained in advance, in writing, so that they may depart.  In the event the BTO determines a personal appearance is required, the witness will be contacted and directed to return from leave or training status.

c. The agency concerned will be notified immediately of any requirement for cadets or other military personnel to miss part or all of a leave or a summer training program, and will assist S1, USCC, in contacting and returning the individual.

**107.  Discussion of the Case.**  Prior to final disposition, discussion of the case by the cadet concerned, by the IO or by witnesses outside of the CI sessions is not permitted except as may be required for official reasons, such as consultation for legal advice.

**108.  Documents.**  All documents bearing the name or other personal identifying data of the cadet concerned will be safeguarded and covered by a "Personal in Nature" cover sheet.

**109.  Excusals During Deliberations.**  The cadet and any witnesses will be excused from the hearing room during all deliberations (closed sessions).  If desired, the IO may adjourn the CI and reconvene at a later time or day.

**110.  Uniform.**  Uniform for the IO, the cadet concerned, and witnesses is the duty uniform.

**111.  Witnesses.**

a. All witnesses who are present will be sworn in before testifying (See paragraph 503 for oath).

b. Witnesses testifying will be those who have knowledge of the conduct of the individual under investigation.  For witnesses that have departed, written statements may be obtained and considered.  Witnesses for character references or to discuss the respondent's performance will not be called to testify at the hearing.  This information may be provided in accordance with paragraph 114e of this regulation.

**RA013**

**112. Types of Documentary Evidence.** Documentary evidence consists of material pertaining conduct of the individual under investigation.

**113. Responsibilities of Cadets.** Cadets are responsible for the following:

    a. Obtaining legal counsel, if desired.

    b. Meeting suspense dates established by the Regulations and Discipline Officer or by other officials participating in the conduct investigation process. If a cadet cannot meet a suspense date, it is the cadet's responsibility to contact the officer concerned in advance and request an extension. The reason for the request will be explained and the cadet may be required to make the request in writing. In all cases where an approved request will delay convening the CI, the request will be in writing and will be delivered to the IO for written approval/disapproval. Prior to approval, the IO will obtain concurrence from the Regulations and Discipline Officer for the new date.

    c. Ensuring that witnesses requested by the cadet are identified to the IO and are present at the proper time and place, if those witnesses are present at the Military Academy. If not present, it is the cadet's responsibility to immediately inform the IO of who the witnesses are and, if known, their locations.

    d. Obtaining written evidence on their own behalf to support arguments for retention as a Cadet.

    e. Providing the Regulations and Discipline Officer with a list of names of persons that might provide useful performance evaluations. The Commandant and the Superintendent prior to recommending or taking final action on the case may consider performance evaluations submitted. Only individuals with direct knowledge of the cadet's past performance at the Military Academy and who normally are authorized to submit cadet evaluations may be used for this purpose. Evaluations will not be requested or submitted from subordinates of the cadet under investigation. Statements will deal only with demonstrated performance; the Regulations and Discipline Officer may approve exceptions. Comments on potential will be based on past performance. Information will be submitted in memorandum format or on USMA Form 2-543 (Cadet Performance Report) to the Regulations and Discipline Officer, USCC.

**114. Responsibilities of Regulations and Discipline Officer, USCC**

    a. Notify the cadet of referral to a CI and have the cadet sign a Privacy Act Statement.

    b. Check for other on-going actions (e.g., Honor, AWCP separation action).

    c. If required, review the case.

    d. Request and receive performance evaluations. Ensure that cadet rebuttals to adverse evaluations are forwarded to the Commandant with the CI recommendation.

    e. Ensure that documents are complete and accurate.

    f. Identify eligible IO and publish appointing orders (signed by Chief of Staff, USCC). Rule on all challenges of an IO for cause IAW paragraph 103 and 105f.

    g. Brief and provide to the IO the following material:

        (1) Memorandum, subject: Deficient in Conduct, with all endorsements and enclosures.

        (2) Memorandum, MACC-O-RD, subject: Deficiency in Conduct, with 1st Endorsement.

        (3) IO appointment orders.

**RA014**

(4) The cadet's TAC file.

(5) The Regulations and Discipline Officer review of the case, if a review was done.

(6) Any other documents pertaining to the case.

h. Act as liaison between the IO and the SJA, if necessary.

i. Accomplish appropriate notifications of the results of the CI.

j. Coordinate as necessary with the IO to ensure timely completion of the hearing transcript (transmittal of CI proceedings) and receipt of original and one copy.

k. Attach evaluations provided by DPE, DMI, and the Dean's Office and those identified by the cadet, along with the Record of Conduct Investigation, and forward to the Commandant. Note for record any individuals who decline or fail to respond.

l. Upon receipt of the original and one copy of the transcript from the IO, forward a copy to the SJA for initial legal review.

m. Upon receipt of the transcript and initial legal review from SJA, determine if there is legal objection to further processing. If not, and if the Commandant determines that the case should go to the Superintendent, finalize the Commandant's recommendation as a forwarding document sending the original of the transcript with all exhibits and the SJA review back to the SJA. If there is no legal objection, the SJA will complete the final legal review and, following service on the cadet and expiration of the cadet's period to comment, will forward the packet to the Superintendent for action.

n. Coordinate with SJA to serve the cadet with a copy of the Commandant's recommendation, a copy of the final legal review for comment, and copies of all evaluations received. The cadet will acknowledge receipt of these documents in writing.

o. If the Commandant determines that the case should not go the Superintendent, then the Regulations and Discipline Officer will prepare the necessary documentation to place the cadet on conduct probation.

p. Accomplish appropriate notifications concerning the results of the legal review and Commandant's action/recommendation if there is no legal objection to further processing.

q. Accomplish further actions that may be directed by the Commandant or Superintendent.

r. Accomplish further actions that may be directed by the Secretary of the Army.

s. Maintain necessary records; ensure that a copy of the CI transcript is placed in the cadet's TAC file, regardless of outcome of the CI proceedings.

**115. Responsibilities of Investigating Officer (IO).**

a. Receive from Regulations and Discipline Officer and become thoroughly familiar with the material provided.

b. As quickly as possible after "a" above, arrange meeting with the cadet to determine the following:

(1) Whether the cadet intends to challenge the IO for cause. Notify the Regulations and Discipline Officer immediately of any challenges.

(2) Verification of witnesses the cadet intends to call and demerits the cadet intends to challenge.

**RA015**

CHAPTER 1, USCC REGULATION 351-1

(3)  Objections the cadet may have to any of the material contained in the TAC file, or other material to be presented to the CI.  Objections will be resolved by the Investigating Officer with advice (if necessary) from SJA or Regulations and Discipline Officer.  If advice is obtained, the name of the person providing such assistance should be reflected in the record.

(4)  Whether the cadet or any of the cadet's witnesses are scheduled for a written partial review (WPR) on the day the CI is targeted to convene.  The CI's schedule will be adjusted to ensure that cadets will not miss WPR's.

c.  Establish the date, time, and place to convene the CI.  Notify the cadet and the Regulations and Discipline Officer.  Arrange for tape-recording of the proceedings.

d.  Notify the cadet of the date, time, and place the CI will convene.  Notification of the cadet must be formal and will be made part of the record of proceedings.  Provide the cadet with letters notifying his or her cadet witnesses; it is the cadet's responsibility to deliver these letters.

e.  Receive any requests that may result in a delay in convening the CI. Any such requests will be in writing and will be answered in writing.  Both the request and the response will become part of the record of proceedings.  Notify the Regulations and Discipline Officer for concurrence, prior to rescheduling.

f.  Prepare a list of all witnesses to be called by the CI.

g.  Notify the cadet in writing of the names and organizations of all witnesses to be called by the CI.  This notification will be formal and will be made a part of the record of proceedings.

h.  Ensure the presence of witnesses to be called by the CI.

i.  Determine what classes will be missed by the cadet and cadet witnesses, and notify the Office of the Dean, Operations and Registrar.

j.  If calling any witness to appear before the CI will result in that individual missing any part of leave or summer training, immediately arrange a meeting with the witness, the deficient cadet, and the Investigating Officer. If circumstances permit, obtain the witness's testimony in writing at that meeting.

k.  If the cadet desires to call a witness who is not present at the Military Academy, the IO will determine if the witness is reasonably available and if the witness is needed to return to the Military Academy.  The IO will then seek BTO approval to direct the return.

l.  Coordinate the order in which witnesses will testify.

m.  Check with the Regulations and Discipline Officer for an update on the cadet's individual delinquency record.

n.  Ensure that the cadet's demerits and allowances have been properly computed and that totals are accurate.

o.  Ensure that all awards to be considered are pertinent to the period in question and that the awards do in fact pertain to the cadet whose case is being heard.

p.  Ensure that the cadet's rights in connection with the conduct investigation are being observed.

q.  Ensure that delinquencies which should have been processed as a single delinquency were in fact processed that way (e.g., "violated post limits, consumption within Fig 2-2, absent from taps inspection" rather than two or three separate awards for separate, but factually related, delinquencies arising from the same incident).

**RA016**

r. Maintain a record of the basis for each finding with regard to challenges of demerits, reduction of unchallenged demerits. These documents will become enclosures to the letter of transmittal forwarding the report of proceedings to the Commandant.

s. Prepare the meeting place.

t. Ensure that all individuals appearing at the conduct investigation including the cadet in question, are aware that the proceedings are being tape-recorded.

u. Call witnesses, and ensure that each is sworn in before testifying (see oath provided at paragraph 603).

v. Ensure that when the CI goes into closed session for deliberation, the cadet is excused from the room until recalled.

w. Render a finding and recommend a disposition as appropriate.

x. Prepare a transmittal of the CI proceedings; and authenticate the accuracy of the transcript and findings. Annotate USMA Form 2-10 and/or board(s) as to findings and date of each. Include the annotated USMA Form 2-10 as an enclosure to the transmittal. Deliver the original and one copy to the Regulations and Discipline Officer.

## 116. Findings.

a. The findings of the IO must be supported by a preponderance of the evidence (see Chapter 5, Rules of Evidence and Procedure). The IO findings will address:

(1) Whether each award of demerits is affirmed, reduced, or rescinded. For rescissions, the IO will amend the cadet's record thru the Regulations and Discipline Officer. For reductions, the IO will state the specific number of demerits and tours the award is reduced to.

(2) Whether the cadet is confirmed to be deficient in conduct or is declared proficient.

(3) If the cadets is confirmed to be deficient, the IO will make a recommendation IAW para 117 below.

(4) If the IO finds the cadet proficient, no disposition recommendation is necessary.

## 117. Recommendation if Deficient in Conduct.

a. Cadets who are deficient in conduct are subject to various sanctions pursuant to Regulations USMA. These sanctions are:

(1) Suspension
(2) Separation
(3) Suspended Separation
(4) Turn Back
(5) Conduct Probation

b. If the cadet is found deficient, the IO is required to make a recommendation to the Commandant on the disposition of the cadet.

## 118. Actions Subsequent to the Conduct Investigation.

a. Commandant's Actions.

RA017

(1) The Commandant reviews those cases forwarded thru the chain of command to him for decision. If the IO makes a finding that a cadet is deficient the case will be referred to the Commandant. The Commandant will review the CI findings and other "whole person" information regarding the cadet. In the event the Commandant elects not to place the cadet on probation, he will then make a recommendation to the Superintendent.

(2) The Commandant's determination that a cadet's record of performance does not warrant retention may result in his recommendation to separate the cadet.

(3) The Commandant's determination that a cadet's record of performance does warrant retention may result in the cadet being placed on conduct probation or a recommendation to the Superintendent to suspend, turn back, place on suspended separation, or retain (with or without probation) the cadet.

b. Superintendent's Actions. UP paragraphs l0.12 and 8.14c, Regulations USMA, the Superintendent, upon receiving the Commandant's recommendation, may direct retention (with or without probation), suspension from USMA, direct that the cadet be placed on suspended separation, direct the cadet be turned back to a lower class, or recommend to the Secretary of the Army that a cadet be separated from the Military Academy. If the Superintendent recommends separation, he may immediately suspend the cadet from the Military Academy, pending final action on the case by the Secretary of the Army.

c. Action by the Secretary of the Army (SA). The SA may direct separation, suspension, probation or retention with no action. In the unusual case wherein the SA elects to retain a cadet recommended for separation by the Superintendent because of a declared deficiency in conduct standing, the following provisions apply to that cadet upon his or her return to USMA: previous demerits and board awards given the cadet, which the SA does not rescind, remain in effect when the cadet's disciplinary case is resolved. In other words, the cadet's demerit record for the past six months or his or her board awards are not automatically erased upon an SA decision to retain the cadet.

## 119. Cadet Disciplinary Code.

**General: Use of the Cadet Disciplinary Code**. This chapter provides general categories, or articles, to distinguish infractions of USCC SOP for disposition under the Cadet Disciplinary System. When an infraction involves several articles, the commander should choose the most appropriate one for processing under Article 10. Article 10 is the authority given to commanders to impose punishment and the type and amount of punishment the commander may impose.

## Article 1. Failure to comply with Regulations, Orders, Instructions
Failure to comply with oral or written regulations, orders, or instructions through laxness, ignorance, or neglect. The disobedience of orders and regulations normally is more serious than a mistake in judgment. Orders are given with the expectation of compliance both in spirit and in letter.

## Article 2. Failure to Perform Duty
Failure to perform a duty, failing to assume a responsibility, evading a regulation permitting other cadets under one's command or control to evade their responsibility or regulations, and overlooking or failing to report breaches of regulations are all delinquencies which indicate poor motivation and a low concept of duty.

## Article 3. Delinquency in Accountability

a. Self-disciplined cadets who possess a strong sense of duty also report as ordered and maintain themselves within the spirit and intent of regulations. The cadet who willfully absents him or herself from the cadet area or post limits does not display the degree of self-discipline expected of cadets or future officers. The individual cadet is responsible for being present for duty and on time.

b. Cadets must learn to allow sufficient time for unknown circumstances and unforeseen delays in reporting. Being on time when a group or unit may be delayed because of an individual's tardiness, such as a return trip formation, is more important than being on time to an activity which affects only the individual. The seriousness

RA018

of tardiness is only partly indicated by the length of time involved. Tactical officers also consider the amount of judgment exercised by the cadet in attempts to report for duty.

c. Accountability Involving Lateness: Cadets are late when they arrive after the class, formation, or activity has started but before it is dismissed or ends; or after the Command Fall In has been given at a formation but before the accountability report is rendered by the immediate supervisor. d. Accountability Involving Absence: Cadets are absent when they fail to be at a prescribed location or place of duty during specified times.

### Article 4. Unsatisfactory in Appearance: Personal, Room, and Equipment
Appearance is a significant indicator of individual pride and unit discipline, morale, and esprit. For these reasons, cadets are responsible to ensure they meet and maintain the standards IAW the USCC SOP regarding their personal condition and appearance, as well as the condition and appearance of rooms and equipment. Cadets are expected to maintain an appearance appropriate for officers and cadets at all times.

### Article 5. Delinquency for Academic Requirements or Official Reports
The proper preparation and timely submission of official communications, records, reports, and academic writing/homework requirements at the Military Academy develop habits and attention to detail which are prerequisites to successful officership. Therefore, cadets should always prepare accurate and complete reports, academic papers, and required homework exercises and submit them on time. Academic instructors must be careful to differentiate between those deficiencies, which are solely academic in nature and should result in a lower academic grade and those which reflect a failure of duty or an obvious laxness in the accomplishment of such a duty.

### Article 6. Unsatisfactory Behavior
Those standards of manner, decorum, and conduct expected of a commissioned officer and a gentleman or lady are expected of cadets at all times. Unsatisfactory behavior is any behavior that is prejudicial to the good order and discipline within the Corps of cadets, and behavior that brings discredit upon the Corps, USMA, and the US Army. Reflecting discredit is defined as actions or words which would bring criticism against an organization; this requires that the individual is identifiable as a member of the Corps of Cadets or the U. S. Army.

### Article 7. Error in Judgment.
Cadets are expected to exercise good judgment at all times including cases not covered by instructions or cases in which orders are obviously illegal or inappropriate. Errors in judgment under this article are those decisions or actions by a cadet that cause serious effects. Decisions made under these circumstances reflect a cadet's maturity, initiative, experience, common sense, and ability to learn from past mistakes.

### Article 8. Failure in Security or Property Accountability and Safety
Failure to properly account for, safeguard, and/or secure property. Cadets are responsible to properly maintain and safeguard all government property and their own personal high dollar value property. Examples of such property include but are not limited to: military - radios, TA-50, training aids; personal property - CD players, compact disks, wrist watches, check books and cameras.

### Article 9. General Article
All other behaviors, disorders and neglects prejudicial to good order and discipline in the Corps of Cadets or Armed Forces and all conduct of a nature to bring discredit upon the Corps of Cadets or Armed Forces.

### Article 10. Commanding Officer Authority to Impose Punishment
Under authority of the Commandant, USCC, commanders within USCC may impose one or more of the following disciplinary punishments upon members of his or her command:

RA019

**120. Maximum Punishments Under Article 10.**

| Commanding Officer | Admonition or Reprimand | Demerit Award* | Extra Duty Tours | Withdrawal of Privileges | Restriction | Reduction in Rank |
|---|---|---|---|---|---|---|
| **Summarized:** | | | | | | |
| Platoon Leader** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| CDT Commander*** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| Company Tactical Officer*** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| **Company Grade:** | | | | | | |
| Company Tactical Officer | Yes | 20 | 20 | 30 Days | 14 Days | To one lower rank; CPL or below |
| Battalion Tactical Officer | Yes | 30 | 30 | 30 Days | 30 Days | To one lower rank; SGT and below |
| **Field Grade:** | | | | | | |
| Regimental Tactical Officer | Yes | 35 | 80 | 60 Days | 45 Days | To one or more lower ranks |
| Brigade Tactical Officer | Yes | 35 | 100 | 90 Days | 60 Days | To one or more lower ranks |
| Commandant | Yes | 35 | 120 | 120 Days | 90 Days | To one or more lower ranks |

\* Commanders do not award demerits. The demerit award is automatic and matches the award of tours for a maximum of 35 demerits ( e.g. 1 demerit per 1 tour)

\*\* Only when authority is delegated by the Company Commander.

\*\*\* Baseline punishment for a violation of Article 3, Delinquency in Accountability (for being absent or late), or Article 5, Delinquency in Academic Requirements or Reports, is 5 demerits and 5 extra duty tours and the loss of privileges for the following Saturday after punishment is imposed.

RA020

**121. Demerit Allowance Table.**

### DEMERIT ALLOWANCE TABLE FROM USCC REGULATION 351-2

#### Fourth Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---------|---------|---------|---------|---------|---------|
| 144 | 144 | 144 | 144 | 144 | 144 |

#### Transition from Fourth to Third Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---------|---------|---------|---------|---------|---------|
| 138 | 132 | 126 | 120 | 114 | 108 |

#### Third Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---------|---------|---------|---------|---------|---------|
| 108 | 108 | 108 | 108 | 108 | 108 |

#### Transition from Third to Second Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---------|---------|---------|---------|---------|---------|
| 105 | 102 | 99 | 96 | 93 | 90 |

#### Second Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---------|---------|---------|---------|---------|---------|
| 90 | 90 | 90 | 90 | 90 | 90 |

#### Transition from Second to First Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---------|---------|---------|---------|---------|---------|
| 87 | 84 | 81 | 78 | 75 | 72 |

#### First Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---------|---------|---------|---------|---------|---------|
| 72 | 72 | 72 | 72 | 72 | 72 |

Note:
(a) Fourth class cadets enter the demerit system on the day after they arrive in their letter companies during Reorganization Week.
(b) Demerits received by New Cadets during Cadet Basic Training do not count against these allowances.
(c) Periods of summer leave are included in the demerit periods and allowances for all classes.
(d) The Jan-Jun allowance for First class cadets is computed as if Jun were a full duty month.
(e) Each period runs from the first calendar day of the first month shown through the last calendar day of the last month shown.

1-12

RA021

## CHAPTER TWO

## GENERAL PROCEDURES FOR CONDUCT INVESTIGATIONS

**201. Preliminary Administration.**

a. A <u>Regimental Package</u> for a Conduct Review (CR) and referral to a Conduct Investigation (CI) or recommendation for Conduct Probation In-Lieu of a CI will be prepared by the regiment when a cadet is considered not in good standing due to their conduct. The package should be submitted to the Regulations and Discipline Officer within three working days one the cadet is identified by the Regimental Executive Officer (RXO) as be considered for Deficient in Conduct Status. A Regimental Package will have the following:

(1) A Cadet Record Brief (Backside) with the chain of command's recommendation as Deficient or Proficient and a recommendation for referral to a CI or Conduct Probation in Lieu of a CI. See Figure 2-1.

(2) Cadet Demerit Review (Demerit review is generated by the Regimental Disciplinary Clerk). See Figure 2-1A.

(3) Copies of all disciplinary actions or other supporting documentation i.e. Article 10's, Observation Reports, Letter of Reprimand, Counseling Statements, Evaluations etc.

(4) Tactical Officer recommendation. See Figure 2-2.

(5) Regimental Tactical Officer recommendation. See Figure 2-3.

(6) Brigade Tactical Officer decision memorandum. See Figure 2-4.

(7) Cadet's TAC file.

b. The Regulations and Discipline officer will provide:

(1) CI referral memorandum. See Figure 2-6.

(2) Cadet acknowledgement memorandum. See Figure 2-7.

(3) Conduct Investigation Officer Appointment memorandum. See Figure 2-8.

c. <u>Checking for Other Actions</u>. When the Regulations and Discipline Officer, USCC, receives the initial report that a cadet is deficient in conduct, he or she will initiate a check with the SAH, Cadet Personnel Officer and SJA to determine if other major actions may be pending against the cadet. The purpose of this check is to enable timely processing without interfering with other pending or on-going actions. The conduct review process will continue, but may be delayed short of actually convening the CI if issues arise concerning administrative double jeopardy or reasonable time to prepare a defense.

d. <u>Review of Documents</u>. When the conduct deficiency case is received from the regiment, the Regulations and Discipline Officer will review documents as follows:

(1) TAC File: Review for completeness and up-to-date entries.

(2) Correspondence from Regiment: Review memorandum to ensure all endorsements are present and complete; review enclosures for completeness and accuracy; review action for timeliness.

e. <u>Review of Recommendations</u>. The Regulations and Discipline Officer will review the regiment's recommendations. If both the Company and Regimental Tactical Officers have recommended referral to a CI, the Regulations and Discipline Officer will proceed with all actions related to notification and appointing and conducting the hearing. If both the Company and Regimental Tactical Officer recommend placing the cadet on Conduct Probation in Lieu of a CI or if they do not agree in their recommendations, the Regulations and Discipline Officer will review the case with the Brigade Tactical Officer (BTO). The BTO will then make a recommendation to the Commandant.

**RA022**

**202. Requests for Performance Evaluations**. When a cadet is referred to a CI, the Regulations and Discipline Officer will initiate correspondence requesting performance evaluations from the Office of the Dean, Department of Military Instruction, and Department of Physical Education. Notification and response may be by electronic mail. The request will be directed to the cadet's current (or most recent) instructors. The request will include the anticipated date of hearing and will specify that evaluations may be favorable, unfavorable or neutral. These evaluations will be used by the Commandant and/or Superintendent during their "whole person" review. The absence of some or all of the evaluations will not affect the validity of actions pursuant to this regulation.

**203. Notification of Cadet**. The Regulations and Discipline Officer will notify the cadet of the referral to a CI, all rights in connection with the conduct review process, the approximate convening date, and make available a copy of this regulation.

**204. Waiver of CI**. One of the cadet's rights in connection with the conduct review process is to waive appearance before the CI hearing. If the cadet waives a conduct investigation, such a waiver is an acknowledgement of conduct deficiency by the cadet, and the case is forwarded to the Commandant. At any point in the CI process, the cadet may waive his or her rights to a conduct investigation. The Commandant will decide whether to place the cadet on conduct probation or recommend to the Superintendent that the cadet be suspended, placed on suspended separation, turned back to a lower class, separated, or other appropriate action.

**205. CI Procedures for Exceeding Six-Month Demerit with Tours Allowance**.

    a. Procedures. The CI will consider all awards of demerits awarded with tours for offenses or time period under consideration.

    b. Findings. The cadet's demerit total is recomputed following the examination of all demerits awarded with tours, challenged and unchallenged. If the total is in excess of the total allowed for the six-month period, the cadet has been found to be deficient in conduct. If the total is equal to or less than the total allowed for the six-month period, the cadet has been found to be proficient in conduct and the hearing is terminated. The IO's findings will be forwarded to the Commandant, ATTN: Regulations and Discipline Officer, USCC.

**206. CI Procedures**.

    a. Procedures. The CI will examine the disciplinary actions IAW paragraph 102 of this regulation

    b. Findings. At the conclusion of the investigation, the IO will document their findings, make a finding as to whether the cadet is confirmed as deficient in conduct or is proficient, and recommend a disposition to the chain of command (Separation, Retention, Suspension, Turnback etc).

**207. CI Procedures for Violations of Conduct Probation Imposed in Lieu of a CI**.

    a. General. For Cadets that are remanded to Conduct Probation in lieu of a CI and subsequently violate the terms imposed by the Commandant of Cadets, a CI will be initiated to investigate to confirm or deny the violation and recommend a disposition to the chain of command.

    b. Procedures. The CI will examine that the Cadet under investigation:

      (1) Was remanded to conduct probation.

      (2) Did or did not violate the terms of the conduct probation.

    c. Findings. At the conclusion of the investigation, the IO will document their findings as to whether the cadet violated the terms of conduct probation, and recommend a disposition to the chain of command (Separation, Retention, Suspension, Turnback etc).

**208. CI Procedures for Violation of Conduct Probation Imposed as a Result of a CI**.

    a. General. For Cadets that are remanded to Conduct Probation as a result of a CI and subsequently violate the terms imposed by the Commandant of Cadets, a CI will be initiated to investigate to confirm or deny the violation and recommend a disposition to the chain of command.

**RA023**

b. <u>Procedures</u>.  The CI will examine that the Cadet under investigation:

(1) Was remanded to  conduct probation.

(2) Did or did not violate the terms of the conduct probation.

c. <u>Findings</u>.  At the conclusion of the investigation, the IO will document their findings, make a finding as to whether the cadet is confirmed as deficient in conduct or is proficient, and recommend a disposition to the chain of command (Separation, Retention, Suspension, Turnback etc).

**RA024**

| CRB (BACKSIDE) | NAME<br>Figure 2-1 | REASON FOR SUBMISSION<br>Conduct Review | CO<br>A2 | CLASS<br>2000 |
|---|---|---|---|---|

| 1. Company Tactical Officer recommendation:<br>Recommend Deficient and refer to CI. | 2. Regimental Tactical Officer recommendation:<br>Concur with Tactical Officer |
|---|---|

3. Strengths and weaknesses of the cadet are summarized as follows:

| STRENGTHS | WEAKNESSES |
|---|---|
| Mental, Technical – Cadet XXXXXXX has the ability to quickly grasp concepts<br>Planning, Execution – Cadet XXXXXXX can be an effective if he puts his mind to the task at hand | Interpersonal Skills – Cadet XXXXXXX is very condescending when dealing with peers and subordinates.<br>Team Building – Cadet XXXXXXX needs to learn to focus more on team versus individual accomplishments.<br>Duty -- Cadet XXXXXXX needs to constantly be told to do the simple things like get a haircut and shine your shoes. |

4. **General Trends in cadet performance:**

Cadet XXXXXXX has shown a consistently poor trend in performance. He is not intrinsically motivated to excel as a member of the Corps of Cadets. He only responds to direct supervision as experienced last semester when Cadet xxxxxx monitored his performance. If not directly supervised, he will consistently be in trouble.

a) **Academic.**

   High SAT scores indicate academic potential.

- No problems academically, very smart, probably not reaching his academic potential.
- Currently suspended as a member of the Debate Team.

b) **Military.**

- Received a D Military Development grade for last semester; received a B- during CFT detail as a Platoon Leader, and a D for mid term grade this semester.
- Last 58 Cadet Performance Reports  1 ACM, 11 UHCM, 30 LHCM, and 16 BCM.
- Did not fulfill his requirement to serve as a PFC with the Guard Detail until 20 November (directed by the BTO last February.)
- Possesses an apathetic attitude toward the Academy, which surfaces in many areas. He has failed to show the willingness to do the simple things like keep his room in BAG, shine his shoes, and press his uniform which he was subsequently punished under Article 10.

c) **Physical.**
- Failed the IOCT this semester.
- Displayed an apathetic attitude during Tennis Class. (POC: MAJ xxxxxx)

d) **Conduct**
- Completed punishment this semester from BTO Board for interfering with the Cadet Guard on 6 February 1999.
- Received a Summarized Article 10 for missing Breakfast Formation on 26 August 99.
- Received a Regimental Board for leaving post without authorization on 17 October 1999.

RA025

| CRB (BACKSIDE) | NAME<br>Figure 2-1 | REASON FOR SUBMISSION<br>Conduct Review | CO<br>A2 | CLASS<br>2000 |
|---|---|---|---|---|

**5. Potential:**
Cadet XXXXXXX has the intelligence to serve as a Commissioned Officer in the United States Army. However, he has not demonstrated the Army Values of Loyalty, Respect, Duty, nor Selfless Service. His potential to serve as an officer will remain low until he makes the decision to change his attitude and demonstrates that he is committed to excelling as a member of the Corps of Cadets.

| NAME (TAC): xxxxxxx<br>CPT, EN | SIGNATURE: | DATE: |
|---|---|---|
| NAME (RTO): xxxxxxx<br>LTC, FA | SIGNATURE: | DATE: |

## RECORD OF COUNSELING

NOTE: This 2d page of the backside CRB must be completed for cadets receiving an MD grade of D/F or for cadets failing academic courses.

| DATE(S) | COUNSELOR / DUTY POSITION | KEY POINTS |
|---|---|---|
| 15 Aug 2004 | xxx | Close out of the of the Spring SLDP, removal from the program |
| 6 AUG 2004 | xxx | Late to haircut formation 25 Aug 99<br>Missed Breakfast formation 26 Aug 99 |
| 31 AUG 2004 | xxx | Late to Class NE453 |
| 4 OCT 2004 | xxx | Late to Class SS478 |
| 8 SEP 2004 | xxx | Tac Counseling / Review OER Support Form |
| 4 OCT 2004 | xxx | Placing clothes in D2/Yearling Room |
| 18 OCT 2004 | xxx | Leaving post without authorization |
| 4 NOV 2004 | xxx | Verbal counseling informing him of Conduct Review & SLDP |
| 23 NOV 2004 | xxx | Signed SLDP |

Note all counseling conducted, not just related to MD / academic grades (e.g., chain of command performance counseling, disciplinary counseling, SLDM/SLDP counseling, etc.)

**RA026**

Figure 2-1A

Cadet Demerit Review

Note:  The Demerit Review is generated by the Regimental Disciplinary Clerk on the web based system.

RA027

MACC-O-          (MACC-O-    /DATE)(340d) 2nd End          TAC/Init/Phn #
SUBJECT: Deficient in Conduct  (Cadet _____)


Company Tactical Officer, Company ___, United States Corps of Cadets, West Point, New York
    10996   (DATE)

FOR  Regimental Tactical Officer, ___ Regiment, United States Corps of Cadets, West Point,
        New York  10996


1.    Recommend that Cadet _____, Company ___, Class of ___, declared deficient and be referred to a
Conduct Investigation for (reason).

2.  Cadet _____ conduct demonstrates a pattern of misconduct.

3.  On (date), I informed Cadet _____ of the above recommendation.

4.  Cadet's _____ Tac File is attached.


Encl                              Company Tactical Officer
                                  Signature Block




Figure 2-2


*NOTE:*        *In all Endorsements, a reason must be stated why the disposition is being made as such.*

RA028

MACC-O-          (MACC-O-      /DATE)        (340d)        3rd End        RTO/Init/Phn #
SUBJECT:  Deficient in Conduct  (Cadet _____)


Regimental Tactical Officer, ____ Regiment, United States Corps of Cadets, West Point,
   New York  10996  (Date)

FOR  Brigade Tactical Officer, United States Corps of Cadets, West Point, New York  10996


1.   Recommend that Cadet _____, Company ___, Class of ____, be declared deficient and referred to a
Conduct Investigation. He has exercised poor judgment on multiple occasions and appears to lack the maturity
to learn from his/her mistakes.

2.   On (date), I informed Cadet _____ of my recommendation.

3.   Cadet _____'s file is enclosed.


2 Encl                                                    Regimental Tactical Officer
                                                         Signature Block


Figure 2-3

**RA029**

MACC-O-RD                                                        Date

MEMORANDUM FOR Brigade Tactical Officer

SUBJECT: Conduct Review Options, <u>Cadet xxxxxxxx</u>

1. IAW USCC Regulation 351-2, Chapter 4, Conduct Status and Investigation, you have the following options regarding conduct reviews:

_____A. You may approve a CoC recommendation of, or personally determine, **Proficient**.

_____B. You may approve a CoC recommendation of, or personally determine, **Deficient in Conduct.** If you feel the cadet should be retained under remediation within the BTD, you may then **direct formal remediation** by the CoC. (please write in any special terms for the remediation in the "comments" section below.)

_____D. You may approve a CoC recommendation of, or personally determine, **Deficient in Conduct.** If deciding to recommend Commandant or Superintendent-level action, direct a **Conduct Investigation** to examine the Cadets conduct history and make an independent recommendation for disposition of the Cadet.

2. Comments/Special terms for Remediation:

Encl                                        xxxxx
Conduct Review Packet                       xxx, xx
                                            Regulations and Discipline Officer

Figure 2-4

**RA030**

MACC-O-RD                                                          Date


MEMORANDUM THRU  Regimental Tactical Officer, Third Regiment

FOR  Tactical Officer, Company C-2

SUBJECT:  **Remediation Program--Cadet XXXXX**, Company C-2, Class of 2001


1.  Effective immediately, Cadet XXXXX is in a Deficient in Conduct status.  The tactical officer will establish a remediation program for the cadet.  The format of the remediation program will be in general accordance with the SLDP in USCC SOP, Annex D.  The program objectives must be tied to the delinquent behavior and identify specific, measurable tasks, goals, and objectives.

2.  The terms of remediation will include the following:

    a.  Deficient in Conduct through December 2000.

    b.  Monthly SLDP counseling by the COC with a review of goals and objectives to include standards of performance at CTLT, AIAD, and your overall military development grade.

    c.  Consult with CPD for Cadet's overall well being.

    d.  Cadet may be "flagged" (withdrawal of all or part of the cadet's privileges) as determined by the Tactical Officer.

3.  Forward a copy of the SLDP, approved by the RTO, to the R&D Office, and place one copy in the cadet's TAC file.

FOR THE BRIGADE TACTICAL OFFICER:



                                  XXX
                                  XXX, XX
                                  Regulations and Discipline Officer


                              Figure 2-5

**RA031**

MACC-O-RD                                                                    Date

MEMORANDUM FOR  Cadet xxxx, Company C, Second Regiment, Class of 2002, United
                States Corps of Cadets, West Point, New York  10996-1692

SUBJECT:  Referral to a Conduct Investigation


1.  You are hereby notified that you are being referred to a Conduct Investigation (CI) which will make findings and recommendations concerning your reported conduct deficiency for receiving  **3 Field Grade Level Article 10s of 35 demerits**.

2.  You have the right to request that the CI convene, or to waive appearance before the CI.  If you waive appearance, the Commandant of Cadets will maintain  you deficient in conduct status and take action or make appropriate recommendations with regard to your retention or separation.  If you elect to appear before the CI, you have the following rights:

   a.  To receive written notice of the reported conduct deficiency and a list of all offenses and awards of demerits that resulted in the deficiency being reported.  Your regiment should already have accomplished this; notify this office if you do not have these documents and they will be provided.

   b.  To have a reasonable period of time to prepare a defense; that is, about five working days during the academic year and about three working days during periods when there are no academic attendance required.  As there are no other major actions concerning you at this time, **the CI will convene on or about xxxxxxxxx.**

   c.  To seek advice and assistance of legal counsel in the preparation of your case.  Counsel may be civilian legal counsel at no expense to the government, or a military lawyer assigned to the Defense Section of the Office of the Staff Judge Advocate, USMA, or both.  Legal counsel will not be present during the CI hearing.

   d.  To be present during the hearing, except during deliberations.

   e.  To testify or remain silent.  Remaining silent does not preclude introducing evidence, questioning or cross-examining witnesses, but does preclude your having to answer questions.

   f.  To challenge the investigating officer (IO) for cause.  The IO will rule on challenges.

   g.  To examine all records and documents to be considered by the CI, including the TAC File.

   h.  To object to evidence.  Subject only to certain limitations which you should discuss with legal counsel, anything which in the minds of reasonable persons is relevant and material to an issue may be accepted as evidence.  These proceedings are administrative in nature and therefore, the CI is not bound by the rules of evidence prescribed for trials by court martial.  The IO will make determinations concerning evidence.

   i.  To raise any issues related to your conduct history.  You may not challenge any punishments under Article 10 due to you have had the opportunity for a hearing on each individual disciplinary case.


Figure 2-6

RA032

MACC-O-RD
SUBJECT: Referral to a Conduct Investigation

    j.  To call reasonably available witnesses to support the challenges of regimental boards.

    k.  To question and cross-examine witnesses.

    l.  To present relevant written evidence in support of challenges of regimental boards.

    m.  To present your own oral and/or written arguments about your deficiency in conduct and your future as a Cadet at the United States Military Academy.

    n.  To receive a complete copy of the CI report of proceedings, with the letter of transmittal and all enclosures.

    o.  To be notified of witnesses who will be called by the CI.

3.  Your witnesses may include cadets, officers, or other reasonably available persons with knowledge of your conduct history or character as a Cadet.  Government funds are not authorized for the appearance of civilian witnesses.  The CI IO will assist you in notifying your witnesses to be present; however, it is your responsibility to ensure that they are present.  The IO will provide you with additional assistance if you request it in this regard.

4.  Witnesses will not be called either by you or by the CI with regard to whether you should be retained or separated, nor will witness statements be introduced.  This issue will be resolved by the Commandant on the basis of your overall cadet record and on the basis of written evaluations obtained by you and by the CI.

5.  You may waive any, all, or none of the above rights.

6.  If you intend to raise issues or challenges related to your conduct history, indicate so on the attached endorsement form which has been prepared for you.  Also indicate that you do or do not waive appearance before the CI; that you will or will not seek legal counsel; and the names of any witnesses you desire to appear in support of challenges of demerits.  **Return one copy of the endorsement form to the Regulations and Discipline Officer not later than 11 May 2002.**  Retain the other copy of this letter and the endorsement for your records.

7.  If you desire legal counsel, call extension 4541, Office of Defense Counsel, Office of the Staff Judge Advocate, USMA, to make an appointment.

FOR THE BRIGADE TACTICAL OFFICER:



Encl                                                      xxx xxx
Endorsement                                               xxx, xx
                                                          Regulations and Discipline Officer


Signature of Cadet _____   Date Recv'd_____


Figure 2-6

**RA033**

MACC-O-2 (MACC-O-RD/8 May 00) 1st End                    xxx xxx/jr/5185
SUBJECT: Referral to a Conduct Investigation

DA, Second Regiment, United States Corps of Cadets, West Point, New York 10996-1692    12 May 00

FOR Commandant of Cadets, ATTN: Regulations and Discipline Officer, United States Corps of
    Cadets, West Point, New York 10996

1. I acknowledge receipt of the basic letter. I understand my rights as explained in the basic letter and have made the
following decisions:

    a. I (do not waive) (waive) appearance before a conduct investigation.

    b. I (will) (will not) request legal counsel to assist in the preparation of my case.

    c. I (intend to raise the following issues/challenges related to my conduct history) (I will not raise any issues about my
conduct history):*

DATE OF OFFENSE                    DESCRIPTION OF OFFENSE                    DEMERITS

Figure 2-7

*NOTE: Continue on reverse if more space is needed.

2-13

**RA034**

MACC-O-2
SUBJECT: Referral to a Conduct Investigation

d. I request that (the following witnesses) (no witnesses):*

| NAME | CLASS/ RANK | COMPANY/ DEPARTMENT |
|------|------|------|
|      |      |      |

e. I request that the following individuals be requested to furnish information on my performance as a cadet. All have had direct recent opportunities to observe me.

| NAME | CLASS/ RANK | COMPANY/ DEPARTMENT |
|------|------|------|
|      |      |      |

2. I have retained a copy of this endorsement and of the basic letter.

Signature:_____ Date:_____

XXXXXXXXX
SGT, 04
C2

Figure 2-7

*NOTE: Continue on reverse side if more space is needed.

**RA035**

MACC-O-RD                                                    30 November 1999

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Conduct Investigation Officer Appointment

1. In accordance with paragraph 114f, Chapter 1, USCC Regulation 351-1, dated (        ) the following officer is appointed to serve as the investigating officer (IO) for a conduct investigation (CI).

> CPT(P) xxxxx xxxxxx
> Agency: D1
> Phone:   x3603

2. The purpose of the CI is to make findings concerning the reported conduct deficiency of Cadet xx  xxxxx, Company E, Third Regiment, Class of 2004.

3. The conduct investigation will convene on or about 2 December 2004.

FOR THE COMMANDANT OF CADETS:

> xxxxx
> COL, FA
> Chief of Staff

DISTRIBUTION:
Regs & Discipline Officer
CPT xxxxx
CDT xxxxx

Figure 2-8

RA036

## CHAPTER THREE

## INSTRUCTIONS TO THE CONDUCT INVESTIGATING OFFICER

**301. General.** The Investigating Officer should become thoroughly familiar with the contents of Cadet Disciplinary System, of USCC Regulation 351-2 and this regulation. Procedural or other questions that arise should be directed to the Regulations and Discipline Officer for resolution or coordination as necessary with the SJA and/or Commandant if they cannot be resolved.

**302. Investigating Officer Checklist.**

Receive the following material from Regulations and Discipline Officer:

_____ MEMORANDUM, Deficient in Conduct, w/all endorsements and Encls.

_____ MEMORANDUM, Conduct Investigating Officer Appointment Orders.

_____ Copies of all pertinent Disciplinary Actions, Letter of Reprimand, Evaluations etc.

_____ Cadet's TAC File.

_____ Any other pertinent documents.

Meet with the cadet to determine the following:

_____ Whether the cadet will challenge the IO for cause. Notify the Regulations and Discipline Officer immediately of any challenge.

_____ Obtain a signed Privacy Act Statement from the cadet if not provided one from the Regulations and Discipline Officer (see Fig 3-1).

_____ Finalize list of issues to discuss with the Cadet and or witnesses.

_____ Have the cadet review the TAC File and all other documents to be considered by the IO to determine if the cadet will object to any of the material. See sections on objections, paragraph 105h of this regulation and paragraph 2h in the notification memorandum (Referral to a Conduct Investigation) served on the cadet by the Regulations and Discipline Officer.

Complete the following:

_____ Establish a date, time and place to convene.

_____ Arrange for tape recording of the proceedings with the Regulations and Discipline Officer.

_____ Establish a list of witnesses to be called (see Fig 3-2 and Fig 3-6).

_____ Resolve any objections to material that has been reviewed by the cadet. THIS MAY HAVE TO BE DONE AGAIN AFTER THE CADET HAS REVIEWED ALL PERFORMANCE EVALUATIONS.

_____ If necessary, arrange a meeting with the cadet to resolve questions concerning availability of witnesses, acceptability of statements in-lieu of appearance before CI, objections to material, etc. (see Fig 3-3 for Written Testimony and Fig 3-4 for Telephonic Testimony).

3-1

**RA037**

Notify the cadet in writing of the following:

_____ Date, time and place the CI will convene; uniform to be worn (see sample at Fig 3-5).

_____ Witnesses to be called by the IO (see sample as Fig 3-6).

_____ Provide the cadet with letters notifying his or her witnesses of the date, time, place and uniform for the hearing (see sample at Fig 3-2). If is the cadet's responsibility to deliver the letters and ensure the presence of the witnesses that he/she requested for the CI. The IO must deliver letters addressed to witnesses that he/she is calling to the CI.

_____ Receive and act on any requests from the cadet that may result in a delay in convening the hearing. Such requests will be made and answered in writing (see sample at Fig 3-7). Notify the Regulations and Discipline Officer prior to any changes in the schedule.

_____ Ensure the presence of witnesses to be called by the IO.

_____ Coordinate with the cadet concerning the order in which witnesses will testify.

_____ Check with the Regulations and Discipline Officer for an update on the cadet's conduct record.

_____ Prepare the meeting place.

_____ Ensure that all documentary evidence to be considered is available and that the cadet has reviewed it.

_____ Ensure that the cadet and any witnesses are excused from the room during all closed sessions (deliberations).

_____ Announce the recommendation that will be made to the chain of command regarding the Cadet's status and disposition.

_____ Prepare a Transmittal of Conduct Investigation Proceedings (see Fig 3-8), original and two copies, with enclosures.

_____ Have the cadet report to the Regulations and Discipline Officer to receive his or her copy of the transmittal letter with enclosures. Do not send this material through distribution.

_____ Inform the cadet to submit, in writing, to the Commandant, any rebuttal to performance evaluations submitted in conjunction with the CI to the Regulations and Discipline Officer. The Regulations and Discipline Officer will attach any rebuttal to the CI and evaluations going to the Commandant for decision/recommendation.

_____ Deliver the original and two copies of the transmittal letter with enclosures to the Regulations and Discipline Officer. Also deliver the tape recording of the proceedings with each tape box identified by:

CI, Cadet _____, Class of _____
_____ thru _____, _____ 20____.
   (date)          (date)       (month)

IO: _____
      (rank and name)

RA038

**303. Guidelines for Enclosures and Exhibits**.

     a. Anything considered by the CI should be made an exhibit.  Records of Disciplinary Board Proceedings and material contained in the TAC File which was <u>particularly</u> significant to the CI will be made an exhibit.  Original documents from the TAC File will not be used; photocopies will be made.  The TAC File will be appended to the original CI package, and will not be assigned an exhibit number.

     b.  Any formal notifications to the cadet concerning convening the CI, witnesses to be called by the CI, postponing the CI, etc., will be an exhibit.

     c.  Any requests from the cadet concerning witnesses to be called will be made an exhibit, as will any requests that may result in a delay in the convening of the CI.

     d.  All exhibits should be listed and indexed in the order that they appear in the CI package.

**RA039**

## PRIVACY ACT STATEMENT

**AUTHORITY:** 10 USC section 3013 and Regulations, USMA

**PURPOSE:** The requested information will be used in evaluating your challenge to the disciplinary awards in question, and will form a basis for recommendations concerning disposition of this matter.

**ROUTINE USES:** Used by the Investigating Officer, appointing authority, and reviewing authorities in determining the facts in this matter, and in determining the facts in this matter, and in determining the appropriate action to be taken based on those facts. This information may be disclosed to members of the Department of Defense who need access to the information as part of their official duties. This information may be incorporated into your official personnel files, and may constitute the basis for adverse administrative or punitive action.

Disclosure is voluntary; failure to provide the requested information will result in decisions being made in this matter without the benefit of this information.

I hereby acknowledge being informed of the foregoing information concerning the Privacy Act.


_____
(Signature)

_____
(Cadet's Name-First, MI, Last)

_____
(Date)

Figure 3-1

RA040

CHAPTER 3, USCC REGULATION 351-1

**REQUIREMENT TO APPEAR AT A CI**


(IO's Office Symbol)                                                                                Date


MEMORANDUM FOR:

    NOTE:  It is acceptable to prepare one master copy and make photocopies of it, filling  in the blanks by hand.  Copies for inclusion in the record are not required.

SUBJECT:  Requirement to Appear at Conduct Investigation


1.      You have been identified as a witness in the proceedings of the Conduct Investigation concerning Cadet _____, Company _____, Class of _____.  You will be asked to testify concerning  (an award of demerits/a portion of the written evaluation you prepared/etc.).

2.      Report to (room/floor/building) at _____ hours, on (date) _____.

3.      The uniform is duty for military personnel.


                         (Signature Block)
                         Investigating Officer


Figure 3-2

RA041

## CERTIFICATE: WRITTEN TESTIMONY

### CERTIFICATE

(NOTE: This is a general format for use when written, sworn testimony is obtained prior to the convening of the CI and the individual who provided it is unavailable to sign it in its final form. Such testimony will be typed either on DA Form 2823 or on plain bond paper. If on Form 2823, any continuation sheets will be identified as indicated by instructions on the Form 2823. If on plain bond paper, the first page will contain identification material as required on the Form 2823 and any continuation sheets will be identified as if they were continuations of a Form 2823 or as "not used." The document originally provided by the individual will be appended to the typed version.)

On,    (Date)    , (title, name, address  provided written testimony concerning matters pertaining to the Conduct Investigation which is to hear the case of Cadet _____ . An oath (was) (was not) administered to _____ at the time the written testimony was delivered, so it may be considered as (sworn) (unsworn) evidence provided (on behalf of Cadet _____) (at the request of the Investigating Officer).

The document which was delivered has been typed, but _____ was unavailable to sign the typed version due to (PCS, departure, on leave, etc.) The typed material follows this certificate; appended to it is the document which was provided by _____ .

I certify that the typed material is, to the best of my knowledge and ability, a true representation of the document provided by _____ .


(Signature Block)
Investigating Officer


I have reviewed the attached documents and do not desire to question/cross-examine the originator.


(Signature Block)
The Deficient Cadet


Figure 3-3

**RA042**

**CERTIFICATE: TELEPHONIC TESTIMONY**

CERTIFICATE

On (date) , I spoke telephonically with (title, name) , located at (complete address, including zip code) , telephone number (include area code), concerning matters pertaining to the Conduct Investigation which is convening to hear the case of Cadet (cadet's name here). . (Person called) provided sworn testimony requested by (the deficient cadet's name) . (The Conduct Investigation Investigating Officer-President). Cadet (name here) (was present) (waived right to be present) during the telephonic conversation, and Cadet agreed to accept the telephonic communication as evidence.

I certify that the following is an accurate summary of the testimony provided by (person called)

(SUMMARY)

(Signature Block)
Investigating Officer

I have reviewed this summary and do/do not desire to question/cross-examine (the individual called) further. (I was present/waived right to be present during the telephone conversation and asked all pertinent questions at that time.)

(Signature Block)
(The deficient cadet)

Figure 3-4

**RA043**

**NOTIFICATION OF CONVENING OF CONDUCT INVESTIGATION**

(IO's Office Symbol)                                                                                          Date

MEMORANDUM FOR Cadet _____, Company ____, ____ Regiment, Class of _____,
                                                    USCC, West Point, New York 10996

SUBJECT: Notification of Convening of Conduct Investigation

1.      You will appear before a Conduct Investigation on _____.

2.      The Conduct Investigation hearing will convene at _____ hours on (the above date) in (room, floor, building)_____.

3.      The uniform is the duty uniform.


                                                                (Signature Block)
                                                                Investigating Officer

CF:
RTO, _____ Regiment
Regulations and Discipline Officer, USCC

Figure 3-5

**RA044**

## WITNESSES TO BE CALLED BY INVESTIGATING OFFICER

(IO's Office Symbol)                                                                                    Date

MEMORANDUM FOR  Cadet _____, Company ____, _____ Regiment, Class of ____,
                                    USCC, West Point, New York  10996

SUBJECT:  Witnesses to be called by Investigating Officer

You are hereby notified that I intend to call the following individuals to provide testimony in your Conduct
Investigation hearing:

        1._____

        2._____

        3._____

        4._____


                                               (Signature Block)
                                             Investigating Officer

Figure 3-6

**RA045**

CHAPTER 3, USCC REGULATION 351-1

**REQUEST FOR POSTPONEMENT OF CI**

MACC-                                                                                     Date

MEMORANDUM FOR (Rank, Name)          Investigating Officer

SUBJECT:  Request for Postponement of Conduct Investigation

1.      I hereby request that the Conduct Investigation scheduled to convene at ___ hours on _____ (date) be postponed for the following reason(s):

2.      Request that the hearing be rescheduled to convene at ___ hours on _____ (date).

                                            Signature:

_____              Printed Name:

_____              CDT Rank, CO., Regt:        _____

(IO's Office Symbol)  (Above Date)   1st End
SUBJECT:  Request for Postponement of Conduct Investigation

DA, HQ, ....

FOR  Cadet _____....

Approved for the postponement of ___ days.  The Conduct Investigation will convene at ___ hours on _____ (date) in the same location as stated in the letter dated _____, Subject:  Notification of Convening of Conduct Investigation.

                                            (Signature Block)
                                            Investigating Officer

Figure 3-7

3-10

**RA046**

CHAPTER 3, USCC REGULATION 351-1

## TRANSMITTAL OF CI PROCEEDINGS

(IO's Office Symbol)                                                                                      Date

MEMORANDUM FOR Commandant of Cadets, United States Corps of Cadets, West Point,
New York  10996

SUBJECT:  Transmittal of Conduct Investigation (CI) Proceedings, Cadet _____, Class of _____, Company _____, _____ Regiment

1.    Transmitted herewith is the record of proceedings of the CI which convened on _____ to hear matters pertaining to the conduct deficiency of Cadet _____, Class of ____, Company ____.  Cadet _____ was declared deficient in conduct due to:  (select as applicable):

         (1)  A violation of the terms of Conduct Probation.

         (2)  Those demerits awarded in a six-month demerit with tour period in which a cadet exceeded his or her demerit with tours allowance.

         (3)  Two alcohol policy violations.

         (4)  Three Field Grad Article 10 actions of 35 demerits.

### (Finding- Proficient vs Deficient)

2.  The CI investigated the Cadet's pattern of behavior and finds that Cadet _____ (select as applicable):

         -is Deficient in Conduct.

                  or

         -is Proficient in Conduct.

My finding is based upon _____.

Figure 3-8 (PAGE 1)

**RA047**

3.  Base upon this Cadet's behavior and conduct I recommend the following (disposition)_____.

Range of Recommendations:
-Separation
-Suspended Separation
-Suspension
-Turnback
-Delay in Graduation
-Conduct Probation
-Enrollment in a Special Leader Development Program
-Other

3.   A Summarized Report of Proceedings is attached, as well as Cadet ___'s conduct record.  All exhibits offered or considered as evidence in the CI are listed and indexed accordingly.

4.   I authenticate and certify that the attachments to this transmittal of CI proceedings are complete and accurate, and that the findings and recommendations are correct.


5 Encl                                               NAME
1.  Summary of Proceedings                          RANK, BRANCH
2.  Disciplinary Actions                            Investigating Officer
3.  Cadet Record Brief
4.  Evaluations
5.  Exhibits A thru L


Figure 3-8 (PAGE 2)

RA048

**SUMMARIZED REPORT OF PROCEEDINGS**
Cadet ___, Class of ___, Co __, USCC
Conduct Investigation, (DATE)

I. SUMMARY OF CONDUCT RECORD REVIEW. Example: I reviewed 3 field grade article 10 actions for a total of 195 demerits or I reviewed the violation of conduct probation. All disciplinary actions were awarded in accordance with the Maximum Table of Punishments under USCC Regulation 351-2, dated ____ or the Cadet did violate the provision set forth by the Commandant of Cadets as terms of conduct probation dated _____.

II. ISSUES/CHALLENGES BY THE CADET. Example: The Cadet objected to the admission of a formal counseling statement by his/her Platoon Sergeant admonishing her for being late to class on three different occasions. She claimed that he was only late on 2 occasions or that the BN Article 10 administered on date_____ exceeded the maximum allowable punishment.

III. WITNESS CALLED.

    Witness #1-Summary of testimony.
    Witness #2-Summary of testimony

IV. INVESTIGATING OFFICER'S DIALOG WITH THE CADET ABOUT HIS OR HER BEHAVIOR.

    Summary of questions, answers, and dialog.

V. FINDINGS.

    (1) The preponderance of documentary evidence, testimony and statements indicate that Cadet _____ is found to be deficient or is declared proficient. The disciplinary Actions were/were not, overall, properly constituted, reviewed and approved. The actions were not in excess of the guidelines established by the Maximum Table of Punishments in USCC Regulation 351-2.

    (2) I recommend that the chain of command take the following action_____.

    (3) My rationale is as follows:_____.

              NAME
              RANK, BRANCH
              Investigating Officer

Figure 3-9

RA049

## CHAPTER FOUR

## CONDUCT INVESTIGATION FORMAT

**401. General**. A Conduct Investigation (CI) is convened by the Commandant to provide cadets a hearing, which is informal and nonadversarial in nature. A CI Investigating Officer (IO) makes a finding regarding the deficiency or proficiency of a cadet and recommends to the chain of command a disposition at the conclusion of the CI.A Conduct Investigation (CI) provides cadets a hearing, which is informal and nonadversarial in nature. A CI Investigating Officer (IO) conducts a hearing which reviews a Cadet's disciplinary history and information based upon the whole person concept. The IO makes a finding whether a cadet is or is not deficient in conduct and recommends to the chain of command a disposition based upon the information presented.

:

The CI will examine the pattern of documented behavior of the deficient cadet. The IO conducts a hearing to investigate:

(1) A violation of the terms of Conduct Probation.

(2) Those demerits awarded in a six-month demerit with tour period in which a cadet exceeded his or her demerit with tours allowance.

(3) Two alcohol policy violations.

(4) Three Field Grad Article 10 actions of 35 demerits.

**402. Investigation and Hearing Format.**

*Convene the Investigation by advising the cadet of the following*:

THIS INVESTIGATION, UNDER AUTHORITY OF MEMORANDUM, SUBJECT _____, DATED _____, DEPARTMENT OF THE ARMY, HEADQUARTERS, UNITED STATES CORPS OF CADETS, WEST POINT, NEW YORK, IS CONVENED TO CONSIDER YOUR DEFICIENCY IN CONDUCT.

*Announce the Purpose of the Hearing*:

THIS CONDUCT INVESTIGATION HAS BEEN ESTABLISHED BY THE COMMANDANT OF CADETS TO PROVIDE YOU AN INFORMAL HEARING TO INVESTIGATE YOUR DEFICIENT IN CONDUCT STATUS. THIS INVESTIGATION WILL CONSIDER MATTERS THAT ARGUE BOTH FOR AND AGAINST YOUR CONTINUATION IN A DEFICIENT STATUS OR A SUBSEQUENT RECOMMENDATION TO THE CHAIN OF COMMAND FOR PROFICIENCY.

*Establish whether the cadet's rights have been observed up to this point in the conduct review process*:

YOUR WERE ADVISED OF YOUR RIGHTS IN CONNECTION WITH THE CONDUCT REVIEW PROCESS BY A LETTER DATED _____, SUBJECT: NOTIFICATION OF REFERRAL TO A CONDUCT INVESTIGATION. I AM GOING TO ASK YOU IF THOSE RIGHTS HAVE BEEN OBSERVED UP TO THIS POINT, AND THEN ASK QUESTIONS WITH REGARD TO CERTAIN OF THOSE RIGHTS.

BEFORE I ASK YOU THESE QUESTIONS, I AM GOING TO ADMINISTER THE OATH FOR SWORN TESTIMONY. ONCE YOU ARE SWORN, YOU REMAIN UNDER OATH FOR THE DURATION OF THESE PROCEEDINGS AND NEED NOT BE SWORN AGAIN AT ANY TIME.

PLEASE STAND AND RAISE YOUR RIGHT HAND.

RA050

- - - - - - - - - Administer the oath for sworn testimony - - - - -- - - -

TO THE BEST OF YOUR KNOWLEDGE AT THIS TIME, HAVE ANY OF YOUR RIGHTS NOT BEEN OBSERVED, AND IF SO, WHICH OF THEM WERE NOT?

\* \* \* Cadet's Response \* \* \*

HAVE YOU HAD A REASONABLE PERIOD OF TIME TO PREPARE YOUR CASE, INCLUDING ADEQUATE TIME FOR CONSULTATION WITH LEGAL COUNSEL?

\* \* \* Cadet's Response \* \* \*

DO YOU INTEND TO CHALLENGE ME AS THE INVESTIGATING OFFICER, AND IF SO, FOR WHAT CAUSE?

\* \* \* Cadet's Response \* \* \*

DO YOU INTEND TO ANSWER QUESTIONS WITH REGARD TO YOUR CONDUCT DEFICIENCY, AND TO TESTIFY ON YOUR OWN BEHALF, OR DO YOU INTEND TO EXERCISE YOUR RIGHT TO REMAIN SILENT?

\* \* \* Cadet's Response \* \* \*

HAVE YOU HAD THE OPPORTUNITY TO EXAMINE ALL DOCUMENTS TO BE CONSIDERED BY THIS INVESTIGATION, INCLUDING YOUR TAC FILE, AND WOULD YOU LIKE THE OPPORTUNITY NOW TO EXAMINE OR RE-EXAMINE THESE DOCUMENTS?

\* \* \* Cadet's Response \* \* \*

(**Note**: If the cadet desires to examine/re-examine any or all documents, present them to her or him. State for the record that the Investigation remained in session while the examination took place).

DO YOU OBJECT TO ANY OF THESE DOCUMENTS?

\* \* \* Cadet's Response \* \* \*

(**Note**: If objections are made, refer to the section on "Rules of Evidence and Procedure" for resolution of the objections).

IN YOUR RESPONSE TO THE LETTER WHICH INFORMED YOU OF YOUR RIGHTS, YOU INDICATED THAT YOU WOULD TAKE ISSUE WITH _____. IS THAT STILL YOUR INTENTION?

\* \* \* Cadet's Response \* \* \*

HAVE YOU HAD THE OPPORTUNITY TO ARRANGE FOR THE PRESENCE OF WITNESSES ON YOUR BEHALF, OR TO OBTAIN WRITTEN EVIDENCE FROM INDIVIDUALS WHO WILL NOT BE PRESENT?

\* \* \* Cadet's Response \* \* \*

*If the cadet is challenging any demerits*:

THE FOLLOWING PROCEDURES WILL GUIDE THE CONDUCT OF THIS HEARING:

**RA051**

DURING THE ISSUE RESOLUTION PHASE, YOU WILL STATE BASIS OF YOUR ISSUE THE NUMBER OF DEMERITS AWARDED AND INDICATE WHETHER OR NOT YOU ARE CALLING ANY WITNESSES IN SUPPORT OF THE CHALLENGE, AND PRESENT ANY WRITTEN DOCUMENTS IN SUPPORT.

I WILL DIRECT WHEN ANY WITNESSES ARE TO BE CALLED.  YOU WILL INTRODUCE YOUR WITNESSES BY NAME, CLASS, CADET RANK AND POSITION, AND STATE THE PURPOSE FOR WHICH THE WITNESS IS APPEARING AND THE NATURE OF THE ANTICIPATED TESTIMONY.

I WILL STATE FOR THE RECORD THE SAME INFORMATION CONCERNING ANY WITNESSES I MAY CALL.

ALL WITNESSES WILL BE SWORN.

YOU WILL INITIATE THE QUESTIONING OF ANY WITNESSES CALLED BY YOU, AND YOU MAY ALSO ASK QUESTIONS FOLLOWING ANY ASKED BY ME.

I WILL INITIATE THE QUESTIONS OF ANY WITNESSES I CALL, AND YOU MAY QUESTION THESE WITNESSES AS WELL.

AT THE CONCLUSION OF THE PRESENTATION OF ALL EVIDENCE PERTINENT TO YOUR DISPOSITION AND OUR DIALOG ABOUT YOUR BEHAVIOR, YOU WILL BE EXCUSED WHILE I REACH A FINDING.  WHEN A FINDING HAS BEEN REACHED, YOU WILL BE RECALLED AND THE FINDING WILL BE ANNOUNCED.

MY FINDINGS WILL BE FORWARDED THRU THE CHAIN OF COMMAND.  MY FINDINGS WILL DOCUMENT WHETHER OR NOT YOU ARE FOUND TO BE DEFICIENT AND ALSO RECOMMEND A DISPOSITION.  IF YOU ARE FOUND TO BE DEFICIENT, THE COMMANDANT WILL DECIDE WHETHER TO PLACE YOU ON PROBATION OR TO RECOMMEND TO THE SUPERINTENDENT THAT YOU BE SEPARATED, SUSPENDED OR PLACED ON SUSPENDED SEPARATION, TURNED BACK TO A LOWER CLASS, OR SUBJECTED TO OTHER APPROPRIATE ACTIONS.

DO YOU HAVE ANY PROCEDURAL QUESTIONS AT THIS TIME?

* * * Cadet's Response * * *

THIS HEARING WILL NOW PROCEED.

-THE HEARING OFFICER WILL REVIEW THE DOCUMENTATION WITH THE CADET.

-THE CADET WILL BE PROVIDED THE OPPORTUNITY TO RAISE CHALLENGES PERTAINING TO THEIR RECORD, PRESENT EVIDENCE AND CALL WITNESSES.

-THE IO WILL DISCUSSES AND RESOLVE ANY CADET CHALLENGES AND CONDUCT DIALOG TO INVESTIGATE THE DEFICIENCY OR OTHER ISSUES ASSOCIATED WITH THE CADET'S BEHAVIOR PATTERN.

*Prepare the final report for the Commandant.*

YOU WILL BE PROVIDED WITH A COMPLETE REPORT OF THESE PROCEEDINGS, INCLUDING ALL ENCLOSURES, AND EXHIBITS SUBMITTED FOR THIS INVESTIGATION.  THE COMMANDANT WILL REVIEW THE REPORT, AND IF HE OR SHE RECOMMENDS OTHER THAN PROBATION, IT WILL ALSO BE REVIEWED BY THE OFFICE OF THE USMA STAFF JUDGE

RA052

ADVOCATE AND THE SUPERINTENDENT OF THE MILITARY ACADEMY.  IF THE
SUPERINTENDENT RECOMMENDS SEPARATION, THE CASE WILL BE FORWARDED TO THE
SECRETARY OF THE ARMY FOR FINAL ACTION.

DO YOU HAVE ANY QUESTIONS?

* * * Cadet's Response * * *

THIS HEARING IS ADJOURNED.

**403. Investigating Officer Support.**  The IO may consult with the Staff Judge Advocate or the Regulations and
Discipline Officer at any time.

**RA053**

**CHAPTER FIVE**

**RULES OF EVIDENCE AND PROCEDURES**

**501. Rules for Conduct of Proceedings.**   Applies to Conduct Investigations convened pursuant to Paragraph 10.11, Regulations for the United States Military Academy.

a. Proof of Facts.

(1) General.  Facts and circumstances relevant to the matter under investigation are most often proved or disproved, either directly (direct evidence) or through inferences (circumstantial evidence) by:  real (tangible) evidence, documentary evidence, testimony or statements of witnesses, and matters of universal knowledge of which official notice may be taken without proof.  The fact that an item of evidence does not fit within these categories does not prevent its admission if it is relevant.

(2) Real Evidence.  A tangible object (e.g., weapon, clothing, and fingerprint) which is relevant to the subject of the inquiry is real evidence.  Whenever an item of real evidence would aid in establishing the existence or nonexistence of a fact, that item, or a photograph, description, or other suitable reproduction of it should be included in the report of proceedings, together with any statements of witnesses necessary to identify the item and verify the accuracy of the reproduction.  If the physical layout of a building, room, or other place is relevant, the IO, together with respondent may visit the scene, if practicable.  In any event, a diagram should be included in the record.  The IO should not overlook the value of his or her own observations respecting real evidence.

(3) Documentary Evidence.  Documentary evidence consists of records, reports, letters, and other written, printed, or graphic materials which indicate the existence or nonexistence of a fact.  The IO should be alert to discover all such evidence relevant to the matter under inquiry and to include the originals or copies in the report.

(4) Testimony or Statements of Witnesses.  Oral or written accounts of matters usually constitute an indispensable part of the evidence considered in an investigation.

(5) Official Notice.  Official notice may be taken of facts which are of common knowledge (e.g., general facts and laws of nature, general facts of history, location of major elements of the Army, organization of the Department of Defense and its components); there is no need to obtain specific evidence to prove such facts.  Official notice includes, but is not limited to, those matters of which judicial notice may be taken (see MRE 201, Part III, MCM, 1984).  The record of proceedings should reflect matters which the IO officially notices.

b. Witnesses.

(1) General.  There is no authority to subpoena witnesses to appear and testify at the hearing.  Military personnel and Federal civilian employees, however, may be ordered to do so by an appropriate commander or supervisor.  Other civilians who agree to appear may be issued invitational travel orders in certain cases (see appropriate portions of the Joint Travel Regulations); this must be approved by the Staff Judge Advocate.  Each witness should be informed of the nature of the investigation before his or her statement or testimony is taken.  Appearance as a witness is an official duty for both military personnel and Federal civilian employees, and takes precedence over other duties, including cadet duties.  Considerations in determining the necessity of a witness' in-person testimony include the relevancy of the testimony, whether it is cumulative, whether its significance outweighs the delay, expense, or difficulty in obtaining it, and whether reasonable alternatives, such as telephonic testimony, or written statements provided by the witness, are available.  Witnesses will not be called to give testimony as to the character and performance of the respondent.  If witnesses' personal testimony is determined to be necessary, and if they are determined to be reasonably available, written notice should ordinarily be given to them to help ensure their presence at the investigation.

(2) Treatment of Witnesses:  Rights Warning.  No military witnesses will be compelled to incriminate themselves, to answer any question the answer to which could incriminate them, or to make a statement or produce

RA054

evidence that is not material to the issue and that might tend to degrade them (see Article 31, UCMJ). No witnesses not subject to the UCMJ will be required to make a statement or produce evidence that would deprive them of rights against self-incrimination under the Fifth Amendment of the U.S. Constitution. When a military witness is suspected of an offense under the UCMJ, the witness' rights under Article 31 will be explained; this should be done using the procedure for explaining rights set forth on DA Form 3881 (Rights Warning Procedure/Waiver Certificate). The IO should protect all witnesses against improper questions, unnecessarily harsh or insulting treatment, or unnecessary inquiry into personal affairs.

(3) Attendance as Spectators. Witnesses other than the cadet whose conduct is the subject of investigation normally will not be present at the investigative proceedings, except when they are testifying. In some cases, however, it is necessary to allow an expert witness to hear evidence presented by other witnesses in order that she or he may be sufficiently advised of the facts to give informed testimony as to the technical aspects of the case. In such instances, the record of proceedings should reflect what witness was present during the testimony of other witnesses. As an exception to these provisions, witnesses may remain in the hearing room following their testimony, at the discretion of the IO.

(4) Testimony or Statements. Witness testimony is normally elicited by questions and answers during a hearing. Written statements may also be considered, whether sworn or unsworn, whether made before or during the investigation, and whether or not the person making the statements also testifies. Witness statements obtained during collateral investigations (e.g., CID, MPI) also may be used, as may investigative and other official reports. A witness may be asked to confirm a prior written statement (which will first be made an exhibit), but she or he is subject to questioning on the substance of such statement both by the IO and the respondent. Witness testimony may be taken telephonically, under circumstances by which the IO may reasonably conclude that the witness' identity is as claimed.

(5) Discussion of Evidence Presented. The Investigating Officer will direct military and civilian witnesses who are subject to Army authority, and request other witnesses, not to discuss their statement or testimony with other witnesses, or with persons who have no official interest in the proceedings, until the investigation is completed.

c. Spectators. Normally, the members of the respondent's family, members of the Corps of Cadets, Department of Defense personnel with an official interest in the proceedings may attend as spectators (Paragraph 10.14, Regs USMA). The general public and media representatives may not attend unless approval is obtained from the Commandant in accordance with paragraph 10.14, Regs USMA. The IO is authorized, with the concurrence of the legal advisor, to exclude some or all spectators, individually or by category, from portions, or all of the proceedings, if the subject matter is classified, inflammatory, or otherwise exceptionally sensitive, or if necessary to preserve the decorum or integrity of the proceedings, as in cases of inappropriate behavior by spectators.

d. Rules of Evidence.

(1) General. These proceedings are administrative and not judicial in nature. Therefore, the rules of evidence prescribed for trials by courts martial or for court proceedings generally are not applicable. Accordingly, subject only to the limitations set forth in "3" below, anything which in the minds of reasonable persons is relevant and material to an issue may be accepted as evidence.

(2) Best Evidence. An investigation is not precluded from considering any evidence merely because there may be better evidence available to prove the same fact. The IO should make a reasonable effort to procure the best evidence reasonably available under the circumstances.

(3) Limitations. Investigations under this regulation are not subject to exclusionary rules or other evidentiary rules precluding the use of relevant evidence. The following limitations, however, do apply:

(a) Privileged Communications. Military Rules of Evidence 502 and 503, Manual for Courts-Martial, United States, 1984, concerning privileged communications between client and attorney and clergy apply.

5-2

RA055

(b) Polygraph Tests. No evidence of the results, taking, or refusal of a polygraph (lie detector) test will be received or considered by the IO. This does not prohibit the chain of command from considering the results of polygraph tests if and when appropriate.

(c) Self-Incrimination.

1. No witness, or the cadet whose conduct is the subject of this investigation, will be compelled to incriminate him/herself or to answer any questions, the answer to which might tend to incriminate him or her or to make a statement or produce evidence if the statement or evidence is not material to the issue and might tend to degrade him or her. A witness not subject to the UCMJ will not be required to make a statement or produce evidence which would deprive him or her of his or her rights under the Fifth Amendment of the United States Constitution. However, the person must state specifically that his or her refusal to answer a question is based on the protection afforded by the Fifth Amendment. Whenever it appears appropriate and advisable to do so, the rights of a witness, or the cadet whose conduct is the subject of the investigation, should be explained by the IO using the procedure set forth on DA Form 3881.

2. The right to invoke Article 31 or the Fifth Amendment is personal to the individual. No one else may assert the right for him or her, and he or she may not assert it to protect anyone other than him/herself. An answer tends to incriminate a person if it would make it appear that he or she is guilty of a crime.

3. In appropriate cases a witness may be provided a grant of testimonial immunity by appropriate authority and required to testify notwithstanding Article 31 or the Fifth Amendment. The Staff Judge Advocate should be consulted for additional guidance.

4. Involuntary Admissions. A confession or admission obtained by unlawful coercion or inducement likely to affect its truthfulness will not be accepted as evidence. The fact that a respondent was not advised of his or her rights under Article 31, UCMJ, or the Fifth Amendment of the United States Constitution, or of his or her right to a lawyer does not, of itself, prevent acceptance of the confession or admission as evidence.

5. Bad Faith Unlawful Searches. If members of the Armed Forces, acting in their official capacity (e.g., military policeman, commander, honor investigator), conduct or direct a search that they know is unlawful under the Fourth Amendment, United States Constitution, as applied to the military community, evidence obtained as a result of that search may not be accepted or considered against any respondent whose rights were violated by the search. Such evidence is acceptable only if it can reasonably be determined by the IO that the evidence would inevitably have been discovered. In all other cases, evidence obtained as a result of any search or inspection may be accepted even if it has been or could be ruled inadmissible in a criminal proceeding.

e. Ruling on Procedural Matters. All rulings on procedural matters (motions, objections to the introduction of evidence, and to other matters, delays, continuances, challenges to the IO) are made by the IO. The IO may receive advice from the Regulations and Discipline Officer or Office of the Staff Judge Advocate on any question. The advice received and the name of the individual furnishing the advice should be made a matter of record.

f. Communications with the Appointing Authority. If in the course of the investigation it appears there are circumstances which may cause the appointing authority to consider enlarging, restricting, or terminating the proceedings or canceling or otherwise modifying any instruction in the original appointment, the Investigating Officer should report the matter to the appointing authority with recommendations.

g. Findings. The findings of the IO must be supported by a greater weight of the evidence than that which supports a contrary conclusion, that is, evidence which, after considering all evidence presented, points to a particular conclusion as being more credible and probable than any other conclusion. The weight of the evidence is not determined by the number of witnesses or volume of exhibits, but by considering all the evidence and evaluating such factors as the consistency or inconsistency of various items of evidence, the witness' demeanor, opportunity for knowledge, information possessed, ability to recall and relate events, and other indications of veracity.

RA056

**502. Post Conduct Investigation Hearing Actions.**

a. <u>Review Process</u>.

(1)  Report of Proceedings.  A summarized report of proceedings will be prepared in all CI cases (see Figure 3-9).  The Regulations and Discipline Officer is responsible for administrative assistance to the IO in preparing the transmittal letter and it's enclosures.

(2)  Certification and Authentication.  The IO will certify the accuracy of the summarized report of proceedings and authenticate the findings and recommendations.

(3)  Legal Review.  In any case where a finding of conduct deficiency is entered by the IO, the Regulations and Discipline Officer will forward the complete record to the SJA for preparation of a written legal review prior to consideration by the Commandant.  The Staff Judge Advocate, or his or her designee, will determine whether legal requirements have been compiled with, the effect of any error (including whether any error had a material adverse effect on the respondent's substantial rights), and whether the findings of the IO are supported by a greater weight of evidence than supports a contrary conclusion.  If the Commandant thereafter determines to forward the file to the Superintendent with a recommendation for action, the file will contain a full exposition of the Commandant's rationale.

(4)  Findings.  The Commandant, as appointing authority, may approve or disapprove the finding of the Investigating Officer

(5)  Effect of Errors.  Procedural errors or irregularities in the hearing normally do not invalidate the proceeding or any action of the Commandant or Superintendent based thereon.

(a)  Harmless Errors.  If the Commandant notes a harmless defect in the proceeding, he may take action notwithstanding the defect.

(b)  Minor Errors Requiring Correction.  If the CI failed to make a finding required by the circumstances of the case or by this regulation, or if there has been a minor procedural error or omission which may be corrected without prejudice to the cadet concerned, the Commandant may return the case to the same CI for corrective action.

(c)  Substantial Errors.  In case of a jurisdictional error (e.g., failure to meet essential requirements with regard to appointment or composition) or an error which has a material adverse effect on the respondent's substantial rights, the affected part of that investigation may not be used as the basis for adverse action against the person whose substantial rights were prejudiced.  If the error can be corrected without prejudice to the cadet concerned, the Commandant may do so, returning the case to the same CI for corrective action, if necessary.  In case of an error which cannot be corrected otherwise, the Commandant may set aside the findings and refer the case to a new CI.  The new CI may be furnished any evidence properly considered at the previous hearing.  Additional evidence also may be considered at the new hearing.

b. <u>Actions by the Superintendent</u> will be IAW the provisions of paragraph 10.12, Regulations for the United States Military Academy.

**503. Oath for Sworn Testimony.**

"PLEASE RAISE YOU RIGHT HAND AND ANSWER THE FOLLOWING:

DO YOU SWEAR (OR AFFIRM) THAT THE EVIDENCE YOU SHALL GIVE IN THE CASE NOW IN HEARING SHALL BE THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?"
    NOTE:  If a witness is recalled, remind him or her that he or she is still under oath.

**RA057**



DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK  10996

REPLY TO
ATTENTION OF

MACC-O-RD                                                                              15 May 2001

USCC Regulation No. 351-2

THE CADET DISCIPLINARY SYSTEM

1.  This regulation provides procedural guidance for the Cadet Disciplinary System for the United States Corps of Cadets.  The system is both developmental and correctional in nature.  The intent of these procedures is to ensure the good order and discipline, required of members of the Corps, and serve the leader development of the Cadet Chain of Command.

2.  The procedures outlined in this regulation do not confer any rights on individuals other than those rights specifically identified herein as rights of respondents.

3.  All changes to this regulation must be approved by the Superintendent and forwarded to Headquarters, Department of the Army, IAW paragraph 10.11 of Regulations for the United States Military Academy.

4.  This Regulation is effective 15 May 2001.


/Original Signed/
ERIC T. OLSON
Brigadier General, USA
Commandant of Cadets

DISTRIBUTION:
Special


*This regulation supersedes Chapters 19-24 of the USCC SOP dated August 1999.

USCC REGULATION 351-2
Table of Contents

CHAPTER 1...USCC COMMANDER'S LEGAL GUIDE
1-1. Cadet Discipline System
1-2. Leaders' Roles and Alternatives.
1-3. Nonpunitive Measures and Administrative Actions
1-4. Punishment under the Cadet Disciplinary System
TABLE 1-3 DEMERIT ALLOWANCE TABLE

CHAPTER 2...PROCESSING OBSERVATION REPORTS
201. Cadet Observation Reports
202. Preparation
203. Routing
204. Processing and Disposition
205. Monitoring and Tracking
206. Processing Disciplinary Actions at Company Level or Higher

CHAPTER 3...INVESTIGATIONS AND DISCIPLINARY HEARING PROCEDURES
301. Investigations
302. Official Questioning
303. Self-incrimination
304. Deferring Cadet Summer Departures
305. Pass or Leave
306. Discovery during Proceedings
307. Convening Authority, Composition of Proceedings, and Timely Processing
308. Procedures for Conduct of Formal Article 10 Proceedings
309. Appeal of Punishment under Article 10 proceedings
310. Review
311. Publication of Results
312. Other Sanctions for Misconduct Outside the Cadet Disciplinary System
Article 10 and Observation Report Forms

CHAPTER 4...CADET DISCIPLINARY CODE
401. General: Use of the Cadet Disciplinary Code/Maximum Table of Punishments
402. Withholding of Authority

Chapter 5...CONDUCT STATUS AND INVESTIGATION
501. General
502. Conduct Review
503. Determining a Cadet Proficient in Conduct
504. Determining a Cadet Deficient in Conduct
505. Commandant's Authority to Impose Conduct Probation in Lieu of a Conduct Investigation
506. Notification of Deficient in Conduct Status and Convening a Conduct Investigation (CI)
507. Purpose and Procedures in a Conduct Investigation
508. Notification of the Cadet of a Conduct Investigation
509. Commandant Action Following a Conduct Investigation
510. Conduct Probation Imposed by the Commandant or Superintendent
511. Terms of Conduct Probation
512. Loss of Privileges
513. Other Actions by the Superintendent for Cadets found Deficient in Conduct at a CI
TABLE 5-1 Demerit Allowance Table

RA059

## CHAPTER 1
## USCC COMMANDER'S LEGAL GUIDE

### 101. Cadet Discipline System

a. **Purpose.** The cadet discipline system exists to maintain good order and discipline within the Corps of Cadets. The system is both developmental and correctional in nature. Cadets learn to live within the standards of behavior necessary to support the requirements of military service. They also learn how to support, enforce, and administer a disciplinary system through corrections, counseling, and punishment. The system creates an environment so that each cadet may further develop a sense of duty, strengthen self-discipline to live within the spirit of all regulations and directives regardless of the origin, and accept responsibility for his or her actions. The obligations, standards, authorizations, and privileges described by cadet regulations provide cadets opportunities to demonstrate their level of responsibility and performance. The discipline system provides for counseling, reprimand punishment, re-mediation, and conduct reviews. When corrective action is necessary, the tactical chain of command furthers the cadet chain of command's understanding throughout the discipline process on how individual behavior impacts on the command climate of a unit.

b. **Special Provisions.**

(1) Arrest. Only the Superintendent and the Commandant are authorized to place cadets in Arrest unless the offense is mutiny, direct disobedience of orders, gross disrespect to an officer, or participating in disorders, at which time any officer may place cadets in arrest. All arrests will be reported promptly to the Commandant and Superintendent. For the limits of arrest, refer to paragraph 13.03, *Regulations, USMA*.

(2) Withholding of Authority. The Commandant or any tactical officer (or summer Equivalent) may withhold the authority of a subordinate to dispose of a violation of regulations in individual cases, types of cases, or in general. In such cases, the individual withholding that authority may direct referral of the violation to the level of adjudication that he or she deems appropriate. Commanders will publish and distribute a memorandum specifying their withholding-of-authority policy.

**102. Leaders' Roles and Alternatives.** The Military Academy provides several courses of action to all leaders and commanders to deal with disciplinary issues and violations of the USCC SOP, Regulations for the United States Military Academy( Regs, USMA), UCMJ, and civil law. While some corrective methods are available to all leaders, some are reserved for specific leaders or commanders. Before making any decision or recommendation concerning an alleged violation, a leader conducts a preliminary inquiry. The most appropriate means of handling an infraction is derived from the exercise of sound judgment after considering the individual, the infraction, and all the attendant circumstances. The elected course of action must be the product of wise and informed discretion supported by staff advice. **Generally commanders use the least severe means sufficient to solve a disciplinary problem**. All leaders and commanders should consider non-punitive measures, administrative actions, punishment under Article 10, the different levels of cadet conduct status, and conduct reviews and their accompanying dispositions.

**103. Nonpunitive Measures and Administrative Actions.** While not appropriate in serious cases, nonpunitive measures are often the most prompt and effective way to dispose of minor disciplinary infractions. In adverse administrative actions, the development level of an offender and his or her state of mind at the time of the misbehavior determine the value of each action. In other words, what might be effective corrective action for one cadet may not be as effective for another. The situation might warrant a combination of the following actions (see also table 1-2):

a. **On-the-Spot Corrections**. An on-the-spot correction is frequently the most appropriate and expedient remedial action. A leader (or peer) who observes sub-standard performance and fails to take note or to correct it ultimately contributes to erosion of the standard. Appropriate use of spot corrections requires leaders to determine "when" and "how" to take this type of action. While all leaders bear responsibility for making spot corrections, follow-up remedial action is the responsibility of leaders in the subordinate's immediate chain of command.

1-4

RA060

CHAPTER 1, USCC Regulation 351-2

b. **Counseling**. Correction of cadets may also be accomplished with counseling. It may be written or verbal and may be used by cadets and staff and faculty to assist cadets in identifying their strengths and weaknesses and to assist in the day-to-day aspects of cadet life. Coaches, instructors, and mentors may be included in the counseling process to assist in cadet development and to reinforce counseling efforts. Some situations result in professional counseling by the chaplain, CPD counselors, or other agencies available to cadets. Counseling is also a critical part of any administrative or punitive measure taken with cadets as it serves to enhance their understanding and development. In most cases, it is a mandatory part of the disciplinary process involving formal action.

c. **Admonitions and Reprimands**. Reprimands and admonitions are more formal than counseling and should be construed as warnings against further misbehavior. An admonition is a mild reproach to correct misbehavior; a reprimand is a more serious action. Cadets and staff and faculty may issue admonitions or reprimands, either oral or written, as a corrective action. Written admonitions or reprimands must be filed in a cadet's leader log or TAC file. Since admonitions or reprimands may also be imposed as punishment, leaders should distinguish between administrative action and punishment.

d. **Extra Training**. Extra training is for cadets who have demonstrated that they need and would benefit from additional instruction or practice in a particular area. Extra training and instruction, if timely and appropriate, may correct deficiencies and eliminate the need for formal disciplinary measures in the future. Before using this measure, keep in mind that it is appropriate only when the training relates to the deficiency. It is impermissible if the purpose is solely or primarily to impose punishment. In addition, the training may not conflict with other duty requirements to include the evening study period.

e. **Remedial Skills Training**. There are many agencies that offer remedial skill training, such as the Center for Enhanced Performance and the Center for Professional Development. Leaders should consider these resources and what services they provide to assist correcting deficiencies. Cadets may participate in this training on a voluntary basis, but only the tactical chain of command may refer cadets to these agencies.

f. **Withdrawal of Privileges**. Commanders may deny the use of all or part of a cadet's privileges for administrative reasons such as sub-standard performance in academics, physical education, and military duties. The intent of the withdrawal of privileges is to allow for time to re-mediate the deficiency. Constructive counseling is necessary so that the individual understands the relationship between the deficiency and the withheld privileges. Withdrawal of privileges may also be imposed as punishment; therefore leaders must distinguish between administrative action and punishment when using this measure. See table 1-1 for commanders' limits on withdrawal of privileges, and refer to para 1-4 k for Cadet Flagging Procedures.

g. **Performance Grade**. Substandard performance can, in many situations, negatively reflect on a cadet's performance grade in any of the developmental programs. Supervisors and instructors should appropriately use this measure to influence conduct or to report and record substandard performance.

h. **Suspension and Relief from Duty**.

(1) **Suspension**. Any cadet officer or cadet noncommissioned officer who demonstrates a poor sense of duty, or who is suspected of committing a serious breach of regulations, or who otherwise appears to be unable or unwilling to meet the required standards, may be temporarily suspended from assigned command or staff duties until such time as the situation is resolved. Company Tactical Officers, Regimental Tactical Officers, and the USCC Officer-in-Charge are authorized to suspend cadet officers and noncommissioned officers. The Brigade Tactical Officer will be advised of these actions by the chain of command.

(2) **Relief**. Company or Battalion Tactical Officers with the approval of the Regimental Tactical Officer are authorized to relieve for cause cadet noncommissioned officers. Regimental Tactical Officers with the approval of the Brigade Tactical Officer may relieve for cause cadet lieutenants and non-commissioned officers (minus CSMs) within their chains of command. The Brigade Tactical Officer with the approval of the Commandant of Cadets may be relieve for cause cadet captains or CSMs within the chain of command.

(3) **Documentation and Follow on Actions**. All actions involving suspension and relief will be

1-5

**RA061**

documented by the chain of command and the individual cadet involved in the action will be counseled in writing. Follow on actions may include, but are not limited to, reinstatement, reassignment within the current chain of command, rehabilitative transfer out of their current organization, or other re-mediation at the direction of the chain of command.

(4) **Reinstatement**. The suspending or relieving authority or other senior commander within the chain of command may reinstate a suspended or relieved cadet.

i. **Removal from Corps Squad, Competitive Club and Extracurricular Activities**. Members or managers of corps squad teams, competitive club teams or other extracurricular activities will be removed from all such activities in accordance with subparagraphs (1) through (5) below. All team activities include meetings, practices, training, competition, social functions, and any other team-related activity. Extracurricular activities include, but are not limited to, all organized cadet activities under the supervision of the Director of Cadet Activities.

(1). A cadet who is found guilty of misconduct by an investigation convened by the Superintendent under provisions of *Regulations, USMA*, will be removed from all team, club or extracurricular activities until such time as the Superintendent makes a decision in the case. The tactical officer will notify either ODIA or DCA, as appropriate.

(2) A cadet who is recommended by the Commandant to the Superintendent for separation, suspension, or turnback due to conduct deficiency may be temporarily removed from all team and extracurricular activities until the Superintendent makes a formal decision. The Commandant may also direct similar removal for cases involving lesser action, i.e., suspended separation, probation, etc.

(3) A cadet who is found on an honor investigative hearing will be removed from all team and extracurricular activities until the honor investigative review is resolved IAW The Honor System and SOP.

(4) Cadets who are placed on restriction as a punishment imposed under the provisions of Article 10 proceedings or *Regulations, USMA*, are ineligible to participate in extracurricular activities until the restriction is complete. Cadets may be authorized by the tactical officer to participate in those activities that directly contributes to their athletic performance index (API).

**104. Punishment under the Cadet Disciplinary System.** Commanders (the tactical chain of command and cadet commanders) may impose punishment on cadets under their command for offenses under the provisions of Article 10, Cadet Disciplinary Code (Chapter 4) subject to a superior commander's withholding. Commanders must maintain a fair and judicious approach to proceedings under Article 10. The commander may not decide whether the cadet is guilty until the cadet has presented all evidence in defense. If the commander concludes that the cadet is guilty by a preponderance of the evidence, he or she should consider the cadet's evidence in extenuation and mitigation, and then decide what punishment is appropriate. The USMA Legal Assistance office does not normally assist cadets facing Article 10 proceedings.

a. **Summarized Article 10**. Cadet commanders and Tactical Officers may hold disciplinary hearings and impose punishment under summarized Article 10 proceedings or summarized Article 10 proceeding for minor or recurring offenses as outlined in table 1-1. If the cadet commander or Tactical Officer determines that the offense would be more appropriately adjudicated under more formal proceedings, he or she should forward the case to the tactical officer chain of command.

b. **Company Grade Article 10**. Company and battalion tactical officers may impose punishment as outlined in table 1-1. If the company tactical officer determines that the offense would be more appropriately addressed in a proceeding at battalion level, he or she should forward the case to the battalion tactical officer with a request that he or she exercise battalion-level authority under the provisions of Article 10. A tactical officer may also elect to refer the offense to the regimental tactical officer or above for adjudication under field grade Article 10 proceedings.

c. **Field Grade Article 10**. Regimental tactical officers and above in USCC may hold field grade Article 10 proceedings and impose punishment as outlined in table 1-1. If the regimental tactical officer determines that the offense would be more appropriately adjudicated by a higher commander, he or she should forward the case to the

1-6

RA062

CHAPTER 1, USCC Regulation 351-2

Brigade Tactical Officer or Commandant with a request that he or she exercise authority under the provisions of Article 10.

   d. **Determining level of punishment.** Table 1-1 is put forth as a guideline for commanders to use when determining level of proceedings for a specific offense. The chart is not all inclusive and offenses not included should be judged in accordance with similar offenses. However, it is mandatory for a Tactical Officer to initially send up the offense to the level indicated. The adjudicating authority may send the board up or down one level based on extenuating and mitigating circumstances.

   e. **Procedure for Administering Article 10.**  (refer to Chap 3 for further details on the conduct of Article 10 proceedings.)

      1. Summarized Proceedings (cadet chain-of-command/Tactical Officer).  During summarized proceedings, Cadet Commanders, Tactical Officers or their designated representative will notify the accused cadet of the commander's intent to initiate summarized Article 10 proceedings, take the following actions, and record the proceedings on USMA Form 2-3-1(Revised) or USMA Form 2-50:

         (a) The imposing commander, or a designated cadet officer, or a cadet NCO in the position of platoon sergeant or above, must inform the accused cadet of the nature of the alleged offense(s) and certain rights that cadets have in the proceeding.  This allows the accused cadet time to prepare for the proceedings. In these proceedings the cadet has the right to:

            (1) Refuse summarized Article 10 and request formal Article 10.
            (2) Examine all available evidence
            (3) Present his/her case to the imposing commander
            (4) Call and question witnesses
            (5) Submit matters in defense, extenuation, and mitigation.
            (6) Appeal within the Cadet Chain-of-command

         (b) Cadets under consideration for  summarized Article 10 proceedings are allowed a reasonable time, normally 24 hours, to prepare for the proceedings.  The imposing commander should ensure the cadet is notified in a timely manner that facilitates both protection of the cadet's rights and the disposition of the proceedings within the processing guidelines.

         (c) If the cadet does not request time to make a decision regarding rights or to gather evidence, the hearing part of the proceedings may immediately follow notification.

         (d) The hearing consists of examination of evidence (written or oral) against and in favor of the cadet; determination of guilt or innocence; and, if the cadet is found guilty, consideration of evidence in extenuation and mitigation; followed by imposition of the punishment; and explanation of the right of appeal to the next higher cadet commander.

         (e) If the chain of command elects to dispose of the offense under a summarized Article 10 for Minor or Recurring Offenses, the Cadet will be provided the opportunity to waive a hearing and be immediately adjudicated by the imposing commander.  If the Cadet refuses the proceedings, the Company Tactical Officer will immediately initiate formal proceedings.

      **2. Formal Proceedings** (Tactical Officer Chain of Command)

         (a) If the cadet commander determines that an appropriate punishment may exceed the maximum for summarized proceedings, but not the maximum for formal Article 10 proceedings, the cadet commander may recommend formal proceedings.

         (b) The imposing commander, or a designated officer, NCO, cadet officer, or a cadet NCO in the position of platoon sergeant or above, must inform the accused cadet of certain rights.  This allows the accused cadet time to prepare for the formal proceedings.  This may be done using the USMA Form 2-3 (Revised).

1-7

RA063

CHAPTER 1, USCC Regulation 351-2

This is the same form used to record and file formal Article 10 proceedings, and it specifies the rights of the accused during the proceedings. In formal proceedings the cadet has the right to:

      (1) Request a spokesperson
      (2) Examine all available evidence
      (3) Present his/her case to the imposing commander
      (4) Call and question witnesses
      (5) Submit matters in defense, extenuation, and mitigation.
      (6) Appeal within the Tactical Officer Chain-of-command

      (c) Cadets under consideration for formal Article 10 proceedings are allowed a reasonable time, normally 48 hours, to prepare for the proceedings. The imposing commander should notify the cadet in a timely manner that facilitates both protection of the cadet's rights and the disposition of the proceedings within the processing guidelines. If someone else conducts the notification proceedings, the imposing commander must still conduct the remainder of the proceedings.

      (d) The standard for determining guilt or innocence is by a preponderance of the evidence.

**e. Imposition of Punishment.**

    **1. General.** Article 10 authority must be exercised in a just and dignified manner. Commanders must safeguard the cadet's right to present matters in defense, extenuation or mitigation, and to discuss the nature of the offense and the cadet's record with the commander. It is normal and appropriate for commanders to consult the cadet's chain of command concerning the circumstances of alleged misconduct and appropriate punishment.

    **2. Informing the Offender of Punishment.** If the imposing commander determines, by a preponderance of the evidence, that the soldier has committed an offense under the Cadet Disciplinary Code, and decides to impose punishment, the commander will personally announce the punishment to the cadet, and write it on USMA Form 2-3 or 2-3-1 in the appropriate section.

    **3. Maximum Punishments.** Table 1-2 outlines the maximum punishments authorized under Article 10. A field-grade level commander may impose greater punishment than a company-grade level commander. Tactical Officers may impose greater punishment than Cadet Commanders.

    **4. Minimum punishments.** Minimum punishments for duty requirements are extablished as Table 1-5. These are specified only for absences/lates for class and assignments not turned in/late.

    **5. Filing.** The records for summarized Article 10 proceedings will be filed at the company level, as determined by the Company Tactical Officer. Records of Formal Article 10 proceedings will be filed in the cadet's TAC file.

    **6. Recording.** Regiments will record all Article 10's in the Automated Disciplinary System. The Regulations and Discipline office will maintain a database of all Article 10's.

**f. Clemency.**

    **1. General.** Commanders must be aware of their power to grant clemency in order to realize the full effectiveness of the Article 10. Commanders imposing punishment under Article 10 have the power to suspend, remit, mitigate, or set aside punishment if they conclude that such action is warranted. These powers give commanders an effective means of rehabilitating offenders. A successor in command, or the next superior commander, may take any action the imposing commander could have taken.

    **2. Suspension.** Suspension permits offenders the opportunity to demonstrate good conduct and efficiency. It also provides them with an incentive to stay out of further trouble. You may suspend an unexecuted portion of any punishment for a reasonable time, not to exceed the time it would take to serve the punishment. If

RA064

CHAPTER 1, USCC Regulation 351-2

during that time the cadet commits further acts of misconduct resulting in the award of 5 demerits and 5 hours or more, under Article 10 proceedings, the imposing Company or Battalion TAC (of the suspension) **must** make a recommendation to the RTO whether or not to vacate the suspension of punishment (i.e. put the original punishment immediately into effect). The RTO is the approval / disapproval authority for vacation of suspended punishment for Regimental boards and below.

      **3. Mitigation.** Mitigation reduces the punishments severity and is appropriate when offenders demonstrate subsequent good conduct that merits a decrease in punishment. Mitigation is also warranted when the punishment is disproportionate to the offense.

      **4. Remission.** Remission is the cancellation of the unserved portion of the punishment. Remission is appropriate when offenders demonstrate improved performance in their moral/ethical conduct. The chain of command may initiate a request for remission based upon their evaluation of the cadet's performance. The request must be routed in memorandum format through the COC to the imposing commander. Requests for remission will not be submitted until one-half of the award (tours, withdrawal of privileges, and/or restriction) has been served

      **5. Setting Aside.** Commanders may set aside an Article 10 when he or she is convinced that an injustice has occurred. Setting aside restores all rights and privileges. A set-aside would be appropriate, for example, in a case in which new evidence or information proves the accused is innocent.

    **g. Appeals.** Every cadet who receives an Article 10 has the right to appeal adverse findings and/ or the punishment. Appeals of summarized proceedings are within the cadet chain of command. Appeals of formal proceedings are within the tactical officer chain of command.

      **1. Effective Date and Execution of Punishment.** Punishments under Article 10 are normally effective on the date of the imposition. Commanders may delay certain punishments for such reasons as academic, military, or physical program requirements, class events, etc. If the cadet files a timely appeal (normally within 3 calendar days of the hearing), the cadet continues to serve the punishment. If the appeal is not decided upon within a reasonable time limit(normally 5 days formal, 3 days informal), the commander imposing punishment may interrupt any punishment involving loss of privileges pending the decision on the appeal.

      **2. Procedure.** The cadet is entitled to submit statements dealing with the offense or with the appropriateness of the punishment. The commander who originally imposed the punishment should consider these statements and, if warranted, modify the punishment imposed. Essentially, the commander treats the appeal as a request for reconsideration. If additional action such as suspension, mitigation, or remission is taken, the commander should then inquire if the cadet wishes to withdraw the appeal. If the cadet declines to withdraw the appeal, or if the commander takes no modification action, the commander must forward the appeal to the next higher commander. The forwarding commander should include a written endorsement addressing the issues raised in the cadet's appeal so the next higher commander will have all the necessary information to act. The next superior commander can approve or reduce, but not increase, the punishment imposed by the first commander.

    **h. Publication of Results.** In order to be effective, the Cadet Disciplinary System must not only function properly, but it must also appear to function properly. The commander may announce the disposition of all cases involving punishment. This may be done orally, as in a routine formation, and also in writing by posting a formal notice on bulletin boards or other such locations. The commander will protect all information subject to the Privacy Act of 1974 (SSN, Date of Birth etc.).

    **i. Restoration of Rank.** For a reduction in rank under Article 10, cadets regain their rank after they complete the term of punishment as specified by the imposing commander. Rank is generally restored upon completion or suspension of extra-duty tours unless the tactical officer directs otherwise. If reduction in rank is not accompanied by extra-duty, the imposing commander will specify when the reduction-in-rank will be restored. This time period will not exceed the time it would take to serve the maximum extra-duty tours the imposing commander could have imposed.

    **j. Restriction.** Restriction imposed under Article 10 proceedings or Superintendent's action is quarters limits with the following modifications:

**RA065**

CHAPTER 1, USCC Regulation 351-2

1. Loss of privileges. Cadets who are on restriction may not exercise authorizations or privileges unless specifically authorized in writing by the company tactical officer. Cadets on restriction must sign in/out in their unit departure book every time they depart their cadet room (except for the nearest latrine) after their last class Monday through Friday, and from reveille on Saturday through taps on Sunday. The restriction is in effect continuously 24 hours per day, 7 days a week, except during the summer training period and leave periods as stated in the next paragraph.

2. During the summer leave and training months, any unserved portion of restriction remaining from the academic year is suspended from the day of graduation until the first day of academics. The leave periods for Christmas and Hanukkah, Thanksgiving, Spring, and Summer are not counted in computing restriction start and end dates.

3. Performance of duty. Cadets are required to perform all normal duties and requirements commensurate with their rank.

4. One scheduled on-post chapel service per week.

5. One 90-minute period in Arvin Gymnasium each day for personal conditioning between 0520 and 1930 hours provided there are no conflicting duties (this may include running within post limits).

6. Use of library for academic reasons.

7. Studying in a company designated study room in the company barracks.

8. Studying in a platoon member's room.

9. Use of Keller Army Hospital and the Cadet Health Clinic for sick call and official appointments.

10. Post limits for attendance at official activities for applicable class weekends.

11. The cadet mess hall for no more than 60 minutes for each optional meal.

12. Cadets on restriction are not authorized to visit outside their own cadet room.

13. Cadets on restriction are not authorized to participate in extracurricular activities until the restriction is complete. Cadets will be authorized to participate in those activities that directly contribute to their athletic performance index (API).

14. 1st and 2nd class cadets on restriction will take no longer than 60 minutes to move their cars to and from Camp Buckner/Natural Bridge for home football games.

**K. Flagging of Cadets.**

1. A Cadet who is considered not in good standing by the Chain of Command may be Flagged. Flagging actions are initiated by program area and tracked on the Cadet's electronic CRB. A Flagging action may initiated by the Company Tactical Officer or higher commander. The Tactical Officer will identify the reason why the Flag is in place, the administrative sanction or limits designated, the required remediation for removal of the Flag, and the duration or date of review of the Flag. Flagging actions are intended to focus the Cadet's attention and efforts to ensure their success in achieving standards and overcoming challenges.

2. Circumstances by Program Area in which a Flag may be initiated.

(a) Academic Program.

(1) 6, 10, and 15 week grade report reflecting a failing grade (F) ICW with the Cadet's instructor.

1-10

**RA066**

(2) Academic Probation.

(3) Indications of poor Academic performance, attendance problems, tardiness, poor class preparation, or negative instructor feedback.

(4) Other specified reason- as determined by the Chain of Command.

(b) Military Program.

(1) Military Development grade of "D" or "F."

(2) Special Leader Development Program enrollment.

(3) Sub-standard duty performance.

(4) Summer remediation requirements for MIAD, CBT/CFT details, or DCLT/CTLT assignments.

(c) Physical Program.

(1) Enrollment in the Army Weight Control Program (AWCP).

(2) Indoor Obstacle Course Test (IOCT) failure.

(3) Army Physical Fitness Test (APFT) failure.

(d) Conduct.

(1) Investigation under AR 15-6.

(2) Conduct Review or Investigation.

(3) Investigation or charges under Regulations, United States Military Academy.

(4) The finding of Unsatisfactory or Deficient in conduct and/or Conduct Probation.

(5) Pending Field Grade (BN or above) Article 10 under the Cadet Disciplinary Code.

(6) A pattern of misconduct.

(7) Other specified reason- as determined by the Chain of Command.

(e) Honor.

(1) While under investigation for an alleged Honor Code violation **(Flagging action will be for CoC visibility only – no administrative sanction or limitation will be imposed).**

(2) Substantiated finding by an Honor Board.

(3) Other. As directed by the Chain of Command for a specified reason.

3. Actions which may be limited or withdrawn by a Flag (at the discretion of the Chain of Command).

(a) Class privileges to include, but not limited to, pass, off-post, and walking privileges.

(b) Post driving privileges.

**RA067**

CHAPTER 1, USCC Regulation 351-2

    (c) Use of Cadet Area or on-post facilities.

    (d) Trip section authorization.

  4. Transferability of a Flag. A flag, once in place, will follow the Cadet in the event of reassignment within USCC. The gaining unit may modify or remove the Flag as appropriate.

  5. Guidelines for initiating a Flag.

    (a) A Flag will be initiated for Cadets pending, or undergoing, an investigation or at the report of an incident or action.

    (b) Tactical Officers will direct the Flagging action.

    (c) Flags are effective upon initiation by the Tactical Officer.

  6. The Flagging Process.

    (a) The Tactical Officer identifies a Cadet as not in good standing due to an investigation, incident, or action.

    (b) The Tactical Officer initiates the Flag on the Cadet's Cadet Record Brief (CRB) within the Cadet Records Database Company-Level Retrieval System.

    (c) Once the Flag is initiated, the Tactical Officer will specify on the Flag Section of the CRB which program area(s) the Cadet is not in good standing, the limitations or withdrawal of privileges/authorizations in effect, the required remediation for the removal of the flag, and the duration of the Flag or the date the flag will be reviewed.

    (d) The Tactical Officer will counsel the Flagged Cadet in writing and inform the Cadet Chain of Command. Additionally, if the Flagging action affects a Cadet's participation in a Corps/Club Squad program or other extracurricular activity, the Tactical Officer will inform the Cadet's Coach or OR.

    (e) There is no formal appeals process for the implementation of a Flagging action for a Cadet, but they may utilize their appropriate chain of command channels.

    (f) There is no minimum or maximum duration for a Flag. Tactical Officers will review flagging actions, at a minimum, monthly. The Cadet Records Database Company-Level Retrieval System has a rollup capability to track flagging actions by individual company. Flag statuses will be reviewed at Regimental and Brigade level monthly.

    (g) Flags will be removed once the Cadet has returned to good standing through remediation of a specified task or the completion of the action or sanction that has been imposed.

able personnel actions, commanders may place cadets on Reduced Privileges (RP). It is a punitive measure resulting from certain proceedings, is not imposed as an adverse administrative/non-punitive action, and is not automatic. All commanders and the Superintendent may apply Reduced Privileges to any of the following actions:

    (a) Article 10 proceeding

    (b) Unsatisfactory or Deficient in Conduct status

    (c) Conduct Probation

    (d) Academic Probation

    (e) Suspended Separation

RA068

(f) Found by an honor investigation hearing

### 105. Demerits and Allowances.

1. Demerits are automatically awarded one demerit for each tour of extra duty given as punishment from an Article 10 proceeding. The demerits are awarded when the Article 10 is entered into the Automated Disciplinary System, and therefore are not annotated on the Article 10 form by the imposing commander.

2. Cadets may accumulate a specified number of demerits during any six consecutive calendar months. Exceeding that total number within a 6-month period may result in a conduct review and recommendation for a conduct investigation. The 6-month allowance is computed by adding monthly allowances as shown in Table 1-3. For purposes of this computation, the monthly allowance of the next higher class applies to cadets effective 1 July.

### 106. Amnesty

a. IAW normal operating procedures at the United States Military Academy, at the request of a visiting head of state (not a former head of state); the Commandant may elect to grant amnesty to the Corps of Cadets for outstanding disciplinary tours. This amnesty may be total or partial as directed by the Commandant. Demerits are not remanded when amnesty is granted. Normally, amnesty will only be granted once during any given academic year.

b. Amnesty is not granted to cadets who receive Regimental, Brigade, or Commandant Article 10s, undergoing investigations under the provisions of AR210-26 (Regulations, USMA), UCMJ action, or awards of punishment imposed by the Superintendent.

c. This policy does not apply to reduction in rank, restriction, or the punitive withdrawal of privileges as part of an Article 10 (i.e., **Cadets on restriction remain on restriction**).

RA069

CHAPTER 1, USCC Regulation 351-2

TABLE 1-1
LEVEL OF PUNISHMENT GUIDELINE

| Nature of offense | Type I (BDE or REGS USMA) | Type II (Regimental level) | Type III (Battalion level) | Type IV (Company level) |
|---|---|---|---|---|
| Withhold | Sex/Drugs/Alcohol related | | | |
| | Crimes/Hazing | | | |
| | Outside reports | | | |
| | Unauthorized POV (Underclass) | | | |
| Academic | | Improper documentation | Failure to submit (4 +) | Failure to submit (1,2,3) |
| Accountability | | TAPS-not in barracks | TAPS-not in company | TAPS- not in room |
| | | Sunday/Acct formation >3 hrs | Acct formation 1-3 hours | Acct formation <1 hour |
| | | Absent for movements (A/N) | Routine formation (major) | Routine formation (minor) |
| | | | Class absence (4 +) | Class absence (1, 2, 3) |
| | | | Class/assignment late(5 +) | Class/assignment late(2,3,4) |
| Appearance | | Reflecting poorly on USMA | Major or multiple infractions | Minor infractions |
| | | | Barracks closeout | Room unprepared for insp |
| Behavior | | Major PDA | Improper conduct in lecture | Obscene language |
| | | Disrespect towards faculty | PDA (minor or innocent) | Check not honored |
| | | Horseplay (major)e.g. fire alarm, injuries | Horseplay (minor) bday party | Disrespect/disobedient |
| | | Fraternization (major) | Improper relationship | Falling out |
| Duty | | Failure to report major regs | Duty (multiple offenses) | Failure to do duty (minor) |

1-14

RA070

CHAPTER 1, USCC Regulation 351-2

| | | Failure/absent duty (major) | | Out of Uniform |
|---|---|---|---|---|
| Regs, orders, instr | | Willful disobedience | Unauthorized Items in Room | Failure to respond to corrections |
| | | Unnecessary or harsh actions | | Borrow/loan vehicle w/o auth |
| | | Intentional violation of limits | Violation of reduced privileges | Failure to sign out |
| | | Parking (3d violation) | Parking (2d violation) | Parking (1st) |
| | | Failure to register POV | | |

1-15

RA071

TABLE 1-2
MAXIMUM PUNISHMENTS UNDER ARTICLE 10

| Commanding Officer | Admonition or Reprimand | Demerit Award* | Extra Duty Tours | Withdrawal of Privileges | Restriction | Reduction in Rank |
|---|---|---|---|---|---|---|
| **Summarized:** | | | | | | |
| Platoon Leader** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| CDT Commander*** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| Company Tactical Officer*** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| **Company Grade:** | | | | | | |
| Company Tactical Officer | Yes | 20 | 20 | 30 Days | 14 Days | To one lower rank; CPL or below |
| Battalion Tactical Officer | Yes | 30 | 30 | 30 Days | 30 Days | To one lower rank; SGT and below |
| **Field Grade:** | | | | | | |
| Regimental Tactical Officer | Yes | 35 | 80 | 60 Days | 45 Days | To one or more lower ranks |
| Brigade Tactical Officer | Yes | 35 | 100 | 90 Days | 60 Days | To one or more lower ranks |
| Commandant | Yes | 35 | 120 | 120 Days | 90 Days | To one or more lower ranks |

\* Commanders do not award demerits. The demerit award is automatic and matches the award of tours
for a maximum of 35 demerits ( e.g. 1 demerit per 1 tour)
\*\* Only when authority is delegated by the Company Commander.
\*\*\* Baseline punishment for a violation of Article 3, Delinquency in Accountability (for being absent or late), or
Article 5, Delinquency in Academic Requirements or Reports, is 5 demerits and 5 extra duty tours and the loss of
privileges for the following Saturday after punishment is imposed.

RA072

TABLE 1-3
TABLE OF NONPUNITIVE MEASURES & ADVERSE ADMINISTRATIVE ACTIONS

| ACTION | FORMAT | REPORTING/RECORDING |
|---|---|---|
| On-the-spot correction | Verbal | None required |
| Counseling | Verbal or written | Counseling form or observation report |
| Admonition or reprimand | Written | Memorandum, counseling form, or observation report |
| Extra training | Written specific tasks or training plan | Counseling form or observation report |
| Remedial skills training | Written | Referred IAW CPD, CEC, or ADAPC procedures |
| Withdrawal of privileges | Written; specify which privileges are withdrawn and why | observation report, counseling form, or memo |
| Negative performance grade (Academic, Physical, or Military) | Written in accordance with appropriate regulation | Counseling form and as per appropriate regulations (for MD grade see USCC SOP Annex D) |
| Relief from duty | Written or verbal | As per paragraph 1-3 h, USCC REG 351-2 |
| Removal from corps squad, competitive cub, and extracurricular activities | Written | As per paragraph 1-3 i, USCC REG 351-2 |

RA073

CHAPTER 1, USCC Regulation 351-2

TABLE 1-4

### DEMERIT ALLOWANCE TABLE

#### Fourth Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---|---|---|---|---|---|
| 144 | 144 | 144 | 144 | 144 | 144 |

#### Transition from Fourth to Third Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---|---|---|---|---|---|
| 138 | 132 | 126 | 120 | 114 | 108 |

#### Third Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---|---|---|---|---|---|
| 108 | 108 | 108 | 108 | 108 | 108 |

#### Transition from Third to Second Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---|---|---|---|---|---|
| 105 | 102 | 99 | 96 | 93 | 90 |

#### Second Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---|---|---|---|---|---|
| 90 | 90 | 90 | 90 | 90 | 90 |

#### Transition from Second to First Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---|---|---|---|---|---|
| 87 | 84 | 81 | 78 | 75 | 72 |

#### First Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---|---|---|---|---|---|
| 72 | 72 | 72 | 72 | 72 | 72 |

Note: (a) Fourth class cadets enter the demerit system on the day after they arrive in their letter companies during Reorganization Week.

(b) Demerits received by New Cadets during Cadet Basic Training do not count against these allowances.

(c) Periods of summer leave are included in the demerit periods and allowances for all classes.

(d) The Jan-Jun allowance for First class cadets is computed as if Jun were a full duty month.

(e) Each period runs from the first calendar day of the first month shown through the last calendar day of the last month shown.

RA074

CHAPTER 1, USCC Regulation 351-2

## TABLE 1-5
## MINIMUM PUNISHMENTS FOR OFFENSES

### Unexcused absence/assignment not turned in/missed appointment*

| Offense | Adjudication Level | Minimum Punishment (Demerits/Hours) |
|---|---|---|
| 1st | Summarized Article 10 | 5/5 |
| 2nd | Company Article 10 | 6-10/6-10 |
| 3rd | Company Article 10 | 11-20/11-20 |
| 4th and subsequent offenses | Battalion Article 10 | 20-30/20-30 |

### Unexcused late/late assignment/late to appointment *

| Offense | Adjudication Level | Minimum Punishment (Demerits/Hours) |
|---|---|---|
| 1st | N/A | Written Counseling |
| 2nd | Summarized Article 10 | 5/5 |
| 3rd | Company Article 10 | 6-10/6-10 |
| 4th | Company Article 10 | 11-20/11-20 |
| 5th and subsequent offenses | Battalion Article 10 | 20-30/20-30 |

### Unexcused absence from General Officer Briefing*

| Offense | Adjudication Level | Minimum Punishment (Demerits/Hours) |
|---|---|---|
| 1st | Summarized Article 10 | 8/8 |
| 2nd | Company Article 10 | 11-20/11-20 |
| 3rd and subsequent offenses | Battalion Article 10 | 20-30/20-30 |

* As determined by the Tactical Officer

RA075

CHAPTER 1, USCC Regulation 351-2

TABLE 1-5
MINIMUM PUNISHMENTS FOR OFFENSES

## Violation of the "Late Lights" Policy

| Offense | Adjudication Level | Minimum Punishment (Demerits/Hours) |
|---|---|---|
| 1st | Summarized Article 10 | 5/5 |
| 2nd | Company Article 10 | 6-10/6-10 |
| 3rd | Company Article 10 | 11-20/11-20 |
| 4th and subsequent offenses | Battalion Article 10 | 20-30/20-30 |

## Violation of the "Door Lock" Policy*

| Offense | Adjudication Level | Minimum Punishment (Demerits/Hours) |
|---|---|---|
| 1st | N/A | Written Counseling |
| 2nd | Summarized Article 10 | 5/5 |
| 3rd | Company Article 10 | 6-10/6-10 |
| 4th | Company Article 10 | 11-20/11-20 |
| 5th and subsequent offenses | Battalion Article 10 | 20-30/20-30 |

## Violation of the Parking Policy

| Offense | Adjudication Level | Minimum Punishment (Demerits/Hours) |
|---|---|---|
| 1st | Company Article 10 | 10/10 |
| 2nd | Battalion Article 10 | 21/21 |
| 3rd and subsequent offenses | Regimental Article 10 | 35/35 |

* When in effect

RA076

## CHAPTER 2
## PROCESSING OBSERVATION REPORTS

**201. Cadet Observation Reports (USMA Form 2-543-4R).** Cadets, Officers, Non-Commissioned Officers, Civilian Staff and Faculty, and any Academy Official may report outstanding or deficient cadet behavior by using USMA Form 2-543-4R. Cadet Observation Reports serve as an available means to document cadet behavior.

**202. Preparation**

a. **Part I.** Individuals making observation reports will fill in the information requested in sections a. - f. to the best of their knowledge. First Sergeants will complete any incomplete information. Individuals preparing the report should be as specific as possible about the "Task/Situation/Course" observed. "Date Observed" should be the actual date that the behavior took place rather than the date of the report's preparation.

b. **Part II.** Using the scale provided, the observer may rate the cadet in the cadet leader values/attributes/skills/actions appropriate to the behavior observed. It is not necessary to rate the cadet in every dimension, only those applicable to the behavior. Observer will then cite specific observed behaviors and provide comments in the appropriate sections, and then sign and date the document with the date of preparation.

**203. Routing**

a. Cadets preparing observation reports will route them to the First Sergeant.

b. Observation reports prepared by cadets assigned to duty in the Central Guard Room, the Officer-in-Charge (OC) will be picked up by the cadet S-1 for distribution to the appropriate regimental Sergeant Major or company First Sergeant.

c. Observation reports from academic departments and USMA staff agencies will be forwarded directly to the appropriate cadet First Sergeant.

**204. Processing and Disposition**

a. **Routing of Cadet Observation Reports** Cadets will route a negative observation report as described below.

(1) Observing Cadet/Officer/Professor. The observer of a cadet's behavior writes an Observation Report (OR) on that cadet. He or she forwards it to the Cadet Company First Sergeant.

(2) First Sergeant. The First Sergeant receives all observation reports from observers, whether from in or out of company. The First Sergeant gives the primary copy to the observed cadet's Platoon Leader. The First Sergeant also forwards the R&D carbon copy to the company Regulations and Discipline Officer (R&DO). The First Sergeant then forwards the TAC copy to the company Tactical Officer (TAC).

(3) Platoon Leader. The Platoon Leader receives the primary copy from the First Sergeant. The Platoon Leader reviews and then forwards it to the observed cadet.

(4) Observed Cadet. The observed cadet signs the primary copy of the OR, and writes in the observed cadet comments. He or she then returns it to the Platoon Leader.

(5) Platoon Leader. The Platoon Leader receives the primary copy back from the observed cadet. The Platoon Leader then checks a box according to his/her recommendation. The Platoon Leader signs the OR, and then forwards it to the Company Commander.

(6) Company Commander. The Company Commander receives the primary copy from the Platoon Leader. He or she reviews the OR, signs it, and then gives it to the Tactical Officer.

**RA077**

(7) <u>Tactical Officer</u>. The Tactical Officer reviews and signs the primary copy of the OR. At this time the TAC may destroy or file the TAC copy of the OR. The Tactical Officer decides with the Company Commander what the result of the OR should be. The TAC is the ultimate authority on what type of Article 10 (summarized or formal) that the observed cadet will receive. The TAC then gives the OR to the Company Commander for processing.

(8) <u>Company Commander</u>. Company Commander then forwards the OR to the R&DO.

(9) <u>Cadet Regulations and Discipline Officer</u>. The R&DO holds onto the R&D copy until the Company Commander gives him the primary copy, and he or she sees that the Company Commander, the Platoon Leader, and the TAC have signed the OR. The R&DO marks a line through the R&DO copy (to indicate that the primary copy is now accounted for), and stores it in his/her files. The R&DO then either returns the primary copy to the Platoon Leader, prints out a form 2-3 to be attached to the OR and gives it to the TAC, or prints out a form 2-3-1 to be attached to the OR and gives it to the Company Commander. Upon the conclusion of an Article 10 the R&DO will receive the Article 10 with attached OR. The R&DO will make a copy of it, and give the original to the Regimental Clerk. The original the R&DO will give to the PL to store in his/her leader log.

b. **Routing of the Positive Observation Report (OR).** The observer of a cadet's exceptional behavior actions beyond the call of duty checks the box indicating positive OR and forwards a copy to the cadet's First Sergeant. The First Sergeant will forward the OR through the chain of command for review. After the Tactical Officer has reviewed the OR a copy of the OR is filed in the cadet's Leader Log and TAC file.

## 205. Monitoring and Tracking

a. All written documents included in this process are inspectable items, and may not be destroyed without the permission of the company tactical officer. At the end of the semester or detail of training, all observation reports will be given to the company tactical officer for filing in company counseling files. Cadet company commanders and company tactical officers may, at any time, request to inspect a platoon leader's leader log or counseling files/records.

b. **Tracking**

(1) **Tracking of Positive Observation Reports. Cadet Companies are not required to track** Positive Observation Reports.

(2) **Tracking of Negative Observation Reports.** The R&DO is responsible to ensure that all negative ORs are tracked and processed. He or she uses the R&D copy of the OR as a check. The R&DO also forwards information, as necessary, about his/her company's ORs and Article 10s to the Brigade Assistant Adjutant for Regulations and Discipline.

(3) A designated Company Staff Officer or NCO will maintain monthly statistics on the number and type (positive or negative) of Cadet Observation Reports processed by the company.

## 206. Processing Disciplinary Actions at Company Level or Higher

a. Should the cadet company commander decide to address the observed cadet behavior at a higher level, the Cadet Observation report will become a base document for further action. Preparation of documentation for proceedings under Article 10 (Summarized or Company Grade) will then commence.

b. Should action at a higher authority beyond company level be recommended, requested or required, the Tactical Officer will fill in the comments section stating the recommendation for further action, and sign/date the form.

c. Observation reports resulting in Article 10 proceedings will be filed with the Article 10 form in the cadet's TAC file at regiment. All other OR's will be maintained at the level they were adjudicated.

**RA078**

## CHAPTER 3
## INVESTIGATIONS AND DISCIPLINARY HEARING PROCEDURES

**301. Investigations**. Investigations of violations must be thorough at all levels, particularly at the company level prior to conducting or forwarding a case for higher level action.

a. Except as otherwise provided in this regulation (and except to the extent that Article 31, UCMJ, applies), any officer, noncommissioned officer, or cadet who has reasonable cause to believe that a cadet is involved in a violation of this regulation or has knowledge of facts pertaining to such violation may require the cadet to state what he or she knows about the incident.

b. The company tactical officer/cadet company commander may request written explanations for all apparent violations which may result in proceedings and for any other violation which in his or her opinion requires further explanation. When it is necessary to obtain additional facts pertinent to a reported violation, the company tactical officer/cadet company commander will coordinate the action with the originator of the report.

**302. Official Questioning**. Cadets involved in an incident under investigation that is to be processed as a delinquency under this regulation, or who otherwise have knowledge of facts pertaining to such incidents, may be questioned about the incident. Oral or written questioning is a convenience, which avoids lengthy, cumbersome investigation of infractions of regulations. In the environment of the Honor Code, a cadet's word is accepted as truthful. Because cadets are expected to answer truthfully, they are vulnerable to abuses in questioning. Cadets should not be questioned about potential violations of this regulation for, which there does not already exist reasonable cause to indicate that a delinquency was committed. For example, it would not be proper to ask a cadet whether he or she had been drinking alcohol merely because he or she was reported absent from taps inspection. Individuals asking official questions incur the significant responsibility of ensuring their questions are necessary. In determining this, a questioner must:

a. Have evidence indicating that a breach of regulations has occurred, and

b. Have reasonable cause to believe that the cadet being questioned was involved in the breach or has knowledge of the involvement of others in the breach of regulations.

c. Questioners must carefully think through their reasons for asking questions that pertain to possible disciplinary matters to ensure they meet the requirements for official questions. In most circumstances it would not be unreasonable for the questioners to explain their rationale prior to asking them. This practice would resolve doubt in the mind of the person being questioned as to the propriety of the questions, and would reduce the level of anxiety that is frequently associated with questioning about disciplinary matters.

d. Cadets should not be questioned about the involvement of other cadets in disciplinary breaches unless the questioner has reasonable cause to believe that the cadet has knowledge of other cadets' involvement.

e. Inform the cadet whose conduct is subject to investigation of his or her rights against self-incrimination subject to the provisions of paragraph 3-3. Witnesses questioned are required to answer the questions of the commander or to state, if requested by the commander, what they know about the alleged offense, provided there is reason to believe that the individuals have knowledge of the incident and subject to their rights against self-incrimination. Regimental Tactical Officers may question witnesses for a respondent in lieu of having the respondent question the witness directly. This procedure acts to protect the witness. Should a cadet refuse to testify, the commanding officer will follow the procedures outlined in paragraph 3-3 of this regulation on answering questions. If the cadet continues to refuse to answer the questions of the commander, the commander will report the incident to the next higher level for disposition. The hearing may continue or recess, depending on the nature of the information requested and withheld.

**303. Self-incrimination** (Criminal Actions). A cadet may be required to state orally what he or she knows about the incident, subject to his or her rights against self-incrimination. A cadet whose conduct is subject to investigation and cadets who are witnesses thereto may decline to answer questions if their statements would tend to incriminate themselves. For this purpose, self-incrimination is defined as a situation in which a cadet could be required to admit to a criminal offense in violation of the Fifth Amendment and Article 31 of the Uniform Code of

**RA079**

Military Justice.  An Article 31 rights warning (DA Form 3881) is required when a person subject to the UCMJ reasonably suspects that a violation of the UCMJ has occurred and intends to conduct official questioning.  A cadet is not afforded the right to remain silent merely because he or she is suspected of committing a delinquency under this regulation.

**304.  Deferring Cadet Summer Departures.**  Any cadet who has been recommended for a field grade Article 10 prior to departure on summer leave or training may not depart West Point until the proceeding has been held or RTO approval has been granted. If the proceeding results in a deficient in conduct standing, and the tactical officer's recommendation is suspension or separation, the cadet will remain at West Point until further notice.

**305.  Pass or Leave**.  Cadets pending formal Article 10 proceedings should consult with their tactical officer before making pass or leave plans.

**306.  Discovery during Proceedings.**

a.  If, during the proceedings, the commander suspects or identifies a possible violation of Regs, USMA, Honor Code, or possible criminal activity that should be handled by court-martial, questioning of that cadet will cease and the case will be immediately referred for investigation under appropriate regulations.

b.  If, during the hearing, the commander discovers involvement by other cadets, he or she will take note of this, but proceed with the hearing unless the commander feels the discovery has significant bearing on the proceedings. Discovery of other cadet involvement in the offense or of other violations by cadets is cause for either further investigation or separate investigation into the discovery.  If the imposing commander feels that further investigation of other cadet involvement may significantly effect the outcome of the hearing, he or she may recess the hearing for a reasonable time to investigate, resuming the hearing as soon as possible.   See the regulations and discipline officer for advisement as necessary.

**307.  Convening Authority, Composition of Proceedings, and Timely Processing**.

a. **Summarized Proceedings**.

(1)  A summarized Article 10 is an informal procedure for use by commanders (Cadet or Tactical Officer). A commander, after a preliminary inquiry into an alleged offense by a cadet, may use summarized proceedings if it is determined that should punishment be found to be appropriate, it cannot exceed:

> (a)  10 tours extra-duty.
> (b)  7 days withdrawal of privileges.
> (c)  7 days restriction
> (d)  Oral reprimand or admonition.
> (e)  Any combination of the above.

(2)  The Company Commander may delegate authority to a platoon leader within his/her command to convene a Summarized Article 10.  The commander may delegate this authority only on a case by case basis, and only if it is determined that should punishment be found to be appropriate, it should not exceed 10 tours of extra-duty.

(3) USMA Form 2-3-1 (Record of Summarized Proceedings under Article 10, CDC) or USMA Form 2-3-1A (Record of Summarized Proceedings under Article 10 for Minor or Recurring Offenses) will be used  to record the proceedings if the Cadet waives his or her hearing.

(4) The convening officer will notify the cadet of the commander's intent to initiate summarized Article 10 proceedings, the maximum punishment allowed under summarized proceedings, the Article of the CDC allegedly violated, the offenses allegedly committed with the specific reference and, the right to call and confront witnesses, the right to submit matters in defense, extenuation, and mitigation, the right to appeal to the next higher commander, and the right to refuse summarized proceedings and elect to have misconduct adjudicated under formal Article 10 proceedings.  A reasonable amount of time, normally 24 hours, should be given the cadet to make a decision regarding rights and to gather matters in defense, extenuation, and mitigation.  Under summarized proceedings, a

**RA080**

cadet does not have the right to have a spokesperson to speak on his/her behalf. If the offense is adjudicated under USMA Form 2-3-1A (Record of Summarized Proceedings under Article 10 for Minor or Recurring Offenses), the Cadet has the opportunity to accept or decline the proceedings. If the Cadet does not accept the Summarized Proceedings under Article 10 for Minor or Recurring Offenses, the Tactical Officer will initiate formal proceedings.

b. **Formal Proceedings**

(1) Formal Article 10 proceedings are used by the Tactical Officer chain of command.   Any Tactical Officer or cadet commander who, after a preliminary inquiry, determines that punishment, if it should prove to be appropriate, might exceed punishment available under summarized proceedings, will proceed as set forth below. Also, proceed with formal proceedings if a cadet elects to refuse a summarized proceeding and requests a formal proceeding. All entries will be recorded on USMA Form 2-3(Revised) (Record of proceedings under Article 10, CDC.)

(a) **Company Grade Article 10**.   Company and Battalion level Article 10 proceedings are convened by tactical officers serving at company and battalion level. Battalion tactical officers, while also having company-level authority, will ensure distinction between the proceedings when conducting these proceedings on members of their own company by checking the appropriate block on the USMA Form 2-3. At a minimum, the proceeding will consist of the tactical officer. The reported cadet will appear before the tactical officer. If possible, the company commander and the cadet's first line supervisor should also be present. By direction of the regimental tactical officer, a company tactical officer from within the battalion may be designated as the acting company or battalion tactical officer in the absence of the actual Company or Battalion Tactical Officer for the purpose of administering company/battalion level Article 10 proceedings. A memorandum order of appointment signed by the RTO must be filed with the USMA Form 2-3  upon completion of a company grade proceeding that was administered by an acting Company or Battalion Tactical Officer.

(b) **Field Grade Article 10**.   Field Grade Article 10 proceedings are convened by the Brigade Tactical Officer, Regimental Tactical Officers and the Commanders of Cadet Basic Training (CBT), Cadet Field Training (CFT), and Summer Garrison Regiment (SGR). For good cause, the Commandant or the Brigade Tactical Officer may direct that a Regimental Tactical Officer from a regiment other than that to which the cadet under investigation is assigned, serve as the Article 10 proceeding officer. The proceeding consists of the regimental tactical officer (or appropriate summer commander). A non-voting secretary may be present. Additionally, it is recommended but not required that members of the cadet's chain of command be present. If previously appointed on orders as the acting RTO, a regimental executive officer may administer a field grade Article 10. A copy of the assumption of command orders must be filed with the USMA Form 2-3 upon completion of a field grade proceeding administered by an acting Regimental Tactical Officer.

c. **Timely Processing**. The timely processing of Article 10 proceedings is of great importance. Optimum processing goals from identification through imposition of punishment are:

| Type of Proceeding | Cadet Duty Days (Monday-Saturday ) |
|---|---|
| Summarized | 3 days |
| Company/Battalion | 7 days |
| Regimental/Brigade | 12 days |

While failure to meet these goals does not affect the validity of the board action, every possible effort will be made to ensure timely processing of proceedings.

**308. Procedures for Conduct of Formal Article 10 Proceedings**

a. **Proceedings Preparation.**

(1) The commanding officer administering the Article 10 proceeding  will designate a room for the proceeding and will notify all concerned of the time and place for the proceeding,  to include the uniform to be worn.

RA081

(2) The commanding officer may review the cadet's TAC file or any other information regarding the cadet.

b. **Conducting the Proceedings.** The conduct of proceedings under Article 10, CDC, involves a three-step process in the presence of the cadet: (1) notification, (2) hearing, and (3) imposition of punishment (if the findings result in determination of guilt.)

(1) The cadet concerned and all witnesses will report as follows to the commanding officer: "Sir/Ma'am, (Rank) (Name) reports." The commanding officer then will direct the individual to be seated or remain standing. If more than one cadet is present, the cadet concerned will report first.

(2) The commander may excuse the cadet from the room at the conclusion of all testimony and will consider all the facts and testimony related to the offense being investigated, including the cadet's explanation, to determine whether the cadet committed a violation of regulations.

(3) The commanding officer will conduct the proceedings following the general guidelines below.

**Notification.**

a. **Statements of the Commanding Officer:**

(1) "As your commander, I have disciplinary powers under Article 10 of the CDC. I have received a report that you violated the Cadet Disciplinary Code, and I am considering imposing punishment. As a record of these proceedings I will use USMA Form 2-3(Formal) or 2-3-1 (Summarized). I now hand you this form. Read items 1 and 2. Item 1 states the offense(s) you are reported to have committed and item 2 lists the rights you have in these proceedings."

(2) "Do you understand Item 1? Do you understand the offense(s) you are reported to have committed?" (Cadet response is yes/no.)

(3) "Do you understand Item 2? Do you have any questions about your rights in these proceedings?" (yes/no response.)

(4) "You are allowed to submit evidence in your behalf:

(a) Evidence in defense are facts showing that you did not commit the offense(s) stated in item 1. Even if you cannot present any evidence in defense, you can still submit evidence in extenuation or mitigation,

(b) Evidence in extenuation are circumstances surrounding the offense, showing that the offense was not very serious.

(c) Evidence in mitigation are facts about you, showing that you are a good cadet and that you deserve light punishment."

(5) "You can make a statement and have available witnesses present at the proceeding.

(6) *"You may request to have a spokesperson appear with you and speak on your behalf." * (no spokesperson may appear for summarized proceedings.)

(7) " I will interview any available witnesses and consider any evidence you think I should examine."

(8) "Do you understand these matters regarding your defense?" (yes/no response from cadet)

(9) "If, after you have presented your evidence, I am convinced that you committed the offense, I could then punish you. The maximum punishment I could impose on you would be _____"(punishment from Table 19-1.)

(10) For summarized only: " Do you refuse a summarized proceeding and request a formal proceeding?"

**RA082**

(11) "Do you need additional time to gather evidence or witnesses?" (Yes/no response from cadet. If cadet answers yes, give the cadet a reasonable period of time to gather evidence. Tell the cadet when the proceedings will resume, and then recess the proceedings. If the answer is no, the proceedings may continue. If someone else conducted the notification proceedings, the imposing commander will conduct the remainder of the proceedings.)

<u>Hearing</u>

a. **Statements by Commanding Officer**

(1) * "Do you have a spokesperson to speak on your behalf?" *(not part of summarized proceedings.)

(2) "Do you have a statement to present?"

(3) "Do you have any witnesses available?"

(4) "Do you have any evidence to present, either in defense, extenuation, or mitigation?"

(5) "Do you have any further evidence to present."

(6) Have the cadet initial the appropriate blocks in items 3a and 3b (item 3 on form 2-3-1), then have cadet date and sign.

b. If the evidence persuades you that you should not punish the cadet, terminate the proceedings, inform the cadet of your decision, and destroy all copies of USMA Form 2-3 or 2-3-1. If you are convinced that the cadet committed the offense(s) and deserves to be punished, impose punishment. If you are convinced that the cadet is guilty of some, but not all offenses, strike out in pen those offenses the cadet is not guilty of and then proceed to impose punishment.

<u>**Imposition of Punishment**</u>

a. **Statement of CO**:  "I have considered all the evidence. I am convinced that you committed the offense(s). I impose the following punishments:" ( announce punishment.)

b. After you have imposed punishment, complete items 4 and 5. Sign and date

c. Hand the USMA Form 2-3 (or 2-3-1) to the cadet. Inform the cadet of his/her right to appeal.

**Statements of CO:**

(1) "Read item 4 which lists the punishment I have just imposed on you. Now read item 5 which points out that you have a right to appeal this punishment to (title and organization of next superior authority.) You can appeal if you believe that you should not have been punished at all, or that the punishment is too severe. Any appeal should be submitted within 3 calendar days. An appeal submitted after that time may be rejected. Even if you appeal, the punishment is effective today(unless the imposing commander sets another date.) Once you submit an appeal, it must be acted upon by (title and organization of next superior) within___ duty days ( 3 for summarized; 5 for formal), excluding the day of submission."

(2) "Do you understand your right to appeal?"(yes or no from cadet)

(3) "Do you desire to appeal?" (If cadet responds yes, go to **(6)**. If no, then continue.)

(4) "If you do not want to appeal, initial block "a" in item 6 and sign the blank below item 6."

(5) "You are dismissed."

3-23

**RA083**

**(6) (if yes regarding appeal)**

(a) "Do you want to submit any additional matters to be considered in an appeal?" (If cadet responds yes, go to **(7)**. If no, then continue.)

(b) " Initial block b in item 6 and sign the blank below item 6.  I will notify you when I learn what action has been taken on your appeal.  You are dismissed."

**(7). (if yes regarding additional matters)**  "If you intend to appeal and do not have the additional matters with you, item 6 will not be completed until after you have obtained all the additional material you wish to have considered on appeal.  When you have obtained this material, return with it by (specify a date within 2 calendar days from the date punishment is imposed) and complete item 6 by initialing the box and signing the blank below. After you complete item 6, I will send the USMA Form 2-3 and the additional matters you submit to (title and organization of next superior authority.)  Remember that the punishment will not be delayed (unless the imposing commander sets another date.)  You are dismissed."

**309.  Appeal of Punishment under Article 10 proceedings.**

a. **General.**

(1)  Only one appeal is permissible under Article 10 proceedings.  An appeal not made within a reasonable time may be rejected as untimely by the superior authority.  A reasonable time will vary according to the situation; however, an appeal(including all documentary matters) submitted more than 3 calendar days after the punishment is imposed will be presumed to be untimely, unless the superior commander, in his or her sound discretion for good cause, determines it to be timely.

(2)  If, at the time of imposition of punishment, the cadet indicates a desire not to appeal, the superior authority may reject a subsequent election to appeal, even though it is made within the 3-day period.  A vacation of a suspended punishment may not be appealed.

(3)  Regardless of whether the cadet appeals, commanders should be aware that they have the authority to suspend, mitigate, or remit any unexecuted punishment which they imposed, at any time.  This provides them the opportunity to reward a cadet's good performance that indicates that the intended re-mediation effect of the punishment has been accomplished.

b. **Who may act on an appeal.**

(1)  The next superior commander to the commanding officer who imposed the Article 10 will act on an appeal if the cadet punished is still of the command of that officer at the time of appeal.  If the commander has acted under a delegation of authority, the appeal will be acted on by the next superior commander to the delegating officer. If, at the time of appeal, the soldier is no longer of the imposing commander's command, the next superior commander to the cadet's present commanding officer(who has the same authority for imposing punishment) will act on the appeal.

(2)  The "next superior commander" to an imposing commander is normally the next superior in the chain of command.  Appeals of punishment imposed by the Brigade First Captain are acted on by the Brigade Tactical Officer or his designee.  In cases of question, the Brigade Tactical Officer or Commandant may designate a officer who is senior in rank or position as the "next superior commander" for the purpose of acting on an appeal.

(3)  Appeals of punishments received from summarized proceedings are acted upon within the cadet chain of command, with appropriate advice from the tactical officer counterpart for that cadet commander.  Appeals of punishments received from formal proceedings are acted upon by the tactical officer chain of command.

c. **Procedure for submitting an appeal.**  All appeals will be made on USMA Form 2-3 or 2-3-1 and forwarded through the imposing commander or successor-in-command, when applicable, to the superior authority. The superior authority will act on the appeal.  The cadet may attach documents to the appeal for consideration.  A cadet is not required to state reasons for the cadet's appeal; however, the cadet may do so.

**RA084**

d. **Action by the imposing commander**. Upon appeal, the imposing commander may take any action on the appeal with respect to the punishment that the superior commander could take. If the imposing commander or a successor suspends, mitigates, remits, or sets aside any part of the punishment, this action will be recorded to notes 8 and 9, USMA Form 2-3, or notes 9 and 10 of USMA Form 2-3-1. The commander must then ask the cadet if he or she wishes to withdraw the appeal. The appeal must be voluntarily withdrawn; if not, then forward the appeal. If the cadet withdraws the appeal, he or she will sign such a statement in block 9 or on the reverse of USMA Form 2-3. An officer forwarding an appeal may attach any statements of rebuttal regarding a cadet's assertions. An officer forwarding an appeal will provide reasonable assistance to the cadet, and will promptly forward the appeal to the next superior commander (see para e below).

e. **Action by the superior authority.** Action by the superior authority on appeal will be entered in item 7, USMA Form 2-3, or item 7, USMA Form 2-3-1. The superior authority will act on the appeal expeditiously. Once the cadet has submitted an appeal, including all pertinent allied documents, the appeal normally should be decided within 5 calendar days (3 days for summarized proceedings.) The superior authority may conduct an independent inquiry into the case, if necessary or desirable. The superior authority normally will not accept an appeal in person, but may do so at his or her discretion. In acting on an appeal, the superior authority can approve or reduce, but not increase, the punishment imposed by the first commander.

f. **Action by superior authority regardless of appeal.** Any superior authority may exercise the same powers as may be exercised by the imposing commander, whether or not an appeal has been made IAW the above procedures.

**310. Review.**

a. **Formal Article 10.** After completion of actions by the imposing commander, completion of any appeal, and recording into the Automated Discipline System (ADS) by the Regimental disciplinary clerk, the USMA Form 2-3 is forwarded to the Regulations and Discipline Office for administrative review.

b. **Summarized Article 10.** After completion of actions by the commander and any appeal by the cadet, the Tactical Officer will review the USMA Form 2-3-1 or USMA Form 2-3-1A for completeness and correctness, forward to Regiment for recording into the ADS and filing in the TAC file. The cadet company commander and company tactical officer will review any platoon-leader administered Summarized Article 10 before forwarding it to Regiment for recording.

**311. Publication of Results**

a. In order to be effective, the Cadet Disciplinary System must not only function properly, but it must also appear to function properly. The commander may announce the disposition of all cases involving punishment. This may be done orally, as in a routine formation, and also in writing by posting a formal notice on bulletin boards or other such locations.

b. All formal punishments (company and field grade Article 10s and Superintendent actions) including suspended punishments, will be announced in a disciplinary punishment orders published by the regulations and discipline officer.

**312. Other Sanctions for Misconduct Outside the Cadet Disciplinary System.**

a. Regulations, USMA. Chapters 8 and 10 of Regulations for the United States Military Academy (Regulations, USMA) also pertain to the discipline of the Corps of Cadets. Misbehaviors for which cadets may be separated or otherwise punished within or outside the provisions of the cadet disciplinary system include the following (as further defined in Chapters 8 and 10, Regulations, USMA):

(1) Undesirable habit or trait of character; possession, use or transfer of drugs or narcotics; while on the West Point Military Reservation,;drinking, possession or trafficking in intoxicating beverages, except as authorized by regulation, or being found in any degree under the influence of intoxicating beverages; sexual misconduct; ungentlemanly or unladylike conduct; hazing; combinations among cadets in joint action for the purpose of violating

RA085

or evading regulations, orders, or instructions; indebtedness; criminal conviction in civil or military court; and, any misbehavior punishable under the UCMJ by confinement for 6 months or more.

(2) Misconduct processed for separation or other punishment outside the provisions of the cadet disciplinary system (i.e., this regulation) may also be processed under provisions of this regulation, except that if an act could lead to separation, it will be processed under only one system which could lead to separation (unless the offense elements are different under the different systems).

(3) Tactical officers must identify misconduct and determine the appropriateness of referring such cases for action under Regulations, USMA.

(4) Attention must be given to the proper identification of serious infractions, which in the military environment are punished as misconduct. Such infractions should be considered for processing as misconduct under the provisions of Regulations, USMA, particularly when committed by second and first class cadets.

**b. Separation.** A cadet will be recommended for separation when the retention of a deficient cadet is not considered to be in the best interests of the Corps of Cadets, the Military Academy or the United States Armed Forces. Only the Secretary of the Army, or his or her designee, may direct separation. When the Superintendent recommends a cadet be separated, he or she may also direct that the cadet be immediately suspended from the Military Academy pending the final decision of the Secretary of the Army. The cadet will immediately out process without regard to term-end examinations or military programs unless otherwise directed by the Superintendent.

**c. Suspension..** Suspension is an alternative to separation for deficiency in conduct. Its purpose is to permit a deficient cadet with an otherwise extraordinarily good record to examine his or her commitment to the Military Academy and to the Army, and to allow that cadet to mature sufficiently to meet the standards of conduct should the commitment be reaffirmed. The Superintendent may direct suspension in lieu of forwarding a case to HQDA with a recommendation for separation, or the Secretary of the Army may direct suspension in lieu of separation. The period of suspension is usually 1 year or less.

**d. UCMJ.** Uniform Code of Military Justice. The cadets at the United States Military Academy are members of the Regular Army on active duty and subject to the Uniform Code of Military Justice, except that a cadet may not be given punishment under Article 15 of the UCMJ. Cadets are subject to trial by Courts Martial.

**e. Turn-back.** If a cadet is found to be deficient in conduct, the Superintendent may direct that the cadet be turned back to the next lower class. This action may or may not be taken in conjunction with suspension from the Military Academy and other punishments.

RA086

USMA FORM 2-3; NOT for use in summarized proceedings

**RECORD OF FORMAL PROCEEDINGS UNDER ARTICLE 10, CADET DISCIPLINARY CODE**

| Level of Proceeding(check one): | Company ☐ | Battalion ☐ | Regimental ☐ | Brigade ☐ · |
|---|---|---|---|---|

*SEE NOTES ON REVERSE BEFORE COMPLETING FORM*

| a. Cadet Name (Last, First, MI) | b. Class | c. SSN | d. Unit | e. Corps Squad/DCA Club:  Yes   No |
|---|---|---|---|---|
| | | | | Notification sent?  YES   NO |

**NOTIFICATION:**

1.   I am considering whether you should be punished under Article 10, CDC, for the following misconduct: **1/**

2.   You have several rights under this Article 10 proceeding.  First I want you to understand I have not yet made a decision whether or not you will be punished.  I will not impose punishment unless I am convinced by a preponderance of the evidence that you committed the offense(s).  You may request a person to speak on your behalf.  You may present witnesses or other evidence to show why you shouldn't be punished at all (matters of defense) or why punishment should be very light (matters of extenuation and mitigation).  I will consider everything you present before deciding whether I will impose punishment or the type and amount of punishment I will impose. **2/**

3.  Your hearing will proceed on_____ (date/time/location; at least 48 hours)  You have until then to prepare any matters for your defense.**3/**

| DATE:

TIME: | NAME, GRADE, AND ORGANIZATION OF COMMANDER (OR DESIGNATED REPRESENTATIVE) | SIGNATURE |
|---|---|---|

**HEARING:**

3. Having been afforded the opportunity to prepare for this hearing, my decisions are as follows: (initial appropriate blocks, date, and sign)

a.  A person to speak on my behalf   [   ] Is requested        [   ] Is not requested.

b.  Matters in defense, mitigation, and/or extenuation:   [   ] Are not presented   [   ] Will be presented in person   [   ] Are attached.

| DATE | NAME AND GRADE OF CADET | SIGNATURE |
|---|---|---|

**IMPOSITION OF PUNISHMENT:**

4.  In this hearing, all matters presented in defense, mitigation, and/or extenuation, having been considered, the following punishment is imposed: **4/**

a. ___Admonition/Reprimand   b. _____Extra-Duty(hours)   c. ____Restriction(Days)   d. Reduction in Rank to:____(rank)   e. Other_____

f. Withdrawal of Privileges: (circle one) ALL  or  AS SPECIFIED:_____ for _____days.

g.  Suspension (para):_____ ; to be automatically remitted if not vacated before_____(date) **5/**   h.  Demerits Awarded_____
(Discipline Clerk Use)

5.  You are advised of your right to appeal to BTO within 3 calendar days.  An appeal made after that time may be rejected as untimely.  Punishment is effective immediately unless otherwise stated above.

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|

**APPEAL:**

6.  (initial appropriate block, date, and sign)

a. [   ]   I do not appeal   b. [   ]   I appeal and do not submit additional matters. **6/**   c. [   ]   I appeal and submit additional matters. **6/**

| NAME AND GRADE OF CADET | SIGNATURE |
|---|---|

7.  After consideration of all matters presented in appeal, the appeal is:
[   ] Denied        [   ] Granted as follows: **7/**

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
|---|---|---|

| 8.  I have seen the action taken on my appeal. | DATE | SIGNATURE |
|---|---|---|

9.   ALLIED DOCUMENTS AND/OR COMMENTS. **8/ 9/**

USMA Form 2-3 (APR 01)

RA087

### NOTES
### (for use with USMA Form 2-3)
### THIS FORM IS TYPE WRITTEN

1/ Insert a concise statement of each offense in terms citing the appropriate Article of the Cadet
Disciplinary Code and stating a specific violation of the USCC SOP referencing the para, chapter,
section, and annex.

2/ Inform the cadet of the maximum punishment which may be imposed under Article 10.

3/ Give the member a copy of this form.

4/ Offenses determined not to have been committed will be lined out.  If the imposing commander decides
not to impose punishment, the member will be notified and all copies of this form destroyed.

5/ If a punishment is suspended, indicate which part(s) by referencing the appropriate paragraph in item 4.  Fill in
the date that the suspension is over.  This date cannot be beyond the date that punishment would have been
completed had it not been suspended.  If punishment includes a written admonition or reprimand, it will be attached
to this form and listed in Item 9 as an allied document.

6/ If the member appeals, this form and all written evidence considered by the imposing commander will
be forwarded to the superior authority.

7/ The superior authority will initial the appropriate block.  If the appeal is granted, the specific relief
granted will be stated according to note 9.

8/ In this space indicate the number of pages attached as follows:  Allied documents on appeal consist of
_____ pages.  Allied documents include all written matters considered by the imposing commander
submitted by the member on appeal and the commander's rebuttal, if applicable.  If addition space is
needed for completion of any item(s), use plain paper headed "Continuation Sheet 1," etc.

9/ Applicable portions of the following format may be used to record action taken on appeal.  Appropriate
language should be entered in item 9 or, if necessary, on a continuation sheet.

Suspension, Mitigation, Remission, or Setting Aside
On (date), the punishment(s) of _____(cadet name)_____ , imposed on
(date of punishment) (was) (were) (suspended and will be automatically remitted if not
vacated before(date)) (mitigated to) (set aside, and all rights, privileges, and property
affected restored) (by my order) (by order of) (the officer who imposed the punishment)
(as superior authority.)

(typed name, grade, and organization of commander)      /s/_____

RA088

USMA FORM 2-3-1; for use in summarized proceedings

| RECORD OF SUMMARIZED PROCEEDINGS UNDER ARTICLE 10, CADET DISCIPLINARY CODE |
| --- |

| SEE NOTES ON REVERSE BEFORE COMPLETING FORM |
| --- |

This form will be used only by cadet commanders and then ONLY when no punishment OTHER THAN oral admonition or reprimand, 10 hours extra-duty or less, withdrawal of privileges for 7 days or less, or a combination thereof will be imposed.1/

| a. Cadet Name (Last, First, MI) | b. Class | c. SSN | d. Unit |
| --- | --- | --- | --- |
| | | | |

**NOTIFICATION:**
1. On_____ (at least 24 hours prior), the above cadet was advised that I was considering imposition of punishment under the provisions of Article 10, Cadet Disciplinary Code, Summarized Proceedings, for the following misconduct: 2/

2. The cadet was advised that no statement was required. The cadet was informed of the right to refuse summarized proceedings and receive adjudication under formal Article 10 proceedings. The cadet was also informed of the right to present matters in defense, extenuation or mitigation, and that any matters presented would be considered by me before deciding whether to impose punishment, the type or amount of punishment if imposed, or that no punishment would be imposed unless I was convinced by a preponderance of the evidence that the cadet committed the misconduct. The cadet was afforded 24 hours to make a decision regarding these rights.3/

**HEARING:**
3. Having been afforded the opportunity to prepare for this hearing, the cadet's decision was as follows: (initial appropriate block)
Matters in defense, mitigation, and/or extenuation: [____] were not presented  [____]  were presented in person   [____]   Are attached.

**IMPOSITION OF PUNISHMENT:**
4.   In this hearing, all matters presented in defense, mitigation, and/or extenuation, having been considered, the following punishment was imposed:4/

a. ___Admonition/Reprimand)    b. ____Extra-Duty(hours)    c. _____Restriction (days)

d. Withdrawal of Privileges:(circle one)   ALL   or   AS SPECIFIED:_____ for _____days.

e. Suspension (para):_____; to be automatically remitted if not vacated before_____(date) 4/  h. Demerits Awarded_____
                                                                                                      (Discipline Clerk Use)
5. The cadet was advised of the right to appeal to the _____ within 3 calendar days, that an appeal made after that time may be rejected as untimely, and that punishment is effective immediately unless otherwise stated above.  The cadet :

[____]   Elected immediately not to appeal. 5/

[____]   Requested time to decide whether to appeal and the decision is indicated in item 6, below. 6/

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
| --- | --- | --- |
| | | |

**APPEAL:**
6. (initial appropriate block, date, and sign)
a. [____]   I do not appeal.     b. [____]   I appeal and do not submit additional matters.7/   c.[____]   I appeal and submit additional matters. 7/

| DATE | NAME, GRADE, AND ORGANIZATION OF CADET | SIGNATURE |
| --- | --- | --- |
| | | |

7. After consideration of all matters presented in appeal, the is: 8/

[____]  Denied    [____]  Granted as follows:

| DATE | NAME, GRADE, AND ORGANIZATION OF COMMANDER | SIGNATURE |
| --- | --- | --- |
| | | |

| 8. I have seen the action taken on my appeal. | DATE | SIGNATURE OF CADET |
| --- | --- | --- |

9. ALLIED DOCUMENTS AND/OR COMMENTS. 9/ 10/ 11/

USMA Form 2-3-1(APR 01)

RA089

## NOTES
### (for use with USMA Form 2-3-1)

**1/** Ordinarily, entries on this form will be handwritten in ink.

**2/** Insert a concise statement of each offense in terms citing the appropriate Article of the CDC and stating a specific violation of the USCC SOP referencing the para, chapter, section, and annex.

**3/** Offer the cadet 24 hours to decide on accepting summarized proceedings and to prepare any defense. If the cadet elects to accept the summarized proceeding and does not want time, proceed with the hearing. **If the cadet elects not to accept the summarized proceedings and requests formal Art 10 proceedings, stop the proceeding and begin processing for a formal Art 10.**

**4/** a. Offenses determined not to have been committed will be lined out. If the imposing commander decides not to impose punishment, the cadet will be notified and no copies of this record will be prepared.

b. If a punishment is suspended, indicate which part(s) by referencing the appropriate paragraph in item 4. Fill in the date when the suspension is over. This date cannot be beyond the date that punishment would have been completed had it not been suspended. If punishment includes a written admonition or reprimand, it will be attached to this form and listed in Item 9 as an allied document.__the following statement should be added after it: "To be automatically remitted if not vacated before (date)."

**5/** If the cadet elects immediately not to appeal,, items 6 and 7 will not be completed.

**6/** The imposing commander will initial the appropriate block.

**7/** If the individual appeals, this form and all matters set forth in item 9 will be forwarded to the superior authority.

**8/** The superior authority will initial the appropriate block.

**9/** In this space indicate the number of pages attached as follows: Allied documents on appeal consist of _____ pages. Allied documents include all written matters considered by the imposing commander submitted by the member on appeal and the commander's rebuttal, if applicable. If addition space is needed for completion of any item(s), use plain paper headed "Continuation Sheet 1," etc.

**10/** Applicable portions of the following format may be used to record action taken on appeal. Appropriate language should be entered in item 9 or, if necessary, on a continuation sheet.

Suspension, Mitigation, Remission, or Setting Aside
On (date), the punishment(s) of _____ (cadet name) _____, imposed on (date of punishment) (was) (were) (suspended and will be automatically remitted if not vacated before(date)) (mitigated to) (set aside, and all rights, privileges, and property affected restored) (by my order) (by order of) (the officer who imposed the punishment) (as superior authority.)

(typed name, grade, and organization of commander)     /s/_____

**11/ Tactical Officer will review all Forms 2-3-1. Tactical Officer Initials:____.**

RA090

| Summarized Article 10 Proceedings for Minor or Recurring Offenses | | | |
|---|---|---|---|
| For Use of this Form See Annex A, USCC SOP; Proponent Agency is R and D, USCC | | | |

### PART I - ADMINISTRATIVE DATA

| a. NAME OF CADET OBSERVED (Last, First, MI) | b. POSITION | c. GRAD YR | d. COMPANY |
|---|---|---|---|
| | | | |

| e. TASK/SITUATION/COURSE (e.g. "inspection in ranks, 27Sep 98"or "Classroom Participation EV203, 27 Sep 98") | f. DATE OBSERVED |
|---|---|
| | |

### PART II - OBSERVATION DATA

Categorize the observed behavior(s) into the appropriate Cadet Leader Values/Attributes/Skills/Actions below. Use the scale to assess the cadet's performance only in the area(s) observed.

| OUTSTANDING --4 | | SATISFACTORY-- 3 | | MARGINAL--2 | | UNSAT--1 | |
|---|---|---|---|---|---|---|---|
| **VALUES** | | **ATTRIBUTES** | **SKILLS** | | **ACTIONS** | | |
| Loyalty | | Mental | Conceptual | | Communicating | Assessing | |
| Duty | | Physical | Interpersonal | | Planning | Learning | |
| Respect | | Emotional Attributes | Technical | | Developing | | |
| Selfless Service | | | Tactical | | Decision Making | | |
| Honor | | | | | Executing | | |
| Integrity | | | | | Building | | |
| Personal Courage | | | | | Motivating | | |

Cite **specific observed behaviors** that are relevant to the position/situation. (e.g., "inspected each item as required and made appropriate remarks, " or "Cadet Smith could not answer simple questions which would have been obvious if the material had been read.")

Observer Comments: *Observer's judgment on the impact of these behaviors on either the situation or task/mission accomplishment. (Mandatory for marginal or unsatisfactory assessments)*

| NAME | POSITION/UNIT   SIGNATURE | DATE |
|---|---|---|
| | | |

Observed Cadet Comments: *(Optional, if more space needed, attach a memorandum for record)*

| SIGNATURE | POSITION/UNIT | DATE |
|---|---|---|
| | | |

*FORWARD TO CADET COMPANY FOR DISPOSITION*

### PART III -UNIT ACTION DATA 1/

**PLT LDR:** Complete and sign below. (If the cadet is assigned out of company, then the immediate supervisor will complete this portion)

No further action required ☐   Record of Counseling required and attached ☐   Refer to higher authority for disposition/disciplinary action ☐

Name: _____   Signature: _____   Date: _____

CO CDR: initial after review _____   TAC Officer: initial after review _____

### PART IV -SUMMARIZED PROCEEDINGS (CO CDR or TAC)

| INFRACTION ARTICLE # 2/ | ___ Admonition/Reprimand) ___ Extra-Duty(hours) ___ Restriction (days) | Withdrawal of Privileges:_____ Suspension:_____ Demerits_____ | Accept SUM ART 10 (Waive 24 Hrs period) 3/ ☐ | Request Formal ART 10 3/ ☐ |
|---|---|---|---|---|

Comments: (Specify offense or required when referring to higher level for action) 2/

| SIGNATURE 5/ | UNIT | DATE |
|---|---|---|
| | | |

USMA Form 2-3-1A Summarized Article 10 Proceedings for Minor or Recurring Offenses  (AUG  00)

RA091

## NOTES
### USMA Form 2-3-1A Summarized Article 10 Proceedings for Minor or Recurring Offenses

**1/** Ordinarily, entries on this form will be handwritten in ink. This form is may be used to adjudicate minor and recurring offenses under the Cadet Disciplinary Code.

**2/** Insert Article infraction and a concise statement of the offense(s) in terms citing the appropriate Article of the CDC and stating a specific violation of the USCC SOP referencing the para, chapter, section, and annex in comments section.

**3/** The cadet must elect to Accept the Summarized proceedings (waiving their 24 hours decision period) or request a Formal Article 10. **If the cadet elects not to accept the summarized proceedings and requests formal Art 10 proceedings, stop the proceeding and begin processing for a formal Art 10.**

**4/** a. If the imposing commander decides not to impose punishment, the cadet will be notified and no copies of this record will be prepared.

b. If a punishment is suspended, indicate which part(s) in the Suspension portion. Fill in the date when the suspension is over. This date cannot be beyond the date that punishment would have been completed had it not been suspended. If punishment includes a written admonition or reprimand, it will be attached to this form.

c. Baseline punishment for a violation of Article 3, Delinquency in Accountability (for being absent or late), or Article 5, Delinquency in Academic Requirements or Reports, is 5 demerits and 5 extra duty tours and the loss of privileges for the following Saturday after punishment is imposed.

**5/** The imposing commander will sign the appropriate blocks.

*Tactical Officer Review:*

Initials:_____ Date:_____

3-32

**RA092**

## CHAPTER 4
## CADET DISCIPLINARY CODE

**401. General: Use of the Cadet Disciplinary Code.** This chapter provides general categories, or articles, to distinguish infractions for disposition under the Cadet Disciplinary System. When an infraction involves several articles, the commander should choose the most appropriate one for processing under Article 10. Article 10 is the authority given to commanders to impose punishment and the type and amount of punishment the commander may impose.

### Article 1. Failure to comply with Regulations, Orders, Instructions
Failure to comply with oral or written regulations, orders, or instructions through laxness, ignorance, or neglect. The disobedience of orders and regulations normally is more serious than a error in judgment. Orders are given with the expectation of compliance both in spirit and in letter.

### Article 2. Failure to Perform Duty
Failure to perform a duty, failing to assume a responsibility, evading a regulation, permitting other cadets under one's command or control to evade their responsibility or regulations, and overlooking or failing to report violations of regulations are all delinquencies which indicate poor motivation and a low concept of duty.

### Article 3. Delinquency in Accountability

a. Self-disciplined cadets who possess a strong sense of duty also report as ordered and abide by the spirit and intent of regulations. The cadet who willfully absents him or herself from the cadet area, post limits, or place of duty does not display the degree of self-discipline expected of cadets or future officers. The individual cadet is responsible for being present for duty and on time.

b. Cadets must learn to allow sufficient time for unknown circumstances and unforeseen delays in the execution of their duties. Being on time when a group or unit may be delayed because of an individual's tardiness, such as a return trip formation, is more important than being on time to an activity which affects only the individual. The seriousness of tardiness is only partly indicated by the length of time involved. Tactical officers also consider the amount of judgment exercised by the cadet in attempts to report for duty.

c. Accountability Involving Lateness: Cadets are late when they arrive after the class, formation, or activity has started but before it is dismissed or ends; or after the Command "Fall In" has been given at a formation but before the accountability report is rendered by the immediate supervisor.

d. Accountability Involving Absence: Cadets are absent when they fail to be at a prescribed location or place of duty during a specified time.

### Article 4. Unsatisfactory in Appearance: Personal, Room, and Equipment
Appearance is a significant indicator of individual pride and unit discipline, morale, and esprit. For these reasons, cadets are responsible to ensure they meet and maintain the standards of their personal appearance, as well as the condition and appearance of rooms and equipment. Cadets are expected to maintain an appearance and exercise proper stewardship appropriate for officers and cadets at all times.

### Article 5. Delinquency for Academic Requirements or Official Reports
The proper preparation and timely submission of official communications, records, reports, and academic writing/homework requirements at the Military Academy develop habits and attention to detail which are prerequisites to successful officership. Therefore, cadets should always prepare accurate and complete reports, academic papers, and required homework exercises and submits them on time. Academic instructors must be careful to differentiate between those deficiencies that are solely academic in nature and should result in a lower academic grade and those which reflect a failure of duty or an obvious laxness in the accomplishment of such a duty.

### Article 6. Unsatisfactory Behavior
Those standards of manner, decorum, and conduct expected of a commissioned officer and a gentleman or lady is expected of cadets at all times. Unsatisfactory behavior is any behavior that is prejudicial to the good order and

**RA093**

CHAPTER 4, USCC Regulation 351-2

discipline within the Corps of cadets, and behavior that brings discredit upon the Corps, USMA, and the US Army. Reflecting discredit is defined as actions or words that would bring criticism against an organization; this requires that the individual is identifiable as a member of the Corps of Cadets or the U. S. Army.

**Article 7.  Error in Judgment.**
Cadets are expected to exercise good judgment at all times.  These including situations not covered by instructions or cases in which orders are obviously illegal or inappropriate.  Errors in judgment under this article are those decisions or actions by a cadet that may have serious consequences.  Decisions made under these circumstances reflect a cadet's maturity, initiative, experience, common sense, and ability to learn from past mistakes.

**Article 8.  Failure in Security or Property Accountability and Safety**
Failure to properly account for, safeguard, and/or secure property. Cadets are responsible to properly maintain and safeguard all government property and their own personal high dollar value property.  Examples of such property include but are not limited to: military radios, TA-50, training aids or personal property such as CD players, compact disks, wrist watches, check books, and cameras.

**Article 9.  General Article**
All other behaviors, either by commission or omission, that are prejudicial to good order and discipline in the Corps of Cadets or Armed Forces and all conduct of a nature to bring discredit upon the Corps of Cadets or Armed Forces.

**Article 10. Commanding Officer Authority to Impose Punishment**
Under authority of the Commandant, United States Corps of Cadets (USCC), commanders within USCC may impose one or more of the following disciplinary punishments upon members of his or her command:

### MAXIMUM PUNISHMENTS UNDER ARTICLE 10

| Commanding Officer | Admonition or Reprimand | Demerit Award* | Extra Duty Tours | Withdrawal of Privileges | Restriction | Reduction in Rank |
|---|---|---|---|---|---|---|
| **Summarized:** | | | | | | |
| oon Leader** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| CDT Commander*** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| Company Tactical Officer*** | Yes | 10 | 10 | 7 Days | 7 Days | No |
| **Company Grade:** | | | | | | |
| Company Tactical Officer | Yes | 20 | 20 | 30 Days | 14 Days | To one lower rank; CPL or below |
| Battalion Tactical Officer | Yes | 30 | 30 | 30 Days | 30 Days | To one lower rank; SGT and below |
| **Field Grade:** | | | | | | |
| Regimental Tactical Officer | Yes | 35 | 80 | 60 Days | 45 Days | To one or more lower ranks |
| Brigade Tactical Officer | Yes | 35 | 100 | 90 Days | 60 Days | To one or more lower ranks |
| Commandant | Yes | 35 | 120 | 120 Days | 90 Days | To one or more lower ranks |

\* Commanders do not award demerits.  The demerit award is automatic and matches the award of tours
   for a maximum of 35 demerits ( e.g. 1 demerit per 1 tour)
\*\* Only when authority is delegated by the Company Commander.
\*\*\* Baseline punishment for a violation of Article 3, Delinquency in Accountability (for being absent or late), or Article 5, Delinquency in Academic Requirements or Reports, is 5 demerits and 5 extra duty tours and the loss of privileges for the following Saturday after punishment is imposed.

RA094

**402. Withholding of Authority**. Any commander (or summer equivalent) may withhold the authority of a subordinate to dispose of a violation of this regulation in individual cases, types of cases, or in general. In such cases, the individual withholding that authority may direct referral of the violation to the level of Article 10 proceeding that he or she deems appropriate. Commanders will publish and distribute a memorandum specifying their withholding-of-authority policy.

RA095

Chapter 5
CONDUCT STATUS AND INVESTIGATION

**501. General.** A cadet's standing in conduct is either proficient or deficient. A cadet may not graduate unless proficient in conduct as determined by the Commandant. A cadet deficient in conduct may be placed in a remediation approved by the Brigade Tactical Officer or Commandant. A deficient cadet may, following a conduct investigation, be subject to separation or other sanctions imposed by the Superintendent under Regulations for the U.S. Military Academy. The determination of whether a cadet is proficient or deficient in conduct is a command responsibility. Unless otherwise informed by their chain of command, cadets are considered proficient in conduct.

**502. Conduct Review.**

a. General. A conduct review is a formal process for reviewing a cadet's performance record. This review is mandatory when certain conditions occur in a cadet's conduct record, and before any change is made to a cadet's conduct standing. The Conduct Review becomes part of the cadet's TAC file.

b. Documents. The Conduct Review packet contains the following documents:

(1) Memorandums from the cadet company COC. (If out of company, the appropriate cadet commander). The memorandums will state a recommendation for conduct status in terms of changing or maintaining the cadet's current standing, and if the cadet should be retained or referred to a CI for action at the Com or Superintendent level.

(2) Documentation of a cadet's conduct that supports the COC recommendations. (e.g. Observation Reports, CPRs, CRBs, SLDP, Letters of Reprimand)

(3) Backside CRB. Recommendations of the company and Regimental TACs will state recommended conduct status as either **Proficient** or **Deficient**. If the recommended conduct status is Deficient in Conduct, the recommendation will also state either **Retain** or **Refer to CI**. A CI is necessary for action at the Com or Superintendent level.

(4) Demerit Review. A copy of the cadet's demerit-review from the Automated Discipline System will be included.

(5) A copy of each Article 10 and/or Regimental Board packet that is the basis for the Review.

c. When required. A cadet's chain of command will conduct a conduct review when conditions occur as specified in para 504 or as determined by the chain of command.

d. The Brigade Tactical Officer will make the final determination of a cadet's conduct standing and disposition on all Conduct Reviews when recommending retention. For recommendations of Deficient-in-Conduct/Refer to CI, the Brigade Tactical Officer may declare a cadet deficient in conduct and refer the cadet to a Conduct Investigation.

**503. Determining a Cadet Proficient in Conduct.**

a. General. A cadet is proficient in conduct as long as that cadet continues to meet the standards of conduct expected of members of the Corps of Cadets. Cadets begin their cadet careers proficient in conduct. A cadet may be punished under Article 10, Cadet Disciplinary Code, or Regs USMA and remain proficient in conduct. A cadet may regain a status of proficient in conduct after successful remediation of a deficient status. A cadet must be proficient in conduct, as determined by the chain of command, to graduate. The Commandant, or his designee, may determine a cadet's proficiency.

b. Status of Readmitted Cadets. Cadets readmitted to the Military Academy subsequent to separation, resignation, suspension, or completion of an approved sabbatical will be classified as proficient in conduct. Previous disciplinary actions and performance records remain on cadets' records throughout their cadet careers, to include readmitted cadets. The previous disciplinary actions and performance records may be a basis for

RA096

subsequently identifying the cadet as deficient in conduct.

**504. Determining a Cadet Deficient in Conduct.**

a. General. The Regimental Tactical Officer recommends, the Brigade Tactical Officer approves, and the Commandant reviews the decision that a cadet is deficient in conduct. The Brigade Tactical Officer or any superior commander may also place a cadet in a deficient in conduct status. A cadet is deficient in conduct when notified of this status in writing by their commander. The Brigade Tactical Officer makes the decision, based on recommendations from the chain of command, on what option to take for a cadet deficient in conduct.

b. Basis for Determining a Cadet is Deficient in Conduct. When a commander determines a cadet is deficient in conduct, it is an administrative determination incident to command. It is a decision that the cadet's conduct is a substantial departure from the standards of conduct expected of members of the Corps of Cadets. Cadets may be placed in a deficient in conduct status when one or more of the following occurs.

(1) A violation of the terms of Conduct Probation.

(2) Those demerits awarded in a six-month demerit with tour period in which a cadet exceeded his or her demerit with tours allowance.

(3) Two alcohol policy violations.

(4) Three Field Grad Article 10 actions of 35 demerits.

c. Brigade Tactical Officer Options for Handling Cadet Deficient in Conduct. The Brigade Tactical Officer may personally take action, or direct a subordinate commander, to notify a cadet that he or she is deficient in conduct, counsel them, and provided a tailored program to remediate their deficient in conduct status. Or, if efforts at remediation are not considered appropriate, the Brigade Tactical Officer may forward a recommendation to the Commandant to convene a Conduct Investigation (CI) to review the deficient conduct and recommend a disposition to the chain of command. If the Brigade Tactical Officer chooses to give the cadet an opportunity for remediation, without the finding of a Conduct Investigation, the Company Tactical Officer and Regimental Tactical Officer will supervise the remediation program. Only a CI, convened by the Commandant, can investigate a cadet who is deficient in conduct, and is required for separation actions IAW USCC Regulation 351-1.

d. Remediation of Cadets Deficient in Conduct. Cadets deficient in conduct will be notified in writing, counseled, and provided a tailored program to remediate their deficient status by their Tactical Officer. The remediation program focuses on the deficiency, but may also include loss or reduction of privileges to facilitate the remediation. Loss or reduction of privileges is approved by the commander who approved the deficient status. Normally, the remediation period will cover one semester, but it can be longer or shorter. The commander who approved the deficient status, or a senior commander, are the commanders who may remove the status and determine a cadet is again proficient in conduct. Tactical officers will conduct a written, monthly review of all remediation programs for deficient-in-conduct cases within their company. This review will be filed in the cadet's local counseling file, and be available for higher level review.

**505. Commandant's Authority to Impose Conduct Probation in Lieu of a Conduct Investigation.** Conduct probation may be directed by the Commandant in lieu of referring a cadet to a Conduct Investigation based upon the recommendations of the chain of command. If a cadet violates the terms of the Conduct Probation directed by the Commandant, a CI will be convened to investigate the violation and provide a recommended disposition to the chain of command.

**506. Notification of Deficient in Conduct Status and Convening a Conduct Investigation (CI).**

a. The Brigade Tactical Officer will notify cadets in writing of the determination that the cadet is deficient in conduct. The decision will be made based on a review of the cadet's TAC file, Cadet Record Brief (CRB), and recommendations of the chain of command. The Brigade Tactical Officer's decision is not subject to appeal, but it must be investigated by a CI if the cadet is to be recommended for separation from the Academy or subjected to

RA097

other less serious sanctions by the Superintendent under Regs USMA. If a CI is convened, all matters reviewed by the Brigade Tactical Officer become part of the CI file.

    b. Flagging. Cadets deficient in conduct will be flagged and lose privileges as determined by the chain of command.

    c. Actions by the Brigade Tactical Officer and Commandant Concerning Convening a CI. After determining a cadet is deficient in conduct, the Brigade Tactical Officer or Commandant may convene a CI. Convening a CI is required if recommending separation action by the Superintendent.

**507. Purpose and Procedures in a Conduct Investigation.** The purpose of a Conduct Investigation is to investigate the cadet's deficiency in conduct. The findings of the Investigating Officer will confirm the deficient in conduct status (or declare the cadet proficient) and recommend a disposition of the cadet under investigation should be. The rationale for the finding will be included. The officer appointed by the Commandant to hold a Conduct Investigation will follow the procedures contained in USCC Pamphlet 351-1.

**508. Notification of the Cadet of a Conduct Investigation.** The Regulations and Discipline Officer, on behalf of the officer appointed to conduct the CI, will notify the cadet by memorandum through the tactical chain of command of the CI following the procedures in USCC Regulation 351-1. The notification will include a copy of all documents to be presented at the Conduct Investigation, the rights of the cadet, and the date for the investigation. The tactical officer will require the cadet to review the notification memorandum and its enclosures and acknowledge receipt through an endorsement. Additionally, the TAC will explain the conduct investigation and subsequent review process and will advise the cadet to notify his or her parents of the pending Conduct Investigation. The TAC will forward the cadet's acknowledgment to the Regulations and Discipline Office, USCC. The cadet will be afforded at least five working days after formal notification to prepare for the Conduct Investigation.

**509. Commandant Action Following a Conduct Investigation.** The Commandant's options are as follows:

    a. Cadets Found Proficient (Not Deficient) in Conduct at a CI. The Commandant will review the findings of the Investigating Officer, the entire record of the CI, and notify the cadet in writing of their status.

    b. Cadets Found Deficient in Conduct at a CI. The Commandant may place a cadet on conduct probation or he may forward a report of the CI with a recommendation to the Superintendent for action. Following a CI, the Superintendent may direct retention (with or without probation), direct transfer to a lower class, direct suspension from USMA, direct suspended separation or recommend separation of the cadet to HQDA. If the Superintendent determines to recommend separation, he or she may immediately, or at any time prior to the HQDA action on the case, suspend the cadet from the Academy.

**510. Conduct Probation Imposed by the Commandant or Superintendent.** After a CI, the Commandant may impose Conduct probation as an alternative to forwarding the case to the Superintendent for action. The Commandant will notify a cadet he places on conduct probation of its terms and length. Probation may be for any period of time. A remediation program is required for cadets on conduct probation, because a cadet must regain a proficient in conduct status to graduate. If a cadet on conduct probation, follow a CI, violates terms of the probation imposed by the Commandant, the Commandant may immediately recommend action by the Superintendent; a second CI is not required, as the cadet has already been investigated for being deficient in conduct. The Superintendent may also direct conduct probation in lieu of approving a recommendation for suspension or separation following his review of a CI forwarded by the Commandant. The Commandant will normally place a cadet on conduct probation only once during the cadet's career. The Superintendent or Secretary of the Army may direct subsequent conduct probation. In rare cases, where unusual mitigating circumstances so dictate, subsequent conduct probation may be recommended by the Commandant and authorized by the Superintendent.

**511. Terms of Conduct Probation.** Terms of probation for cadets will include successful completion of a remediation program and stipulations against future acts of misbehavior (i.e. subsequent receipt of punishment as a result of company/field grade Article 10, punishment under Regs USMA for misconduct, or a continued pattern of

RA098

minor misbehavior or lack of discipline). The length of Conduct Probation is at the discretion of the imposing commander. The goal of Conduct Probation is to remediate the cadet into a proficient conduct status, a status required to graduate. Successful completion of Conduct Probation will result in the cadet being proficient in conduct. The approving authority will notify cadets in writing that they are on probation, the specific terms, remediation objectives, and sanctions. Tactical officers will conduct a monthly written review of the cadet's progress in the remediation program for the duration of the conduct probation. This review will be filed in the cadet's local counseling file, and be available for higher level review.

**512. Loss of Privileges.** Cadet privileges will be determined by the chain of command. The loss of privileges may be imposed in conjunction with the Tactical Officer's flagging of the cadet pending action or for a subsequent period of Conduct Probation

**513. Other Actions by the Superintendent for Cadets found Deficient in Conduct at a CI.**

a. Suspension from USMA. Suspension is an alternative to separation for deficiency in conduct. Its purpose is to permit a deficient cadet with an otherwise extraordinarily good record to examine his or her commitment to the Military Academy and to the Army, and to allow that cadet to mature sufficiently to meet the standards of conduct should the commitment be reaffirmed. The Superintendent may direct suspension in lieu of forwarding a case to HQDA with a recommendation for separation, or the Secretary of the Army may direct suspension in lieu of separation. The period of suspension is usually 1 year or less.

(1) When suspension is directed, the cadet will out-process and depart immediately without regard to term-end examinations or military training programs unless otherwise directed. A cadet who is suspended from the Military Academy is not authorized privileges or pass. Upon completion of out processing, the cadet is not authorized access to those areas of West Point designated as cadet only or those areas closed to the general public until she or he has served the period of suspension and has returned for duty.

(2) A suspended cadet normally will be transferred to the next lower class year or December graduation category as appropriate upon their return. A suspended cadet is not separated and is not required to seek another nomination or otherwise formally apply for re-admission. Upon a suspended cadet's return to USMA, he or she will be considered proficient in conduct. See paragraph a conduct standing from the regulations and discipline office. See paragraph 2301d.

b. Suspended Separation. Suspended separation is an alternative to suspension or separation in that it permits the cadet to continue at the Military Academy. The period of suspended separation is normally until the cadet's graduation, but may be shorter. The terms of suspended separation require a cadet to demonstrate exemplary performance during the period of the suspended separation. A cadet who demonstrates such exemplary performance for the period of the suspended separation will, by definition, be proficient in conduct at the end of the period of suspended separation. Exemplary performance is defined as behavior in keeping with the highest standards of order and discipline, and it includes successfully completing appropriate remediation programs supervised by the chain of command. Specific requirements will normally be delineated by the Superintendent when the sanction of suspended separation is imposed. Monthly evaluations of the cadet's progress may be used to determine whether exemplary performance has been demonstrated or not. The terms of suspension have been violated if the cadet fails to meet the requirements outlined by the Superintendent. Should a cadet not perform in an exemplary manner, the Superintendent may forward the recommendation for separation to Headquarters, Department of the Army. The Superintendent can place a cadet on suspended separation. Turn back to the next lower class may be appropriate when the period of suspended separation would take a first class cadet beyond his or her normal graduation date. Loss of privileges for a cadet on suspended separation will be as determined by the Commandant or his designee.

c. Turn Back. If a cadet is deficient in conduct, the Superintendent may direct that the cadet be turned back to the next lower class. The cadet remains deficient in conduct, but is provided by being turned back, additional time to meet the standards of conduct by completing a remediation program supervised by the chain of command. This action may or may not be taken in conjunction with suspension from the Military Academy.

d. Separation. The Superintendent may recommend to HQDA that a cadet deficient in conduct be separated from the Academy when it is in the best interests of the Academy and Army to do so. Only the Secretary of the

**RA099**

**CHAPTER 5, USCC Regulation 351-2**

Army may direct separation.  When the Superintendent recommends a cadet be separated, he or she may also direct that the cadet be immediately suspended from the Military Academy pending the final decision of the Secretary of the Army.  The cadet will immediately out-process without regard to term-end examinations or military programs unless otherwise directed.  A cadet who is suspended from the Military Academy is not authorized privileges or pass.  Upon completion of out-processing, the cadet is not authorized access to those areas of West Point designated as Cadet Only or those areas closed to the general public.

**RA100**

## TABLE 5-1

### Demerit Allowance Table

#### Fourth Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---------|---------|---------|---------|---------|---------|
| 144 | 144 | 144 | 144 | 144 | 144 |

#### Transition from Fourth to Third Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---------|---------|---------|---------|---------|---------|
| 138 | 132 | 126 | 120 | 114 | 108 |

#### Third Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---------|---------|---------|---------|---------|---------|
| 108 | 108 | 108 | 108 | 108 | 108 |

#### Transition from Third to Second Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---------|---------|---------|---------|---------|---------|
| 105 | 102 | 99 | 96 | 93 | 90 |

#### Second Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---------|---------|---------|---------|---------|---------|
| 90 | 90 | 90 | 90 | 90 | 90 |

#### Transition from Second to First Class

| Feb-Jul | Mar-Aug | Apr-Sep | May-Oct | Jun-Nov | Jul-Dec |
|---------|---------|---------|---------|---------|---------|
| 87 | 84 | 81 | 78 | 75 | 72 |

#### First Class Year

| Aug-Jan | Sep-Feb | Oct-Mar | Nov-Apr | Dec-May | Jan-Jun |
|---------|---------|---------|---------|---------|---------|
| 72 | 72 | 72 | 72 | 72 | 72 |

Note:     (a)  Fourthclass cadets enter the demerit system on the day after they arrive in their letter companies during Reorganization Week.

(b)  Demerits received by New Cadets during Cadet Basic Training do not count against these allowances.

(c)  Periods of summer leave are included in the demerit periods and allowances for all classes.

(d)  The Jan-Jun allowance for Firstclass cadets is computed as if Jun were a full duty month.

(e)  Each period runs from the first calendar day of the first month shown through the last calendar day of the last month shown.

**RA101**

**Army Regulation 210–26**

**Installations**

# United States Military Academy

Rapid Action Revision (RAR) Issue Date: 6 September 2011

**Headquarters**
**Department of the Army**
**Washington, DC**
**9 December 2009**

## UNCLASSIFIED

**RA102**

**Headquarters**
**Department of the Army**
**Washington, DC**
**9 December 2009**

**\*Army Regulation 210–26**

**Effective 24 December 2009**

**Installations**

# United States Military Academy

By Order of the Secretary of the Army:

RAYMOND T. ODIERNO
*General, United States Army*
*Chief of Staff*

Official:

*Joyce E. Morrow*
JOYCE E. MORROW
*Administrative Assistant to the*
*Secretary of the Army*

**History.** This publication is a rapid action revision (RAR). The RAR is effective 20 September 2011. The portions affected by this RAR are listed in the summary of change.

**Summary.** This regulation incorporates existing direction and guidance from the Secretary of the Army for the general governance and operating policies of the United States Military Academy.

**Applicability.** This regulation applies to the active Army, the Army National Guard/Army National Guard of the United States, and the U.S. Army Reserve, unless otherwise stated. It also applies to those individuals assigned, appointed, or detailed to the United States Military Academy.

**Proponent and exception authority.** The proponent of this regulation is Deputy Chief of Staff, G–1. The proponent has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The proponent may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army management control process.** This regulation contains management control provisions but does not identify key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from Deputy Chief of Staff, G–1 (DAPE–MPO–AP), 300 Army Pentagon, Washington, D.C. 20310–0300.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directed to the Office of the Deputy Chief of Staff, G–1 (DAPE–MPO–AP), 300 Army Pentagon, Washington, DC 20310–0300.

**Distribution.** This publication is available in electronic media only and is intended for command level D for the active Army and the U.S. Army Reserve.

# Contents *(Listed by paragraph and page number)*

**Chapter 1**
**Introduction,** *page 1*

*Section 1*
*General, page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Mission • 1–5, *page 1*
Administration and supervision • 1–6, *page 1*

\*This regulation supersedes AR 210–26, dated 29 October 2009. This edition publishes a rapid action revision of AR 210–26.

AR 210–26 • 9 December 2009/RAR 6 September 2011                     i

**UNCLASSIFIED**                                                          **RA103**

# Chapter 1
# Introduction

## Section I
## General

## 1–1. Purpose
This regulation provides policy and procedures for the general governance and operation of the United States Military Academy (USMA).

## 1–2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

## 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary. Unless otherwise indicated, the following terms apply to this regulation:
   *a.* President or Vice President refers to the President or Vice President of the United States.
   *b.* Dean refers to the Dean of the Academic Board.
   *c.* Superintendent refers to the Superintendent, United States Military Academy.
   *d.* Commandant refers to the Commandant of Cadets.
   *e.* Department Head refers to the Head of a Department of Instruction.

## 1–4. Responsibilities
Responsibilities are listed in section II.

## 1–5. Mission
The mission of the USMA is to educate, train, and inspire the Corps of Cadets so that each graduate is a commissioned leader of character committed to—
   *a.* The values of Duty, Honor, and Country.
   *b.* Professional growth throughout a career as an officer in the United States Army.
   *c.* A lifetime of selfless service to the Nation.

## 1–6. Administration and supervision
The USMA is under the immediate supervision and control of the Department of the Army (Section 4334(a), Title 10, United States Code (10 USC 4334(a)). It operates under the jurisdiction of the Chief of Staff, United States Army (Department of the Army, General Order No. 3, 10 February 1977). (See fig 1–1.) It is funded as a separate operating agency (DFAS–IN Manual 37–100).

be retired under any provision of Chapter 367, Title 10, United States Code (10 USC chapter 367) under which that officer is eligible to retire.

*b.* The Superintendent maintains and controls the USMA Preparatory School (USMAPS), Fort Monmouth, NJ. The Superintendent will establish all regulations necessary for the discipline and governance of USMAPS.

*c.* The Superintendent will establish procedures and programs for the intellectual, military, and physical development of cadets as future commissioned officers consistent with the moral and ethical standards of uniformed service in the U.S. Army.

*d.* In the absence of the Superintendent, the Commandant of Cadets will exercise command authority. In the absence of the Superintendent and the Commandant of Cadets, the Chief of Staff, USMA, will exercise command authority. In cases where none of these officers are available, the next senior commissioned officer assigned, eligible, and present for duty will exercise command authority.

## 1–19. Commandant of Cadets

*a.* The Commandant of Cadets is detailed to the position by the President of the United States from any branch of the Army (10 USC 4333(a)) and is the immediate commander of the Corps of Cadets (10 USC 4334(c)). In the Commandant's absence, the Chief of Staff, United States Corps of Cadets (USCC), will have immediate command of the Corps of Cadets. In cases where the Commandant and the Chief of Staff, USCC, are unavailable, the next senior commissioned officer assigned, eligible, and present for duty will exercise command authority.

*b.* The Commandant—

(1) Is the director of the military program and the physical program.

(2) Is responsible to the Superintendent for the administration and discipline of the Corps of Cadets.

(3) Constitutes and exercises supervision of the Department of Military Instruction and the Department of Physical Education.

(4) Coordinates assignment and relief of assigned personnel.

(5) Coordinates schedules and instructional facilities within approved policy guidance.

(6) Accepts other duties and responsibilities as prescribed by the Superintendent.

*c.* The officers assigned to the Commandant will be organized to provide command, control, and administrative support to the Corps of Cadets. Each cadet company will be commanded by a commissioned officer of the Army who is designated the tactical officer for that company (Section 4349(a), Title 10, United States Code (10 USC 4349(a))). Tactical officers are the legal commanders of the cadet companies.

## 1–20. Dean of the Academic Board

*a.* The Dean of the Academic Board is appointed as an additional permanent professor by the President of the United States, with the advice and consent of the Senate, from the permanent Professors who have served as heads of departments of instruction at the Academy (Sections 4331(b)(2), 4333, 4335, Title 10, United States Code (10 USC 4331(b)(2), 4333, 4335)). The Dean serves in the grade of brigadier general with benefits authorized for that grade.

*b.* The Dean is director of the academic program. The Dean's duties include—

(1) Supervising the activities and personnel in the academic departments and the USMA Library.

(2) Allocating budgetary resources to these agencies with the approval of the Superintendent.

(3) Coordinating assignment and relief of academic personnel.

(4) Coordinating academic schedules and instructional facilities within approved policy guidelines.

(5) Holding membership on boards and committees, as directed by the Superintendent.

(6) Performing other duties, as prescribed by the Superintendent.

*c.* The Dean will be reviewed every 5 years by the Superintendent to ensure that the Dean's performance, the officer's desires, and the needs of the Army and of the Military Academy are all being properly served by the continued retention of the incumbent officer. The Superintendent's review and recommendations will be submitted to Department of the Army for approval.

*d.* Unless retired or separated at an earlier date, the Dean will be retired on the first day of the month following the month in which he or she becomes 64 years of age (Section 1251(a), Title 10, United States Code (10 USC 1251(a))).

## 1–21. Director of Admissions

*a.* The Director of Admissions will be appointed by the President of the United States, with the advice and consent of the Senate (10 USC 4333(c)). The Director of Admissions is responsible to the Superintendent for executing the USMA's admissions policies and procedures, to include maintaining files on candidates and encouraging outstanding potential leaders to seek admission to the Academy. The Director of Admissions will perform duties as prescribed by the Superintendent (10 USC 4333(c)).

*b.* The Director of Admissions appointee has the Regular grade of lieutenant colonel and, after serving 6 years as Director of Admissions, has the Regular grade of colonel. However, a Regular Army appointee has the Regular grade of colonel after the date when he or she completes 6 years of service as the Director of Admissions, or after the date on

(2) Cadets will not be released from pretrial restraint except as permitted by R.C.M. 304 and R.C.M. 305.

**6–4. Punishments that may be awarded cadets**

*a.* Following a hearing for misconduct or honor resulting in a finding of a violation of paragraphs 6–6 through 6–14, or 6–16, respectively, of this regulation, the Superintendent may, in lieu of or pending separation, impose the following punishments in such amounts or in such combinations as the Superintendent deems appropriate:

(1) Admonition.

(2) Reprimand.

(3) Restriction to limits.

(4) Deprivation of privileges.

(5) Reduction in or withdrawal of cadet officer or noncommissioned officer rank.

(6) Demerits.

(7) Punishment tours.

(8) Fatigue tours.

(9) Loss of leave.

(10) Turn-back to the next lower class.

(11) Suspension from the Military Academy.

*b.* The Superintendent may, at his or her discretion, under such terms and conditions as deemed appropriate, suspend his or her recommendation for separation, or other punishments awarded by him or her under subparagraph *a*, above.

*c.* In addition to the punishment provisions contained in paragraphs 6–6 through 6–14, 6–16 and 6–17, the Superintendent may independently punish cadets, as deemed appropriate in accordance with the following procedures:

(1) Upon receipt of information that a cadet's conduct may warrant punishment, the Superintendent will notify the cadet concerned, in writing, that disciplinary punishment is being considered in the case. The notice will include a description of the conduct in question; will inform the cadet that he or she may present, in writing, any matters in extenuation, mitigation, or defense and/or have a personal interview with the Superintendent; and will give the cadet a reasonable time (normally 3 calendar days) within which to respond to the notice.

(2) The Superintendent, after considering any matters submitted by the cadet, and after meeting with the cadet if the cadet has so requested, may award the following kinds of punishments in such amounts and/or in such combinations as the Superintendent deems appropriate:

*(a)* Admonition.

*(b)* Reprimand.

*(c)* Restriction to limits.

*(d)* Deprivation of privileges.

*(e)* Reduction in or withdrawal of cadet officer or noncommissioned officer rank.

*(f)* Demerits.

*(g)* Punishment tours.

*(h)* Fatigue tours.

*(i)* Loss of leave.

(3) Under these procedures the Superintendent may not direct suspension, turn-back to the next lower class, or separation from the Military Academy.

**6–5. Confidentiality of proceedings**

Misconduct hearings, Honor Investigative Hearings, and Conduct Investigations convened pursuant to this regulation, will be closed to the public. Department of Defense personnel with official interest in a proceeding, cadets, and members of the respondent cadet's family normally will be permitted to attend such hearings. Other persons may be admitted to observe a proceeding at the discretion of the convening authority, or his or her designee, when their attendance would not have an adverse effect on the fairness and dignity of the proceeding or the respondent cadet's right of privacy.

**Section II**
**Major Misconduct**

**6–6. Drugs and narcotics**

A cadet who violates Article 112a of the UCMJ (Art. 112a, UCMJ) may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation.

**6–7. Alcoholic beverages**

*a.* Except as specifically authorized in regulations prescribed by the Commandant, a cadet who, while on the West Point Military Reservation, drinks or possesses alcoholic beverages, or is found under the influence of alcoholic

beverages, may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation.

*b.* Elsewhere, a cadet who drinks or possesses alcoholic beverages, and who, as a result, commits (an) act(s), in such a manner and under such circumstances as to bring discredit on the cadet or the Corps of Cadets, may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation.

## 6–8. Sexual misconduct

*a.* A cadet who engages in (or attempts) an act of sexual misconduct may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation. Sexual misconduct includes but is not limited to:

(1) Violations of Articles 120, 125, or 134 (indecent assault; assault with the intent to commit rape or sodomy; adultery; indecent act/liberties with a child; indecent exposure; or indecent acts with another) of the Uniform Code of Military Justice (UCMJ, Arts. 120, 125, or 134).

(2) Sexual acts or relations committed in a barracks or classroom or other public place at the Military Academy.

(3) Sexual acts or relations committed anywhere under circumstances where the conduct of the cadet was to the prejudice of good order and discipline or was of a nature to bring discredit upon the Military Academy.

*b.* For purposes of this offense, the term "sexual acts or relations" is defined as sexual intercourse with another, or any activity or behavior with another that excites an individual's sexual lust and desires.

## 6–9. Conduct unbecoming a lady or gentleman

Cadets are required to act as leaders of character. They are not only to abstain from all vicious, immoral, and irregular conduct, but they are also enjoined to conduct themselves upon every occasion with the propriety and decorum characterizing a society of ladies and gentlemen. Cadets who conduct themselves in a manner unbecoming an officer and a lady or gentleman may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation.

## 6–10. Combinations among cadets

A cadet who engages in a combination or joint action with one or more cadets for the purpose of violating or evading any regulations, orders, or instructions issued by competent authority, or for the purpose of expressing disapprobation or censure of any person or persons in the military service (except as authorized by law or regulation providing for redress of grievances or otherwise making complaints through appropriate channels) may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation.

## 6–11. Indebtedness

A cadet who demonstrates a pattern of intentional or negligent failure to pay just debts may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation.

## 6–12. Criminal conviction

A cadet who is convicted of a criminal offense by a court of domestic or foreign civilian jurisdiction or by court-martial may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation.

## 6–13. Hazing

Hazing is defined as any conduct whereby a cadet causes another military member, regardless of service or rank, to suffer or be exposed to any activity that is cruel, abusive, oppressive, or harmful. It includes, but is not limited to: any form of initiation or congratulatory act that involves physically striking another to inflict pain; piercing another's skin; denigrating or ridiculing another; forcing or requiring the consumption of food, alcohol, drugs, or any other substance; or encouraging another to engage in illegal, harmful, demeaning or dangerous acts and soliciting or coercing another to participate in any such activity. Hazing need not involve physical contact among cadets; it can be verbal or psychological in nature, and it is not limited to superior-subordinate relationships. However, hazing does not include: mission or operational activities or requisite training to prepare for such missions or operations; administrative corrective measures, such as verbal reprimands; extra military instruction; command authorized physical training; and other similar activities authorized by the chain of command. This offense applies to conduct by cadets, to include conduct by or directed at foreign persons attending the Academy for purposes of instruction.

*a.* Whenever, in the judgment of the Superintendent, investigation has disclosed substantial evidence that a cadet has engaged in hazing, such cadet may be separated from the Military Academy and awarded punishment under paragraph 6–4 of this regulation. However, if a cadet charged with violating this paragraph requests in writing a trial by general court-martial, such cadet may not be separated for such offense except under sentence of such court (Section 4352(b), Title 10, United States Code (10 USC 4352(b))).

*b.* Cadets dismissed for hazing may not be reappointed to the Corps of Cadets, and they are ineligible for appointment as commissioned officers in any component of the Army, Navy, Air Force, or Marine Corps, until 2 years after the graduation of their Class (10 USC 4352(c)).

**6–14. Other major misconduct offenses**

A cadet who commits an offense punishable under the UCMJ by confinement for a term of 6 months or more may be separated from the Military Academy and awarded punishments under paragraph 6–4 of this regulation.

**6–15. Procedures for processing major misconduct offenses**

*a.* Cadets subject to separation or other adverse action under the provisions of this section of this regulation may, at the discretion of the Superintendent, be tried by court-martial if the conduct constitutes a violation of the UCMJ, be referred to a hearing before an investigating officer under the provisions of this paragraph, or be considered under procedures set forth in paragraph 6–4*c* of this regulation.

*b.* Should the Superintendent elect to proceed under the provisions of this paragraph, cadets concerned will be directed to appear as respondents before an investigating officer appointed by the Superintendent. The investigating officer will conduct an investigation of the matter in accordance with procedures approved by the Superintendent.

*c.* Upon completion of the investigation, the investigating officer will submit the record of the proceedings, including his or her findings and recommendations, to the Superintendent for action pursuant to paragraph 7–3 of this regulation.

**Section III**
**Honor and Discipline**

**6–16. Violation of the Cadet Honor Code**

*a.* The Cadet Honor Code states: "A cadet will not lie, cheat, or steal, or tolerate those who do." The Superintendent will establish and maintain a system to administer the Cadet Honor Code.

*b.* Honor investigative hearings will be convened by the Commandant under the provisions of the Cadet Honor Committee Procedures. Upon completion of the record of the proceedings, including the findings and recommendations, they will be reviewed by the Staff Judge Advocate, forwarded for recommendations by the Commandant, provided to the cadet respondent for rebuttal and comment, and finally sent to the Superintendent for action pursuant to paragraph 7–3 of this regulation.

*c.* Cadets who are found to have violated the Cadet Honor Code will normally be separated from the Military Academy; however, they may, at the discretion of the Superintendent, be retained or returned to the next lower class. They may also be awarded punishments under paragraph 6–4 of this regulation

*d.* Cadet Honor Committee Procedures must be approved by the Superintendent. Copies of such procedures and amendments thereto will be forwarded for information to Headquarters, Department of the Army, and will reference this paragraph.

**6–17. Cadet Disciplinary System**

*a.* Subject to the approval of the Superintendent, the Commandant will establish, publish, and administer a cadet disciplinary system. The system will include means to monitor each cadet's conduct, punishment for conduct deficiency, and instruction on the standards of conduct expected and required. Copies of the approved system and subsequent amendments will be forwarded for information to Headquarters, Department of the Army, and will reference this paragraph.

*b.* Conduct investigations will be convened by the Commandant under the provisions of the Cadet Disciplinary System. Before separating a cadet for conduct deficiency, he or she will be afforded a hearing to determine whether the cadet is deficient in conduct. If after such a hearing a cadet has been found deficient in conduct, the Commandant will review the report of proceedings. The Commandant may retain the cadet (with or without probation), or recommend to the Superintendent that the cadet be separated or suspended from the Military Academy.

*c.* In cases of conduct deficiency where a report of proceedings and the recommendations of the Commandant are forwarded for action, the Superintendent may, under the procedures in paragraph 7–3 of this regulation, take one or more of the following actions:

(1) Direct retention (with or without probation).

(2) Direct transfer to a lower class.

(3) Direct suspension from the Military Academy.

(4) Recommend separation to the Secretary of the Army.

*d.* If the Superintendent recommends separation, he or she may immediately, or at any time prior to the Secretary's action on the case, suspend the cadet. The Superintendent may also suspend any of the above actions under such terms and conditions as deemed appropriate.

RA108

**7–9. Breach of service agreement and reimbursement of educational costs**

*a.* Cadets who resign from the Military Academy, or who are separated from the Academy under the procedures contained in table 7–1, will be deemed to have breached their service agreement.

*b.* Cadets separated from the Military Academy under procedures other than those contained in table 7–1 may be deemed by the Superintendent to have breached their service agreement if the cadet's failure to meet the standards for continued attendance at USMA or for commissioning resulted from a willful act or omission.

(1) For Academic, Military, or Physical Program failures, the determination of a willful act or omission will be based on a recommendation of the Academic Board after the cadet has been advised of the basis for the contemplated separation and has had the opportunity to present, in writing, his or her rebuttal to the allegation of willful act or omission.

(2) For other failures, the determination of a willful act or omission will be based upon an investigation conducted under the provisions of AR 15–6. The Superintendent, upon recommendation of the Commandant, will appoint the investigating officer. The report of the investigating officer will be processed in accordance with paragraph 7–3, prior to action by the Superintendent.

*c.* A cadet who voluntarily, or because of misconduct fails to complete the period of active duty service specified by the Secretary in the cadet's agreement to serve may be required to reimburse the Government for educational costs pursuant to Section 2005, Title 10, United States Code (10 USC 2005) and implementing regulations. If the Secretary determines that such active duty service is not in the best interests of the Army, the cadet will be considered to have failed to complete the period of active duty and may be required to reimburse the government for educational costs.

*d.* A cadet who may be subject to this reimbursement requirement will be advised, in writing, of such requirement before—

(1) Submitting a request for voluntary resignation; or

(2) Making a decision on a course of action regarding personal involvement in administrative or judicial action resulting from alleged misconduct.

*e.* When the Superintendent recommends reimbursement of educational costs and the cadet disputes the validity of the debt, the Superintendent is authorized to appoint an investigating officer to hear evidence concerning the validity of the debt under 10 USC 2005(g)(1).

**Table 7–1**
**Separations deemed to be a breach of service contract**

| Nature of separation | Standards | Procedures |
|---|---|---|
| Conduct deficiency | Para 6–17, this regulation | See local regulations; paras 6–17 and 7–3, this regulation |
| Extended unauthorized absence | Para 6–22, this regulation | Para 6–22*b*, this regulation |
| Honor | Para 6–16, this regulation | See local regulations; paras 6–16 and 7–3, this regulation |
| Marriage or support obligation | Para 6–20, this regulation | Para 6–20*b*, this regulation |
| Misconduct | Paras 6–9 through 6–19, this regulation | See local regulations; paras 6–5 and 7–3, this regulation |
| Conscientious objection or refusal to perform duties that conflict with religious practices | Para 6–21, this regulation | Para 6–21, this regulation |
| Failure to maintain physical fitness standards in accordance with AR 350–1 | Para 6–25, this regulation | Para 6–25, this regulation |
| Failure to meet army weight and body composition standards or make satisfactory progress in a weight control program in accordance with AR 600–9 | Para 6–24, this regulation | Para 6–24*b*, this regulation |

**Table 7–2**
**Delegation of separation and discharge authority**

| Rule | If separation will occur | and the cadet | and the military service obligation is | and the cause for separation is | the separation authority is | and the discharge authority is |
|------|--------------------------|---------------|----------------------------------------|---------------------------------|-----------------------------|--------------------------------|
| 1 | before commencement of term 1 of the second class year (junior year) | entered USMA from civilian status | waived (automatic) | Paras 6–18, 6–20, 6–21, 6–22, 6–24, 6–28, 6–29, 6–30, 6–32, 7–5, and 7–6 | Superintendent, USMA[1] | Superintendent, USMA, provided an Honorable Discharge Certificate is issued |
| 2 | Same as above | Entered USMA from USMAPS as an invitational reservist[2] | Waived (automatic) | Same as above | Same as above | Same as above |
| 3 | Same as above | Entered USMA from any Active or Reserve component of any military Service | Less than 1 year | Same as above | Same as above | Same as above and the Superintendent decides to waive the remaining MSO |
| 4 | Same as above | Entered USMA from an Active or Reserve component of any military Service | 1 year or more | Same as above | Same as above | Secretary of the Army, Return to former status for completion of MSO unless the Secretary determines otherwise |
| 5 | After commencement of term 1 of the second class year (junior year) | Entered USMA from any source | Is in effect (all cases) | Any case under chapters 6 and 7 | Secretary of the Army[3,4] | Secretary of the Army |

Notes:
[1] The Secretary of the Army (SA) is the discharge authority for all cadet separation cases where an other than honorable discharge is recommended. The Deputy Chief of Staff, G–1 is delegated authority to take final action in cases involving third and fourth class cadets for honor violations, undesirable habits or traits of character, misconduct, and conduct deficiency.
[2] Invitational reservists are civilians invited to enlist in the USAR specifically to attend USMAPS (AR 140–111, para 2–8f)
[3] The Assistant Secretary of the Army (M&RA) is delegated the authority to separate first and second class cadets where separation and a call to active duty is recommended. If no call to active duty is recommended, first and second class cadets recommended for separation, except for medical separations, may be separated by DCS, G–1.
[4] The Director for Military Personnel Policy (DMPP) is delegated authority to take final action in medical separations of first and second class cadets.

# Chapter 8
# Administration for Cadets

## 8–1. Pay and allowances

*a.* Cadets at the USMA, to include foreign cadets, are entitled to receive monthly pay at the rate prescribed by law.

*b.* Cadets who request and are granted leave while awaiting final action on separation from USMA or discharge from the Service will receive no pay during the period of such leave.

## 8–2. Leave without pay and suspension of pay

*a.* Pursuant to the authority vested in the Secretary under 10 USC 702(b) and (e), the Superintendent may, in his discretion, immediately suspend, without pay, a cadet:

(1) Against whom final action is pending on a recommendation for involuntary separation or a resignation in lieu thereof,

(2) Who is pending return to the Academy to repeat an academic semester or year, or

(3) For other good cause to include when court-martial charges have been preferred.

*b.* The pay and allowances of all cadets who fail to return to the Military Academy at the expiration of their leaves of absence will be stopped and will not be provided to them unless they have been prevented from returning by sickness or some other unavoidable circumstance. In computing the amount of pay to be withheld, the day on which return was due will be counted as the first day of the unauthorized absence and the day of return as a day of duty, regardless of the hour.

## 8–3. Cadet accounts

*a.* The Treasurer, USMA will, with the prior written consent of cadets, keep an account for each cadet in which the Treasurer will credit the cadet with monthly pay, along with other revenues, and deduct charges in authorized amounts

Army Regulation 612–205

Personnel Processing

# Appointment and Separation of Service Academy Attendees

Headquarters
Department of the Army
Washington, DC
15 May 1983

Unclassified

RA111

**Headquarters**
**Department of the Army**
**Washington, DC**
**15 May 1983**

**\*Army Regulation 612–205**

**Effective 15 June 1983**

Personnel Processing

# Appointment and Separation of Service Academy Attendees

By Order of the Secretary of the Army:

E. C. MEYER
*General, United States Army*
*Chief of Staff*

Official:

ROBERT M. JOYCE
*Major General, United States Army*
*The Adjutant General*

**History.**

**Summary.** This revised publication contains instructions on the disposition of personnel records and on the separation of cadet candidates from the US Military Academy Preparatory School. It further describes the admission process of nonactive duty Reserve Component personnel.

**Applicability.** This regulation applies to the Active Army, the Army National Guard, and the US Army Reserves.

**Proponent and exception authority.** Not applicable

**Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Army management control process.** Not applicable

**Supplementation.** Supplementation of this regulation is prohibited unless prior approval is obtained by HQDA (DAPC–OPP–PM), ALEX VA 22332.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by the Adjutant General. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested Improvements.** The proponent agency of this regulation is the US Army Military Personnel Center. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQDA(DAPC–OPP–PM), ALEX VA 22332.

**Distribution.** DISTRIBUTION:
To be distributed in accordance with DA Form 12–9A requirements for AR, Personnel Processing.

  Active Army – B
  ARNG – D
  USAR – D

## Contents (Listed by paragraph and page number)

*Section I*
*Introduction, page 1*
Purpose. • 1, *page 1*
References • 2, *page 1*
Explanation of abbreviations • 3, *page 1*
Responsibilities • 4, *page 1*

*Section II*
*Admission Processing, page 1*
Active Duty Army personnel • 5, *page 1*
Nonactive duty Reserve Component personnel • 6, *page 1*

*Section III*
*Separation, page 1*
Separation of cadets from the US Military Academy • 7, *page 1*
Separation of US Army personnel for physical disability from Service academies other than the US Military Academy • 8, *page 2*
Separation of cadet candidates from the US Military Academy Preparatory School (USMAPS) • 9, *page 2*
Disposition of enlisted personnel separated from Service academies for other than physical disqualifications • 10, *page 3*

**Appendix A.** References, *page 5*

\*\*This regulation supersedes AR 612–205, 1 May 1982.

RA112

**Table 3**
**USMA cadet separation policies—Continued**

| Rule | If separation action is started | and the cadet | and | then |
|---|---|---|---|---|
| 2 | | entered USMA from USMAPS as an Invitational Reservist[1] | | the cadet will be discharged. |
| 3 | | entered USMA from any Regular component of any military service | has 6 or more months remaining in ETS[2] | the cadet will be returned to his or her former status for completion of any prior service obligation.[3] |
| 4 | | | has less than 6 months remaining to ETS[2] | the cadet will be relieved from active duty and transferred to Army Reserve for completion of any prior service obligation (Note 3) |
| 5 | | entered USMA as a Reserve Component member | | he or she will be processed per Regs USMA, paragraph 10.01a(5).[3] |
| 6 | After commencement of the third academic year (junior year) but before commencement of the fourth academic year (senior year) | is separated or resigns | | he or she will be transferred to the Reserve as an E–3 (or appropriate grade) for 2 years and may be ordered to active duty for not less than 2 years, or discharged from the Army if transfer to the Reserve is inappropriate.[3][4] |
| 7 | after commencement of the fourth academic year (senior year) | | | he or she will be transferred to the Reserve as an E–4 (or appropriate grade) for 3 years and may be ordered to active duty for not less than 2 years, or discharged from the Army if transfer to the Reserve is [3][4] |
| 8 | because the cadet has completed the course | declines appointment as a commissioned officer | | he or she will be transferred to the Reserve as an E–4 and ordered to active duty for 4 years. |
| 9 | because of unsuitability for military service as contemplated by AR 635–200 | | | he or she will be discharged. |

Notes:

[1] Invitational Reservists are civilians invited to enlist in the USAR specifically to attend the USMAPS (AR 140–111, para 2–8f).

[2] Service at USMA is credited toward fulfillment of any prior service obligation.

[3] However, if the separation authority determines that the cadet is being separated from the Academy because of demonstrated unsuitability unfitness, or physical disqualification from military service, the cadet will be discharged from the Army.

[4] Each case will be reviewed individually. The Superintendent will recommend to the Secretary of the Army that the cadet be either transferred to the Reserve with further recommendation regarding order to AD or that the cadet be discharged from the Army if such action is appropriate.

RA113

USCC SOP

# SEPTEMBER 2012





OFFICE OF THE COMMANDANT
**UNITED STATES MILITARY ACADEMY**
WEST POINT, NEW YORK 10996-1602

MACC-O-RD                                                            26 September 2012

MEMORANDUM FOR United States Corps of Cadets, West Point, NY 10996

SUBJECT: 2012 USCC STANDING OPERATING PROCEDURE

1. This standard operating procedure (SOP) for the command and administration of the Corps of Cadets is issued pursuant to paragraph 6-17, Army Regulation 210-26, *United States Military Academy*, dated 5 September 2012. All cadets will read this SOP each semester. This SOP is punitive.

2. The SOP governs the United States Corps of Cadets, and is written to foster an environment in which each cadet's concept of duty will be further developed and strengthened through self-discipline. Whether it is a legal or moral obligation, doing one's duty means a number of things. It means doing what needs to be done to the best of one's ability without being told to do it. It requires a willingness to accept full responsibility for all words and actions. It demands that a cadet act with integrity and with respect for others at all times, to choose the harder right over the easier wrong, and to put the needs and goals of the unit ahead of one's own self-interest. Leaders of character have the willpower, courage, and self-discipline to do what is right all the time.

3. Requests for exceptions to policy will be forwarded to the Brigade Tactical Officer (BTO). Input or recommended changes to this SOP will be provided to the USCC Regulations and Discipline (R&D) Officer, X4702.

THEODORE D. MARTIN
Brigadier General, USA
Commandant of Cadets

DISTRIBUTION:
Special

**RA115**

# USCC STANDARD OPERATING PROCEDURE

## INTRODUCTION/PUNITIVE STATEMENT

**I-1. General**.  This SOP establishes the obligations, standards, authorizations, and privileges of cadets in order to create an environment in which each cadet's concept of duty can develop and strengthen through good order and discipline.   Provisions of this SOP are effective at all times unless specifically changed by the Commandant or commanders of the summer training programs with approval of the Commandant. Cadets are responsible to know the contents of this SOP, to comply with the standards in this SOP, and to enforce the standards within this SOP.   Violations of the USCC SOP are punishable under USCC Regulation 351-2 (The Cadet Disciplinary System), Army Regulation 210-26, *United States Military Academy*, and the Uniform Code of Military Justice (UCMJ).

**I-2. Requests for Exceptions.**   Exceptions to the provisions of this SOP will be submitted through the chain of command to the Brigade Tactical Officer (BTO).

**I-3. Access to this SOP.** A copy of this SOP, with posted changes or supplements, is accessible to all network users at http://www-internal.uscc.usma.edu/sacsp/USCCSOP/sop_contents.htm

**I-4. Performance of Duty.** The responsibility to perform one's duty applies to each cadet at all times, 24 hours a day, in or out of uniform, at or away from West Point.   Duty always takes precedence over privileges. Duty may be academic, physical, or military in nature and may not necessarily appear in writing.   Duty assignments may be explicit or implicit.

**I-5.  Spirit of the Regulation**. This SOP is meant to serve as a guideline for establishing and maintaining good order and discipline.   The omission of subject matter from this document does not constitute authorization for cadets to participate in an activity or to conduct themselves contrary to the spirit of the standards expected of the Corps of Cadets.   In the absence of written or oral instructions, or when unable to determine a proper course of action, a cadet should seek guidance from his/her cadet chain of command, company tactical officer, company tactical noncommissioned officer, or the officer-in-charge (OC).

**I-6.  Authority and Seniority. <u>Authority to Enforce Regulations and Issue Orders.</u>**  All cadets are authorized to make corrections on other cadets, regardless of rank.   Cadets are authorized to give orders to other cadets based on rank and duty position.   Cadets in temporary positions of authority, such as guard or CCQ, are authorized to issue orders in the discharge of their responsibilities to all cadets regardless of the seniority of the cadets involved.

**<u>Seniority</u>**. Within the organization of the Corps of Cadets, seniority is determined first by cadet rank and thereafter by alphabetical order among cadets of equal rank within each class.   Order of rank is cadet officers, sergeants, corporals and privates.   Regardless of cadet rank, corps squad team captains and cadets in charge of extracurricular activities are senior to cadets in their respective teams or activities for all actions pertinent to that team or activity.   On trip sections, the senior ranking cadet present will assume the duties of Cadet-in-Charge (CIC) for that particular activity when a club officer, section marcher, or other duly appointed CIC is not present.   The team captain will be in charge of athletic team trip sections.   The CIC of an educational trip section will be the section leader or the senior-ranking cadet present. In academic and physical education sections, seniority is determined by the order in which a cadet's name appears on the section roster, the section marcher being the first in order or seniority.

**CARD 600 – General Alcohol Policy**
**USCC SOP Chapter 6 Alcohol, Drug, and Tobacco Use**

1. **General.** This chapter provides guidance, sets forth requirements, and establishes standards consistent for maintenance of a healthy and responsible command climate regarding the use of alcohol, drugs, and tobacco. Cadets must use mature judgment in their decisions to use alcohol, drugs, and tobacco.

2. **Drugs.** Procession, use, or sales of illegal drugs are not tolerated by the Army, United Military Academy, or the United States Corps of Cadets. Cadets found to be in violation are subject to major disciplinary sanctions under AR 600-85, AR 210-26 and Articles 80 and 112a of the Uniform Code of Military Justice. A cadet who knowingly uses a prescription medication belonging to anyone else is also considered to be in possession of a controlled substance. A cadet who shares a prescription medication with anyone else is also considered to be a distributor of a controlled substance.

3. **Alcoholic Beverages**.

   a. Army policy emphasizes responsible behavior concerning alcohol consumption. Soldier who abuse or misuse alcohol degrade their effectiveness as leaders and seriously jeopardize their careers. Alcohol is a drug that can become habit-forming and detrimental to one's health. The decision to consume alcohol requires careful consideration and safety awareness. It is the duty of military leaders to act responsibly and provide for the proper health, welfare, and training of subordinates. Accordingly, at any function at which alcohol is served, non-alcoholic beverages must also be served in adequate quantities. The United States Military Academy does not condone illegal alcohol consumption, possession, or trafficking.

   b. **Laws and Social Mores**. Society has established specific laws to regulate the use of alcohol and related offenses due to the serious nature of alcohol use. Cadets are subject to New York State law. When in doubt, the best course of action is to refrain from alcohol consumption.

   c. **First/Second Class Club**. To foster an environment of responsible drinking a First/ Second Class Clubs will not serve hard liquor or beer towers.
      (1) Guard Force: Only First Class Cadets will serve as guard force for First and Second class clubs. These cadets are responsible for maintaining good order and disciple of the club by ensuring responsible alcohol consumption by cadets and guests.
      (2) BDO will accompany the OC and conduct nightly visits to the First/Second Class Clubs in order to ensure cadets and guests are behaving and drinking responsibly.

   d. **Responsibilities**.
      (1) Cadets assume full responsibility for all improper behavior and consequences as a result of their decision to consume alcohol. Cadets cannot blame improper conduct or displays of poor judgment on alcohol impairment. Cadets must understand that the responsibilities of an impending duty demand their total attention and ability to make sound decisions without impairment. A leader's judgment and self-control become subject to question and compromise after any amount of alcohol is consumed.
      (2) Cadets will comply with state and local laws regarding possession, consumption, purchase, and trafficking of alcohol.
      (3) Misconduct associated with any alcohol-related offense is a serious issue. Alcohol related misconduct, (e.g. DWI, DUI, DWAI, underage drinking , serious misbehavior) may be considered for appropriate action under the Cadet Disciplinary Code. In the most egregious circumstances, action under the Uniform Code of Military Justice may be applicable. A cadet who receives two Article 10s for alcohol-policy violations, as defined in this chapter, will undergo a Conduct Review, which could lead to a Conduct Investigation and potential separation from the Academy (see USCC REG 351-1 and 351-2).
      (4) Cadets are responsible to advise their guests, hosts, and mentors of USCC regulations pertaining to consumption of alcohol. Members of the staff, faculty, team coaches, officer representatives, parents and guardians also assume responsibility to understand the regulations and for the conduct of their cadet guests. Cadets also have the responsibility of enforcing USCC regulations pertaining to consumption of alcohol.
**CARD 600**

**CARD 600 – General Alcohol Policy**
**USCC SOP Chapter 6 Alcohol, Drug, and Tobacco Use**

4. **Condoning.**

a. Chain of Command members of a cadet suspected of committing an alcohol-related offense (e.g. DWI, DUI, DWAI, underage drinking, serious misbehavior while intoxicated) must take action to investigate the allegation and are required to report the incident up the chain of command to the Company/Regimental Tactical Officer.   This mandate includes Team Captains and those cadets operating in an official capacity during the time of an incident (e.g. CCQ, UDO, CDO, RDO, Courtesy Patrol Guard, BDO)   A failure to investigate and report constitutes toleration of an alcohol related offense, and subjects the COC member, Team Captain, and/or duty officer to punishment under the Cadet Disciplinary Code.   In the most egregious circumstance action under the Uniform Code of Military Justice may be applicable.

b. Cadets that are not in the chain of command must take corrective action, and should report the incident to the chain of command.   A failure to investigate and report by a non chain of command member as defined above does not constitute toleration of an alcohol related offense.

**CARD 600**

**CARD 601 – Alcohol Policy Geographic Limits and Definitions**
**USCC SOP Chapter 6 Alcohol, Drug, and Tobacco Use**

1. **General Alcohol Policy Definitions:**

a. West Point Military Reservation:   The geographical boundaries of the reservation are printed on the West Point and Vicinity Map, Series V821S, 1:25,000, Constitution Island, Thayer Hotel, Round Pond, Lake Frederick, Camp Buckner, ranges, picnic areas, cadet and post parking lots, etc.

b. Alcohol:   a beverage with any percentage of alcohol content.

c. Drinking:   consuming alcohol as evidenced by behavior, odor, or other indications.

d. Trafficking with Figure 6-1 or on the West Point Military Reservation: distributing alcohol; or bringing in or causing alcohol to be brought within for further distribution. Trafficking includes making alcoholic beverages available to cadets who are not authorized by this regulation or state law to consume alcohol; distributing alcohol on trip sections or IADs; and distributing alcohol to any underage persons and or away from the Academy.

e. Under the Influence: having lost some possession of faculties, as evidenced by poor conduct, statements, or any impairment of one's ability to function normally.

f. Driving While Ability Impaired (DWAI):   operating any motor vehicle with a blood alcohol content (BAC) or a breath analysis test reading (BAT) of at least .07 percent but not greater than .099 percent, or as evidenced by conduct or statements indicating any impairment of one's ability to function normally.

g. Driving While Intoxicated (DWI):   operating any motor vehicle with a BAC or BAT of .10 percent or greater, or as evidenced by conduct or statements indicating substantial impairment of one's ability to function normally.

h. New York State Zero Tolerance Law: persons under the age of 21 may not operate a vehicle after consuming alcohol if they have $\geq$ .02 percent alcohol in their blood.


2. **Geographic Boundaries for Alcohol Purchasing and Consumption.** The purpose of this standard is to promote the appropriate alcohol-related social behavior among first and second class cadets of legal drinking age (currently 21 years or older in New York State).   Furthermore, it is to create an environment, on-post and within the local community, which eliminates the potential distractions of alcohol use from other cadets.

a. **North.**   Main post limits.

b. **South.**   Bear Mountain traffic circle (intersection of Routes 6 and 9W).

c. **East.**   West bank of the Hudson River.   No alcohol consumption traveling to or from Constitution Island, and no alcohol consumption on Constitution Island.   No alcohol consumption is authorized in the Garrison Train Station or surrounding parking lot areas.

d. **West.**   Route 9W (no alcohol consumption in establishments located directly on Route 9W).

**CARD 601**

**CARD 602 – Alcohol Purchase and Permitted Consumption Standards**
**USCC SOP Chapter 6 Alcohol, Drug, and Tobacco Use**

1.   **Alcohol Purchase**. In conjunction with unit social functions, first and second class cadets who are at least 21 years old with prior written TAC Team approval, or in the presence of their tactical officer or NCO, may purchase beer, wine and non-alcoholic beverages in bulk quantities at the USMA Package Store and the USMA Post Exchange. No other purchase of take-out alcohol may be made from any establishment on-post.   Unit social functions that include alcohol require the TAC's approval.

2.   **Permitted Circumstances and Locations for Alcohol Consumption.**   Although alcohol is authorized under the conditions described in this chapter, cadets will at no time drink to the point that their judgment is impaired.

- All cadets of legal age are allowed to consume alcohol outside the geographical boundaries of the West Point Military Reservation while on OPPs, pass or leave.   Cadet privates and corporals will not drink alcohol within the boundaries of Figure 6-1 or on post regardless of how old they are.

- Cadet officers and sergeants with full privileges who are at least 21 years of age may consume and purchase alcohol within the boundaries of Figure 6-1 and on post under the conditions listed below in paragraphs (1)-(7).

    (1) Upon satisfactory completion of LDB class AD-6, "USCC Alcohol Policy," and signing the briefing certificate.   Certification is normally a semi-annual requirement conducted during Reorganization Week. Authority will be suspended should a cadet fail to re-certify (see Card 608 for alcohol policy briefing certificate).

    (2) On-post, without a meal at the Hotel Thayer, West Point Club, Golf Course Club House, class clubs, and Bowling Center.   Cadets consuming alcohol at the Golf Course Club House and Bowling Center must patronize the facility to participate in the activity provided, i.e. golf and bowling, and not for the sole purpose of consuming alcohol.   Second Class Cadets may consume Alcohol at the First-Class Club when authorized to visit or when attending a Social function sponsored by USCC.   Only cadet sergeants may use and consume alcohol at the Cow Club.   **Cadets may not at any time participate in drinking games anywhere on the West Point Military Reservation.**

    (3) At Eisenhower Hall while participating in authorized class or social activities.

    (4) At an authorized picnic area or post-game tailgate site, and only at the invitation of a member of the staff, faculty, athletic team coach, parent, or guardian who is present at the function.

    (5) At an approved unit social function (when the consumption of alcohol is authorized by the Brigade Tactical Officer) in this instance, the only alcohol authorized for cadets to drink is that which is served by the host/sponsor of the function.

    (6) At the invitation of a member of the staff, faculty, athletic team coach, parent or guardian (including the parents or guardians of other cadets who are attending the same function) at their quarter's site or grounds.   The term quarters also includes the residence of USMA staff and faculty members who reside off-post within figure 7-1 or have been granted an exception to policy by the Deputy Commandant.

    (7) Cadets must wear the appropriate cadet uniform of the day or cadet casual to consume alcohol on-post or within figure 6-1.

**CARD 602**



# Department of Defense
# INSTRUCTION

**NUMBER** 1322.22
September 24, 2015

USD(P&R)

SUBJECT:     Service Academies

References:     See Enclosure 1

1. <u>PURPOSE</u>.  In accordance with the authority in DoD Directive (DoDD) 5124.02 (Reference (a)), this instruction:

    a.  Reissues DoDD 1322.22 (Reference (b)) as a DoD Instruction (DoDI) to establish policy, assign responsibilities, and prescribe procedures for DoD oversight of the Service academies (referred to in this instruction as "the academies").

    b.  Incorporates and cancels DoDD 1332.23 (Reference (c)), DoDI 1025.4 (Reference (d)), and Directive-type Memorandum 07-022 (Reference (e)).

2. <u>APPLICABILITY</u>.  This instruction applies to OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the combatant commands, the Office of the Inspector General of the Department of Defense (IG DoD), the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD (referred to collectively in this instruction as the "DoD Components").

3. <u>POLICY</u>.  It is DoD policy, pursuant to chapters 403, 603, and 903 of Title 10, United States Code (U.S.C.) (Reference (f)) and consistent with this instruction, that:

    a.  The academies provide, each year, newly commissioned officers to each Service that have been immersed in the history, traditions, and professional values of the Military Services and developed to be leaders of character, dedicated to a career of professional excellence in service to the Nation.

    b.  The accession of those officers generates a core group of innovative leaders capable of thinking critically who will exert positive peer influence to convey and sustain these traditions attitudes, values, and beliefs essential to the long-term readiness and success of the Military Services.

**RA121**

*DoDI 1322.22, September 24, 2015*

c.  Active duty service is the primary means of reimbursement for education.

d.  Cadets and midshipmen disenrolling or those disenrolled after the beginning of the third academic year from a Service academy normally will be called to active duty in enlisted status, if fit for service.

4.  <u>RESPONSIBILITIES</u>.  See Enclosure 2.

5.  <u>PROCEDURES</u>.  See Enclosure 3.

6.  <u>RELEASABILITY</u>.  **Unlimited**.  This instruction is approved for public release.  Copies may be obtained through the Internet from the DoD Issuances Website at http://www.dtic.mil/whs/directives.

7.  <u>EFFECTIVE DATE</u>.  This instruction is effective

Brad Carson
Acting Under Secretary of Defense for
Personnel and Readiness

Enclosures
1.  References
2.  Responsibilities
3.  Procedures
4.  Applicant Briefing Item on Separation Policy
Glossary

**RA122**

b.  The normal course of instruction at an academy is 4 years, with selected promising cadets or midshipmen pursuing longer terms when required to meet academy educational or other graduation requirements.  The Secretaries of the Military Departments will arrange the course of instruction so that cadets or midshipmen are not required to attend classes on Sunday.

c.  Besides academic preparation, each academy will provide for development of military and leadership skills and physical fitness.

d.  The practice of hazing is prohibited by Department policy and law (see sections 4352, 6964, and 9352 of Reference (f)).

e.  An important component in the growth of cadets or midshipmen is the leadership development system.  Its purpose is to motivate graduates to seek leadership responsibilities and enable them to think clearly, decide wisely, and act decisively under pressure and in a variety of leadership situations.  The leadership development system will be based on:

(1)  Positive leadership, equal opportunity, and respect for one another's values, beliefs, and personal dignity.

(2)  Elimination of dysfunctional stress.  The Secretaries of the Military Departments concerned and superintendents determine knowledge requirements and procedures for the development and indoctrination of cadets and midshipmen.  Memorization of trivia, such as complete menus for meals, is generally inappropriate.  Establishment of such requirements will be closely monitored by the academies.

(3)  Emphasis on proper bearing, fitness, and posture.  These are important to effective leadership and contribute to overall well-being.  Exaggerated forms of posture, speech, or movement generally do not constitute proper military bearing.  Establishment of such requirements will be closely monitored by the academies and used only with the knowledge and approval of the superintendents.

(4)  Positive role models; opportunities to learn, practice, and receive feedback; and access to support.  Direct support to leadership development will be provided by concurrent and relevant coursework, athletic competition, and hands-on experience to show the relationship between theories of leadership in the classroom and practice of leadership outside the classroom.

f.  The highest ethical and moral standards are expected of the officer corps.  The honor systems of the academies will support that expectation by enforcing adherence to standards of behavior embodied in the honor codes or concepts of the academies.  Violations of honor standards may constitute a basis for disenrollment.


6.  <u>MANAGEMENT OF CADETS AND MIDSHIPMEN</u>

a. A U.S. cadet or midshipman entering an academy directly from civilian status assumes a Military Service obligation (MSO) of 8 years, under section 651 of Reference (f) and DoDI 1304.25 (Reference (p)).

b. Cadet and midshipman pay is prescribed by section 203(c) of Reference (l).

c. Cadets and midshipmen will meet medical accession standards outlined in paragraph 3d(4) of this enclosure.

d. As a condition for providing education at an academy, the Secretary of the Military Department concerned will require that each U.S. cadet or midshipman enter into a written agreement in which he or she agrees:

(1) To complete the course of instruction for graduation specified in the agreement to accept an appointment as a commissioned officer, if tendered, and to serve on active duty for a period specified in the agreement if called to active duty or, at the option of the Secretary of the Military Department concerned, to reimburse the United States for the amount specified by the Secretary of Military Department concerned, as prescribed in this enclosure.

(2) That if such cadet or midshipman fails to complete the educational requirements specified in the agreement, such person, if so ordered by the Secretary of the Military Department concerned, will serve on active duty for a period specified in the agreement.

(3) That if such person fails to complete the period of active duty specified in the agreement, he or she will reimburse the United States for the amount specified by the Secretary of the Military Department concerned in accordance with the requirements of section 2005 of Reference (f) and section 303a of Reference (l).

(4) To such other terms and conditions as the Secretary of the Military Department concerned may prescribe to protect U.S. interests.

e. An obligation to repay the United States under this subsection is, for all purposes, a debt owed the United States.  A discharge in bankruptcy under Title 11 U.S.C. (Reference (q)) does not discharge a person from such debt if the discharge order is entered less than 5 years after:

(1) The date of the termination of the agreement or contract on which the debt is based; or

(2) In the absence of such agreement or contract, the date of the termination of the service on which the debt is based.

f. The sustainment of high performance standards ensures that cadets and midshipmen who are unwilling or unable to successfully complete the program of instruction at the academy are identified quickly.  As defined by the Military Department concerned, cadets or midshipmen who are identified as "deficient" in conduct, studies, or physical fitness, and disenrolled from any academy may not, unless recommended by an academic or academy board, be returned or

reappointed to an academy.  Those cadets or midshipmen selected for return will be reappointed consistent with the criteria prescribed by the board.

(1)  Individuals failing to complete the required course of academy instruction (including disenrollment for academics, conduct, honor code violations, or physical deficiency) will be disenrolled.

(2)  If an appointment is terminated before graduation due to a U.S. cadet's or midshipman's breaching his or her agreement, or if a U.S. cadet or midshipman refuses to accept a commission following graduation, the 8 year MSO will be fulfilled by the period for which the member is ordered to serve on active duty or in the Reserve Component in an applicable enlisted status.  He or she may be ordered to active duty for a period not to exceed 4 years under sections 4348(b), 6959(b), or 9348(b) of Reference (f).  Policies that apply to U.S. cadets or midshipmen disenrolled from an academy who entered the academy directly from civilian status are:

(a)  Fourth and Third Classmen (First and Second Years).  A fourth or third classman disenrolled will retain their MSO (Reference (f) and (p)) but have no active duty service obligation.

(b)  Second Classmen (Third Year).  A second classman resigning before the start of the second class academic year or disenrolled for cause resulting from actions that occurred only before the start of the second class academic year will be discharged as if he or she were a third classman.

(c)  Second or First Classmen (Third and Fourth or Subsequent Years).  Any second or first classman who is disenrolled and who is not suited for enlisted Military Service for reasons of demonstrated unsuitability, unfitness, or physical disqualification, will be discharged in accordance with the current Military Service regulations that implement this Instruction, to include monetary recoupment.  Other second or first class cadets and midshipmen disenrolled after the beginning of the second class academic year, but before completing the course of instruction, may be transferred to the Reserve Component in an enlisted status and ordered to active duty for not less than 2 years, but not more than 4 years and incurs a MSO, in accordance with sections 4348(b), 6959(b), or 9348(b) of Reference (f).

(d)  First Classman (Declining Appointment).  Any first classman completing the course of instruction and declining to accept an appointment as a commissioned officer may be transferred to the respective Reserve Component in an enlisted status and ordered to active duty for 4 years and incurs a MSO in accordance with sections 4348(b), 6959(b), and 9348(b) of Reference (f) and DoDD 1235.10 (Reference (r)).

(3)  The disposition of cadets and midshipmen entering an academy from the Regular or Reserve Component of any Military Service (except those who enter an academy by way of its preparatory school from civilian status) and then not completing the program will be determined in accordance with section 516 of Reference (f):

(a)  Fourth and Third Classmen (First and Second Years).  If disenrolled during the fourth or third class year, the cadet's or midshipman's Military Service commitment will be equal to the time not served on the original enlistment contract, with all service as a cadet or midshipman counted as service under that contract.  Those individuals with less than 1 year remaining in the original enlistment contract may be discharged on approval of the disenrollment by the Military Department concerned.

(b)  Second Classmen (Third Year).  If disenrolled before the beginning of the second class academic year, the cadet's or midshipman's Military Service commitment will be the same as in paragraph 6f(3)(c) of this enclosure.

(c)  Second or First Classmen (Third and Fourth or Subsequent Years).  If first and second classmen are disenrolled for issues occurring after the beginning of the second class academic year, their Military Service commitment will be the same as in paragraphs 6f(2)(c) and 6f(2)(d) of this enclosure, as appropriate, or will be equal to the time not served on the original enlistment contract (with all service as a cadet or midshipman counted as service under that contract), whichever period is longer.

(d)  Disenrolled Cadets or Midshipmen not Suited for Enlisted Military Service.  A cadet or midshipman who entered into an academy from the Regular or Reserve Component of a Military Service who is subsequently disenrolled from an academy and is not suited for enlisted Military Service because of demonstrated unsuitability, unfitness, or physical disqualification, will be discharged in accordance with DoDI 1332.14 (Reference (s)) and Military Department regulations that specifically address the disenrollment of cadets or midshipmen.

(e)  Military Grade of Disenrolled Cadets or Midshipmen Transferred to the Reserve Component or Active Duty.  Whether transferred to the Reserve Component or reverted back to active duty status, the disenrolled cadets and midshipmen retain their prior enlisted grade.  However, in no case will the cadet or midshipman be transferred to the Reserve Component in a grade lower than would a similarly situated cadet or midshipman who entered the academy from a civilian status.

(4)  The disposition of U.S. cadets and midshipmen entering an academy by way of its preparatory school from civilian status and then not completing the program will be managed in accordance with paragraphs 6f(2) through 6f(2)(d) of this enclosure.

(5)  A cadet or midshipman tendering a resignation will be required to state a reason for this action.  A resignation may be accepted when in the interest of the Military Service.  Accepting the resignation will not in and of itself constitute a determination of the U.S. cadet's or midshipman's qualification for enlisted Military Service.

(6)  U.S. cadets or midshipmen who are not ordered to active duty due to their misconduct or unsuitability, or because their petition for relief from an active duty obligation was approved by the Secretary of the Military Department concerned, must reimburse the United States in accordance with the requirements of section 2005 of Reference (f) and section 303a of Reference (l) for education costs commensurate with time spent at the academy.  The Secretary

of the Military Department concerned may remit or cancel any part of the indebtedness of a cadet or midshipman to the United States. There may be circumstances when neither Active Duty nor reimbursement is appropriate. The Secretaries of the Military Departments will carefully review the circumstances to determine whether waiving Active Duty or reimbursement is consistent with existing statutory requirements, personnel policies or management objectives, equity and good conscience, and is in the best interest of the United States. Such circumstances may include, but are not limited to, a cadet's or midshipman's death, illness, injury, or other impairment that is not the result of the cadet's or midshipman's misconduct; or needs of the Service.

(7) Change in Status Notification. When a U.S. cadet or midshipman is disenrolled from an academy and discharged from the Service concerned, the Selective Service System will be notified by the Military Department of the individual's status change.

(8) Dependency Disenrollment or Resignation. U.S. cadets or midshipman who resign or are disenrolled for violation of the dependency policy may request transfer to the Reserve Officer Training Corps (ROTC). Approval and method of transfer is at the discretion of the Secretary of the Military Department concerned. Cadets and midshipmen who are approved to transfer to ROTC, graduate, receive a commission, and fulfill their Active Duty Service Obligation (ADSO) are not subject to reimbursment as outlined in this section.

(9) Disenrollment of cadets and midshipmen for medical disqualification.

(a) Persons separated for being medically disqualified from further Military Service will be separated and will not be obligated for further Military Service or for reimbursing education costs in accordance paragraph 6f(6) of this enclosure.

(b) Persons separated for reasons in addition to being medically disqualified from further Military Service may be obligated for reimbursing education costs at the discretion of the Military Department concerned.

(c) Cadets and midshipmen who become medically disqualified for appointment (including pregnancy) as a commissioned officer during their senior year, who otherwise would be qualified to complete the course of instruction and be appointed as a commissioned officer, and who are capable of completing the academic course of instruction with their peers, may be permitted by the Secretary of the Military Department concerned to complete the academic course of instruction with award of an academic credential determined by the Secretary of the Military Department concerned.

(d) Pursuant to section 1217 of Reference (g), when the Secretary of the Military Department concerned determines that a U.S. cadet or midshipman is medically disqualified for appointment as a commissioned officer due to injury, illness, or disease aggravated or incurred in the line of duty while entitled to cadet or midshipman pay, the Secretary may retire the cadet or midshipman with retired pay in accordance with chapter 61 of Reference (f).



# U.S. MILITARY ACADEMY

## 2011 COST OF EDUCATION

### FOR PUBLIC LAW 96-357



TABLE OF CONTENTS

BACKGROUND/METHODOLOGY                    3

TOTAL EDUCATION COSTS                     6

TUITION COSTS                             7

BOARD COSTS                               8

ROOM COSTS                               8

RPMA/UTILITY COSTS                       9

BUILDING LISTINGS                        10

RA129

I. BACKGROUND:

 Public Law 96-357, September 24, 1980, <u>Reserve Officers' Training Corps Scholarships</u> authorized the Secretary of the Army to enter into written agreements with cadets for educational assistance.  The agreement would require reimbursement of educational assistance costs by any individual who voluntarily or because of misconduct failed to complete an active duty requirement to which the person agreed as a condition of receiving the assistance.  An Office of the Secretary of Defense (OSD) memorandum tasked the Academy Comptrollers with developing a common method for determining the reimbursable "cost of education" as defined by this law.

II. METHODOLOGY:

1. This report outlines the Military Academy's "cost of education" calculations.

2. The "cost of education" has been divided into tuition and board.  The costs an individual could be required to reimburse under this law were calculated to be:

    a. Tuition Costs:    $45,919 per year

    b. Board Costs<u>:    $  3,153 </u> per year

        Total Costs:    **$49,072** per year

 3.  The source document for the cost data included in each specific category is the FY11 Cost of Graduate (COG) Report.  Military labor costs included in the COG are derived by using the composite rate for military personnel appropriation provided by the Defense Financial Accounting System (DFAS). Operations and Maintenance costs are from the Detail Obligation Report (Non – Military), dated 30 September 2011.

 4.  Included in each cost category of the cost of education are Real Property Maintenance (RPMA) and utility costs associated with buildings used primarily by cadets or cadet related activities.  These costs are calculated using the total Operation & Maintenance, Army (OMA) and Military Pay and Army (MPA) expenditures of the Director of Housing and Public Works.  Capital investment improvements (OPA2) and engineering projects over $750K are excluded from the final calculation.  In addition, the final RPMA and utility costs are prorated for each of the buildings.

 5.  The Public Law excludes costs associated with the pay and allowances cadets are authorized to receive under Title 37, US Code, such as:

    a. Cadet pay

    b. Cadet ration allowance

    c. Cadet quarters

    d. Cadet travel expenses associated with reporting to or release from USMA.

6. The following military costs are excluded from the Commandant's activities:

RA130

a. Dept of Military Instruction

b. Regimental Personnel Costs

c. Summer Training Costs

d. Other military training expenses

7.  The total cost of education (see para. 2) for each individual is calculated by dividing the total education costs (tuition and board) by the authorized strength of the Corps (4,400).

8.  The cost items included in each of the costs categories (tuition and board) are outlined below:

a. Tuition costs include:

(1)  All costs associated with the Dean of the Academic Board.

(2)  Commandant's residual activities which include the following:

(a)  Office of the Commandant of Cadets

(b)  Information Systems Div

(c)  Special Assistant for Honor Matters

(d)  Counseling Center

(e)  Ops/Log Div

(f)  Barracks Police (included in Room Cost)

(3)  Physical Education (includes the Dept of Physical Education and Intercollegiate Athletics MPA/OMA costs)

(4)  Cadet Activities.

(5)  Corps Support Activities.

(6)  Chaplain (USMA and US Army Garrison).

(7)  Keller Army Hospital with costs adjusted by the cadet utilization rate.

(8)  Operations Support.

(a)  Audiovisual Support.

(b)  Academic Computer Support.

(c)  Admissions/Registrar Support.

4

(9)  Real property maintenance (RPMA) and utility costs associated with buildings used primarily by cadets or cadet related activities.

b. Board costs include:

(1)  Operating costs for the cadet mess excluding food costs and reimbursable costs associated with non-cadet activities.

(2)  RPMA and utilities costs for the cadet mess.

9.  Any discrepancies noted are due to rounding.

**RA132**

TOTAL EDUCATION COSTS - 2011

|  | FY COSTS | AUTHORIZED CORPS STRENGTH | INDIVIDUAL COSTS |
|---|---|---|---|
| TUITION | $202,043,877 | 4,400 | $45,919 |
| BOARD | $13,872,866 | 4,400 | $3,153 |

TOTAL INDIVIDUAL EDUCATION COSTS:   $49,072

**RA133**

## TUITION COSTS CALCULATION - 2011

| CATEGORY | | COSTS |
|---|---|---|
| 1. Academic Activities | | $ 117,946,527 |
| 2. Commandant of Cadets | | $   36,457,362 |
| a. Exclusions: | | |
| (1)  Dept of Military Instruction | | (10,802,720) |
| (2)  Regimental Personnel | | (9,373,850) |
| (3)  Military Training Expenses | | (5,015,000) |
| (4)  Foreign and Sister Service Officers | | (514,109) |
| (5)  Dean's Officers In Support of Sum. | | (2,216,820) |
| (6)  Reserve Personnel for Miltary Training | | (196,293) |
| (7)  Barracks Furniture/Linen/Room Cost | | (1,125,076) |
| (8) All other non-Cmdt expenses | | (1,477,232) |
| Total Exclusions | | (30,721,100) |
| b. Total Commandant Administration | | $5,736,262 |
| | | |
| 3.  Physical Education | | |
| a  Dept of Physical Education | $4,331,907 | |
| b. Intercollegiate Athletics | $7,403,831 | |
| c. Total Physical Eductaion | | $11,735,738 |
| | | |
| 4.  Cadet Activities | | $3,445,780 |
| | | |
| 5.  Corps Support | | $1,622,000 |
| | | |
| 6.  Chaplain (USMA & Garrison) | | $1,489,417 |
| | | |
| 7.  Keller Army Hospital | $90,513,680 | |
| Cadet Utilization Rate | 25.72% | |
| Cadet Share | $23,280,118 | |
| Cadet Outpatient TDY | $      61,662 | |
| Cadet Medical Costs | | $23,341,780 |
| | | |
| 8.  Operations Support | | |
| a. Audiovisual Support | $2,830,921 | |
| Support Factor | 49.50% | |
| Cadet Share | $1,401,306 | |
| b. Academic Computer Support | $5,781,570 | |
| c. Admissions and Registrar Support | $7,905,550 | |
| | | |
| Total Operations Support | | $15,088,426 |
| | | |
| 9. Real Property Maintenance (RPMA)/ | | $21,637,947 |
| utility costs for buildings used primarily by | | |
| cadets or cadet related activities. | | |
| | | |
| 10.  Total Fiscal Year Costs | | **$202,043,877** |
| | | |
| 11.  Authorized Strength of Corps | | **4,400** |
| | | |
| 12.  Annual Tuition Costs Per Individual | | ***$45,919*** |

**RA134**

BOARD COSTS CALCULATION - 2011

1. Operating Costs Cadet Mess      $11,394,698

2. RPMA/Utilities Costs          $ 2,478,168

3. Fiscal Year Costs           $ 13,872,866

4. Authorized Strength of Corps       4,400

5. Annual Board Costs Per Individual   **$3,153**

Note:  The above board costs do not include the Cadet Ration Allowance.  These costs are among those excluded by the Public Law since they are authorized under Title 10, US Code.

Any discrepancies are due to rounding.

ROOM COSTS CALCULATION – 2011

Note: Room costs are not included in the Cost of Education due to a 1981 interpretation of Public Law 96-357 by USMA's Staff Judge Advocate (see addendum).

1. Operating Cost Cadet Barracks

   a. Barracks Furniture/Linens       $ 1,125,076

   b. RPMA/Utilities Costs          $ 14,002,287

2. Fiscal Year Costs           $ 15,127,363

Any discrepancies are due to rounding.

8

**RA135**

REAL PROPERTY MAINTENANCE/UTILITY COSTS

1.  Real Property Maintenance (RPMA) and Utility Costs

| | |
|---|---|
| 131038  (Force Protection Program) | $ 3,228,924 |
| 13105* (Environmental Program) | $ 2,823,254 |
| 131079J (Operations of Utilities) | $ 4,163,020 |
| 132093 (Demolition of Real Property) | $          0 |
| 132078 (Maintenance/Repair Real Property) | $46,184,570 |
| 132076 ( Restoration and Modernization) | $ 8,981,631 |
| M,H,N Accts (Other Engineering Support) | $28,628,912 |
| 131096 DPW Base Operations | $   206,942 |
| 493008 (Def Environ Restoration Prog) | $          0 |
| SUB TOTAL | $ 94,217,254 |

Deductions:

| | |
|---|---|
| ALL STAS (2nd Aviation Support) RPMA | ($201,706) |
| Projects Over $750K | ($26,078,324) |
| Total # 1 | $67,937,224 |
| Less DHPW Custodial | ($7,040,953) |
| Total # 2 | $60,896,271 |

2.  RPMA/Utilities Cost Factor: The cost per square foot area for RPMA and utilities cost.  This is calculated with the following equation:

$$\frac{\text{TOTAL RPMA/UTILITY COSTS}}{\text{TOTAL SQUARE FOOT AREA - USMA}} = \text{RPMA/UTILITIES COST FACTOR}$$

Total 1: $\dfrac{\$67,937,224}{7,146,571} = \$9.506/\text{Sq Ft}$

Total 2: $\dfrac{\$60,896,271}{7,146,571} = \$8.521/\text{Sq Ft}$

 These RPMA/Utilities cost factors are multiplied by the square footage for each building.  This figure is then multiplied by Cadet Utilization Rate to obtain the total RPMA/Utilities cost figure for this report.

**RA136**

3. Building Listings:

   a. Tuition category

| BUILDING | SQ FT AREA | COST FACTOR | TOTAL COST | CDT UTIL RATE | BUILDING COST |
|---|---|---|---|---|---|
| MAHAN HALL (752) | 142,482 | 9.506 | 1,354,472 | 100.00% | 1,354,472 |
| THAYER HALL (601) | 358,476 | 9.506 | 3,407,769 | 100.00% | 3,407,769 |
| BARTLETT HALL (753) | 210,358 | 9.506 | 1,999,720 | 100.00% | 1,999,720 |
| LINCOLN HALL (607) | 85,992 | 9.506 | 817,463 | 100.00% | 817,463 |
| JEFFERSON HALL LIBRARY (758) | 148,000 | 9.506 | 1,406,928 | 97.00% | 1,364,720 |
| CULLUM HALL (605) | 49,300 | 9.506 | 468,659 | 90.00% | 421,793 |
| EISENHOWER HALL (655) | 337,580 | 9.506 | 3,209,126 | 85.00% | 2,727,757 |
| WASH HALL (DEAN) (745) | 195,171 | 9.506 | 1,855,348 | 100.00% | 1,855,348 |
| ARVIN GYMNASIUM (727) | 460,013 | 9.506 | 4,373,007 | 90.00% | 3,935,706 |
| GILLIS FIELD HOUSE (663) | 91,940 | 9.506 | 874,006 | 60.00% | 524,404 |
| RIFLE/PIST RGE (665) | 33,912 | 9.506 | 322,377 | 97.00% | 312,705 |
| HOLLEDER CTR (714) | 131,000 | 9.506 | 1,245,321 | 56.00% | 697,380 |
| TRUXTON HALL (717) | 7,100 | 9.506 | 67,495 | 100.00% | 67,495 |
| CADET CHAPEL (722) | 46,000 | 9.506 | 437,288 | 16.00% | 69,966 |
| BENTON HALL (637) | 2,650 | 9.506 | 25,192 | 100.00% | 25,192 |
| DIA HQ (639) | 34,141 | 9.506 | 324,554 | 100.00% | 324,554 |
| FOLEY INDOOR FOOTBALL (717A) | 86,366 | 9.506 | 821,018 | 60.00% | 492,611 |
| ANDERSON RUBY  (854) | 15,927 | 9.506 | 151,406 | 60.00% | 90,844 |
| DEPT OF LAW (606) | 9,739 | 9.506 | 92,582 | 100.00% | 92,582 |
| KIMSEY CENTER (700B) | 110,598 | 9.506 | 1,051,374 | 60.00% | 630,825 |
| KELLER HOSPITAL (900) | 134,140 | 8.521 | 1,143,013 | 25.72% | 293,983 |
| MEDICAL CLINICS (606) | 59,618 | 8.521 | 508,008 | 25.72% | 130,660 |
| **TOTAL TUITION CATEGORY** | | | | | **21,637,947** |

   b. Board Category

| BUILDING | SQ FT AREA | COST FACTOR | TOTAL COST | CDT UTIL RATE | BUILDING COST |
|---|---|---|---|---|---|
| CADET MESS | 290,829 | 8.521 | 2,478,168 | 100.00% | 2,478,168 |

   c. Room

| BUILDING | SQ FT AREA | COST FACTOR | TOTAL COST | CDT UTIL RATE | BUILDING COST |
|---|---|---|---|---|---|
| CADET BARRACKS | 1,472,953 | 9.506 | 14,002,287 | 100.00% | 14,002,287 |

RA137

# MANUAL FOR
# COURTS-MARTIAL
# UNITED STATES
## (2012 EDITION)



RA138

(B) Under exigent circumstances described in Mil. R. Evid. 315(g) or 316(d)(4)(B);

(C) In the case of a private dwelling which is military property or under military control, or non-military property in a foreign country

(i) if the person to be apprehended is a resident of the private dwelling, there exists, at the time of the entry, reason to believe that the person to be apprehended is present in the dwelling, and the apprehension has been authorized by an official listed in Mil. R. Evid. 315(d) upon a determination that probable cause to apprehend the person exists; or

(ii) if the person to be apprehended is not a resident of the private dwelling, the entry has been authorized by an official listed in Mil. R. Evid. 315(d) upon a determination that probable cause exists to apprehend the person and to believe that the person to be apprehended is or will be present at the time of the entry;

(D) In the case of a private dwelling not included in subsection (e)(2)(C) of this rule,

(i) if the person to be apprehended is a resident of the private dwelling, there exists at the time of the entry, reason to believe that the person to be apprehended is present and the apprehension is authorized by an arrest warrant issued by competent civilian authority; or

(ii) if the person to be apprehended is not a resident of the private dwelling, the apprehension is authorized by an arrest warrant and the entry is authorized by a search warrant, each issued by competent civilian authority. A person who is not a resident of the private dwelling entered may not challenge the legality of an apprehension of that person on the basis of failure to secure a warrant or authorization to enter that dwelling, or on the basis of the sufficiency of such a warrant or authorization. Nothing in this subsection ((e)(2)) affects the legality of an apprehension which is incident to otherwise lawful presence in a private dwelling.

### Discussion

For example, if law enforcement officials enter a private dwelling pursuant to a valid search warrant or search authorization, they may apprehend persons therein if grounds for an apprehension exist. This subsection is not intended to be an independent grant of authority to execute civilian arrest or search warrants. The authority must derive from an appropriate Federal or state procedure. *See e.g.* Fed. R. Crim. P. 41 and 28 C.F.R. 60.1.

---

## Rule 303. Preliminary inquiry into reported offenses

Upon receipt of information that a member of the command is accused or suspected of committing an offense or offenses triable by court-martial, the immediate commander shall make or cause to be made a preliminary inquiry into the charges or suspected offenses.

### Discussion

The preliminary inquiry is usually informal. It may be an examination of the charges and an investigative report or other summary of expected evidence. In other cases a more extensive investigation may be necessary. Although the commander may conduct the investigation personally or with members of the command, in serious or complex cases the commander should consider whether to seek the assistance of law enforcement personnel in conducting any inquiry or further investigation. The inquiry should gather all reasonably available evidence bearing on guilt or innocence and any evidence relating to aggravation, extenuation, or mitigation.

The Military Rules of Evidence should be consulted when conducting interrogations (*see* Mil. R. Evid. 301-306), searches (*see* Mil. R. Evid. 311-317), and eyewitness identifications (*see* Mil. R. Evid. 321).

If the offense is one for which the Department of Justice has investigative responsibilities, appropriate coordination should be made under the Memorandum of Understanding, *see* Appendix 3, and any implementing regulations.

If it appears that any witness may not be available for later proceedings in the case, this should be brought to the attention of appropriate authorities. *See also* R.C.M. 702 (depositions).

A person who is an accuser (*see* Article 1(9)) is disqualified from convening a general or special court-martial in that case. R.C.M. 504(c)(1). Therefore, when the immediate commander is a general or special court-martial convening authority, the preliminary inquiry should be conducted by another officer of the command. That officer may be informed that charges may be preferred if the officer determines that preferral is warranted.

---

## Rule 304. Pretrial restraint

(a) *Types of pretrial restraint.* Pretrial restraint is moral or physical restraint on a person's liberty which is imposed before and during disposition of offenses. Pretrial restraint may consist of conditions on liberty, restriction in lieu of arrest, arrest, or confinement.

(1) *Conditions on liberty.* Conditions on liberty are imposed by orders directing a person to do or

unless the sentence prescribed for the offense is mandatory.

(d) *When directed.* The military judge may direct a post-trial session any time before the record is authenticated. The convening authority may direct a post-trial session any time before the convening authority takes initial action on the case or at such later time as the convening authority is authorized to do so by a reviewing authority.

(e) *Procedure.*

(1) *Personnel.* The requirements of R.C.M. 505 and 805 shall apply at post-trial sessions except that—

(A) For a proceeding in revision, if trial was before members and the matter subject to the proceeding in revision requires the presence of members:

(i) The absence of any members does not invalidate the proceedings if, in the case of a general court-martial, at least five members are present, or, in the case of a special court-martial, at least three members are present; and

(ii) A different military judge may be detailed, subject to R.C.M. 502(c) and 902, if the military judge who presided at the earlier proceedings is not reasonably available.

(B) For an Article 39(a) session, a different military judge may be detailed, subject to R.C.M. 502(c) and 902, for good cause.

(2) *Action.* The military judge shall take such action as may be appropriate, including appropriate instructions when members are present. The members may deliberate in closed session, if necessary, to determine what corrective action, if any, to take. Prior to the military judge *sua sponte* entering a finding of not guilty of one or more offenses charged or entering a finding of not guilty of a part of a specification as long as a lesser offense charged is alleged in the remaining portion of the specification, the military judge shall give each party an opportunity to be heard on the matter.

(3) *Record.* All post-trial sessions, except any deliberations by the members, shall be held in open session. The record of the post-trial sessions shall be prepared, authenticated, and served in accordance with R.C.M. 1103 and 1104 and shall be included in the record of the prior proceedings.

## Rule 1102A. Post-trial hearing for person found not guilty only by reason of lack of mental responsibility

(a) *In general.* The military judge shall conduct a hearing not later than forty days following the finding that an accused is not guilty only by reason of a lack of mental responsibility.

(b) *Psychiatric or psychological examination and report.* Prior to the hearing, the military judge or convening authority shall order a psychiatric or psychological examination of the accused, with the resulting psychiatric or psychological report transmitted to the military judge for use in the post-trial hearing.

(c) *Post-trial hearing.*

(1) The accused shall be represented by defense counsel and shall have the opportunity to testify, present evidence, call witnesses on his or her behalf, and to confront and cross-examine witnesses who appear at the hearing.

(2) The military judge is not bound by the rules of evidence except with respect to privileges.

(3) An accused found not guilty only by reason of a lack of mental responsibility of an offense involving bodily injury to another, or serious damage to the property of another, or involving a substantial risk of such injury or damage, has the burden of proving by clear and convincing evidence that his or her release would not create a substantial risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect. With respect to any other offense, the accused has the burden of such proof by a preponderance of the evidence.

(4) If, after the hearing, the military judge finds the accused has satisfied the standard specified in subsection (3) of this section, the military judge shall inform the general court-martial convening authority of this result and the accused shall be released. If, however, the military judge finds after the hearing that the accused has not satisfied the standard specified in subsection (3) of this section, then the military judge shall inform the general court-martial convening authority of this result and that authority may commit the accused to the custody of the Attorney General.

## Rule 1103. Preparation of record of trial

(a) *In general.* Each general, special, and summary

R.C.M. 1103(a)

court-martial shall keep a separate record of the proceedings in each case brought before it.

(b) *General courts-martial.*

(1) *Responsibility for preparation.* The trial counsel shall:

(A) Under the direction of the military judge, cause the record of trial to be prepared; and

(B) Under regulations prescribed by the Secretary concerned, cause to be retained stenolineart or other notes or mechanical or electronic recordings from which the record of trial was prepared.

(2) *Contents.*

(A) *In general.* The record of trial in each general court-martial shall be separate, complete, and independent of any other document.

(B) *Verbatim transcript required.* Except as otherwise provided in subsection (j) of this rule, the record of trial shall include a verbatim transcript of all sessions except sessions closed for deliberations and voting when:

(i) Any part of the sentence adjudged exceeds six months confinement, forfeiture of pay greater than two-thirds pay per month, or any forfeiture of pay for more than six months or other punishments that may be adjudged by a special court-martial; or

(ii) A bad-conduct discharge has been adjudged.

### Discussion

A verbatim transcript includes: all proceedings including sidebar conferences, arguments of counsel, and rulings and instructions by the military judge; matter which the military judge orders stricken from the record or disregarded; and when a record is amended in revision proceedings ( *see* R.C.M. 1102), the part of the original record changed and the changes made, without physical alteration of the original record. Conferences under R.C.M. 802 need not be recorded, but matters agreed upon at such conferences must be included in the record. If testimony is given through an interpreter, a verbatim transcript must so reflect.

———————

(C) *Verbatim transcript not required.* If a verbatim transcript is not required under subsection (b)(2)(B) of this rule, a summarized report of the proceedings may be prepared instead of a verbatim transcript.

### Discussion

*See also* R.C.M. 910(i) concerning guilty plea inquiries.

———————

(D) *Other matters.* In addition to the matter required under subsection (b)(2)(B) or (b)(2)(C) of this rule, a complete record shall include:

(i) The original charge sheet or a duplicate;

(ii) A copy of the convening order and any amending order(s);

(iii) The request, if any, for trial by military judge alone, or that the membership of the court-martial include enlisted persons, and, when applicable, any statement by the convening authority required under R.C.M. 201(f)(2)(B)(ii) or 503(a)(2);

(iv) The original dated, signed action by the convening authority; and

(v) Exhibits, or, with the permission of the military judge, copies, photographs, or descriptions of any exhibits which were received in evidence and any appellate exhibits.

(3) *Matters attached to the record.* The following matters shall be attached to the record:

(A) If not used as exhibits—

(i) The report of investigation under Article 32, if any;

(ii) The staff judge advocate's pretrial advice under Article 34, if any;

(iii) If the trial was a rehearing or new or other trial of the case, the record of the former hearing(s); and

(iv) Written special findings, if any, by the military judge.

(B) Exhibits or, with the permission of the military judge, copies, photographs, or descriptions of any exhibits which were marked for and referred to on the record but not received in evidence;

(C) Any matter filed by the accused under R.C.M. 1105, or any written waiver of the right to submit such matter;

(D) Any deferment request and the action on it;

(E) Explanation for any substitute authentication under R.C.M. 1104(a)(2)(B);

(F) Explanation for any failure to serve the record of trial on the accused under R.C.M. 1104(b);

(G) The post-trial recommendation of the staff judge advocate or legal officer and proof of service

DEPARTMENT OF THE ARMY
**UNITED STATES MILITARY ACADEMY**
West Point, New York 10996

---

# Standard Operating Procedures

# United States Military Academy
# Cadet Recoupment & Reimbursement

**23 May 2016**

---

**RA142**

# Table of Contents

**PAGE**

CHAPTER I: PURPOSE ...................................................................................................... 3

CHAPTER II: BACKGROUND.............................................................................................. 3

CHAPTER III: DETERMINING MEANS OF REIMBURSEMENT........................................... 4

CHAPTER IV: COMPUTING RECOUPMENT COSTS............................................................ 5

CHAPTER V: COST COMPUTATION METHODOLOGY ....................................................... 6

CHAPTER VI: RECOUPING COSTS FROM DISENROLLED CADETS.................................... 8

CHAPTER VII: FOREIGN CADET REIMBURSEMENT PROCEDURES ................................... 9

# Appendices

**TAB**

PUBLIC LAW 96-357........................................................................................................ A

PUBLIC LAW 96-357 LEGISLATIVE HISTORY..................................................................... B

AGREEMENT TO SERVE (USMA FORM 5-50)................................................................... C

DOD DIRECTIVE 1332.23  SERVICE ACADEMY DISENROLLMENT....................................... D

DOD IMPLEMENTATION OF PUBLIC LAW 96-357 MEMORANDUM................................... E

USMA'S STAFF JUDGE ADVOCATE GUIDANCE ON PL96-357............................................. F

DA CIRCULAR 600-87-1................................................................................................... G

USMA SUPPLEMENT 1 TO DA CIRCULAR 600-87-1.......................................................... H

USMA G8 RECOUPMENT DOCUMENTATION GUIDANCE.................................................. I

ARMY REGULATION 210-26 UNITED STATES MILITARY ACADEMY.................................... J

FY 2013 COST OF GRADUATE REPORT BY CATEGORY...................................................... K

FY 2013 COST OF EDUCATION REPORT AND HQDA MEMORANDUM ............................... L

DOD FMR 7000.14R VOLUME 5, CHAPTER 28 ................................................................. M

TITLE 10 UNITED STATES CODE CHAPTER 403 – UNITED STATES MILITARY ACADEMY ........... N

DOD DIRECTIVE 1322.22.................................................................................................. O

SERVICE ACADEMY FOREIGN STUDENT PROGRAM (CLASS OF 2017)................................ P

DFAS FOREIGN CADET LETTER AND INVOICE................................................................... Q

APPENDICES ARE LOCATED ON THE G8 PORTAL AT THE FOLLOWING ADDRESS:
https://portal.westpoint.edu/usstaff/g8/Manpower/Shared%20Documents/Forms/AllItems.aspx?RootFolder=%2F
usstaff%2Fg8%2FManpower%2FShared%20Documents%2FRecoupment%2DSOP%2FAppendices&FolderCTID=0x01
2000DFA9132CABEDFE4DBDC475EC28280180&View={86BFD89F-F227-4518-9262-6BA846DCD3A4}

# CHAPTER I: PURPOSE

The Cadet Recoupment and Reimbursement standard operating procedures (SOP) are to be primarily utilized by the United States Military Academy (USMA) G8 to provide policy and procedural guidance related to developing recoupment memorandums for the separation of current USMA cadets and graduated USMA cadets with remaining active duty service obligations. This SOP provides an explanation of the recoupment cost computation methodology as well as guidance to establish recoupment debt with Defense Financial Accounting System (DFAS).

# CHAPTER II: BACKGROUND

I.  Public Law 96-357, September 24, 1980, "Reserve Officers' Training Corps Scholarships" (TAB A) authorized the Secretary of the Army to enter into written agreements with cadets for educational assistance.  The agreement, among other matters, would require reimbursement of educational assistance costs by any individual who voluntarily or because of misconduct failed to complete an active duty requirement to which the person agreed as a condition of receiving the assistance.  It is difficult to read into the law that it applies to the Service Academies, but the legislative history (TAB B) clearly includes the Service Academies in its language.  As a result of this law, the USMA Form 5-50 (TAB C) was established as the official Agreement to Serve that all cadets enter into upon entering their 2nd class year at USMA.

II.  Active duty service is the primary means of reimbursement for education when a cadet is separated (Department of Defense Directive 1332.23, TAB D).  Recoupment[1] is primarily used only in those cases in which the cadet would be unsuitable as an enlisted soldier.

III.  Office of the Secretary of Defense, Manpower, Reserve Affairs, and Logistics to the Assistant Secretary of the Army, Manpower & Reserve Affairs (ASA M&RA) memorandum, dated 28 January 1981 (TAB E), provided guidance on implementing Public Law 96-357 for the Service Academies.  This memorandum states that individuals selected for membership in the class of 1985 should be made subject to a reimbursement requirement.  The memorandum also requested the Academy Comptrollers "develop a common method for determining the reimbursable 'costs of education' defined in PL 96-357."

IV.  At the beginning of 1981, USMA's Deputy Chief of Staff, Comptroller (DCSCOMPT) requested guidance pertaining to Public Law 96-357 from the Academy's Staff Judge Advocate (SJA).  SJA drafted a memorandum, dated 26 February 1981, which provides basic guidance used in the computation of the Cost of Education (COE) Report (TAB F).

---

[1] *Recoupment:* Procedure by which the United States requires reimbursement of the cost of advanced education from individuals who participate in advanced education programs and fail to complete their educational requirements, or active duty or reserve component obligation

V.  Because the Class of 1985 was the first class subject to Public Law 96-357, USMA has been *required* to prepare a COE report since FY82 to account for the four years of educational costs required for the full class cost of a 1985 USMA graduate.  However, USMA first began preparing the COE report in FY80 and uses the Cost of Graduate (COG) report's database as its primary source of cost data**.** The COG report's database is maintained by the USMA G8.

VI.  On 15 May 1987, The Department of the Army issued Circular 600-87-1 (TAB G), with a scheduled expiration date of 31 May 1989.  In this circular, DA provides guidance for the "Recoupment of Federal Funds for Certain Advanced Education Programs".  In order to further clarify local duties and responsibilities, USMA published USMA Supplement 1 (TAB H) to DA Circular 600-87-1 on 16 April 1990.

## CHAPTER III: DETERMINING MEANS OF REIMBURSEMENT

I.  DoD Directive 1332.23 and AR 612-205 establish the parameters for reimbursement.  Table 3-1 provides a layout of the different separation categories and the corresponding standard reimbursement methods for each.

| *Reason for Separation* | *Standard Reimbursement Method* |
|---|---|
| Conduct (less PT failures) | Recoupment or active duty, depending on circumstances. |
| Army Physical Fitness Test (APFT)/Army Body Composition Program (ABCP) (PT/weight failures ) | Recoupment. |
| Resignation | Same as non-PT conduct if no extenuating circumstances. Varies from no reimbursement to recoupment if "in lieu of" courts martial for misconduct. |
| Honor | Recoupment or active duty, depending on circumstances. |
| Misconduct | Recoupment or active duty, depending on circumstances. |
| Medical | No reimbursement. |
| Academic | Recoupment or active duty, depending on circumstances. |
| Mentorship | More a condition of separation vice a separate category. Mentorship has been offered in instances of honor and conduct and even misconduct (limited).  Cadet gets standard commitment applicable to his/her separation/class status and is given an opportunity for re-admission after 8-12 months active duty. |

Table 3-1

II. When a cadet is recommended for separation (for any reason to include Physical Training (PT), Resignation, Honor, Misconduct, Academic, or Mentorship), the Regulations and Discipline (R&D)Officer

will request a Recoupment Memorandum from USMA G8.  After the R&D Officer receives the Recoupment Memorandum from USMA G8, the R&D Officer notifies the cadet of the possibility of recoupment and provides the cadet a Notification Memorandum, along with the USMA G8 Recoupment Memorandum. The cadet then signs an acknowledgement form indicating that he or she has received the aforementioned documentation. The cadet has ten days to respond to the documentation by either: disputing the validity of the debt; providing matters for consideration; or not disputing the validity of the debt.

III. The Commandant of Cadets will make a recommendation to the Superintendent on whether or not the cadet should be separated. If separation is recommended, the Commandant will further recommend whether the cadet should serve as an enlisted soldier in order to reimburse the United States for his or her education, or if recoupment is recommended.

IV. After receiving the Commandant's recommendation, the Superintendent may recommend separating the cadet as well as the method of separation:  active duty service or separation with recoupment,  USMA G1 will then forward the complete separation packet to HQDA containing all separation documents, to include USMA G8's calculated recoupment memorandum and USMA SJA legal review. The ASA (M&RA) and the Deputy Chief of Staff (DCS), G1 are the approval authorities for separation actions involving active duty or recoupment.

## **CHAPTER IV:** COMPUTING RECOUPMENT COSTS

I.  <u>Graduate of USMA</u>: The cost calculated in the COE report is the full cost of education for an individual who completes four years of education at USMA.  If, subsequent to graduation, an individual, voluntarily or because of misconduct, fails to complete the period of active duty specified in the agreement, then that individual will reimburse the United States for an amount that bears the same ratio to the total cost of education as the unserved portion of active duty bears to the total period of active duty that individual agreed to serve. The debt due to the government is calculated by crediting the USMA graduate any active duty time served from the date he or she graduates from USMA to the date of separation from the Army, less any breaks in service.  Recoupment requests for graduates of USMA are received from U.S. Army Human Resource Command (HRC), Officer Eliminations branch. Once the request is received, USMA G8 will request the graduate's information from the R&D Officer. The R&D Officer will provide USMA G8 the following information **within 72 hours**, not including weekends and holidays:

- USMA graduate's full name
- Class year & graduation date
- Full social security number
- Any additional schooling costs incurred by the graduate along with the dates in which these costs were incurred (i.e. turn-back, December graduate, Summer Term Academic Program (STAP)), if applicable
- Dates of any breaks in service, if applicable

A sample recoupment letter for a USMA graduate, to include a credit for active duty service time, can be found at TAB I.  If the  organization taking action against a USMA graduate cannot provide USMA G8 a separation date for the individual, that organization will be responsible for computing the recoupment amount by applying the aforementioned ratio to the total cost of education for that individual's particular class.

II.  <u>First or Second Class Cadet:</u> A cadet who has affirmed[2],  in accordance with AR 210-26, and, voluntarily or because of misconduct, fails to complete the course of instruction and is determined to have breached his or her Agreement to Serve (USMA Form 5-50), therefore fails to complete the period of active duty specified in the USMA Form 5-50. This individual will reimburse the United States in an amount that will be computed by the USMA G8 based on his or her attendance during the academic year(s).  The cessation of a cadet's advanced education program is his or her last day attending class, with the academic year (AY) being used as the basis for computing the reimbursement ratio for the final year.

III.  <u>Third or Fourth Class Cadet:</u> A cadet who has not affirmed and is separated from USMA either voluntarily or because of misconduct is not required to reimburse the United States because he or she has not incurred an active duty service obligation.

IV.  <u>Turn-backs and December Graduates:</u>  There may be additional advanced education costs due the government if a cadet is a turn-back[3],  December graduate, or attended a summer *academic* course(s). If a cadet is on medical or administrative leave and not attending classes, this time would not be counted towards any advanced education costs.  However, if he or she repeats one or more academic semesters, that time would be counted.  When recoupment is necessary, these additional costs will be calculated and, in the case of a graduate, added to the cost calculated in the COE report for that class year.  Likewise, the additional costs for a turnback, December graduate, or STAP attendance will be included in the calculation for first and second class cadets subject to recoupment.

## CHAPTER V: COST COMPUTATION METHODOLOGY

I.  When the Superintendent recommends separation for the cadet, either active duty or recoupment, the R&D Officer will request that the USMA G8 computes the recoupment cost.  This request should include the following information:

- Cadet's full name
- Class year
- Full social security number

---

[2] Affirmation: a cadet's firm commitment to graduating and becoming commissioned officer,  legally binding the cadet to honor his or her service obligation (USMA Form 5-50)

[3] Turn-back: When a cadet is found to be deficient in the Academic, Military, or Physical Programs, the Superintendent may recommend turn-back, that is, a transfer of the cadet to the next lower class

- Cadet's first & last class day, unless otherwise noted, the cadet's last class day will be the cadet's last day of class attendance, regardless if they receive credit, term end exams do not count as the last day of class
- Any additional schooling costs incurred by the cadet along with the dates in which these costs were incurred(i.e. turn-back, December graduate, STAP), if applicable
- Dates of any breaks in service, if applicable

II. When the R&D Officer has requested a Recoupment Memorandum from USMA G8 for a cadet, USMA G8 has **72 hours**, not including weekends and holidays, to provide the completed recoupment memorandum to the R&D Officer. The USMA G8 will proceed with the cost computation according to the procedures described below:

III. When recoupment costs are being calculated for a cadet with a separation date during the current academic year or one year prior to the current year, the COE for that year may not yet be published.  In these circumstances, the cost of education for the year of separation will be calculated by taking the previous year's published cost and adding inflation according to the latest inflation indices published by Assistant Secretary of the Army for Financial Management & Comptroller (ASA (FM&C)). The most recent Army inflation indices can be found at http://asafm.army.mil/offices/CE/Rates.aspx?OfficeCode=1400. It is important to note that the cost of education calculated in this manner is an estimate based on inflation rates and may not be identical to the COE published for that year.

When determining which inflation rate applies, the year of the most recently published COE is used as the base year and the year being calculated is the fiscal year of separation.  Multiply the previously published cost of education by the *weighted index* inflation value; the product of these two figures will be the *calculated* cost of education for the unpublished academic year. The USMA G8 creates a recoupment memorandum calculating the cadet's entire cost of education.  This is the debt amount to be established and collected by DFAS, provided ASA (M&RA) or DCS, G1 approves recoupment as the appropriate course of action. See TAB I for a more detailed explanation of this process.

IV.  The Cost of Education (COE) Report computes the total recoupment amount for each academic year. The "cost of education" is divided into categories for tuition, board, and room, with the source document for the cost data being the Cost of Graduate (COG) Report (TAB K). Military labor costs included in the COG are derived from the composite rate for Military Personnel Appropriation (MPA) provided by DFAS. Operations and Maintenance, Army (OMA) costs are derived from the General Fund Enterprise Business System (GFEBS) Status of Funds Report (Non-Military).

Public law excludes certain costs from the cost of education calculation. Costs associated with the pay and allowances cadets are authorized to receive under Title 37, US Code are excluded, these include:

1. Cadet pay
2. Cadet ration allowance
3. Cadet quarters
4. Cadet travel expenses associated with reporting to or release from USMA.

Additionally, all costs associated with "military skills" or "duties" are excluded.  The following military costs are excluded from the Commandant's activities:

   1. Department of Military Instruction
   2.  Regimental Personnel Costs
   3.  Summer Training Costs
   4. Other military training expenses

A copy of the Cost of Education (COE) Report can be found at TAB L


## CHAPTER VI: RECOUPING COSTS FROM DISENROLLED CADETS


I.  Upon notification that ASA (M&RA) or the DCS, G1 has found the debt to be valid and requests appropriate action be taken to notify Defense Finance and Accounting Service-Indianapolis (DFAS-IN) to pursue collection, USCC S1 or USMA G1 will electronically forward, in a timely fashion, the following documents to the USMA G8:

   a. One copy of the initial contract (USMA Form 5-50) with any addendums thereto.
   b. One copy of the ASA (M&RA) or DCS, G1 memorandum confirming the validity of the debt and the amount of educational benefits the cadet is ordered to repay.


II. USMA G8 will ensure that the completed package containing recoupment of educational costs is forwarded electronically to DFAS-IN, Debt Management (DFAS-IN-DEBT_MGMT@DFAS.MIL) and processed into the Defense Debt Management System (DDMS) for collection. The following documentation must be included in each individual's recoupment package submitted to DFAS-IN-DEBT-MGMT:

   1.  One copy of the **ASA (M&RA) or DCS, G1 memorandum** confirming the validity of the educational benefits debt the cadet is ordered to repay.

   2.  One copy of the initial contract signed by the USMA cadet (**USMA Form 5-50**) with any addendum thereto.

   3.  One copy of the **Recoupment Memorandum**, drafted by USMA G8, calculating the cadet's indebtedness.

   4.  One copy of the **Debt Certification Statement**, created by USMA G8, signed by the USMA G8 debt certifying official, typically the Chief or Lead Program Analyst of the Program and Manpower Management Division (PMMD). Debt Certification Statement must include the name of the former Cadet, dollar amount to be recouped and former Cadet's social security number. See DoD FMR 7000.14-R Volume 5, Chapter 28 (TAB M), for additional information.

   5.  One copy of the **Debt Transmittal Letter,** created by USMA G8, containing a unique transmittal number, name of former Cadet, dollar amount to be recouped, and former Cadet's social security number; see TAB M for more information.


The above documents must be compiled into one single PDF file when submitted to DFAS-IN, Debt Management. See TAB I for a sample recoupment package as submitted to DFAS.

III.  When cadets are ordered to report for active duty instead of paying back their education costs the MFR from the Department of the Army states that if the cadet fails to report for active duty they will be required to repay the debt.  If the cadet does not report then G-1 will send G-8 notification and G-8 will forward the recoupment debt package to DFAS for collection.

IV.  Follow-Up – A spreadsheet titled Debt followup is located in the PMM\Recoupment\Individual Recoupment Folders folder.  List debts as they are sent to DFAS.  Once the debt is sent to DFAS it takes up to 30 days to be established.  Send follow-up e-mails every two weeks after the 30 days has passed. After DFAS has established the debt they will send a confirmation e-mail.  Remove the debts from the spreadsheet as the confirmation e-mails are received from DFAS.

## **CHAPTER VII:** FOREIGN CADET REIMBURSEMENT PROCEDURES

I. Foreign students may receive instruction at USMA on a reimbursable basis. The foreign cadet's country of origin shall reimburse the United States for the cost of providing instruction at USMA, including the cost of pay, allowances, and emoluments[4]. The Secretary of the Army shall prescribe the rates for reimbursement, but the minimum reimbursement allowed may not be less than the cost to the United States of providing such instruction to a cadet appointed from the United States (Title 10, United States Code (USC) Chapter 403, section 4344 (TAB N)). Per DoDD 1322.22 (TAB O), by the end of May of each year, the Comptroller of the Department of Defense shall establish the tuition rate for the succeeding school year and publish that rate to the Secretaries of the Military Departments, to the Under Secretary of Defense for Policy (USD (P)), and to the Under Secretary of Defense for Personnel and Readiness (USD (P&R)).

II. Per Public Law 107-107, section 533, the number of foreign cadets at USMA may not exceed 60 and no more than three students from a single country may be enrolled, unless a waiver is approved by the Under Secretary of Defense for Policy (USD (P)). Foreign cadets are in addition to the authorized strength of the Corps of the Cadets of the Academy under Section 4342 of Title 10 USC. The USD (P) may waive, in full or in part, the requirement for reimbursement of the cost of education for a foreign cadet. In the case of a partial waiver, the Secretary shall establish the amount waived. High income countries, as defined by the World Bank, will not be eligible for reimbursement waivers. For additional information, please see the Service Academy Foreign Student Program (Class of 2017) (TAB P).

III. Unless the Secretary of the Army determines otherwise, a foreign cadet receiving instruction at USMA, under section 533, is subject to the same regulations governing a cadet appointed from the United States (Title 10, United States Code (USC) Chapter 403, section 4344 (TAB N)).

IV. Prior to the start of each Academic year, USMA's Directorate of Admissions (DAD) will send to USMA G8, PMMD a list of the incoming foreign cadets, their countries of origin, and whether the Office of the Secretary of Defense (OSD) has waived tuition reimbursement for the country.

---

[4] Emolument: A compensated position

V. The USMA G8, PMMD will then submit the list to DFAS Indianapolis, Directorate of Security Cooperation Accounting. DFAS prepares a letter and an invoice for each country containing the academic year charges for their foreign cadet(s) and instructions explaining how to make a payment, a sample is located at TAB Q. The country pays the invoiced amount to a DFAS account which is then transferred by DFAS to an Army account using a Standard Form (SF) 1081. Foreign countries that have not received a reimbursement waiver are charged for each academic year their student is enrolled at USMA. Upon request, DFAS will provide the USMA G8 updates regarding tuition reimbursement status.

**Contact Information**

| | |
|---|---|
| Name | Title |
| Mara M. Wetzel | Chief Program Manpower Management Division, USMA G8 |
| | |
| Phone Number | Email Address |
| (845) 938-3810 DSN 688 | Mara.wetzel@usma.army.mil |

Effective Date: **23 May 2016**

Authorizing Signature:

WETZEL.MARA.
M.1228826061
Digitally signed by
WETZEL.MARA.M.1228826061
DN: c=US, o=U.S. Government, ou=DoD,
ou=PKI, ou=USA,
cn=WETZEL.MARA.M.1228826061
Date: 2016.05.23 08:33:26 -04'00'

Mara M. Wetzel
Chief PMMD, G8

**UNITED STATES MILITARY ACADEMY**
**WEST POINT, NEW YORK**

### I. Oath of Allegiance

I _____ do solemnly swear that I will support the Constitution of the United States, and bear true allegiance to the National Government; that I will maintain and defend the sovereignty of the United States, paramount to any and all allegiance, sovereignty, or fealty I may owe to any State or Country whatsoever; and that I will at all times obey the legal orders of my superior officers, and the Uniform Code of Military Justice.

### II. Agreement to Serve

I, having been appointed a cadet of the United States Military Academy, do hereby agree, with the consent of my parents or guardian if I am a minor:

a.    To complete the course of instruction at the United States Military Academy;

b.    If tendered an appointment as a commissioned officer in one of the armed services upon graduation from the United States Military Academy, to accept such appointment and to serve under such appointment on active duty for not less than five consecutive years immediately after such appointment; if my initial appointment hereunder is in a Reserve Component, to accept a commission in a Regular Component if subsequently tendered during the five consecutive years immediately after my initial appointment, and to serve on active duty for the remainder of such period under such appointment.

c.    If I am permitted to resign my commission in a Regular Component of one of the Armed Services prior to the eighth anniversary of my graduation, to accept an appointment as a commissioned officer in a Reserve Component of one of the Armed Services and remain therein until such eighth anniversary.

d.    To serve a total of eight (8) years from graduation from the United States Military Academy. Any part of that service not completed on active duty must be served in a Reserve Component (not on active duty), unless I am discharged from the Reserve Component by proper military authority.

e.    That if I fail to complete the course of instruction of the United States Military Academy, breach my service agreement as defined in paragraph 1.g.(3), Statement of Policies on the next page, or decline to accept an appointment as a commissioned officer, I will serve on active duty as specified in paragraphs 1.b. through 1.g., which are contained in the Statement of Policies on the next page;

f.    That if I voluntarily fail, or because of misconduct fail, to complete the period of active duty specified in paragraphs IIb, c, d or e above, I will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided me as the unserved portion of active duty bears to the total period of active duty I have agreed to serve;

g.    Further, that if I am separated from the United States Military Academy for breach of this service agreement, as defined in paragraph 1.g. (3), Statement of Policies on the next page, and the Army decides that I should not be ordered to active duty because such service would not be in the best interests of the Army, I shall be considered to have either voluntarily or because of misconduct failed to complete the period of active duty and may be required to reimburse the United States as described above;

h.    For the purpose of this paragraph:

(1) The term "voluntarily fail" includes, but is not limited to, failure to complete the period of active duty because of conscientious objection, because of resignation from the United States Military Academy or United States Army, and marriage while a cadet.

(2) The term "because of misconduct" includes, but is not limited to, termination by the United States Army of my service because of homosexual conduct, criminal conduct in violation of the Uniform Code of Military Justice, conduct violating the Cadet Honor Code, Regulations for the United States Military Academy or conduct deficiency under the Cadet Disciplinary System.

(3) The term "course of instruction" is synonymous with the term "educational requirements" as the term is used in 10 USC 2005.

### III. Marital Status

I am unmarried, do not presently have custody of a child, and have no court-ordered child support obligation. Furthermore, I understand that a cadet who marries, has custody of a child, or is ordered by a court of competent jurisdiction to provide child support prior to graduation will be separated from the United States Military Academy.

My signature constitutes the taking of the Oath of Allegiance, execution of the agreement to serve, my affirmation as to my marital status, the absence of child custody or a court-ordered child support obligation and my acknowledgment that I have read, understand, and agree to abide by the statement of policies on the next page. For all male cadets, signing this form also constitutes registration with the Selective Service System in accordance with the Military Selective Service Act.  Incident thereto the Department of Defense may transmit my name, permanent address, Social Security Number, and birthdate to the Selective Service System for recording as evidence of the registration.

_____
(sign your full name as it appears in paragraph **I** above)

**Sworn to and subscribed before me at West Point, New York, this 29th day of June, nineteen hundred and ninety-eight.**

_____

USMA Form 5-50 (Previous editions are obsolete) 29 April 1998

# Statement of Policies

1.   Department of Defense Directive 1332.23, dated 19 February 1988, as implemented by Army regulations, provides the following direction concerning separation of cadets prior to the completion of the course of instruction or subsequent to graduation on refusal to accept an appointment as a commissioned officer.

a.   A cadet who enters the United States Military Academy (USMA) directly from civilian status assumes a military service obligation of eight years (10 USC 651).

b.   A cadet who is separated from the USMA because of demonstrated unsuitability, unfitness, or physical disqualification for military service will be discharged in accordance with the applicable Army regulations. Where such a discharge is caused by voluntary action or misconduct on the part of a cadet subject to an active duty obligation, the reimbursement provision of paragraph IIf of the Agreement to Serve will apply.

c.   A cadet who enters the USMA directly from a civilian status and resigns or is separated from the USMA prior to the commencement of the Second Class academic year will be discharged from the U.S. Army. A resignation tendered by a Fourth or Third Class cadet will be accepted when found to be in the best interest of the service. A cadet who tenders a resignation will be required to state a specific reason for the action.

d.   A cadet who enters the Military Academy from the Regular or Reserve Component of any military service and who resigns or is separated from the USMA prior to the commencement of the Second Class academic year will revert to his or her former status for the completion of any prior service obligation, except as noted in this subparagraph. This includes cadets who entered USMA from the United States Military Academy Preparatory School as Invitational Reservists, thereby incurring an eight year reserve military service obligation. Such a cadet who has no remaining prior service obligation will be discharged. Such a cadet who entered the USMA from the Regular Army or any Reserve Component of the Army and who has at the time of separation a remaining prior service obligation of less than one year, may, upon the approval of the Secretary of the Army or his designee, be discharged with waiver of any prior service obligation. All service as a cadet is counted in computing the unexpired portion of the enlistment or period of obligated service.

e.   A cadet who has commenced his or her Second Class academic year and who resigns or is separated prior to completing the course of instruction, except for physical disqualification, unfitness, or unsuitability, will normally be transferred to a Reserve Component in an enlisted status and, if deemed to have breached his or her service agreement, may be ordered to active duty for not less than two years (10 USC 4348(b)). The Secretary of the Army or his/her designee, will retain final authority to order the individuals to active duty. Completion or partial completion of service obligation acquired by prior enlistment in no way exempts a separated cadet from being transferred to a Reserve Component and ordered to active duty under these provisions.

f.   Any First Class cadet who completes the course of instruction and declines to accept an appointment as a commissioned officer will be transferred to a Reserve Component in an enlisted status and ordered to active duty for four (4) years (10 USC 4348(b)).

g.   The foregoing provisions will be applied in accordance with the following guidance:

(1) The Second Class academic year shall be deemed to have commenced at noon on the first day of regularly scheduled classes in the new academic year; and,

(2) In cases where it is necessary to determine whether a cadet resigned or was separated prior to or following the commencement of the Second Class year, the critical date is the date that action is initiated, either by the cadet or by authorities at the USMA.

(3) "Breach of service agreement" includes separation resulting from resignation, from any of the bases for separation listed in Table 1, Regulations for the United States Military Academy, including all additions to Table 1 subsequent to the date of this agreement, or from other willful acts or omissions (paragraph 10.20, Regs USMA).

2.   Normally, all graduates of the USMA will be commissioned in the Army. Approval by the Secretary of the Army for a graduate to be commissioned in another service will be granted only when such an appointment is considered to be in the best interest of the Army and the other service concerned.

3.   Any First Class cadet who resigns for any reason or is separated for deficiency in studies, for marriage, child custody, or for a court-ordered child support obligation and who is commissioned in the USAR under the provisions of paragraph 9.03F, Regulations for the United States Military Academy, may:

(1) Be commissioned in the USAR for service with a Reserve Component unit. There will be an eight-year military service obligation associated with this appointment; or

(2) After receipt of a baccalaureate degree, be commissioned in the USAR and compete with Reserve Officer Training Corps graduates for active duty or active duty for training. The military service obligation for those selected for active duty under this provision will be eight years, three of which will be on active duty.

No such appointment in a commissioned grade in the USAR will be prior to the date of graduation of the class of which the individual concerned was a member at the time of resignation or separation from the USMA.