UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ISIAH M. DOOLEN,                                    :
                                    Plaintiff,      :
v.                                                  :         **OPINION AND ORDER**
                                                    :
MARK ESPER, in his official capacity as             :         16 CV 8606 (VB)
Secretary or the Army, and LT. GEN. ROBERT          :
CASLEN, JR., in his official capacity as            :
Superintendent of West Point,                       :
                                    Defendants.     :
------------------------------------------------------------x

Briccetti, J.:

Plaintiff Isiah Doolen, a former cadet at the United Stated Military Academy at West

Point ("West Point"), brings this action under the Administrative Procedure Act, 5 U.S.C. § 551

et seq. (the "APA"), and 42 U.S.C. § 1983, alleging the decision to separate him from West Point

was arbitrary and capricious and in violation of the Fifth Amendment.  Plaintiff also brings facial

challenges under the Fifth Amendment and APA, asserting West Point's procedures for

separating a cadet are deficient.

Before the Court is defendants' motion to dismiss the second amended complaint

("SAC") under Rules 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment

pursuant to Rule 56.  (Doc. #45).  Also before the Court is plaintiff's cross-motion for summary

judgment.  (Doc. #52).

For the following reasons, defendants' motion to dismiss is GRANTED; and, in the

alternative, defendants' motion for summary judgment is GRANTED, and plaintiff's cross-

motion for summary judgment is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1361.

# BACKGROUND

For the purpose of deciding the pending motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor. The following facts are taken from the complaint and the documents attached thereto or incorporated by reference therein.[1]

## I.        2013 Conduct Investigation

Plaintiff Isiah Doolen was a cadet at West Point when, on March 20, 2013, he was subject to a Conduct Investigation for exceeding the number of permissible demerits in a sixth-month period (the "2013 Conduct Investigation"). At the 2013 Conduct Investigation, it was determined that plaintiff would be separated from West Point. Afterward, the Office of the Staff Judge Advocate (the "JAG Office") at West Point twice reviewed plaintiff's file and concluded there was no error and "the proceedings were conducted in accordance with law and regulation, and complied with legal requirements." (SAC ¶ 22).

Plaintiff left West Point on unpaid administrative leave on May 17, 2013. (SAC ¶ 27).

Nevertheless, on April 28, 2014, the Chief of the JAG Office at West Point was notified that the Assistant Secretary of the Army for Manpower and Reserve Affairs had ordered West Point to re-enroll plaintiff because the 2013 Conduct Investigation violated due process. (SAC ¶ 24).

Plaintiff returned to West Point on June 1, 2014. (SAC ¶ 25).

---

[1]        When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); accord, Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction . . . a district court . . . may refer to evidence outside the pleadings.").

II.     2014 Brigade Board

On June 10, 2014, plaintiff received notice he would be the subject of an Article 10

Brigade Board on June 23, 2014.  The conduct at issue occurred in the time period between the

2013 Conduct Investigation and when plaintiff left West Point on unpaid leave.  The allegation

was: "On or about 8 May 2013 [plaintiff was] believed to be under the influence of alcoholic

beverages and without authorization, entered a barracks room known . . . to be occupied by

female cadets and thereafter became engaged in a verbal and physical altercation with one of the

female cadets and attempted to physically prevent her from exiting the room."  (Administrative

Record ("AR") 000492).[2]

On June 23, 2014, Colonel Nick S. Mauldin conducted the Brigade Board.  As a result of

the Brigade Board findings, plaintiff received demerits, was directed to do "walking tours," and

was restricted to barracks.  (SAC ¶ 41).

III.    2014 Conduct Investigation

On July 17, 2014, plaintiff received a memorandum from Regulations and Discipline

Officer Delroy Patrick advising that plaintiff had been referred to a Conduct Investigation

"concerning [his] reported conduct deficiency for Receiving Two Alcohol Boards."  (SAC ¶ 42;

AR 000476).

Plaintiff was subject to the first Alcohol Board when he was a first year cadet at West

Point.  Plaintiff brought alcohol into his barracks, for which he was disciplined.  The second

Alcohol Board was the 2014 Brigade Board.[3]

---

[2]     All references to the record are to the Bates-stamped numbers on the bottom right of each
page.

[3]     Doolen alleges, on information and belief, that Mr. Patrick recategorized the Brigade
Board to an Alcohol Board to expel Doolen from West Point because Patrick was angry Doolen
had been reinstated after the 2013 Conduct Investigation.

Plaintiff received a "Notification of Conduct Investigation," dated August 12, 2014, and signed by Captain Nicholas Forlenza as the Investigating Officer. (SAC ¶ 57). The notice also alerted plaintiff the Conduct Investigation would convene on August 21, 2014.

On August 18, 2014, Captain Forlenza met with plaintiff to discuss the August 21, 2014, Conduct Investigation, including the evidence to be considered and the procedure. In particular, Captain Forlenza explained he would first determine whether plaintiff was proficient or deficient in conduct. If he found plaintiff proficient, the inquiry would end. If Captain Forlenza found plaintiff deficient, after the Conduct Investigation, Forlenza would examine plaintiff's entire file and make a recommendation as to the proper recourse, which would then be reviewed by the chain of command for further action.

At that meeting, plaintiff asked Captain Forlenza how West Point found he had been before two Alcohol Boards. Captain Forlenza told him the Brigade Board had been "upgraded" to an Alcohol Board, thus triggering a Conduct Investigation. (SAC ¶ 66; AR 000265).[4] When plaintiff disputed the purported upgrade, Captain Forlenza told him he could argue that point immediately prior to the Conduct Investigation.

On August 21, 2014, immediately before the Conduct Investigation, plaintiff challenged the classification of the Brigade Board as an Alcohol Board. Captain Forlenza determined the Brigade Board was an Alcohol Board and proceeded to the Conduct Investigation.

At the four-hour Conduct Investigation, plaintiff and nine other witnesses testified under oath and thirteen people submitted written statements. At the conclusion of the Conduct Investigation, Captain Forlenza prepared a Summarized Report of Proceedings and a

---

[4]      At this preliminary discussion before the Conduct Investigation, Captain Forlenza also told plaintiff "in terms of the board proceedings, alcohol was consumed, misconduct took place, the Article 10 was appropriate." (AR 000253).

Memorandum of Record.  In his report, Captain Forlenza determined plaintiff was deficient in conduct.  Forlenza recommended plaintiff be separated.

Thereafter, on October 5, 2014, Brigadier General John C. Thomson, III, the Commandant of Cadets, approved Captain Forlenza's determination that plaintiff was deficient and recommended separation with "recoupment."[5]  (AR 000234).

On October 9, 2014, Mr. Patrick notified plaintiff of the separation recommendation.  Mr. Patrick provided plaintiff with the Summarized Report of Proceedings and the Memorandum of Record from the Conduct Investigation.  Plaintiff was given ten days to submit a rebuttal to the Commandant's recommendation.

Following several requests for a transcript of the Conduct Investigation, plaintiff received a transcript on November 13, 2014, along with a transcript of the August 18, 2014, meeting between plaintiff and Captain Forlenza.  Because of the delay in receiving the transcripts, plaintiff was granted an extension to December 23, 2014, to rebut the recommendation.  Plaintiff submitted his rebuttal on December 23, 2014.

On March 23, 2015, West Point's Staff Judge Advocate, Colonel James Robinette, provided a legal review memorandum (the "Legal Memorandum") to the Superintendent of West Point, defendant Lieutenant General Robert L. Caslen, Jr.  The Legal Memorandum summarized the procedural history, the 2014 Conduct Investigation, plaintiff's current performance at West

---

[5]     As part of his enrollment at West Point, plaintiff signed an Agreement to Serve.  In the event he fails to complete the course of instruction at West Point or otherwise breaches his service agreement, the agreement requires plaintiff to "serve on active duty" for a predetermined length of time, and if he fails to serve some or all of the active duty, to "reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided [him] as the unserved portion of active duty bears to the total period of active duty [he has] agreed to serve."  (AR 000858).  This reimbursement requirement, called recoupment, is appropriate when, as happened here, West Point officials do not deem a cadet fit to serve in the Army after a determination of separation.

Point, Chain of Command recommendations, and plaintiff's rebuttal. The Legal Memorandum also described authorized sanctions and contained a legal analysis and recommendation.

On March 24, 2015, Lieutenant General Caslen prepared a memorandum in which he approved the finding that plaintiff was deficient and recommended he be separated with recoupment. Lieutenant General Caslen's memorandum went to the Assistant Secretary of the Army for Manpower and Reserve Affairs, who was deputized to approve such recommendations.

Two days later, on March 26, 2015, the JAG office notified plaintiff's counsel that his file and rebuttal packet had been forwarded for final action to the Assistant Secretary of the Army for Manpower and Reserve Affairs.

On October 21, 2015, the Deputy Assistant Secretary of the Army for Manpower and Reserve Affairs Anthony J. Stamilio approved Lieutenant General Caslen's recommendation that plaintiff be separated from West Point and ordered to pay back the cost of his education as recoupment in the amount of $226,662. On approximately November 10, 2015, plaintiff received notice of the decision.

Defendant Mark Esper is the current Secretary of the Army.[6] At the time of plaintiff's separation and the filing of this case, the Secretary of the Army was Erik K. Fanning. For purposes of approving plaintiff's separation, Secretary Fanning delegated his authority to Deputy Assistant Secretary Stamilio.

Plaintiff contends he was constitutionally entitled to an additional hearing to determine whether he should be separated from West Point. He also alleges various deviations from mandatory regulations governing disciplinary procedure, discussed in detail below.

---

[6] Defendant Esper assumed office on November 20, 2017. Accordingly, pursuant to Fed. R. Civ. P. 25(d), Esper is automatically substituted for named defendant Fanning, the prior Secretary of the Army, sued in his official capacity.

Plaintiff brings four claims: (i) a Fifth Amendment facial challenge to the West Point policy not to provide a separation hearing; (ii) an APA facial challenge based on the Fifth Amendment due process violation for failure to provide a separation hearing; (iii) a Fifth Amendment due process claim for defendants' failure to follow mandatory regulations regarding the Brigade Board and Conduct Investigation; and (iv) an APA claim for defendants' failure to follow mandatory regulations.[7]

## DISCUSSION

I.      Legal Standard

A.      Subject Matter Jurisdiction

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists. Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. But "argumentative inferences favorable to the party asserting jurisdiction should not be drawn."

---

[7]     Plaintiff withdrew his two claims regarding West Point's alleged unconstitutional conflict of interest.  (Pl.'s Opp. at 2).

Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

B.      Failure to State a Claim

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

C.      Summary Judgment

For the purpose of deciding a motion for summary judgment in the APA context, judicial review is confined to the administrative record considered by the agency at the time of the administrative decision. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

II.     Intramilitary Immunity

The intramilitary immunity doctrine "generally protects the government from suit for injuries arising from activities incident to military service."  Overton v. N.Y.S. Division of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (internal quotations and citations omitted).  Under the intramilitary immunity doctrine, federal courts will not review discretionary personnel decisions by military officials.  See Jones v. N.Y.S. Division of Military and Naval Affairs, 166 F.3d 45, 52 (2d Cir. 1999) (collecting cases).  However, there are two exceptions: facial challenges, see Dibble v. Fenimore, 339 F.3d 120, 126 (2d Cir. 2003), and cases "where the military has failed to follow its own mandatory regulations in a manner substantially prejudicing a service member."  Jones v. N.Y.S. Division of Military and Naval Affairs, 166 F.3d at 52.

As an initial matter, plaintiff brings Fifth Amendment and APA facial challenges to West Point's separation proceedings.[8]  Those claims fall squarely within the first exception to the intramilitary immunity doctrine.  Thus, the Court has jurisdiction to adjudicate the facial challenges.

Plaintiff also brings a Fifth Amendment claim under 42 U.S.C. § 1983, for a lack of procedural due process related to his separation from West Point arising from deviations from

---

[8]     Although unclear from the face of the SAC, plaintiff clarifies that these claims are facial challenges and not as-applied claims.  (Pl.'s Opp. at 2).

mandatory regulations. Although claims under 42 U.S.C. § 1983 generally are barred by the doctrine of intramilitary immunity, Jones v. N.Y.S. Division of Military and Naval Affairs, 166 F.3d at 52, the Court must address whether the alleged deviations from mandatory military regulations substantially prejudiced plaintiff so as to invoke an exception to the doctrine.

Similarly, regarding plaintiff's APA claim, "[a]lthough the courts have declined to review the merits of decisions made within the area of discretion delegated to administrative agencies . . . a federal court may properly examine the [discretionary personnel] decision . . . to determine if the . . . procedural rights under the applicable statutes and military procedures and regulations were violated in a manner which caused substantial prejudice." Smith v. Resor, 406 F.2d 141, 145–46 (2d Cir. 1969).

Therefore, to assess whether the Court has jurisdiction over plaintiff's Section 1983 and APA claims, which are based on alleged failures to follow mandatory regulations, the Court must first determine whether plaintiff was substantially prejudiced by those failures.

A.      Deviation from Mandatory Regulations

In his complaint, plaintiff asserts the following deviations from mandatory procedures: (i) the 2013 Conduct Investigation was not tape-recorded, contravening United States Corps of Cadets ("USCC") Regl. 351-1 Chpt. 1 § 114(j); and (ii) following the 2013 Conduct Investigation, "the Commandant of Cadets gave no 'rationale' for his recommendation to the Superintendent that Cadet Doolen be separated from the Academy." (SAC ¶ 21). These issues were rectified when plaintiff was reinstated on June 1, 2014. Accordingly, the Court does not consider these alleged deviations.

Of relevance to the instant motions, plaintiff pleads defendants violated the following regulations "all to the substantial detriment and prejudice of Cadet Doolen" in connection with

the 2014 Conduct Investigation and plaintiff's subsequent separation. (SAC at 39)[9]: (1) undue command influence in violation of the Uniform Code of Military Justice ("UCMJ") Article 37(a), 10 U.S.C. § 837; (2) failure to provide proper notice of charges and disciplinary actions being investigated in violation of USCC Regl. 351-1 Chpt. 1 § 105(a); (3) failure to provide a transcript and file a complete record of the Conduct Investigation in violation of USCC Regl. 351-1 Chpt. 1 §§ 114(j), (l), and (m) and USCC Regl. 351-1 Chpt. 3 § 301(a); (4) adjudication of related delinquencies in multiple hearings in violation of USCC Regl. 351-1 Chpt. 1 § 115(q); (5) the decision was not supported by a preponderance of the evidence in violation of USCC Regl. 351-1 Chpt. 1 § 116(a); (6) the hearing officer in the disciplinary procedure was also the investigating officer in violation of USCC Regl. 351-2 Chpt. 3 § 311(a); (7) the record did not include favorable oral or written testimony for plaintiff in violation of USCC Regl. 351-1 Chpt. 5 § 501(a)(4); (8) the Commandant failed to set forth a rationale in support of his recommendation to separate plaintiff in violation of USCC Regl. 351-1 Chpt. 5 Section 502(a)(3); (9) the hearing officer falsely attested to the accuracy of the record in violation of UCMJ Article 7; (10) the hearing officer violated Army Regl. 600-50 ¶ 1-4 for failing to act with integrity and independence; and (11) the disciplinary proceedings for the May 8, 2013, incident were untimely in violation of USCC Regl. 351-1 Chpt. 1 § 104.

   1. <u>Mandatory Regulations</u>

  Some of the alleged deviations from mandatory regulations are not deviations from mandatory regulations at all. First, the Uniform Code of Military Justice Article 37(a), 10 U.S.C. § 837, does not apply to informal disciplinary hearings and is therefore inapplicable to the 2014

---

[9] The sequential paragraph numbering jumps from paragraph 175 to paragraph 1 on page 38 of the SAC. Accordingly, after paragraph 175, "SAC at __" refers to the page number at the bottom of the SAC.

Conduct Investigation.  Subchapter seven of the Code, in which Article 37(a) appears, is titled "Trial Procedure."  The text of Article 37(a) makes clear it applies to authorities "convening a general, special, or summary court-martial" and proscribes any coercion or influence of "a court-martial or any other military tribunal or member thereof."  Absent a court martial or military tribunal, this regulation does not apply.  10 U.S.C. § 837, Art. 37(a).

Second, although USCC Regulation 351-1 Chapter 1 Sections 114(j), (l), and (m) appear to require West Point to create a transcript of the Conduct Investigation, those regulations do not mandate the provision of such a transcript to the cadet.  Nevertheless, plaintiff was provided the Conduct Investigation transcript and given an extension of time to file his rebuttal to accommodate his late receipt.  Therefore, the failure to receive the transcript was not a deviation from mandatory procedure and in any event did not substantially prejudice plaintiff.

Third, plaintiff broadly interprets USCC Regulation 351-2 Chapter 3 Section 311(a), which states, "In order to be effective, the Cadet Disciplinary System must not only function properly, but it must also appear to function properly."  Plaintiff asserts that, when Captain Forlenza served both the Hearing Officer and Investigating Officer role during the Conduct Investigation, the process did not "function properly" as required by Section 311(a).  Plaintiff's selective quotation of the regulation's preamble has nothing to do with the substance of the rule itself, which goes on to state, "The commander may announce the disposition of all cases involving punishment.  This may be done orally, as in a routine formation, and also in writing by posting a formal notice on bulletin boards or other such locations."  USCC Regl. 351-2 Chpt. 3 § 311(a)  Therefore, plaintiff has not adequately alleged a deviation from the substance of Section 311(a).

Fourth, plaintiff cites USCC Regulation 351-1 Chapter 5 Section 501(a)(4) to suggest it is a procedural rule governing the submission and consideration of testimony.  It is not.  Section

501(a) appears to be a list of kinds of evidence which can be presented at proceedings. Section 501(a)(4) does not set forth any rule regarding the inclusion of testimony in the administrative record. Therefore, there was no deviation from Section 501(a)(4). Moreover, to the extent any evidence was missing from the record, plaintiff submitted excerpts of testimony from witnesses, written recommendations, and other documentary evidence as part of his extensive rebuttal. (AR 000029–226). Accordingly, there was no substantial prejudice for failure to include that testimony in the record.

Fifth, plaintiff cites USCC Regulation 351-1 Chapter 1 Section 104 to assert the 2014 Conduct Investigation was untimely. Section 104 does not dictate a mandatory timeline to bring Conduct Investigations. Instead, section 104 provides "a guide to the time normally required to accomplish each phase of the review" and specifically cautions "failure to meet any of the established goals does not result in negating a case for undue delay." USCC Regl. 351-1 Chpt. 1 § 104. In addition, section 104 grants the "minimum time afforded to cadets to ensure their due process rights," but plaintiff appears to cite that same language to assert his rights were violated because of delay. USCC Regl. 351-1 Chpt. 1 § 104. Here, the reason for the delay was, in part, because plaintiff was on leave as a result of the 2013 Conduct Investigation. After plaintiff returned to West Point on June 1, 2014, he received notice of the Brigade Board shortly thereafter on June 10. After the Brigade Board on June 23, 2014, plaintiff received notice of the Conduct Investigation on July 17. Moreover, at the 2014 Conduct Investigation, plaintiff presented positive character witnesses who testified to plaintiff's performance at Cadet Field Training, which occurred in the intervening months between the incident of May 8, 2013 (the "May 8 incident"), and the Conduct Investigation. These witnesses could not have testified but for the delay. Accordingly, USCC Regulation 351-1 Chapter 1 Section 104 is not a mandatory regulation, nor was any deviation from it substantially prejudicial to plaintiff.

2.      Administrative Record

Next, the administrative record conclusively refutes some of plaintiff's assertions.

First, plaintiff asserts he did not receive proper notice under USCC Regulation 351-1 Chapter 1 Section 105(a), which requires "written notice of the reported conduct deficiency and a list of all disciplinary actions being investigated."  Although the pleadings are not clear regarding what notice was deficient, it appears this is an argument that plaintiff did not receive proper notice that the 2014 Brigade Board was an Alcohol Board.  The notice provided to plaintiff on June 10, 2014, specifically states the alleged conduct occurred when plaintiff was "believed to be under the influence of alcoholic beverages."  (AR 000492).  Therefore, plaintiff was on notice that the board may be an Alcohol Board, or, at minimum, he was subject to an alcohol policy violation.

Moreover, to the extent there was a deviation, there was no substantial prejudice to plaintiff.  The purpose of notice is to allow a cadet to adequately prepare a defense.  The description of plaintiff's conduct alerted plaintiff to the claim against him such that he could defend himself at the Brigade Board.  Plaintiff does not allege he would have conducted himself differently at the Brigade Board had it been an Alcohol Board or that there was an appreciable difference in procedures between the two.  Therefore, the alleged deviation does not merit an exception to the intramilitary immunity doctrine.

Second, plaintiff asserts West Point split related delinquencies into separate hearings, in violation of USCC Regulation 351-1 Chapter 1 Section 115(q).  There is no basis in the pleadings or administrative record for this assertion.  Section 115(q) requires Investigating Officers to "[e]nsure that delinquencies which should have been processed in a single delinquency were in fact processed that way . . . rather than two or three separate awards for separate, but factually related, delinquencies arising from the same incident."  Plaintiff does not

allege which delinquencies are related, and, having reviewed the record, the Court finds no related conduct that was improperly split into separate hearings. Therefore, there was no deviation from this regulation.

Third, plaintiff pleads the Commandant failed to provide a rationale in support of his recommendation that plaintiff be separated, in violation of USCC Regulation 351-1 Chpt. § 502(a)(3). However, General John C. Thomson III, Commandant of Cadets, referenced "the transcript, findings, and recommendations" as the grounds for his October 5, 2014, recommendation, thereby incorporating by reference the chain of command recommendations and determinations below. (AR 000234). Section 502 does not state what constitutes the required "full exposition of the Commandant's rationale" only that one must be given. Because the record reflects that General Thomson considered the record presented to him, there was no deviation from Section 502.

### 3. Procedural Rules

Lastly, some of the asserted regulations do not address procedural rights contemplated by Smith v. Resor, 406 F.2d at 145–46, and, as such, are outside the scope of review for purposes of the intramilitary immunity doctrine.

First, plaintiff suggests that when Captain Forlenza attested to the record, he made a false record in violation of Article 107[10] of the Uniform Code of Military Justice. 10 U.S.C. § 907. Article 107 is a military criminal code rather than a procedural rule. Article 107 does not govern, even by inference, Conduct Investigations. Accordingly, the alleged violation of Article 107 has no bearing on the Court's jurisdiction.

---

[10] Plaintiff cited to Article 7 rather than Article 107. (SAC at 40). The Court assumes this was a clerical error as Article 7 is irrelevant to plaintiff's claim.

Similarly, plaintiff relies on Army Regulation 600-50 paragraph 1-4, which sets forth standards of conduct, to plead Captain Forlenza had a conflict of interest as the Investigating Officer and Hearing Officer for plaintiff's Conduct Investigation. Plaintiff argues this is a violation of the rule prohibiting "losing independence or impartiality." Army Regl. 600-50 ¶ 1-4(f)(4). Army Regulation 600-50 paragraph 1-4 plainly does not create procedural rights; the regulation seeks "to avoid conflicts and the appearance of conflicts between private interests and official duties," Army Regl. 600-50 ¶ 1-1, by requiring "soldiers and Army civilians to act with integrity and abide by the values of the Professional Army." Army Regl. 600-50 ¶ 1-4(b). Applied here, Captain Forlenza was only proceeding in the course of his official duties. Therefore, the regulation is neither applicable to the jurisdictional inquiry nor was it violated.

B.    Substantial Prejudice

Having disposed of the alleged deviations above, those remaining for the Court's consideration are that Captain Forlenza (i) did not provide a summary of Cadet Edward Jenkins's testimony, and failed to include the written statements of Cadet John Barnes and Cadet William Majors in the record of proceedings, in violation of USCC Regl. 351-1 Chpt. 3 § 301(a); and (ii) did not apply a preponderance of the evidence standard as required by USCC Regl. 351-1 Chpt. 1 § 116(a).

First, plaintiff cites Section 301(a) as a rule requiring inclusion of certain documents in the administrative record. Because Section 301 does not have subsections and does not appear to address a Conduct Investigation record, the Court presumes plaintiff refers to Section 303(a) which states: "Anything considered by the [Conduct Investigation] should be made an exhibit."

Here, Captain Forlenza included summaries of the testimony from Cadet Barnes (AR 000428) and Cadet Majors in the Summarized Report of Proceedings. (AR 000426). Captain Forlenza also attached eleven character references. (AR 000439–53). However, the record

prepared by Captain Forlenza does not contain a summary of Cadet Jenkins's testimony or the written statements from Cadets Barnes and Majors.  Plaintiff fails to allege how he was substantially prejudiced by these omissions.  All three witnesses testified at the Conduct Investigation.  Plaintiff provided a summary of Cadet Jenkins's testimony in his rebuttal.  (AR 000128–29).  A full transcript of the Conduct Investigation was reviewed as part of the administrative record.  (AR 000241–417).  Because the content of the witness statements and testimony were part of the record on review, plaintiff fails to allege substantial prejudice.

Finally, plaintiff asks the Court to find that Captain Forlenza's failure to apply a preponderance of the evidence standard substantially prejudiced defendant, creating an exception to the intramilitary immunity doctrine.

The Court has no power to do so.

There is no binding case law that addresses the exact predicament at hand, namely, when does a procedural rule, here the preponderance of the evidence standard, require the wholesale reconsideration of a discretionary military personnel decision.  This is in large part because wading into the alleged prejudice is tantamount to adjudicating the claims on the merits.  In contrast, when courts have found exceptions to the intramilitary immunity doctrine, the deviations from mandatory regulations were so clearly prejudicial that the court did not need to conduct a searching inquiry of the military decisionmaker.  See, e.g., Jones v. N.Y.S. Division of Military and Naval Affairs, 166 F.3d at 52–53 (failure to hold a mandatory hearing); Blassingame v. Sec'y of the Navy, 866 F.2d 556, 558 (2d Cir. 1989) (failure to provide notice to plaintiff or conduct an investigation); Brezler v. Mills, 220 F. Supp. 3d 303, 327 (E.D.N.Y. 2016) (failure to provide discovery).

This narrow approach is supported by the other exception to intramilitary immunity doctrine, facial challenges.  When adjudicating a facial challenge, a court need not second guess

the discretionary determination of military officials, thereby avoiding the very purpose of

intramilitary immunity. Thus, in a way, a facial challenge is not an exception to the intramilitary

immunity doctrine but rather does not implicate the concerns which give rise to the doctrine at

all. See Dibble v. Fenimore, 339 F.3d 120, 127–28 (2d Cir. 2003). Therefore, when pleading

that a deviation from a mandatory regulation resulted in substantial prejudice, the nature of the

substantial prejudice must be such that the court is not required to wade through the minutia of

the military's decision before the court determines whether it has the power to do so.

Here, plaintiff asks the Court to reweigh the evidence Captain Forlenza considered at the

Conduct Investigation to determine whether his decision was supported by a preponderance of

the evidence. This determination requires the Court to substitute its judgment for that of Captain

Forlenza regarding the credibility of the witnesses and, importantly, what best evidences Army

values or the lack thereof. The principles of the intramilitary immunity doctrine bar the Court

from such an inquiry.

Accordingly, the Court does not have jurisdiction to review the APA claim[11] and Fifth

Amendment claim[12] premised on the alleged failure to follow mandatory regulations.

---

[11] In any event, under the deferential standard for reviewing an APA claim, the Court would grant defendants' motion for summary judgment. The Court addresses the claim on the merits at Section IV below.

[12] Even if the Court had jurisdiction over this Fifth Amendment claim, it would be dismissed because plaintiff failed to exhaust his administrative remedies. Generally, "[a] party 'may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." Jones v N.Y.S. Div. of Military and Naval Affairs, 166 F.3d at 54 (2d Cir. 1999) (quoting Guitard v. Sec'y of Navy, 967 F.2d 737, 740 (2d Cir. 1992)).

Although, "the exhaustion of administrative remedies is not a prerequisite to bringing an action pursuant to 42 U.S.C. § 1983," Jones. v. N.Y. S. Div. of Military and Naval Affairs, 166 F.3d at 54, when agency regulations provide for additional review of an agency decision, a party must exhaust that additional level of review before bringing suit. Id. at 55. Exhaustion in these circumstances is required even when plaintiff alleges the agency failed to abide by its own

III.    Facial Challenges

Defendants argue West Point procedures comply with Fifth Amendment due process protections.

The Court agrees.

To satisfy the due process clause of the Fifth Amendment, "some form of hearing is required before an individual is finally deprived of a property interest." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  "Due process is flexible and calls for such procedural protections as the particular situation demands." Id. at 334, citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  Courts determine the appropriate procedural protections by considering three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedures requirement would entail." Mathews v. Eldridge, 424 U.S. at 335.

"With respect to decisions made by Army authorities, 'orderly government requires [courts] to tread lightly on the military domain, with scrupulous regard for the power and authority of the military establishment to govern its own affairs within the broad confines of constitutional due process.'" Hagopian v. Knowlton, 470 F.2d 201, 208 (2d Cir. 1972), overruled in part on other grounds by Phillips v. Marsh, 687 F.3d 620 (2d Cir. 1982), citing

_____

regulations.  See Yarusso v. 106 Rescue Wing, N.Y. Air Nat. Guard, 511 F. App'x 13, 15 (2d Cir. 2013) (summary order).
    Here, 10 U.S.C. § 1552(a)(1) provides for appeal to an Army Board for Correction of Military Records ("ABCMR").  Because this appeal is provided by the regulations, plaintiff is required to first exhaust his Section 1983 claims by appealing to the ABCMR.

Friedberg v. Resor, 453 F.2d 935, 937 (2d Cir. 1971). "[B]efore a cadet can properly be dismissed or separated from his service academy, he must have a hearing, be apprised of the specific charges against him, and be given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence." Andrews v. Knowlton, 509 F.2d 898, 905 (2d Cir. 1975).

The parties disagree whether an additional hearing on the issue of separation is required prior to a cadet's separation, and the case law is arguably unsettled. Compare Hagopian v. Knowlton, 470 F.2d at 211 ("at a hearing at which Academy officials will determine whether or not a cadet will be expelled the cadet must be allowed to appear and present evidence, including witnesses, on his behalf.") with Wasson v. Trowbridge, 382 F.2d 807, 812 (2d Cir. 1967) ("We do not suggest . . . that the Cadet must be given this opportunity [to be heard] both when demerits are awarded and when dismissal is considered.").[13]

The Court need not decide whether Hagopian or Wasson controls because post-deprivation review provides the necessary process to comply with the more stringent view of Fifth Amendment procedural requirements. See Zinermon v. Burch, 494 U.S. 113, 128 (1990). When, as here, "the deprivation is pursuant to an established . . . procedure . . . 'the availability of post-deprivation procedures will not, ipso facto, satisfy due process.'" Rivera-Powell v. N.Y.C. Bd. Of Elections, 470 F.3d 458, 466 (2d Cir. 2006) (quoting Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F. 3d 877, 880 (2d Cir. 1996)). However, when pre-deprivation procedures combined with post-deprivation procedures satisfy due process, there is

---

[13]     Hagopian arguably contradicts Wasson. However, in Andrews v. Knowlton, the Second Circuit cites both Hagopian and Wasson without reconciling their differing positions regarding the process required before separation. 509 F.2d at 905 (calling Wasson and Hagopian "equally controlling").

no Fifth Amendment violation.  See Rivera-Powell v. N.Y.C. Bd. Of Elections, 470 F.3d at 467–68.

Here, it is undisputed cadets are afforded a Conduct Investigation to determine whether their conduct is deficient.  There is no dispute a Conduct Investigation comports with due process requirements of notice of the charges, and an opportunity to present a defense including through witnesses and other evidence.  See Andrews v. Knowlton, 509 F.2d at 905; USCC Regl. 351-1 Chpt. 1 § 105.  Instead, plaintiff asserts all cadets are entitled to an additional hearing after a finding of deficiency, solely on whether separation should be imposed.  However, cadets may appeal the Conduct Investigation finding of deficiency to the ABCMR, which "may, in its discretion, hold a hearing . . . or request additional evidence or opinions."  32 C.F.R. § 581.3.

The mere possibility of additional process precludes a facial challenge because plaintiff cannot "establish that no set of circumstances exists under which the [West Point procedure] would be valid."  Diaz v. Paterson, 547 F.3d 88, 101 (2d Cir. 2008) (citation and quotation marks omitted).

Accordingly, plaintiff's Fifth Amendment facial challenge must be dismissed.

Additionally, because the APA facial challenge is premised on the underlying Fifth Amendment facial challenge, the APA facial challenge must also be dismissed.

IV.   APA Claim

Finally, in the alternative, the Court addresses the APA claim, as applied to plaintiff, on the merits.

Under Darby v. Cisneros, 509 U.S. 137, 146 (1993), federal courts have no authority to require plaintiffs to exhaust administrative remedies prior to seeking judicial review under the APA unless a statute or agency regulation "clearly mandates" exhaustion as a prerequisite to judicial review.  See also Connors v. United States, 863 F.3d 158, 160 (2d Cir. 2017).

Here, no such requirement exists. Accordingly, plaintiff's APA claim is not barred for failure to appeal to the ABCMR.

Having found the disciplinary process did not violate the Fifth Amendment, and therefore was not contrary to law, the Court now addresses whether the determination to separate plaintiff from West Point with recoupment was arbitrary, capricious, or an abuse of discretion.

It was not.

A.      APA Standard

Section 706 of the APA permits a court to reverse an agency action that is arbitrary, capricious, an abuse of discretion, or contrary to law. See 5 U.S.C. § 706(2)(A); Chappell v. Wallace, 462 U.S. 296, 303 (1983). "[W]hen applying the arbitrary and capricious test, a court may not assess the wisdom of an agency's choice; inquiry is limited instead to whether the [agency] has made a clear error of judgment." Falk v. Sec'y of the Army, 870 F.2d 941, 945 (2d Cir. 1989). A court must uphold agency action so long as the agency has provided "a satisfactory explanation including a rational connection between the facts found and the choice made." Karpova v. Snow, 497 F.3d 262, 268 (2d Cir. 2007). Moreover, courts afford additional deference to military matters "reasonably relevant and necessary to furtherance of our national defense," such as the decision here regarding whom to make a commissioned officer. Mack v. Rumsfeld, 784 F.2d 438 (2d Cir. 1986) (per curiam) (citation omitted).

B.      Bad Faith

First, plaintiff asserts West Point authorities acted with bad faith, militating in favor of additional discovery outside the record. "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." Nat'l Audubon Soc. v. Hoffman, 132 F.3d 7, 14 (2d Cir. 1997). However, "an extra-record investigation by the reviewing court may be appropriate when there has been a strong showing in

support of a claim of bad faith or improper behavior on the part of agency decisionmakers or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice." Id.; see also HiFi DNA Tech LLC v. U.S. Dept. of Health and Human Servs., 357 Fed. App'x 345, 347 (2d Cir. 2009) (summary order).

Having reviewed the pleadings and administrative record, the Court finds plaintiff does not offer a strong showing of bad faith or improper behavior.

Accordingly, the Court declines to exercise its discretion to look outside the record and to allow the parties to conduct additional discovery.

C. Alcohol Violations

Next, the Court reviews Captain Forlenza's determination that plaintiff had two alcohol policy violations when the Conduct Investigation was triggered.[14]

The definition of an alcohol-related offense is, inter alia, "[a]lcohol related misconduct," Card 600, USCC SOP Chpt. 6 § (3)(d)(3), and "serious misbehavior while intoxicated." Card 600, USCC SOP Chpt. 6 § 4(a). West Point regulations define "under the influence" as "having lost some possession of faculties, as evidenced by poor conduct, statements, or any impairment of one's ability to function normally." Card 601, USCC SOP Chpt. 6 § 1(e).[15]

There is ample evidence in the record to support Captain Forlenza's determination that the 2014 Brigade Board was an Alcohol Board for purposes of deciding whether plaintiff

---

[14] The submissions in this case conflate Alcohol Boards with alcohol violations. To be clear, the regulation states a Conduct Investigation is triggered by two alcohol policy violations. USCC Regl. 351-2 Chpt. 5 § 504(b)(3). This semantic distinction and any variations in the record are not themselves dispositive as there is evidence in the record that the hearing was an alcohol board and plaintiff had two alcohol policy violations.

[15] The Court construes "under the influence," "intoxicated," "inebriated," "involved alcohol," and any other variations in such language to have the same meaning under West Point regulations.

committed an alcohol policy violation. Testimony from Colonel Mauldin, who conducted the Brigade Board (AR 000315–16), and related documents reflect the Brigade Board found plaintiff had consumed alcohol prior to the May 8 incident. (AR 000491–523). In addition, Colonel Mauldin testified the Brigade Board was an Alcohol Board. (AR 000315). Lastly, at the Conduct Investigation, plaintiff asked Mauldin to confirm Mauldin had not determined plaintiff was "inebriated" at the time of the incident. (AR 000313–14, AR 000433). Colonel Mauldin did not agree with plaintiff's characterization. (AR 000314). Instead, Mauldin recounted the evidence showing plaintiff had been drinking, although he declined to make a determination of the level of intoxication. (AR 000314–17).

The record also contains a memorandum from Captain Elizabeth Eaton-Ferenzi, plaintiff's Regimental Tactical Officer, in which she recommends plaintiff be subject to a Brigade Board because of the May 8 incident. The memorandum includes a summary of evidence to suggest the events "involved alcohol," including that plaintiff had been at the Firstie Club, there was alcohol on his breath, he slurred his words, and exhibited erratic behavior. (AR 000493–94). The memorandum also includes possible reasons for plaintiff's intoxication, including his recent bout of mononucleosis and use of ADHD medication, which may have affected his tolerance for alcohol. (AR 000494). The memorandum accurately summarizes the sworn statements from witnesses to the May 8 incident. (AR 000496–523, AR 000541). Accordingly, there is ample evidence in the record to support Captain Forlenza's finding that plaintiff violated the alcohol policy because he engaged in serious misconduct in which alcohol was a contributing factor.

Plaintiff argues the administrative record is incomplete because there is no documentation regarding the recharacterization of the Brigade Board as an Alcohol Board. See Dopico v. Goldschmidt, 687 F.2d 644, 654 (2d Cir. 1982) (holding "fundamental documents" were

"conspicuously absent" such that it was "inconceivable that such fundamental documents . . . would not be part of the record."). However, plaintiff does not dispute the Brigade Board itself. Rather, plaintiff challenges the finding that he was the subject of two Alcohol Boards or had two alcohol violations. The administrative record contains all of the documentation considered at the Brigade Board, the disposition of the Brigade Board, and the testimony and documentation Captain Forlenza relied on when determining the validity of the classification of the Brigade Board. Accordingly, there is no basis to assume any document is missing from the record or that such a document is the kind of "fundamental document[]—the very basis for federal decisionmaking" which was at issue in Dopico. Id.

        D.      <u>Separation Determination</u>

Turning to Captain Forlenza's determination that plaintiff should be separated, the Court finds ample evidence in the record to support Forlenza's findings as to plaintiff's deficient academic performance, maturity, selflessness, self-control, leadership potential, and plaintiff's lack of meaningful rehabilitation.

Plaintiff's academic performance was considered in its entirety, and provided support for Captain Forlenza's determination of plaintiff's deficient leadership potential. Plaintiff's positive performance at Cadet Field Training was central to the Conduct Investigation testimony and was highlighted in the Legal Memorandum prepared by Colonel Robinette. (AR 000012). Nevertheless, plaintiff was "below average" (AR 000458) in leadership, and "underwhelming" (AR 000423) academically, holding a 2.26 cumulative grade point average at the time of his separation. (AR 000010). Dr. Tania Chacho, a professor who taught plaintiff in 2013, gave him the lowest grade in her class, Comparative Politics, and found "[h]e did not meet our expectations for basic cadet leadership and responsibility." (AR 000461). Moreover, Dr. Chacho wrote that she identified "nothing that indicates his dedication to the class or organizational

mission." (AR 000461). She continued, "Unfortunately, Cadet Doolen has not shown me evidence of potential for service as an exemplary officer. . . . Based on this, I would hesitate to see him as a lieutenant in my battalion. At this point in his education and leader development, it is disappointing that he has not shown us more evidence of behavior expected of an officer. . . . I harbor doubts about his potential for future distinguished service." (AR 000461). Similarly, plaintiff's physical education instructor, Daniel Lorenzen, twice reviewed plaintiff's performance, once in 2011 and again in 2014. Lorenzen found plaintiff a "below average performer" who gave Lorenzen reason to question plaintiff's "dedication to duty and his ability to accomplish the mission." (AR 000462). Another of plaintiff's professors, Dr. Thomas Sherlock, also found plaintiff's performance below average, despite a "relatively adequate grade." (AR 000464). On balance, the professors who knew plaintiff over full-semester courses, if not longer, saw little academic or leadership potential. It was therefore reasonable to find plaintiff did not show promise as a commissioned officer, even in view of his performance at Cadet Field Training.

Plaintiff presented nine character witnesses at his Conduct Investigation, but only one knew plaintiff for more than three months. Therefore, it was reasonable for Captain Forlenza to assess the witnesses as providing only "superficial, disingenuous" descriptions of plaintiff's character. (AR 000424). Cadet Jenkins knew plaintiff during the summer of 2014 before testifying on his behalf. Cadet Jenkins testified about plaintiff's "selfless service." (AR 000362). However, Jenkins also testified plaintiff could be disrespectful. (Id.).

Chaplain Joe Knoedler, who provided cursory testimony that plaintiff willingly did all the tasks assigned to him and "didn't bash anyone," only interacted with plaintiff for two weeks. (AR 000386). Similarly, Cadet Elliot Chal knew plaintiff for approximately three months when he provided written and oral testimony at the Conduct Investigation. (AR 000345, AR 000447).

Major Patrick Snyder testified at the Conduct Investigation that plaintiff's ability to perform well despite the specter of the Conduct Investigation "speaks to his maturity." (AR 000401). However Major Snyder and plaintiff did not have "a whole lot of interaction." (AR 000397). Cadet Majors testified plaintiff was "incredibly mature." (AR 000336). However, Majors only knew plaintiff for three months at the time of his testimony. Cadet Barnes, who had had regular interactions with plaintiff for three months at the time of his testimony, identified plaintiff's weaknesses as "lapses in judgment his first year . . . maybe honor." (AR 000409). Lastly, none of these witnesses testified to plaintiff's character outside of Cadet Field Training or outside of uniform.

In contrast, Cadet Veronica Bryant, who knew plaintiff for three years at the time of her testimony, stated plaintiff was "sort of like a loose cannon . . . [whenever he was] drunk or angry." (AR 000390–91). Cadet Bryant articulated specific instances of plaintiff's impulsive, disrespectful conduct "like shouting out the windows [ND] is a whore." (AR 000391). She said there were times when "glasses . . . end up being broken, windows would end up being punched out. [16] Or [after an interaction with a Trainer, Advisor, and Counselor ("TAC") officer, plaintiff was] just screaming and yelling and losing it." (AR 000395). She testified people "had to break up shouting matches between him and other[s]" when plaintiff had consumed alcohol. (AR 000394). Although Cadet Bryant said plaintiff was helpful and had a positive attitude, on balance she described her interactions with plaintiff as "more negative." (AR 000392). Cadet Bryant testified plaintiff did not embody Army values. (AR 000393). Cadet Bryant testified she would not feel comfortable serving as plaintiff's subordinate because he cannot "function under

---

[16] Dr. Benjamin Ingram, who worked in the Cadet Health Clinic, noted three occasions while plaintiff was at West Point when he "punched objects resulting in right hand fractures." (AR 000026).

pressure." (AR 000394). Cadet Bryant said she may feel differently about plaintiff based on what she heard from other people, but at present, her personal experiences with plaintiff informed her testimony. (Id.).

Accordingly, Captain Forlenza's summaries of witness testimony were neither unfair nor obfuscatory. Rather, Captain Forlenza distilled the testimony most relevant to assess plaintiff's character, having observed the live witnesses, and in the context of the time each witness knew him, and the specificity and depth of their knowledge. It is not for the Court to decide how much weight to give plaintiff's performance at Cadet Field Training in light of his history at West Point.

Captain Forlenza's other assessments of plaintiff's character and potential are also fully supported by the record.

There is evidence plaintiff was disrespectful to Captain Forlenza, for which plaintiff's counsel appeared to apologize. (AR 000298). On August 18, 2014, plaintiff sent Captain Forlenza an email in which he writes, "How are you legally allowed to pick and choose who I am allowed to call as witnesses? What is your expertise in determining who and who will not provide reasonable evidence to my case? I am going to not only challenge you in regards to this decision, but I am going to take this to the [Office of the Inspector General] as well." (AR 000470).

There is also evidence plaintiff did not take full responsibility for his actions. When asked what Army value plaintiff most embodied, Cadet Barnes testified plaintiff showed courage in getting his prior separation overturned by the Secretary of the Army; he "didn't just sit back and take what was given to [him]." (AR 000408). In this vein, Captain Eaton-Ferenzi submitted an evaluation, dated May 13, 2013, in which she stated plaintiff "tends to blame those around him for any professional or personal shortfalls." (AR 000458). This is the same sentiment

Major Allison Marschean, plaintiff's TAC officer, communicated in a review from January 5, 2011: "CDT Doolen gets easily frustrated at others and tends to blame them for his problems. . . . CDT Doolen has a tendency to close himself off to those who hold him accountable." (AR 000458). By means of further example, on the day after the May 8 incident, plaintiff told Sergeant Kellen Rowley "that he wanted assistance keeping his ex-girlfriend away from him as she exacerbates situations he's found himself in (disciplinary wise) and that he doesn't want the drama or trouble." (AR 000505). Plaintiff did not communicate his role in the fracas or any of the specific events of May 8, 2013.

Further, there is evidence in the record to support Captain Forlenza's finding that plaintiff did little to rehabilitate himself. When Forlenza asked plaintiff to describe "specific things that [he] did on [his] own to better [him]self as an individual" (AR 000325), plaintiff answered he attended counseling,[17] which he did not continue upon his return to West Point, was mentored by his lawyer, and generally engaged in "personal reflection for sheer desire to change." (AR 000327). Along these lines, at the Conduct Investigation Cadet Theodore Lipsky testified one of plaintiff's greatest areas of growth while on administrative leave was "that he taught himself a lot about regulations, a lot about the law." (AR 000379). It was reasonable for Captain Forlenza to conclude plaintiff had done little to effect meaningful change outside the realm of his own immediate legal challenges, and what might serve him in vindicating his rights.

Captain Forlenza considered plaintiff's decision to stop drinking when he made his determination. In the Summarized Report of Proceedings, Captain Forlenza writes, "Doolen . . . highlighted points of how he has attempted to improve himself that included[:] quit consuming

---

[17]     Plaintiff testified "it was just to talk about my composure, and show how I wanted to better my attitude, better my behavior, and better relate to people in general, I guess. Not that interpersonal skills were ever really a problem." (AR 000326) (emphasis added).

alcohol since October 2013, and sought counseling." (AR 000428). Moreover, Captain Forlenza

did not base his decision on plaintiff's propensity to drink alcohol in the future. Instead,

plaintiff's prior disciplinary issues, and Forlenza's inferences from them, pertain to plaintiff's

judgment generally, both when alcohol is and is not a factor. This finding is bolstered by

plaintiff's various disciplinary violations, and poor academic performance. Moreover, Colonel

Robinette's March 23, 2015, Legal Memorandum accurately summarized plaintiff's rebuttal,

including his decision to stop drinking, his achievement after returning to West Point, positive

character statements, and Dr. Christina Pietz's[18] psychological assessment, which also

underscores plaintiff's decision to abstain from alcohol. (AR 000012).

E.      Consideration of Prior Conduct

Plaintiff asserts Captain Forlenza improperly considered plaintiff's past conduct instead

of assessing plaintiff at the time of the Conduct Investigation. The Court will not question

Forlenza's reasonable judgment to consider past behavior. Captain Forlenza considered conduct

up through the date of the Conduct Investigation and weighed the evidence presented to him in

the context of plaintiff's career at West Point. Giving ample deference to West Point's

decisionmaking, the Court concludes it was neither arbitrary nor capricious to weigh an alleged

---

[18]     Plaintiff retained Dr. Pietz as a psychologist after the 2013 Conduct Investigation and
separation decision. Plaintiff submitted Dr. Pietz's December 13, 2014, report as part of his
rebuttal to the 2014 Conduct Investigation and separation decision. Plaintiff sought Dr. Pietz's
evaluation and opinion "to determine if Mr. Doolen was fit to remain in the United States
Military Academy and be allowed to graduate" as well as "to determine if Mr. Doolen is a danger
to those around him, and if he has made the necessary changes since [Dr. Pietz's February 21,
2014] evaluation." (AR 000207).

behavioral turnaround against a well-documented history of rule-breaking and repeated deflections of responsibility.

Plaintiff asserts the report and memorandum from the 2013 Conduct Investigation were improperly contained in the record. (AR 000758–68). Captain Forlenza did not premise his decision on the 2013 Conduct Investigation findings, but rather on plaintiff's record at West Point, which is not tainted by the procedural defects of the 2013 Conduct Investigation. To be clear, because Captain Forlenza did not rely on the 2013 Conduct Investigation report and memorandum, the Court did not refer to them in the course of this APA review.

Plaintiff also asserts Lieutenant General Caslen wrongfully considered plaintiff's arrest for driving while intoxicated on August 10, 2013, as the charges were later dismissed. Lieutenant General Caslen specifically writes his "recommendation to separate Cadet Doolen is not based on his 10 August 2013 arrest for driving while intoxicated (DWI). However, his DWI arrest and his failure to disclose the arrest to his chain of command were considerations." (AR 000003).[19] The Court will not second-guess Lieutenant General Caslen's determination that candor and forthrightness among cadets is an important indication of character.

In any event, plaintiff has a documented history of failing to disclose questionable conduct. On January 20, 2015, Dr. Benjamin Ingram provided a memorandum regarding "a medical waiver for commissioning," in which he summarized plaintiff's health history. (AR 000026). Ingram noted that on November 19, 2014, plaintiff failed to disclose to West Point

---

[19]     In addition, there is no indication anyone in the chain of command considered the domestic abuse allegations from another of plaintiff's ex-girlfriends, which was also mentioned in the Legal Memorandum. Because the Court finds evidence in the record to support Captain Forlenza's findings, which did not consider the information in the Legal Memorandum, and all but Lieutenant General Caslen in the chain of command relied on Captain Forlenza's findings in making their recommendation to separate plaintiff without reviewing the Legal Memorandum, the Court does not find plaintiff's argument meritorious.

psychiatry that he had been prescribed "benzodiazedines," but a poly-pharmacy report showed plaintiff had thrice filled prescriptions for that medication on November 5, November 7, and December 2, 2014. (Id.). Ingram opines, "It is concerning that he did not reveal all of the medications he was taking to the psychiatrist making the commissioning recommendation." (AR 000027).

F.    Legal Memorandum

Lastly, plaintiff challenges the Legal Memorandum's assertion that "Cadet Doolen's Tactical Officer, Regimental Tactical Officer, Brigade Tactical Officer, and the Commandant recommend that he be separated from the Academy and ordered to reimburse the Government for his educational expenses." (AR 000012). Indeed, Major Patrick Snyder, plaintiff's Brigade Tactical Officer, did not recommend separation. Major Snyder recommended a suspended separation but wrote, "If a decision had to be made today, I would not be comfortable with Cadet Doolen graduating and/or commissioning out of the United States Military Academy." (AR 000237). In light of this nuanced recommendation, the error in the Legal Memorandum does not negate the decision to separate plaintiff both because of the other recommendations to separate and the Secretary of the Army's independent judgment in deciding to separate plaintiff.

Accordingly, under the doubly deferential standard afforded under the APA for military decisions affecting national defense, defendants have shown West Point's rationale in separating plaintiff with recoupment was reasonably connected to the facts in the administrative record.

**CONCLUSION**

Defendants' motion to dismiss is GRANTED.  In the alternative, defendants' motion for summary judgment is GRANTED and plaintiff's cross-motion for summary judgment is DENIED.

The Clerk is instructed to terminate the motions (Doc. #45, 52) and close this case.

Dated: September 10, 2018
      White Plains, NY

                               SO ORDERED:

                               Vincent L. Briccetti
                               United States District Judge